UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| ROBERT SCHELSKE, *et al.*,<br><br>    *Plaintiffs,*<br><br>   v.<br><br>LLOYD J. AUSTIN, III,<br>United States Secretary of Defense, *et al.*,<br><br>    *Defendants.* | No. 6:22-cv-0049-H |

**DEFENDANTS' MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**CONTENTS**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 2

    A.    The COVID-19 Pandemic.................................................................. 2

    B.    Military Vaccination Directives......................................................... 3

    C.    The Army's Implementation of the COVID-19 Vaccination Directive ................ 4

    D.    Other Litigation Regarding the Military's Vaccination Requirement ................... 7

    E.    This Action........................................................................................ 9

LEGAL STANDARDS ...................................................................................... 10

ARGUMENT ..................................................................................................... 11

I.      PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS. .......................... 11

    A.    Plaintiffs' Claims Are Not Ripe........................................................ 11

    B.    Plaintiffs Have Failed to Exhaust Intraservice Remedies.................... 15

    C.    Plaintiffs' RFRA claims fail on the merits. ........................................ 18

    D.    Plaintiffs' First Amendment claims are unlikely to succeed on the merits. ......... 31

II.    PLAINTIFFS ARE UNLIKELY TO SUFFER IRREPARABLE HARM ABSENT PRELIMINARY RELIEF ................................................................. 35

III.   THE EQUITIES AND PUBLIC INTEREST WEIGH AGAINST A PRELIMINARY INJUNCTION ..................................................................... 37

IV.   ANY INJUNCTION MUST BE TAILORED TO PLAINTIFFS. .................................. 39

CONCLUSION.................................................................................................... 40

# AUTHORITIES

## CASES

*303 Creative LLC v. Elenis*,
   6 F.4th 1160 (10th Cir. 2021),
   *cert. granted in part*, 142 S. Ct. 1106 (2022) ........................................................................ 34

*Abbott v. Biden*,
   --- F. Supp. 3d ---, 2022 WL 2287547 (E.D. Tex. June 24, 2022),
   *appeal filed*, No. 22-40399 (5th Cir. June 29, 2022) ............................................................... 8

*Air Force Off. v. Austin*,
   588 F. Supp. 3d 1338 (M.D. Ga. 2022) ................................................................................ 8

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*,
   878 F.2d 806 (5th Cir. 1989) .............................................................................................. 10

*Am. Petroleum Inst. v. EPA*,
   683 F.3d 382 (D.C. Cir. 2012) ............................................................................................ 14

*Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*,
   897 F.3d 314 (D.C. Cir. 2018*), cert. denied*, 140 S. Ct. 1198 (2020) ..................................... 36

*Ass'n of Irritated Residents v. EPA*,
   10 F.4th 937 (9th Cir. 2021) ......................................................................................... 11, 13

*Austin v. Navy SEALs 1–26*,
   142 S. Ct. 1301 (2022) ............................................................................................... *passim*

*Bellinger v. Bowser*,
   288 F. Supp. 3d 71 (D.D.C 2017) ........................................................................................ 36

*Biden v. Missouri*,
   142 S. Ct. 647 (2022) ......................................................................................................... 30

*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S 682 (2014) ............................................................................................... 27, 28, 39

*Cargill v. Marsh*,
   902 F.2d 1006 (D.C. Cir. 1990) .......................................................................................... 15

*Chappell v. Wallace*,
   462 U.S. 296 (1983) ........................................................................................................... 39

*Church v. Biden*,
   573 F. Supp. 3d 118 (D.D.C. 2021) ............................................................................... *passim*

*City of Austin v. Kinder Morgan Tex. Pipeline, LLC*,
   447 F. Supp. 3d 558 (W.D. Tex. 2020)..................................................................... 36

*Col. Fin. Mgmt. Off. v. Austin*,
   --- F. Supp. 3d ---, 2022 WL 3643512 (M.D. Fla. Aug. 18, 2022)........................... 8

*Creaghan v. Austin*,
   --- F. Supp. 3d ---, 2022 WL 1500544 (D.D.C. May 12, 2022),
   *appeal filed*, No. 22-5135 (D.C. Cir. May 20, 2022)......................................... *passim*

*Diraffael v. Cal. Mil. Dep't*,
   No. 10-cv-7240, 2011 WL 13274364 (C.D. Cal. Mar. 21, 2011)........................... 12

*DM Arbor Ct., Ltd. v. City of Houston*,
   988 F.3d 215 (5th Cir. 2021) ................................................................................ 11

*Doe #1-#14 v. Austin*,
   572 F. Supp. 3d 1224 (N.D. Fla. 2021)................................................................... 8

*Doe v. San Diego Unified Sch. Dist.*,
   19 F.4th 1173 (9th Cir. 2021),
   *cert. and application for injunction denied*, 142 S. Ct. 1099 (2022)...................... 25, 27, 33, 35

*Does 1–6 v. Mills*,
   16 F.4th 20 (1st Cir. 2021),
   *cert. denied sub nom. Does 1-3 v. Mills,* 142 S. Ct. 1112 (2022)........................... 25, 27, 29, 35

*Doster v. Kendall*,
   ---F. Supp. 3d ---, 2022 WL 982299 (S.D. Ohio Mar. 31, 2022) ........................... 8

*Doster v. Kendall*,
   No. 1:22-cv-84, 2022 WL 2974733 (S.D. Ohio July 27, 2022) ............................. 8

*Dunn v. Austin*,
   142 S. Ct. 1707 (2022).......................................................................................... 8

*Elrod v. Burns*,
   427 U.S. 347 (1976).............................................................................................. 36

*Emp. Div., Dep't of Hum. Res. of Or. v. Smith*,
   494 U.S. 872 (1990).............................................................................................. 33

*Farmer v. Mabus*,
   940 F.2d 921 (5th Cir. 1991) ................................................................................ 10

*Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kan. City*,
    861 F.3d 1052 (10th Cir. 2017) ............................................................... 14

*Fulton v. City of Philadelphia*,
    141 S. Ct. 1868 (2021) ....................................................................... 33, 34

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018) .............................................................................. 39

*Gilligan v. Morgan*,
    413 U.S. 1 (1973) ............................................................................... 10, 15

*Goldman v. Weinberger*,
    475 U.S. 503 (1986) ................................................................... 10, 20, 31

*Gonzales v. O Centro Espírita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006) .................................................................................. 39

*Google, Inc. v. Hood*,
    822 F.3d 212 (5th Cir. 2016) .................................................................... 36

*Guettlein v. U.S. Merch. Marine Acad.*,
    577 F. Supp. 3d 96 (E.D.N.Y. 2021) .......................................................... 8

*Halczenko v. Ascension Health, Inc.*,
    37 F.4th 1321 (7th Cir. 2022) ................................................................... 37

*Heidman v. United States*,
    414 F. Supp. 47 (N.D. Ohio 1976) ........................................................... 15

*Hodges v. Callaway*,
    499 F.2d 417 (5th Cir. 1974) .................................................................... 15

*Huawei Techs. USA, Inc. v. FCC*,
    2 F.4th 421 (5th Cir. 2021) ................................................................ 11, 13

*Kaemmerling v. Lappin*,
    553 F.3d 669 (D.C. Cir. 2008) ............................................................ 28, 32

*Kane v. De Blasio*,
    19 F.4th 152 (2d Cir. 2021) ...................................................................... 34

*Knick v. Austin*,
    No. 22-1267, 2022 WL 2157066 (D.D.C. June 15, 2022)........................ 8, 12, 16

*La. Power & Light Co. v. Fed. Power Comm'n*,
  526 F.2d 898 (5th Cir. 1976) ............................................................... 13

*Lacewell v. Off. of Comptroller of Currency*,
  999 F.3d 130 (2d Cir. 2021)................................................................. 11

*Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*,
  510 F.3d 253 (3d Cir. 2007)................................................................. 34

*Lindenau v. Alexander*,
  663 F.2d 68 (10th Cir. 1981) ............................................................... 10

*Lopez v. City of Houston*,
  617 F.3d 336 (5th Cir. 2010) ......................................................... 12, 13

*Mark Short v. Berger*,
  No. 22-cv-1151, 2022 WL 1051852 (C.D. Cal. Mar. 3, 2022),
  *appeal dismissed*, No. 22-55339, 2022 WL 2421096 (9th Cir. May 17, 2022) ............... *passim*

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997)............................................................................ 10

*Miller v. Austin*,
  --- F. Supp. 3d ---, 2022 WL 3584666 (D. Wyo. Aug. 22, 2022)....................................*passim*

*Mindes v. Seaman*,
  453 F.2d 197 (5th Cir. 1971) .......................................................... 15, 16

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
  760 F.2d 618 (5th Cir. 1985) ............................................................... 10

*Navy SEAL 1 v. Austin*,
  --- F. Supp. 3d ----, 2022 WL 1294486 (D.D.C. Apr. 29, 2022),
  *appeal filed*, No. 22-5114 (D.C. Cir. May 5, 2022)............................................*passim*

*Navy SEAL 1 v. Biden*,
  No. 8:21-cv-2429, 2022 WL 483832 (M.D. Fla. Feb. 2, 2022)................................................. 8

*Navy SEALs 1–26 v. Biden*,
  578 F. Supp. 3d 822 (N.D. Tex. 2022) ............................................. 8, 35

*Navy SEALs 1–26 v. Austin*,
  --- F. Supp. 3d ---, 2022 WL 1025144 (N.D. Tex. Mar. 28, 2022),
  *appeal filed*, No. 22-10534 (5th Cir. May 31, 2022) ................................................ 8

*Nken v. Holder,*
   556 U.S. 418 (2009)..............................................................................37

*Norris v. Stanley,*
   No. 1:21-cv-756, 2022 WL 557306 (W.D. Mich. Feb. 22, 2022),
   *appeal filed*, No. 22-1200 (6th Cir. Mar. 14, 2022)...............................30

*North Dakota v. United States,*
   495 U.S. 423 (1990)..............................................................................38

*Oklahoma v. Biden,*
   577 F. Supp. 3d 1245 (W.D. Okla. 2021) ..........................................8, 22

*Orloff v. Willoughby,*
   345 U.S. 83 (1953)................................................................................39

*Parisi v. Davidson,*
   405 U.S. 34 (1972)................................................................................15

*Parker v. Levy,*
   417 U.S. 733 (1974)..............................................................................15

*Poffenbarger v. Kendall,*
   588 F. Supp. 3d 770 (S.D. Ohio 2022),
   *appeal dismissed*, No. 22-3413, 2022 WL 3029325 (6th Cir. June 30, 2022) ..........................8

*Robert v. Austin,*
   No. 21-cv-2228, 2022 WL 103374 (D. Colo. Jan. 11, 2022),
   *appeal filed*, No. 22-1032 (10th Cir. Feb. 2, 2022) .................8, 12, 13, 16

*Roberts v. Roth,*
   -- F. Supp. 3d --, 2022 WL 834148 (D.D.C. Mar. 21, 2022)...........12, 14

*Rostker v. Goldberg,*
   453 U.S. 57 (1981)................................................................................10

*Roth v. Austin,*
   --- F. Supp. 3d ---, 2022 WL 1568830 (D. Neb. May 18, 2022),
   *appeal filed*, No. 22-2058 (8th Cir. May 20, 2022) .................8, 20, 21, 29

*S. Bay United Pentecostal Church v. Newsom,*
   140 S. Ct. 1613 (2020)..........................................................................21

*Sample v. Morrison,*
   406 F.3d 310 (5th Cir. 2005) ................................................................11

*Schlesinger v. Ballard,*
    419 U.S. 498 (1975) ............................................................................... 10

*Schlesinger v. Councilman,*
    420 U.S. 738 (1975) ............................................................................... 15

*Shaw v. Austin,*
    539 F. Supp. 3d 169 (D.D.C. 2021) ...................................................... 12

*Shrimpers & Fisherman of the RGV v. U.S. Army Corps of Eng'rs,*
    849 F. App'x 459 (5th Cir. 2021) .......................................................... 13

*Smith v. Harvey,*
    541 F. Supp. 2d 8 (D.D.C. 2008) .......................................................... 14

*Solorio v. United States,*
    483 U.S. 435 (1987) ............................................................................... 10

*Standage v. Braithwaite,*
    526 F. Supp. 3d 56 (D. Md. 2021) ........................................................ 12

*Tagore v. United States,*
    735 F.3d 324 (5th Cir. 2013) ................................................................. 39

*Tandon v. Newsom,*
    141 S. Ct. 1294 ...................................................................................... 33

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
    551 U.S. 308 (2007) ................................................................................. 2

*Thomas Short v. Berger,*
    --- F. Supp. 3d ---, 2022 WL 1203876 (D. Ariz. Apr. 22, 2022),
    *appeal filed*, No. 22-15755 (9th Cir. May 18, 2022) ................. 8, 11, 18, 36

*Thomas v. Union Carbide Agric. Prods. Co.,*
    473 U.S. 568 (1985) ............................................................................... 12

*Together Empls. v. Mass. Gen. Brigham Inc.,*
    19 F.4th 1 (1st Cir. 2021) ...................................................................... 37

*Toilet Goods Ass'n v. Gardner,*
    387 U.S. 158 (1967) ............................................................................... 14

*TOTAL Gas & Power N. Am., Inc. v. Fed. Energy Regul. Comm'n,*
    859 F.3d 325 (5th Cir. 2017) ................................................................. 14

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) ................................................................ 31, 33, 39

*U.S. Navy SEALs 1–26 v. Biden*,
  27 F.4th 336 (5th Cir. 2022) ........................................................... 16, 17

*Unger v. Amedisys Inc.*,
  401 F.3d 316 (5th Cir. 2005) ................................................................ 40

*United States v. Elder*,
  ---F. Supp. 3d---, 2022 WL 836923 (E.D.N.Y. Mar. 21, 2022) ............................. 29

*United States v. O'Brien*,
  391 U.S. 367 (1968) ........................................................................ 19

*Valdez v. Grisham*,
  559 F. Supp. 3d 1161 (D.N.M. 2021),
  *aff'd*, 2022 WL 2129071 (10th Cir. June 14, 2022) ..................................... 30

*Vance v. Wormuth*,
  No. 3:21-cv-730, 2022 WL 1094665 (W.D. Ky. Apr. 12, 2022) ............................ 8, 12

*Von Hoffburg v. Alexander*,
  615 F.2d 633 (5th Cir. 1980) ................................................................ 15

*Voting for America, Inc. v. Steen*,
  732 F.3d 382 (5th Cir. 2013) ................................................................ 35

*Wayte v. United States*,
  470 U.S. 598 (1985) ........................................................................ 19

*We The Patriots USA, Inc. v. Hochul*,
  17 F.4th 266 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021), *and denying
  injunction pending appeal sub. nom.*, *Dr. A. v. Hochul*, 142 S. Ct. 552 (2021)..... 27, 33, 34, 35

*West v. Brown*,
  558 F.2d 757 (5th Cir. 1977) ................................................................ 18

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ...................................................................... 10, 20, 38

*Wyoming v. Zinke*,
  871 F.3d 1133 (10th Cir. 2017) .............................................................. 14

**STATUTES**

42 U.S.C. § 2000bb-1(b)................................................................. 19, 21, 39

**RULES**

Fed R. Civ. P. 23 ................................................................................. 40

**OTHER AUTHORITIES**

Army Reg. 40–562, (Feb. 16, 2018),
    https://perma.cc/82YE-EA3U ......................................................... 4

CDC, *Benefits of Getting a COVID-19 Vaccine* (updated Aug. 17, 2022),
    https://perma.cc/W66Y-3GU7 .................................................... 26, 29

CDC, *COVID-19*,
    https://perma.cc/A9D5-AUHV ....................................................... 2

CDC, *COVID Data Tracker* (updated Nov. 2, 2022),
    https://perma.cc/GEF8-GN28 ......................................................... 3

CDC, *Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or
    Authorized in the United States* (last updated Oct. 19, 2022),
    https://perma.cc/MX32-F8XV ....................................................... 30

CDC, Morbidity and Mortality Weekly Report (Mar. 18, 2022),
    https://perma.cc/HJH3-PEN4........................................................ 22

CDC, *Summary of Guidance for Minimizing the Impact of COVID-19 on Individual Persons,
    Communities, and Health Care Systems—United States* (Aug. 2022),
    https://perma.cc/Y7XV-4R3Q ....................................................... 26

DoDI 1332.45,
    https://perma.cc/9FNU-ZR89 ......................................................... 4

DoDI 6025.19,
    https://perma.cc/TR75-JRVD ......................................................... 4

DoDI 6205.02 (July 23, 2019),
    https://perma.cc/8HLA-AXQB ................................................ 3, 4, 30

Joint Explanatory Statement to Accompany the [NDAA] for Fiscal Year 2022,
    Armed Services Committee Print No. 2 (Dec. 7, 2021),
    https://www.congress.gov/117/cprt/HPRT47742/CPRT-117HPRT47742.pdf ........................ 25

S. Rep. No. 103-111 (1993) ........................................................................................... 20

Sec'y of Def. Mem. (Aug. 9, 2021),
    https://perma.cc/S4R3-2VZW ....................................................................... 4,. 20

Sec'y of Def. Mem. (Aug. 24, 2021),
    https://perma.cc/N759-S758 ..................................................................... 4, 20, 33

Stanley Lemon, et al., *Protecting Our Forces: Improving Vaccine Acquisition and Availability in the U.S. Military*, Nat'l Acad. Press, 2002,
    https://perma.cc/E545-TQ9G ............................................................................ 3

U.S. Army, *Who We Are* (accessed Nov. 1, 2022),
    https://perma.cc/VTU6-2U6R .......................................................................... 23

## INTRODUCTION

In warfare, disease has historically accounted for more service member deaths than battlefield injuries, and a healthy fighting force has long been a key part of America's military readiness. Decades before the COVID-19 pandemic, the Department of Defense implemented an immunization program requiring all service members to obtain at least nine vaccinations, and up to an additional eight depending on the circumstances. In August 2021, the Department of Defense added the COVID-19 vaccination to its list of required immunizations. This vaccination requirement continues to protect the health and readiness of the United States military by reducing the risk of severe illness, hospitalizations, and deaths among service members from a disease that has killed over one million Americans.

Plaintiffs, five active-duty soldiers in the United States Army and five cadets at the United States Military Academy, allege that the military's COVID-19 vaccination requirement violates their rights under the Religious Freedom Restoration Act ("RFRA"), Compl. ¶¶ 54–64, ECF No. 1, and the Free Exercise Clause of the First Amendment, *id.* ¶¶ 65–71. They move for a preliminary injunction preventing the Army from enforcing its COVID-19 vaccination requirements against them or against "others similarly situated." ECF No. 29 at 2.

The motion should be denied because Plaintiffs fail to satisfy any of the rigorous requirements for obtaining a preliminary injunction. First, for several reasons, their claims are not likely to succeed on the merits. To start, the claims are not justiciable. Plaintiffs have not received a final decision on any discipline or proposed separation based on their failure to obey orders to vaccinate, rendering their claims unripe. And Plaintiffs may still avail themselves of extensive administrative procedures for challenging any future disciplinary or separation actions in connection with the COVID-19 vaccination requirement. Moreover, judicial review of the vaccination requirement would constitute improper judicial management and oversight of

1

discretionary military decisions about how best to ensure military readiness and effectiveness.

Even if the Court could reach the substance of Plaintiffs' claims, Plaintiffs otherwise cannot prevail on the merits. Requiring Plaintiffs to receive a vaccination against a deadly, rapidly spreading virus violates neither RFRA nor the First Amendment because the United States Army has an extraordinarily compelling interest in military readiness and the health of its forces—Plaintiffs included—and no less restrictive measure serves those interests as well as vaccination. While Plaintiffs rely heavily on what they describe as a disproportionate number of "secular" exemptions, they fail to note that the vast majority of those exemptions are temporary and, of those, most reflect soldiers who have pending religious accommodation requests that have yet to be decided. Indeed, every one of Plaintiffs received that exemption. When it comes to permanent exemptions, the Army has actually granted *more* religious exemptions than secular medical exemptions. Also, with no class certified, or even properly requested, Plaintiffs certainly have not shown that "others similarly situated" are entitled to an injunction, which as a rule must be narrowly tailored. Neither have Plaintiffs demonstrated irreparable injury nor shown that the balance of equities and public interest weigh in their favor.

For these reasons, Plaintiffs' motion for a preliminary injunction should be denied.

## BACKGROUND

### A.     The COVID-19 Pandemic

The virus SARS-CoV-2 causes a respiratory disease known as COVID-19 that can result in severe symptoms and death.[1] It has infected more than 97 million Americans and has killed over

---

[1]     Centers for Disease Control and Prevention ("CDC"), *COVID-19*, https://perma.cc/A9D5-AUHV. The Court may take judicial notice of factual information available on government websites. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–23 (2007).

one million.[2] At least 97 service members have died from COVID-19, and over 386,000 have become ill. Decl. of Maj. Scott Stanley ¶ 3, A621–22. Of those 97 service members who died, 89 were unvaccinated. *Id.* Many otherwise healthy service members who have been infected suffered severe illness, required hospitalization, or developed "long-haul" COVID-19, potentially affecting their long-term ability to perform their missions. Decl. of Col. Tanya Rans ¶¶ 9–11, A563–71.

### B.  Military Vaccination Directives

Vaccines have played a longstanding and important role in America's military readiness. Military deaths from infectious diseases outnumbered those due to direct combat injuries until World War II, when vaccines became widespread. Stanley Lemon, et al., *Protecting Our Forces: Improving Vaccine Acquisition and Availability in the U.S. Military* at 3, Nat'l Acad. Press, 2002, https://perma.cc/E545-TQ9G. More recently, disease accounted for nearly 70% of U.S. Army hospital admissions during the Persian Gulf War. *Id.* at 10, Fig. 1-1. Military-mandated vaccinations mitigate this threat and reduce disease morbidity and mortality among service members. *Id.* at 10–11 (highlighting historical use of vaccines in armed conflict). The U.S. military instituted its first immunization program in 1777 when General Washington directed the inoculation of the Continental Army against smallpox. *Id.* at 12, tbl. 1-1. And for the past several decades, the military has implemented various inoculation measures to maintain the readiness of its force. Bryce H. P. Mendez, Cong. Rsch. Serv., IF11816, *Defense Health Primer: Military Vaccinations* (updated Aug. 6, 2021), https://crsreports.congress.gov/product/pdf/IF/IF11816/2.

The military's current immunization program is governed by Department of Defense Instruction ("DoDI") 6205.02 (July 23, 2019), https://perma.cc/8HLA-AXQB. Even prior to COVID-19, nine vaccines—including the annual influenza vaccine—were required for all service

---

[2]      CDC, *COVID Data Tracker* (updated Nov. 8, 2022), https://perma.cc/UY4R-C2NF.

members, and eight other vaccinations are required when certain elevated risk factors are present, such as deployment to certain parts of the world. Vaccination is part of the military's overarching requirement that each service member be medically ready for service and immediate mobilization. *See* DoDI 6025.19, https://perma.cc/TR75-JRVD. Indeed, the Department of Defense has determined that "[t]o maximize the lethality and readiness of the joint force, all Service members are expected to be deployable." DoDI 1332.45 ¶ 1.2, https://perma.cc/9FNU-ZR89. The Department generally aligns its immunization requirements for service members with recommendations from the CDC. DoDI 6205.02 ¶ 1.2, https://perma.cc/8HLA-AXQB.

On August 9, 2021, the Secretary of Defense, noting the impact of COVID-19 on military readiness and concluding that vaccination "will ensure we remain the most lethal and ready force in the world," announced that he would add the COVID-19 vaccine to the list of vaccines required for all service members by the earlier of mid-September 2021 or upon approval of a vaccine by the Food and Drug Administration ("FDA"). Sec'y of Def. Mem. (Aug. 9, 2021), https://perma.cc/S4R3-2VZW. On August 24, 2021, one day after the FDA announced its approval of the Pfizer vaccine, the Secretary directed the Military Departments to immediately ensure that all members of the Armed Forces were fully vaccinated against COVID-19. Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758. Those with a previous SARS-CoV-2 infection who have not received a COVID-19 vaccine are not considered fully vaccinated. *Id.*

### C.      The Army's Implementation of the COVID-19 Vaccination Directive

Shortly after the Secretary issued the COVID-19 vaccination directive, the Army directed that all its service members become vaccinated. Decl. of Col. Kevin Mahoney ¶¶ 9–10, A533–34.

Exemptions. As with other vaccination requirements, the Army has a process for granting appropriate medical and administrative (including religious) exemptions from the COVID-19

vaccination requirement. Service members need not receive the vaccine if they have been granted

an exemption or have an exemption request or appeal pending. Mahoney Decl. ¶ 11, A534.

Medical exemptions may be temporary or permanent and are determined by healthcare

providers based on the health of the soldier and the vaccine in question. Mahoney Decl. ¶ 13, A535.

They may be granted, for example, because a service member is pregnant, because of allergies to

vaccine components, or because of a previous adverse response to immunization. *Id*. Certain

administrative exemptions are granted to soldiers who are within 180 days of separation or

retirement, in which case the exemption lasts only 180 days. *See* Army Reg. 40–562 ¶ 2-6.b(1),

https://perma.cc/82YE-EA3U. A soldier may also receive a temporary administrative exemption

while a request for a religious or medical exemption is pending. Mahoney Decl. ¶ 26, A542–43.

Service members also may request a religious exemption, which is processed through their

chain of command to the Surgeon General of the Army or his designee. Mahoney Decl. ¶ 17–18,

A537–38. The service member's commanders at each level review the request and make

recommendations. *Id.* ¶ 18, A537. The requester is counseled by both a chaplain (who prepares a

memorandum addressing the sincerity of the member's beliefs) and a healthcare provider. *Id.* ¶ 19–

20, A538–39. If a request is denied, the service member may appeal to the Assistant Secretary of

the Army for Manpower and Reserve Affairs, who, after receiving recommendations from the

chain of command, issues a final decision granting or denying the request. *Id.* ¶ 21, A539–40.

<u>Refusals to vaccinate</u>. If a soldier is denied an exemption and still refuses to comply with

an order to vaccinate, commanders must begin an administrative process to address the

noncompliance. Mahoney Decl. ¶ 27, A543. First, the commander requests a General Officer

Memorandum of Reprimand ("GOMOR"), to which the service member may respond. *Id.* ¶ 28,

A543–44. The issuing General Officer must then decide whether to place the GOMOR in the

5

service member's permanent file. *Id*. If the General Officer chooses permanent filing, the service member may appeal that decision first to the Department of the Army Suitability Evaluation Board and then to the Army Board for Correction of Military Records. *Id*. ¶ 29, A544.

Commanders must also initiate separation proceedings for soldiers and cadets who refuse an order to vaccinate and do not have a pending request for exemption. Mahoney Decl. ¶ 30, A544–45. The four enlisted Plaintiffs, who each have more than six years of service, may elect to proceed before an Administrative Separation Board. *Id*. ¶ 31, A545. In that event, the soldier is entitled to representation by counsel and may submit evidence, examine witnesses, present expert opinions, and make arguments. *Id*. ¶ 32, A545–46. Once proceedings conclude, the Board members make a recommendation to the separation authority. *Id*. If the Board recommends separation, the separation authority may accept or reject that recommendation. *Id*. If, on the other hand, the Board recommends retaining the soldier, the authority is bound by that decision and the soldier is retained. *Id*. Probationary officers, like Lieutenant Huntley Bakich, have the right to counsel and to rebut the reasons for separation given by the General Officer. *Id*. ¶ 34, A547. If the General Officer decides to separate, it goes to a Deputy Assistant Secretary, who may decide otherwise. *Id*.

Cadets at the U.S. Military Academy who refuse to be vaccinated are subject to a formal misconduct hearing before a board of three commissioned officers, to whom they may, with the aid of counsel, present evidence, witnesses, and arguments. Decl. of Col. Wilson Rutherford ¶¶ 8–9, 14, A607–09. The board will then issue findings and recommendations, which, with the record of the hearings, are forwarded to the Commandant of Cadets for consideration. *Id*. ¶ 16, A610. The Commandant will make a recommendation to the Superintendent of the U.S. Military Academy, to which the cadet may submit a rebuttal. *Id.*. The Superintendent will review the record, a legal review from the Staff Judge Advocate, the Commandant's recommendation, and any materials

6

submitted by the cadet, and will then decide whether the cadet should be disenrolled from the academy due to misconduct. *Id.* ¶¶ 16–17, A610. The Superintendent is delegated authority to separate first- and second-year cadets, but upper-class cadets must be separated by the Assistant Secretary of the Army for Manpower and Reserve Affairs. *Id.* ¶¶ 18–19, A610–11.

All enlisted members and officers may appeal a separation decision to the Army Discharge Review Board, which can review the character of, reason for, and authority behind a discharge. Mahoney Decl. ¶ 37, A548. In addition, they may appeal adverse separation decisions (including decisions by the Board of Inquiry and the Army Discharge Review Board) to the Army Board for Correction of Military Records, which has broad authority to remove error or injustice from military records, including the authority to remove an involuntary separation. *Id.* ¶ 38, A548.

Two of the Plaintiffs (Lieutenant Huntley Bakich and Sergeant Peter Testa) still have outstanding appeals of the denials of their religious exemption requests. Decl. of Col. Michael Porges ¶¶ 6, 11, A552–53.[3] Five Plaintiffs have not yet been notified of any separation proceedings. Decl. of Capt. Chad Powers ¶ 6, A556; Supp. Rutherford Decl. ¶¶ 1, 5, 10, 12, A614, 616, 618, 619. The remaining three Plaintiffs' separation proceedings remain ongoing. Decl. of Capt. Matthew Walkingstick ¶¶ 7, 12, A634, 636; Supp. Rutherford Decl. ¶ 8, A617.

### D.     Other Litigation Regarding the Military's Vaccination Requirement

In addition to this case, there have been numerous other challenges to the military's vaccination requirement brought in district courts across the country. At least fifteen other courts have either rejected arguments for preliminary injunctive relief against the military or dismissed

---

[3]     Four Plaintiffs (all of them cadets) separately requested and were denied medical exemptions, and their appeals of those denials have recently been denied. Supp. Rutherford Decl. ¶¶ 1, 5, 10, 12, A614, 616, 618, 619.

the service members' claims entirely.[4] In *Dunn v. Austin*, a RFRA case where the district court denied the preliminary-injunction motion, the Supreme Court denied the member's application for an injunction pending appeal. 142 S. Ct. 1707 (2022) (mem.).

Six courts have preliminarily enjoined other services from applying COVID-19 vaccination requirements or from taking adverse action against plaintiffs in those cases.[5] The government strongly disagrees with those decisions and has appealed five of them.[6] In *Austin v. Navy SEALs 1–26*, the Supreme Court granted the government's application for a partial stay of

---

[4]     *See Miller v. Austin*, --- F. Supp. 3d ---, 2022 WL 3584666 (D. Wyo. Aug. 22, 2022); *Knick v. Austin*, No. 22-1267, 2022 WL 2157066 (D.D.C. June 15, 2022); *Robert v. Austin*, No. 21-cv-2228, 2022 WL 103374 (D. Colo. Jan. 11, 2022), *appeal filed*, No. 22-1032 (10th Cir. Feb. 2, 2022); *Church v. Biden*, 573 F. Supp. 3d 118 (D.D.C. 2021); *Navy SEAL 1 v. Austin*, --- F. Supp. 3d ----, 2022 WL 1294486 (D.D.C. Apr. 29, 2022), *appeal filed*, No. 22-5114 (D.C. Cir. May 5, 2022); *Creaghan v. Austin*, --- F. Supp. 3d ---, 2022 WL 1500544 (D.D.C. May 12, 2022), *appeal filed*, No. 22-5135 (D.C. Cir. May 20, 2022); *Thomas Short v. Berger*, --- F. Supp. 3d ---, 2022 WL 1203876 (D. Ariz. Apr. 22, 2022), *appeal filed*, No. 22-15755 (9th Cir. May 18, 2022); *Vance v. Wormuth*, No. 3:21-cv-730, 2022 WL 1094665 (W.D. Ky. Apr. 12, 2022); *Mark Short v. Berger*, No. 22-cv-1151, 2022 WL 1051852 (C.D. Cal. Mar. 3, 2022), *appeal dismissed*, No. 22-55339, 2022 WL 2421096 (9th Cir. May 17, 2022); *Roth v. Austin*, --- F. Supp. 3d ---, 2022 WL 1568830, at *31 (D. Neb. May 18, 2022), *appeal filed*, No. 22-2058 (8th Cir. May 20, 2022); *Dunn v. Austin*, No. 22-cv-288 (E.D. Cal. Feb. 22, 2022) ("*Dunn* Op."), A512; *Doe #1–#14 v. Austin*, 572 F. Supp. 3d 1224 (N.D. Fla. 2021); *Abbott v. Biden*, --- F. Supp. 3d ---, 2022 WL 2287547, at *7 (E.D. Tex. June 24, 2022), *appeal filed*, No. 22-40399 (5th Cir. June 29, 2022); *Oklahoma v. Biden*, 577 F. Supp. 3d 1245 (W.D. Okla. 2021); *Guettlein v. U.S. Merch. Marine Acad.*, 577 F. Supp. 3d 96 (E.D.N.Y. 2021).

[5]     *See Navy SEALs 1–26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex. 2022); *Navy SEAL 1 v. Biden*, No. 8:21-cv-2429, 2022 WL 483832 (M.D. Fla. Feb. 2, 2022) (Merryday, J.); *Air Force Off. v. Austin*, 588 F. Supp. 3d 1338 (M.D. Ga. 2022); *Poffenbarger v. Kendall*, 588 F. Supp. 3d 770 (S.D. Ohio 2022), *appeal dismissed*,  No. 22-3413, 2022 WL 3029325 (6th Cir. June 30, 2022); *Doster v. Kendall*, ---F. Supp. 3d ---, 2022 WL 982299 (S.D. Ohio Mar. 31, 2022); *Col. Fin. Mgmt. Off. v. Austin*, --- F. Supp. 3d ---, 2022 WL 3643512 (M.D. Fla. Aug. 18, 2022) (Merryday, J.) (enjoining the Marine Corps after separating the case from *Navy SEAL 1* and creating a new case number).

[6]     The district courts in *Navy SEALs 1-26* and *Doster* subsequently entered class-wide preliminary injunctions against the Navy and the Air Force, respectively, which the government has also appealed. *Navy SEALs 1–26 v. Austin*, --- F. Supp. 3d ---, 2022 WL 1025144, at *9 (N.D. Tex. Mar. 28, 2022), *appeal filed*, No. 22-10534 (5th Cir. May 31, 2022); *Doster v. Kendall*, No. 1:22-cv-84, 2022 WL 2974733, at *1 (S.D. Ohio July 27, 2022).

the district court's injunction. 142 S. Ct. 1301, 1301 (2022) (mem.). Similarly, in *Navy SEAL 1*,
the Eleventh Circuit stayed the district court's injunction pending appeal "insofar as it precludes
the Navy from considering the plaintiffs' vaccination status in making deployment, assignment,
and other operational decisions." No. 22-10645 (11th Cir. Mar. 30, 2022). Plaintiffs here propose
that this Court impose the same limitation with respect to their requested injunction. ECF No. 29-1
at 2.

> **E.    This Action**

On October 3, 2022, Plaintiffs brought this lawsuit on behalf of themselves and a purported
class (for which they have yet to seek certification), alleging that that the Army's COVID-19
vaccination requirement violates their religious rights under RFRA and the First Amendment. *See*
Compl. ¶¶ 54–71. Each Plaintiff objects to being vaccinated against COVID-19, asserting that such
vaccination conflicts with his religious beliefs, primarily because Plaintiffs are opposed to abortion
and believe that the cells of an aborted fetus were used in the development and testing of the
available vaccines. *Id.* ¶¶ 12–21.[7] Plaintiffs do not allege that the Army has concluded involuntary
separation proceedings for any of them based on their refusal to vaccinate.

About two weeks after bringing suit, Plaintiffs filed the instant motion for a preliminary
injunction, asking the Court to enjoin Defendants (1) from taking "enforcement/punitive actions"
against them or "others similarly situated" related to their requests for a religious accommodation
from the COVID-19 vaccination requirement and (2) from taking "any disciplinary or separation

---

[7]     Plaintiff Sergeant Robert Schelske has indicated that he would not have any religious
objections to taking the Covaxin vaccine and was at one point (with his commander's full support)
arranging a trip to India to receive it. Pls.' App'x at 308; Walkingstick Decl. ¶ 10, A635. For
reasons presently unknown, however, Sergeant Schelske appears to have abandoned his plans to
receive Covaxin in India, Walkingstick Decl. ¶ 10, A635, which would have brought him into full
compliance with the Army's COVID-19 vaccination requirement. Mahoney Decl. ¶ 4, A531.

measures" against them or "others similarly situated" based on their refusal to became vaccinated or based on their submission of a request for religious accommodation. ECF No. 29 at 2.

## LEGAL STANDARDS

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). To justify this "drastic remedy," a plaintiff must make a "*clear showing*" that (1) they have a substantial likelihood of success on the merits; (2) they will suffer irreparable harm without the requested injunction; (3) the balance of equities tips in their favor; and (4) preliminary relief serves the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Failure to demonstrate any one of these elements requires denial of preliminary relief. *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

Additionally, courts extend great deference to the military in reviewing the "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force," which are "essentially professional military judgments." *Winter*, 555 U.S. at 24 (citation omitted); *see also Farmer v. Mabus*, 940 F.2d 921, 923 (5th Cir. 1991) ("[J]udicial intrusion into military matters is to be most cautiously . . . approached."). As the Supreme Court has repeatedly emphasized, "it is difficult to conceive of an area of governmental activity in which the courts have less competence." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973); *see also Schlesinger v. Ballard*, 419 U.S. 498, 510 (1975) ("[I]t is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise," and the "responsibility for determining how best our Armed Forces shall attend to that business rests with Congress" and "the President."); *Rostker v. Goldberg*, 453 U.S. 57, 66 (1981); *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986). Such deference extends to constitutional claims and military decisions about the health and welfare of the troops. *See, e.g., Solorio v. United States*, 483 U.S. 435, 448 (1987); *Lindenau v. Alexander*,

663 F.2d 68, 70–74 (10th Cir. 1981); *Thomas Short*, 2022 WL 1203876, at *13; *Mark Short*, 2022 WL 1051852, at *7–8; *Dunn* Op. at 36, 46–48, A525–27.

## ARGUMENT

## I.   PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS.

### A.   Plaintiffs' Claims Are Not Ripe.

Plaintiffs' claims are constitutionally and prudentially unripe because they have yet to receive final disciplinary or separation decisions for their refusal to be vaccinated against COVID-19.[8] The ripeness doctrine "ensures that federal courts do not decide disputes that are 'premature or speculative,'" and reflects "'Article III limitations on judicial power,' as well as 'prudential reasons for refusing to exercise jurisdiction.'" *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (citation omitted). This doctrine is "designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (citation omitted); *see also Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 434 (5th Cir. 2021).

<u>Constitutional ripeness</u>. "[T]he doctrine of constitutional ripeness overlaps with the standing doctrine, most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical." *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 149 (2d Cir. 2021) (citation omitted); *see also Ass'n of Irritated Residents v. EPA*, 10 F.4th 937,

---

[8]   Plaintiff Zakai Bufkin asserts that he is on an administrative leave of absence from the United States Military Academy without pay, Bufkin Decl. ¶ 22, Pls.' App'x at 62, but he fails to explain that his pending placement on administrative leave is due solely to academic deficiencies and is unrelated to his vaccination status. Supp. Rutherford Decl. ¶ 2, A615.

944 (9th Cir. 2021). Thus, if a "purported injury is 'contingent [on] future events that may not occur as anticipated, or indeed may not occur at all,' the claim is not ripe for adjudication." *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). For this reason, courts have declined to review claims challenging military vaccination requirements, including on RFRA and Free Exercise grounds, prior to a final decision on separation or discipline. *See Knick*, 2022 WL 2157066, at *3; *Vance*, 2022 WL 1094665, at *4–7; *Robert*, 2022 WL 103374, at *2–3; *Church*, 573 F. Supp. 3d at 136–37; *Miller*, 2022 WL 3584666, at *4; *Standage v. Braithwaite*, 526 F. Supp. 3d 56, 94 (D. Md. 2021); *see also Diraffael v. Cal. Mil. Dep't*, No. 10-cv-7240, 2011 WL 13274364, at *3 (C.D. Cal. Mar. 21, 2011) ("[T]he commencement of discharge proceedings" is not sufficient injury when those "proceedings are still underway and to date no final determination has been reached[.]"). Courts have also rejected contentions that claims are ripe because separation processes may have a likely result. *See, e.g., Roberts v. Roth*, -- F. Supp. 3d --, 2022 WL 834148, at *6 (D.D.C. Mar. 21, 2022) (explaining that the court was "in no position to make predictions as to what other entities might conclude," and nothing could "change[] the fact that [the plaintiff] ha[d] yet to be discharged"); *Shaw v. Austin*, 539 F. Supp. 3d 169, 183 (D.D.C. 2021) ("[T]he Court cannot so easily dismiss the possibility that he will have a fair opportunity to make his case to a Board of Inquiry.").

This case warrants the same treatment. Plaintiffs seek to avoid the possibility of separation for disobeying an order to be vaccinated. Compl. ¶ 47. But no matter how confident they are about the outcome of ongoing or expected separation proceedings, claims seeking relief from military-discharge decisions "are not ripe at the commencement of discharge proceedings; they are ripe only after a plaintiff has been discharged." *See Roberts*, 2022 WL 834148, at *5. Separation

proceedings have not been completed for any of the Plaintiffs—and may never be. Indeed, two of the Plaintiffs have yet to receive final decisions on their appeals from the initial denials of their requests for religious accommodation and do not currently face administrative separation. *See supra* at 7. All Plaintiffs still may be heard before any separation decisions could be made. *See supra* at 5–7. And even if the relevant authority were to decide to separate a soldier, which would not be for several months from the initiation of those proceedings, that Plaintiff would still be able to seek administrative relief from that decision before coming to federal court. *See supra* at 7. Plaintiffs thus seek to invoke this Court's jurisdiction to remedy injuries that are merely theoretical and "based on nothing more than speculation" about events "that might never come to pass." *See Robert*, 2022 WL 103374, at \*3; *accord Church*, 573 F. Supp. 3d at 137; *Miller*, 2022 WL 3584666, at \*4. As a constitutional matter, these claims are not ripe for review.

    Prudential ripeness. Plaintiffs' claims are also unripe as a prudential matter. In evaluating prudential ripeness, a court considers "(1) the fitness of the issues for judicial resolution, and (2) the potential hardship to the parties caused by declining court consideration." *Lopez*, 617 F.3d at 341; *see also Ass'n of Irritated Residents*, 10 F.4th at 944 (noting these are prudential considerations). Plaintiffs must satisfy both prongs. *Huawei Techs.*, 2 F.4th at 435 n.30. They satisfy neither.

    As to the first prong, Plaintiffs' claims are not fit for judicial resolution because "matters 'still pending before'" an agency are "not yet ripe for judicial review." *Shrimpers & Fisherman of the RGV v. U.S. Army Corps of Eng'rs*, 849 F. App'x 459, 462 (5th Cir. 2021) (quoting *La. Power & Light Co. v. Fed. Power Comm'n*, 526 F.2d 898, 910 (5th Cir. 1976)). As explained above, those Plaintiffs whose religious accommodation requests have been fully denied have yet to receive a final decision on any separation or discipline. Thus, proceeding now would require the Court "to

adjudicate internal military affairs before the military chain of command has had full opportunity to consider" them. *Church*, 573 F. Supp. 3d at 137; *see also Roberts*, 2022 WL 834148, at \*5–6; *Miller*, 2022 WL 3584666 at \*3–5 ("Courts must not interfere . . . until the separation decision is final and can no longer be adjudicated within the military chain of command."). Prudential ripeness poses the question not whether it is "possible" to resolve a claim, but "whether it is appropriate for the court to undertake the task." *Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kan. City*, 861 F.3d 1052, 1060–61 (10th Cir. 2017) (citation omitted). Here, "'judicial intervention' at this stage would 'inappropriately interfere with further administrative action' on the matter before the Court." *Miller*, 2022 WL 3584666 at \*4 (quoting *Wyoming v. Zinke*, 871 F.3d 1133, 1141–42 (10th Cir. 2017)).

The fact that, at some point in the future, the Army "*may* separate or otherwise discipline a Plaintiff for refusing to comply with its COVID-19 vaccination requirement cannot ripen this case." *Id.* "Whether to separate or discipline a service member is a discretionary decision that is left, in the first instance, to the" Army. *Id.*; *see also, e.g., Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 163–64 (1967). The "initiation of separation proceedings is [thus] a tentative action not fit for judicial review[,]" because "one can only speculate as to the final outcome of any proceedings." *Smith v. Harvey*, 541 F. Supp. 2d 8, 13 (D.D.C. 2008). As explained, even those Plaintiffs currently in separation proceedings "still have multiple opportunities" to be heard by officials with authority to retain their service. *Miller*, 2022 WL 3584666, at \*5. Therefore, at this point, it is entirely "possible that something" raised by a Plaintiff during his or her separation or postseparation proceedings "will compel [the Army] to drop the [separation]," obviating the need for any judicial involvement. *See TOTAL Gas & Power N. Am., Inc. v. Fed. Energy Regul. Comm'n*, 859 F.3d 325, 336 (5th Cir. 2017); *see also Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012).

14

Second, Plaintiff have not established that delaying judicial resolution of their claims until they have exhausted administrative remedies would cause them any hardship. As discussed above, Plaintiffs have not shown that they will likely suffer harm as a result of Defendants' challenged actions, and all claims to the contrary rest on speculation.

### B.      Plaintiffs Have Failed to Exhaust Intraservice Remedies.

Plaintiffs' claims are also not justiciable because have not exhausted remedial options available from the Army. "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37 (1972). Requiring exhaustion in the military context is particularly appropriate, "given the judiciary's lack of expertise in areas of military judgment and its long-standing policy of non-intervention in internal military affairs." *Heidman v. United States*, 414 F. Supp. 47, 48 (N.D. Ohio 1976) (citing *Schlesinger v. Councilman*, 420 U.S. 738 (1975); *Parker v. Levy*, 417 U.S. 733 (1974); *Gilligan*, 413 U.S. at 10). The Fifth Circuit has long required that a plaintiff first exhaust all "available intraservice corrective measures" before bringing to federal court claims implicating "internal military affairs." *Hodges v. Callaway*, 499 F.2d 417, 419–20 (5th Cir. 1974) (quoting *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971)); *see also Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir. 1980) (collecting cases); *Cargill v. Marsh*, 902 F.2d 1006, 1007–08 (D.C. Cir. 1990) (per curiam). And even when a plaintiff meets this threshold exhaustion requirement, courts weigh several factors to determine the propriety of reviewing a claim challenging internal military matters: (i) the nature and strength of the plaintiffs' challenge; (ii) the potential injury to the plaintiffs if review is refused; (iii) the type and degree of anticipated interference with the military function; and (iv) the extent to which the exercise of

military expertise or discretion is involved. *Mindes*, 453 F.2d at 201.[9]

    <u>Exhaustion</u>. Although Plaintiffs have sought exemptions from the Army's vaccination requirement, two of them have not completed the administrative process for appealing the initial denials of their religious exemption requests, and none of them have completed administrative procedures to challenge any proposed separation or discipline. During that process, the Army can build a factual record and determine in the first instance whether a Plaintiff should be granted relief. For that reason, courts have denied relief to service members who similarly failed to exhaust available separation remedies before pursuing RFRA and Free Exercise challenges relating to the military's vaccination directives. *See, e.g., Church*, 573 F. Supp. 3d at 136–38; *Robert*, 2022 WL 103374, at *3; *Knick*, 2022 WL 2157066, at *3; *Mark Short*, 2022 WL 1051852, at *4; *Miller*, 2022 WL 3584666, at *5. Plaintiffs do not dispute that two of them have not received final decisions on their requests for a religious exemption, and that none of them have concluded the Army's separation or post-separation processes, which they must exhaust before bringing their claims to federal court. *See, e.g., Church*, 573 F. Supp. 3d at 136–38.

    Plaintiffs contend that exhaustion should be excused because "any further exhaustion would be futile." Pls.' Br., ECF No. 30, at 10. The various remaining administrative procedures available to Plaintiffs provide for thorough, individualized reconsideration before different

---

[9]    Plaintiffs incorrectly rely on *U.S. Navy SEALs 1–26 v. Biden*, 27 F.4th 336 (5th Cir. 2022), to argue that RFRA claims are not subject to *Mindes*. *See* Pls.' Br. at 10. In granting a partial stay of an injunction that the Fifth Circuit had denied, the Supreme Court necessarily rejected the Fifth Circuit's reasoning in that case. *Austin v. U.S. Navy SEALs 1–26*, 142 S. Ct. 1301 (2022) (mem.). Further, contrary to Plaintiffs' contention, the Fifth Circuit in *Navy SEALs 1–26* did not hold that *Mindes* is inapplicable to RFRA claims. The stay panel opined that it "would not be a stretch" to reach that conclusion but, "deferring to circuit precedent," went on to apply *Mindes*. 27 F.4th at 346. This Court must likewise defer to circuit precedent and apply *Mindes*. And it should do so considering the specific record in this case against the Army, not the record in some other case against a different branch. *See id.* 347 n.11 (noting that cases have reached different conclusions).

decision-making authorities any of whom could reverse the decisions of which Plaintiffs complain. Indeed, Plaintiffs offer no support for their assertion of futility other than to cite three paragraphs in their verified complaint, none of which have anything to do with futility. *See id.* (citing Compl. ¶¶ 13, 16, 21). Other than that, Plaintiffs simply assert—with no detailed explanation—that their claims are "otherwise justiciable" because, as alleged in *Navy SEALs 1–26*, the Army has somehow "effectively stacked the deck" against them. *Id.* (citing 27 F.4th at 347). They also rely vaguely on some unspecified "other reasons set forth by the Fifth Circuit in *Navy Seals*." *Id.* (citing 27 F.4th at 346–49). But—without conceding that *Navy SEALs* was correctly decided—this Court should decide this case on the record before it, not unidentified aspects of the record in *Navy SEALs*

There are some key distinctions here. For example, the Fifth Circuit relied heavily on evidence purportedly showing that the Navy's process of reviewing religious accommodation requests was designed solely to effectuate a denial and that the Navy had approved zero requests for religious accommodation, contrasted with several permanent medical exemptions. 27 F.4th at 341–42. The Fifth Circuit also had before it purported evidence that Navy commanders had informed service members that there would be a "blanket denial" of all religious accommodation requests. *Id.* at 342–43. There is no such evidence here. To the contrary, the Army has granted several requests for religious accommodation. Indeed, in the Army, the number of granted religious accommodations is greater than the number of granted permanent medical; and, unlike in cases involving other branches wherein exhaustion was found to be futile, most of the Army's religious accommodations were granted to servicemembers *not* at the end of their service. *See infra* at 24–26. These facts starkly distinguish the cases on which Plaintiffs rely while ignoring facts specific to the Army. This forecloses them from showing futility.

<u>*Mindes*</u> factors. Even if Plaintiffs had exhausted all available administrative remedies, their

17

claims would still be unreviewable because the *Mindes* factors weigh against judicial review. First, Plaintiffs' claims are unlikely to succeed on the merits for the reasons discussed below. Second, as discussed above, Plaintiffs offer insufficient evidence to show that they will likely suffer harm absent review. Given that two of them have yet to receive a decision on their appeals and all of them have substantial administrative remedies available to them, any harm is speculative. Finally, the third and fourth *Mindes* factors "present a single inquiry, focusing on disruption of military functions," *West v. Brown*, 558 F.2d 757, 760–61 (5th Cir. 1977), and weigh decidedly against review. "[M]ilitary readiness and unit cohesion would be unacceptably harmed should the Court" issue the prayed-for declaratory or injunctive relief implicating the military's "Vaccine Mandate." *Church*, 573 F. Supp. 3d at 146–47; *see also* Stanley Decl. ¶ 22, A630 ("Given the tangible protection the vaccines afford service members against serious illness, hospitalization, and death, it is clear that COVID-19 vaccines improve readiness and preserve the DoD's ability to accomplish its mission."). "[F]orcing the [Army] to adjust to the risks of including unvaccinated [soldiers] in its ranks is a substantial interference." *Thomas Short*, 2022 WL 1203876, at *15 (quoting *Mark Short*, 2022 WL 1051852, at *5). Even the risk of a single Plaintiff going unvaccinated is a serious concern because unvaccinated individuals have many times the risk of suffering severe illness from SARS-CoV-2 infection and requiring hospitalization or possible medical evacuation from a hostile area as a result. Stanley Decl. ¶ 22, A630.

### C.    Plaintiffs' RFRA claims fail on the merits.

Plaintiffs cannot establish likely success on the merits of their respective RFRA claims.[10]

---

[10]    For purposes of this motion, Defendants do not challenge the sincerity of Plaintiffs' religious beliefs or their contention that receiving any of the available COVID-19 vaccines would substantially burden those beliefs. Defendants reserve the right to dispute those issues later in these proceedings.

Military orders to vaccinate violate RFRA only if the government cannot "demonstrate[] that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). But, here, requiring Plaintiffs to be vaccinated furthers compelling governmental interests in military readiness and in the health and safety of service members, and it is the least restrictive means of advancing those interests. As one district court observed, "a majority of the Supreme Court has already held . . . that the Government is likely to succeed on the merits on the same claims brought by Navy SEALs," and although that decision may not be formally binding, "it is the most persuasive authority on which a District Court may rely." *Navy SEAL 1*, 2022 WL 1294486, at *4 (citing *Navy SEALs 1–26*, 142 S. Ct. at 1301).

Compelling Interest. Requiring Plaintiffs to be vaccinated against COVID-19 furthers compelling interests in military readiness and the health of service members, especially when evaluated under the substantial deference that courts afford military operational decision-making. "[N]o court has ever held that the military does not have a compelling interest in the health of its troops" or "that vaccination against harmful diseases does not serve a compelling government interest," *Navy SEAL 1*, 2022 WL 1294486, at *9; *see also Creaghan*, 2022 WL 1500544, at *9 ("[T]here can be no greater military interest than in keeping each servicemember fit and healthy enough to accomplish their duties."). Instead, the Supreme Court has repeatedly emphasized that the government's interest in the "maximum efficiency" of military operations is paramount, *United States v. O'Brien*, 391 U.S. 367, 381 (1968), and that "[f]ew interests can be more compelling than a nation's need to ensure its own security[,]" *Wayte v. United States*, 470 U.S. 598, 611 (1985). And "[w]hen evaluating whether military needs justify a particular restriction on religiously motivated conduct, courts must give great deference to the professional judgment of military

19

authorities concerning the relative importance of a particular military interest." *Mark Short*, 2022 WL 1051852, at \*7 (quoting *Goldman*, 475 U.S. at 507). Congress intended to preserve these long-standing principles of military deference when enacting RFRA, even while applying strict scrutiny. S. Rep. No. 103-111, at 12 (1993) ("The courts have always recognized the compelling nature of the military's interest in [good order, discipline, and security] in the regulations of our armed services," and "have always extended to military authorities significant deference in effectuating these interests. The committee intends and expects that such deference will continue under this bill."); *see also Navy SEAL 1*, 2022 WL 1294486, at \*8.

After consulting with "medical experts and military leadership," the Secretary of Defense "determined that mandatory vaccination against [COVID-19] is necessary to protect the Force and defend the American people." *See* Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758; Sec'y of Def. Mem. (Aug. 9, 2021), https://perma.cc/S4R3-2VZW. The Army likewise found that COVID-19 vaccination is a "readiness, health, and welfare priority for the total Army." Mahoney Decl. ¶ 10, A534. And "logic alone" dictates that "the military's general compelling interest in ensuring the health of its servicemembers . . . distill[s] to a compelling interest in ensuring that [each individual service member] remains healthy enough to accomplish [his] duties." *Creaghan*, 2022 WL 1500544, at \*9; *see also Roth*, 2022 WL 1568830, at \*17. The Court must "give great deference" to the "professional military judgments" of these leaders when it comes to what is needed to ensure military readiness and the welfare of service members. *Winter*, 555 U.S. at 24–25 (citations omitted) (collecting cases). And "when executive officials 'undertake to act in areas fraught with medical and scientific uncertainties,' their judgments 'should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health.'" *Mark Short*, 2022 WL 1051852, at \*5 (quoting

*S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–14 (2020) (Roberts, C.J., concurring)); *see also Creaghan*, 2022 WL 1500544, at *8.

Here, the Army conducted, or is in the process of conducting, the individualized, "to the person" analysis that RFRA requires, 42 U.S.C. § 2000bb-1(b), considering each of the Plaintiffs' particular circumstances and role within the military, and concluded, in eight cases, that allowing each of them to remain unvaccinated would undermine the military's compelling interest in ensuring they can carry out their military duties effectively; *see also, e.g.*, *Roth*, 2022 WL 1568830, at *15. For example, Plaintiff Samuel Galloway's commanders explained that he is a construction engineer for the Brigade Engineer Battalion and cannot perform those duties remotely. A200. In addition, Sergeant Galloway's commanders noted that he is a member of a rapidly deployable infantry Brigade and, as such, is expected to be able to travel and deploy "at a moment's notice anywhere at any time." *Id.* For these specific reasons, his commanders recommended that his request for religious accommodation be denied, and the deciding authority followed that recommendation and explained why, *id.*, A205, as did the authority denying Sergeant Galloway's appeal, *id.*, A226.

The Army's decisions to deny the religious accommodation requests of Plaintiffs are amply supported by evidence showing COVID-19's harmful impact on military readiness overall. COVID-19 has "impacted all elements of DoD simultaneously," including exercises, deployments, redeployments, and other global force management activities, Stanley Decl. ¶ 4, A622, caused the cancellation of numerous significant preparedness and readiness events, suspended operations, and resulted in inoperability of aircraft carriers for months in strategically significant areas, *id.* ¶¶ 5–11. A622–24; and infected hundreds of thousands of service members, hospitalized thousands, and tragically caused the loss of 97 service members, *id.* ¶ 3. A621–22.

The Army's judgment is also supported by the positive effects that COVID-19 vaccination has had on force readiness and health. Vaccinations have reduced the risk of serious illness, hospitalizations, and deaths of service members. Stanley Decl. ¶¶ 16–18, A627–28; Rans Decl. ¶ 8, 11–12, A562, A568–71; *see also Church*, 573 F. Supp. 3d at 147 (requiring vaccination is "supported by a lengthy record replete with data demonstrating the necessity of a general vaccine mandate"); *Mark Short*, 2022 WL 1051852, at *7 (noting "the empirical evidence in the record of the vaccine's efficacy" and the military's "evidence-based approach in its reliance on vaccination"); *Oklahoma*, 577 F. Supp. 3d at 1265 (stressing that the vaccine "has been shown to be remarkably effective in mitigating the effects of the pandemic which has affected . . . thousands of service members"). The overwhelming percentage of the service members who have died from COVID-19 were unvaccinated. Stanley Decl. ¶ 3, A621–22; Rans Decl. ¶ 12, A571. Likewise, "[b]etween July and November of 2021, non-fully-vaccinated active-duty service members had a 14.6-fold increased risk of being hospitalized when compared to fully vaccinated active-duty service members." Stanley Decl. ¶ 18, A628. A recent study published by the CDC confirmed mRNA vaccine effectiveness against invasive mechanical ventilation or death during the Omicron-predominant period. *See* CDC, Morbidity and Mortality Weekly Report (Mar. 18, 2022), https://perma.cc/HJH3-PEN4. Vaccinations also reduced the number of service members required to quarantine, permitted the military to return to higher levels of occupancy in military facilities and to hold in-person training, and allowed service members to participate in joint training exercises with partner countries that have vaccination requirements. Stanley Decl. ¶ 14, A626. In short, "[g]iven the tangible protection the vaccines afford service members against serious illness, hospitalization, and death, it is clear that COVID-19 vaccines improve readiness and preserve the DoD's ability to accomplish its mission." *Id.* ¶ 22, A630–31.

Vaccination especially furthers the Army's mission to "deploy, fight and win our nation's wars by providing ready, prompt and sustained land dominance by Army forces across the full spectrum of conflict as part of the joint force." U.S. Army, *Who We Are*, https://perma.cc/VTU6-2U6R (accessed Nov. 1, 2022). Maintaining a fully vaccinated force is key to this mission in multiple ways. First, it is necessary to ensure that soldiers can meet the vaccination requirements for deployment set by individual combatant commands around the world, all of whom currently require soldiers deployed to their areas of responsibility be fully vaccinated against COVID-19 (subject to exceptions, which are uncertain). Mahoney Decl. ¶¶ 6, 8, A532–33. In addition, and critically, vaccination minimizes the risk that soldiers will become ill while deployed to austere environments (or while supporting deployed soldiers) in a way that renders them unable to perform their critical duties. *Id.* ¶ 6, A532. This is a consideration for every one of the solider Plaintiffs. Porges Decl. ¶ 2, A551 ("Every Soldier in the Battalion is needed to ensure it can fulfil its mission on short-notice deployment anywhere around the world."); Walkingstick Decl. ¶ 1, A632 ("The Company's mission is critical to ensuring that deploying Army units, and other Services, have well trained and capable Collection Analysts to provide commanders in training and combat with signals intelligence."). Each of those Plaintiffs plays a role in ensuring that the United States maintains a superior combat power and would be unable to fulfill his role were he to become seriously ill. Porges ¶¶ 5, 10, A552–53 (1LT Bakich and SSG Testa); Walkingstick ¶¶ 4, 9, A632–35 (SSG Costroff and SSG Schelske). As a specific example, Sergeant Galloway's duties include leading a squad of paratroopers to jump out of military aircraft during flight and to fight the enemy at or near a drop zone. Powers Decl. ¶ 4, A555–56. Remaining healthy is critical to his ability to fulfill this leadership role and, by extension, to the military readiness of his company. *Id.* Similarly, the five cadet Plaintiffs, immediately upon graduation, will be expected to serve in direct

leadership roles in Army units throughout the world, which cannot be accomplished remotely. Rutherford Decl. ¶ 3, A605. Moreover, they will be expected to remain deployable, which requires that they remain in good health and able to meet the vaccination requirements of combatant commands. Mahoney Decl. ¶ 6, 8, A532–33. Thus, contrary to Plaintiffs' assertion, Pls.' Br. at 13, the Army has a compelling interest in vaccinating each of the Plaintiffs individually; not merely a generalized interest in vaccinating some percentage of its forces.

Plaintiffs fail to undercut the Army's compelling interests in vaccination. They note the availability of "secular" exemptions and rely on the *Navy SEAL 1–26* court's conclusion that, in that case, the Navy was found to have granted "thousands" of secular exemptions, compared with relatively few religious exemptions. Pls.' Br. at 14. That is not what the record in this case shows. Here, the Army has granted 60 permanent religious exemptions which is comparable to than the 585 permanent medical exemptions, that it has granted. Mahoney Decl. ¶¶ 16, 25, A536–37, A541–42. And those religious exemptions were granted to service members at least one year away from their end of service. *Id.* ¶ 25, A541. Plaintiffs also state in their background section that the Army has granted what they indiscriminately describe in their complaint "close to 15,000 permanent and temporary secular exemption requests." Pls.' Br. at 6. Plaintiffs ignore, however, that this number primarily reflects soldiers who have a pending request for a religious accommodation. Mahoney Decl. ¶ 26, A542–43. Indeed, Plaintiffs benefitted from precisely this exemption (and two of them still do). Of the temporary exemptions in place as of November 4, 2022, about 13,000 reflect a pending religious accommodation request. *Id.* And just over 600 are temporary medical exemptions, reflecting either a temporary medical condition or a pending request for a permanent medical exemption. *Id.* But a temporary medical exemption is materially different from the permanent exemptions demanded by religious objectors. Temporary medical

exemptions are generally granted to those with a medical condition that will eventually resolve, permitting them to become vaccinated. Vaccinating a soldier in such circumstances could harm the member's health, thereby undermining from the military's interests in ensuring readiness and the health and safety of members. *See Navy SEAL 1*, 2022 WL 1294486, at *12 ("[T]he Navy grants medical exemptions only on a showing of a contraindication, i.e., upon a showing that vaccination would cause more medical harm than it would good. In those circumstances, therefore, lack of vaccination in fact serves the military's interest in maintaining the health of individual servicemembers and force readiness broadly."); *see also Mark Short*, 2022 WL 1051852, at *8; *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1178 (9th Cir. 2021), *cert. and application for injunction denied*, 142 S. Ct. 1099 (2022); *Does 1–6 v. Mills*, 16 F.4th 20, 31 (1st Cir. 2021), *cert. denied sub nom. Does 1-3 v. Mills,* 142 S. Ct. 1112 (2022). Likewise, when medical exemptions authorized for service members participating in COVID-19 vaccine clinical trials serve to further the efficacy of the vaccine and vaccine development, and so comport with the military's compelling interests in a manner that a religious accommodation would not.  And the administrative exemptions generally Awarded to soldiers who are within 180 days of separation or retirement are appropriate because requiring vaccination of individuals leaving the force would not further the military's interest in ensuring readiness.[11] In light of these distinctions, Plaintiffs are wrong that there is "no reason" for the Army to distinguish between permanent religious exemptions and other exemptions. Pls.' Br. at 14.

---

[11]     This effectuates the stated intent of Congress. *See* Joint Explanatory Statement to Accompany the [NDAA] for Fiscal Year 2022, Armed Services Committee Print No. 2 at 1053-54 (Dec. 7, 2021) https://www.congress.gov/117/cprt/HPRT47742/CPRT-117HPRT47742.pdf ("We also expect the Department to include . . . exemptions [from mandatory COVID-19 vaccination] for servicemembers nearing separation and retirement in the development of uniform procedures relating to administrative exemptions.").

Plaintiffs are also wrong that the Army has not granted any religious accommodations other than to soldiers at the end of their service. They again misleadingly alter quotations from *Navy SEALs* to pretend that court made such a finding with respect to the "Army." Pls.' Br. at 14. But that finding related to solely the Navy. The record in this case shows the opposite. Most of the religious accommodations granted by the Army are to soldiers who are over a year from the end of their service, Mahoney Decl. ¶ 25, A541–42, and Plaintiffs' uninformed assertion to the contrary is flatly incorrect. Plaintiffs are also wrong to rely on the findings from *Navy SEALs* to assert that the denials of Plaintiffs' requests for religious accommodation do not articulate "Plaintiff-specific reasons" for the decisions. Pls.' Br. at 14. The record here makes clear that the Army considered Plaintiffs' specific circumstances when considering their requests for religious accommodation. *See supra* at 21.

Plaintiffs' invocation of the CDC's recent updates to its guidance, *see* Pls.' Br. at 15–16, only confirms that vaccination remains essential to preventing serious illness, hospitalization, and death from COVID-19 infection. On August 11, 2022, the Centers for Disease Control and Prevention issued a Summary of Guidance for Minimizing the Impact of COVID-19 on Individual Persons, Communities, and Health Care Systems. *See* CDC, *Summary of Guidance for Minimizing the Impact of COVID-19 on Individual Persons, Communities, and Health Care Systems—United States* (Aug. 2022), https://perma.cc/Y7XV-4R3Q (hereinafter "CDC, Summary of Guidance"); *see also* CDC, *Benefits of Getting a COVID-19 Vaccine* (updated Aug. 17, 2022), https://perma.cc/W66Y-3GU7. As the CDC explains, even though vaccines "provide a lesser degree of protection against asymptomatic and mild infection," they "are highly protective against severe illness and death," which is precisely what the Army has a compelling interest in avoiding. CDC, Summary of Guidance. The CDC's guidance squarely supports the Army's compelling

interest.

Plaintiffs also argue that they have successfully performed their duties while their requests for religious accommodation were pending and they remained unvaccinated. Pls.' Br. at 14. But as a general proposition, there can be no question that the COVID-19 pandemic has severely disrupted the military and caused thousands of hospitalizations and dozens of deaths among unvaccinated personnel. Stanley Decl. ¶¶ 3, 4–13, A621–26. The fact that Plaintiffs may have been fortunate thus far is no guarantee that there is no risk that they will become seriously ill from COVID-19 in the future. And "merely because the military has found ways to perform its duties despite the risks of COVID-19 does not mean it must endure these risks indefinitely when there are effective means of mitigating them." *Mark Short*, 2022 WL 1051852, at *9. To the contrary, the military is nevertheless "entitled to use the most effective means available to end its crisis footing and return to a semblance of normalcy." *Id.* Plaintiffs cannot turn a permissive policy of allowing them to serve while their religious accommodation requests are pending into a sword requiring a permanent exemption.

<u>Least Restrictive Means</u>.  As other courts have found in non-military settings, a uniform practice of vaccination is the least restrictive means for accomplishing the government's interest in preventing the spread of infectious diseases in the workforce.[12] This reasoning has even greater force in the military setting, where health of service members is paramount to military readiness, and where the acceptable level of risk to the mission must be a military, not judicial, judgment.

---

[12]     *See, e.g.*, *Does 1–6*, 16 F.4th 20 (health-care workers); *Doe*, 19 F.4th 1173 (students); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021) (health-care workers), , *opinion clarified*, 17 F.4th 368 (2d Cir. 2021), *and denying injunction pending appeal sub. nom.*, *Dr. A. v. Hochul*, 142 S. Ct. 552 (2021); *see also Burwell*, 573 U.S. at 733 (recognizing that vaccines "may be supported by" the government's compelling interest in "the need to combat the spread of infectious diseases")

*See Navy SEALs 1–26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring) (cautioning that a court may not "insert[] itself into the [military's] chain of command, overriding military commanders' professional military judgments"); *Mark Short*, 2022 WL 1051852, at *7 (emphasizing deference to military judgments and adding that "[t]his deference is layered on top of the deference that courts must give to expert policymakers on matters involving complex medical or scientific uncertainties"); *Dunn* Op. at 37–42, A516–21 (finding vaccination of an Air Force officer to be the least restrictive means, including because of the necessary deference afforded to military assessments).

After careful consideration of Plaintiffs' requests for a religious accommodation and their respective appeals, the final decision authority concluded that no lesser restrictive means sufficiently serve the Army's compelling interests in readiness and ensuring the health and safety of all service members equally well. Notably, the Army is not required to use an alternative that does not serve its compelling interests "equally well" relative to vaccination. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 731 (2014) (examining whether alternative served stated interest "equally well"); *Kaemmerling v. Lappin*, 553 F.3d 669, 684–85 (D.C. Cir. 2008) (rejecting RFRA and constitutional challenges against DNA Act, where "[a]ny alternative method of identification would be *less effective*" in accomplishing the government's compelling interests (emphasis added)).

Among other things, the Army considered the feasibility of remote work options, but concluded that these were not available. *See, e.g.,* A023, A200, A381. The Army evaluated the feasibility and effectiveness of masking and distancing but concluded that those measures are not as effective as vaccination. *See, e.g.,* A072, A109, A134. And indeed, unlike vaccination, masking and distancing do not provide any protection from severe illness or death once a person becomes

infected. *See Roth*, 2022 WL 1568830, at *23. Also, unlike vaccination, the effectiveness of masking and distancing fluctuates based on human behavior and how compliant each individual is with the requirements. *See* Rans Decl. ¶ 10, A567–68; *see also United States v. Elder*, ---F. Supp. 3d---, 2022 WL 836923, at *9 (E.D.N.Y. Mar. 21, 2022) ("By themselves, face masks, social distancing, and similar measures may be effective for small groups over short periods of time, but fail to ensure the safety of large groups in close contact for sustained periods.")

Similarly, serial testing and temperature checks do not prevent a service member who tests positive from suffering serious health outcomes, such as long COVID, hospitalization, and death. Moreover, the "virus can be easily transmitted to others prior to symptom development and therefore may infect significant numbers before being identified." Rans Decl. ¶ 10, A567–68. Indeed, the military experienced multiple COVID-19 outbreaks when it merely required service members to undergo routine testing requirements, rather than requiring vaccination. Stanley Decl. ¶¶ 7–8, A622–24; *see also Does 1-6*, 16 F.4th at 33 (noting same was true of Maine).

Plaintiffs' alleged "natural immunity," Pls.' Br. at 17, is also not a less restrictive means. While a prior infection can provide some protection against another infection for some amount of time, the available medical evidence leaves much unknown about the strength, consistency and duration of that protection. Rans Decl. ¶¶ 20–22, 24, 29, A578–86; *Dunn* Op. at 39–40 ("[I]t's not well established that a natural immunity is effective, more effective or as effective as the vaccine."), A518–19. Recent guidance from the CDC confirms this. CDC, *Benefits of Getting a COVID-19 Vaccine – Protection from COVID-19* (Aug. 17, 2022), https://perma.cc/W66Y-3GU7 ("While people can get some protection from having COVID-19, the level and length of that protection varies, especially as COVID-19 variants continue to emerge."). Moreover, evidence shows that protection from a prior infection increases following vaccination. Rans Decl. ¶ 21,

A580; CDC, *Benefits of Getting a COVID-19 Vaccine* (Aug. 17, 2022), https://perma.cc/W66Y-3GU7 ("[P]eople can get added protection by getting vaccinated after having been infected with . . . COVID-19."). The Army has therefore determined, consistent with guidance from the CDC, that vaccination is the best way to minimize the risk posed by COVID-19 to military readiness. Mahoney Decl. ¶ 14 & n.3, A536; *see also* DoDI 6205.02 ¶ 1.2, https://perma.cc/8HLA-AXQB (mandating vaccination in accordance with the CDC's recommendations); CDC, *Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or Authorized in the United States* (last updated Oct. 19, 2022), https://perma.cc/MX32-F8XV (recommending COVID-19 vaccination for individuals five and over "regardless of a history of symptomatic or asymptomatic [COVID-19] infection," and "serologic testing to assess for prior infection is not recommended for the purpose of vaccine decision-making").[13]

Nor do Plaintiffs present a less restrictive means by asserting that the Army may place them in an occupational specialty that could be performed entirely remotely and does not require them to remain medically ready to deploy. Pls.' Br. at 17–18. Plaintiffs do not identify any specific assignment that any particular Plaintiff would be willing and qualified to perform and would not have the potential for world-wide deployment, leaving this contention to vague and amorphous to permit a response. And it cannot be a least restrictive alternative to place the burden on the military to seek a new occupation and assignment for potentially thousands of servicemembers—already trained for their occupation and assigned to a deployable unit—who have sought a religious

---

[13] *Cf. Biden v. Missouri*, 142 S. Ct. 647, 653–54 (2022) (concluding that it was rational for an agency to rely on CDC guidance in requiring vaccination even for individuals with "natural immunity" from prior COVID-19 illness); *Norris v. Stanley*, No. 1:21-cv-756, 2022 WL 557306, at *4 (W.D. Mich. Feb. 22, 2022) (similar), *appeal filed*, No. 22-1200 (6th Cir. Mar. 14, 2022); *Valdez v. Grisham*, 559 F. Supp. 3d 1161, 1177 (D.N.M. 2021)(similar), *aff'd*, 2022 WL 2129071 (10th Cir. June 14, 2022).

exemptions. Indeed, making a service member nondeployable would itself undermine the military's compelling interest in military readiness. *See* Mahoney Decl. ¶ 8, A533.[14]

### D.    Plaintiffs' First Amendment claims are unlikely to succeed on the merits.

Plaintiffs also press First Amendment claims, contending that the Army is "favoring secular exemptions while relegating religious exemptions to a second-class status." Pls.' Br. at 18. As a threshold matter, there should be no need for the Court to address the First Amendment claim separately. If the Army prevails on the RFRA claim, then it necessarily prevails on the First Amendment claim. Conversely, if Plaintiffs prevail under RFRA, the Court could grant relief without considering Plaintiffs' First Amendment claim and thus avoid unnecessarily confronting a constitutional question.

In any event, Plaintiffs First Amendment claim should fail. The Supreme Court has explicitly held that "the First Amendment does not require the military to accommodate [religious] practices in the face of its view that they would detract from the [military mission]." *Goldman*, 475 U.S. at 509-10. Indeed, "review of military regulations challenged on First Amendment grounds is far more deferential than constitutional review of similar laws or regulations designed for civilian society." *Id.* at 507; *id.* at 510 (rejecting a service member's Free Exercise Clause claim because the Air Force "reasonably and evenhandedly regulate[s] dress in the interest of the military's perceived need for uniformity"); *cf. Trump v. Hawaii*, 138 S. Ct. 2392, 2420 n.5 (2018) (noting, in rejecting, Establishment Clause claim, that the respondents there "cite no authority for

---

[14]    Plaintiffs also contend that the Army could simply do nothing about individuals who refuse to be vaccinated on religious grounds, either because there is a high rate of overall vaccination or because vaccination does not guarantee immunity. Pls.' Br. at 8–9. This suggestion is not a "less restrictive means" in any sense because it does not address the Army's stated concern with preventing the severe symptoms, hospitalizations, and deaths that negatively impact military readiness.

[their] proposition that the more free-ranging inquiry [they] propose[] is appropriate in the national security . . . context"). This precedent "[a]t a minimum" suggests that "when a member of the military challenges a regulation or policy of the military on Free Exercise grounds, courts should normally apply a level of scrutiny below that of strict scrutiny and evidently comparable to rational basis review." *Navy SEAL 1*, 2022 WL 1294486, at *13; *see also Creaghan*, 2022 WL 1500544, at *7.

Plaintiff's claim founders under *Goldman*'s highly deferential standard. "[T]he overwhelming weight of scientific authority supports the proposition that COVID-19 vaccination reduces the severity and duration of disease," and in light of those benefits, requiring vaccination clearly advances the Army's interest in force readiness and the health and wellbeing of service members.  *Navy SEAL 1*, 2022 WL 1294486, at *10.  And, as shown above, Plaintiffs are simply wrong that secular exemptions receive more favorable treatment than religious exemptions. The Army has granted a comparable number of religious exemptions and permanent medical exemptions, and not all of those religious exemptions have been granted to soldiers at the end of their service. *See supra* at 24–26. And while various temporary medical and administrative exemptions advance distinct interests—including by avoiding medical harm to individuals—the religious accommodations that Plaintiffs seek are different in kind. Thus, the Army's distinction between exemptions that promote force readiness and the health and wellbeing of service members and accommodations that would undermine those same interests is entirely rational and provides no occasion for the application of strict scrutiny.

Even assuming the military context was not relevant, strict scrutiny would still be inapplicable under a constitutional analysis because the vaccine requirement is neutral and generally applicable. *See Kaemmerling*, 553 F.3d at 677. It applies to *all* service members; its

32

"terms . . . do not make any reference to religion," *Dunn* Op. at 44, A523; and it was expressly implemented in order to ensure "a healthy and ready force"—not to suppress religious belief, Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758; *see also Dunn* Op. at 43–44, A522–23 (finding Air Force's vaccine requirement generally applicable and subject to rational basis review); *Trump*, 138 S. Ct. at 2420 ("On the few occasions where" the Supreme Court has struck down a law under rational basis scrutiny, "a common thread has been that the laws at issue lack any purpose other than a 'bare . . . desire to harm a politically unpopular group.'") (citation omitted); *We The Patriots*, 17 F.4th at 281 (concluding that New York's vaccine requirement for healthcare workers was facially neutral "because it does not single out employees who decline vaccination on religious grounds" and it "applies to all 'personnel'"); *Doe*, 19 F.4th at 1177 (similar, regarding school district's student vaccination requirement). Plaintiffs cannot show that the Army's vaccine requirement "lack[s] any purpose other than a bare desire to harm" any set of religious beliefs so as to trigger a higher level of scrutiny. *Trump*, 138 S. Ct. at 2420 (cleaned up).

Also, contrary to Plaintiffs' assertion, the Army's allowance of exemptions does not trigger strict scrutiny. *See* P l s.' Br. at 18–19. Plaintiffs cite *Tandon v. Newsom*, 141 S. Ct. 1294 and *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), but those cases are unavailing. First, both of these cases arose in the civilian context and do not implicate the principles of *Goldman*, as explained *supra*. Second, Plaintiffs misunderstand the underlying principle of these cases. The opinion in *Fulton*, which expands on the analysis of *Tandon*, is premised on the notion that "[a] law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Fulton*, 141 S. Ct. at 1877 (quoting *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 884 (1990)). But "an exemption is not individualized simply because it contain[s] express exceptions for

33

objectively defined categories of persons." *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1187 (10th Cir. 2021) (citation omitted), cert. granted in part, 142 S. Ct. 1106 (2022*); see also Kane v. De Blasio*, 19 F.4th 152, 165 (2d Cir. 2021) (citing *We The Patriots*, 17 F.4th at 288)); *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 276 (3d Cir. 2007) (same). It is "not the mere existence of an exemption procedure" that triggers strict scrutiny, but rather the existence of a generalized, discretionary exemption procedure that allows the government to determine that the mere "religious motivation of [a requestor's] conduct[] justified the unavailability of an exemption." *Lighthouse Inst. for Evangelism, Inc.*, 510 F.3d at 276. Put another way, in order to trigger strict scrutiny, "there must be some showing that the exemption procedures allow secularly motivated conduct to be favored over religiously motivated conduct." *Kane*, 19 F.4th at 165.

Thus, the single "'good cause' standard" in *Fulton* triggered strict scrutiny because it"'invit[ed]' the government to decide which reasons for not complying with the policy are worthy of solicitude." 141 S. Ct. at 1877, 1879 (citation omitted). In contrast, here, Plaintiffs make no showing that the religious accommodation procedures allow secularly motivated conduct to be favored over religiously motivated conduct. Contrary to Plaintiffs' assertion that the mandate prohibits only religious conduct and treats secular conduct more favorably, Pls.' Br. at 18-19, the mandate in fact applies with equal force to all service members. The exceptions for medical exemptions and administrative exemptions are not comparable to religious accommodations and do not treat soldiers more favorably, as discussed. *See supra* at 24–26. Medical exemptions are designed to ensure service members remain fit for duty; indeed, vaccinating a service member "who is known or expected to be injured by the vaccine would harm her health." *see We The Patriots*, 17 F.4th at 285. Maintaining the health of the force is the very interest served by the

Defendants' vaccination program. A religious exemption does not even purport to serve that interest. *See Does 1–6*, 16 F.4th at 31 ("[P]roviding healthcare workers with medically contraindicated vaccines would threaten the health of those workers and thus compromise both their own health and their ability to provide care."). And medical exemptions are also not comparable to religious exemptions requests because the latter significantly eclipse the former, and would in contrast result in permanent exemptions to serve without regard to vaccination statute, thus causing far greater risk and harm to the military's interests. *See Mark Short*, 2022 WL 1051852, at *8 ("[E]vidence of a small number of medical exemptions relative to a much larger amount of religious exemption requests 'suggests that the medical exemption is not as harmful to the legitimate government interests purportedly justifying the Rule as a religious exemption would be.'") (quoting *We The Patriots*, 17 F.4th at 286); *We The Patriots*, 17 F.4th at 286; *Doe*, 19 F.4th at 1178.

## II.  PLAINTIFFS ARE UNLIKELY TO SUFFER IRREPARABLE HARM ABSENT PRELIMINARY RELIEF.

Plaintiffs give short shrift to the other preliminary injunction elements. However, the Fifth Circuit "has repeatedly cautioned that 'a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements.'" *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (citations omitted).

Although Plaintiffs make passing reference to disciplinary actions they may face for failing to follow vaccination orders, Pls.' Br. at 5, they neither rely on these allegations in their argument nor can such adverse employment actions, which are inherently reparable, satisfy this prong of the analysis. *See, e.g., U.S. Navy SEALs*, 578 F. Supp. 3d at 839 (explaining that adverse employment actions are not irreparable because "[n]o matter how remote the possibility, Plaintiffs could be

compensated for their losses."). Instead, Plaintiffs contend that alleged infringement of their constitutional and statutory religious liberties is sufficient to satisfy this prong of the preliminary injunction analysis. Pls.' Br. at 19-20.

First, as shown, Plaintiffs have not demonstrated that Defendants' challenged actions implicate their constitutional or statutory rights, let alone imminently threaten them, *Elrod v. Burns*, 427 U.S. 347, 374 (1976); *see also, e.g., Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (explaining that, to show irreparable harm based on loss of constitutional rights, a movant must show likely success on the merits), *cert. denied*, 140 S. Ct. 1198 (2020); *Mark Short*, 2022 WL 1051852, at \*9; *Bellinger v. Bowser*, 288 F. Supp. 3d 71, 88–89 (D.D.C 2017); *Thomas Short*, 2022 WL 1203876, at \*7–8. A preliminary injunction is inappropriate "unless the party seeking it can demonstrate that '[constitutional] interests are either threatened or in fact being impaired at the time relief is sought.'" *Google, Inc. v. Hood*, 822 F.3d 212, 227–28 (5th Cir. 2016) (citation omitted).

Second, even if Plaintiffs could show likely success on the merits of their claims, the irreparable-harm requirement is not excised any time a plaintiff asserts a colorable constitutional claim. The mere "invocation of the [Constitution] cannot substitute for" a plaintiff's obligation to show "the presence of an imminent, non-speculative irreparable injury" that will occur absent preliminary relief. *Id.* at 228. Beyond the mere circular invocation of their merits arguments, Plaintiffs fail to show any actual irreparable injury would result if preliminary relief is denied.

Finally, even if Plaintiffs could show that they were harmed, as they allege, by the "crisis of conscience" created by their choice between following their vaccine orders and following their religious convictions, this harm cannot justify the extraordinary relief of a preliminary injunction. Preliminary injunctive relief is inherently temporary and forward-looking. *See, e.g., City of Austin*

36

*v. Kinder Morgan Tex. Pipeline*, *LLC*, 447 F. Supp. 3d 558, 569 (W.D. Tex. 2020) ("Injunctions are forward-looking remedies that may issue 'only if *future* injury is certainly impending.'" (citation omitted)). Accepting Plaintiffs' allegations as true, they had a choice between exercising their religious convictions and facing inherently reparable employment consequences. All ten Plaintiffs chose to refuse vaccination and there is no threat of involuntary vaccination. There is thus no imminent or irreparable harm to Plaintiffs' rights under the First Amendment and RFRA, nor is there any reason to expect such harm during the pendency of this case. Plaintiffs are all currently exercising their religious convictions, and any alleged material harms they might face could be made whole at the end of the litigation. *See, e.g., Together Empls. v. Mass. Gen. Brigham Inc.*, 19 F.4th 1, 8 (1st Cir. 2021) ("Moreover, as the deadline for being vaccinated has passed, the appellants cannot point to an 'impossible choice' as a special factor [in support of injunction] here; they have already made their choices."); *cf. Halczenko v. Ascension Health, Inc.*, 37 F.4th 1321, 1326 (7th Cir. 2022) (finding injunctive relief unwarranted for an employee who had already been fired for refusing vaccination).

## III.  THE EQUITIES AND PUBLIC INTEREST WEIGH AGAINST A PRELIMINARY INJUNCTION.

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest— "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The burden nevertheless remains on Plaintiffs as the moving party to prove these elements.

Plaintiffs do not even attempt to engage with the Government's side of this analysis, waving away Defendants' harms as "any theoretical harm the injunction could cause to the Government" and quoting without any analysis generic statements that the overall dangers of the pandemic, which have fluctuated wildly for more than two years, are lessening. Pls.' Br. 20-21.

Plaintiffs also appear to be asserting without any support that providing medical, administrative, and religious exemptions, as well as generally maintaining operations during the COVID pandemic, does not create or contribute to any logistical or other harms for the Army. *See id.* Plaintiffs' arguments in support of their own side of this analysis are limited to baldly asserting that their alleged loss of religious liberty is a greater harm and that any attempt to vindicate constitutional rights inherently turns the public interest in their favor. As explained *supra* at 35–37, Plaintiffs are not in fact facing any irreparable harms during the pendency of this case, and therefore they have nothing to balance against the harm a preliminary injunction would impose on Defendants or the public's interest in proper administration of the Army.

Conversely, a preliminary injunction will impose significant harm on Defendants and will disserve the public interest. The public has an exceptionally strong interest in national defense, *see Winter*, 555 U.S. at 24–26, and the military has a compelling interest in requiring its forces to be vaccinated, healthy, and ready to accomplish any and every military mission, *see North Dakota v. United States*, 495 U.S. 423, 443 (1990); *Navy SEALs 1–26*, 142 S. Ct. at 1302 (Kavanaugh, J., concurring). An injunction allowing Plaintiffs to continue serving without being vaccinated against COVID-19 would threaten harm not only to Plaintiffs but would also compromise their units' collective abilities to execute their military and intelligence duties, maintain their necessary readiness, and accomplish their missions. The allegedly "less restrictive means" proposed by Plaintiffs to accommodate their refusal to be vaccinated, Pls.' Br. 8–9, are either ineffective in protecting individual and unit health or highly disruptive to readiness. *See supra* at 28–31. The Army's judgment that it cannot accept avoidable risk to the health and readiness of its fighting forces serves the public interest, outweighs any interests Plaintiffs may have in premature preliminary relief, and deserves this Court's deference. *See, e.g., Navy SEAL 1*, 2022 WL 1294486,

at *16–17; *Church*, 573 F. Supp. 3d at 146–48.

Moreover, the national defense depends on service members' compliance with lawful orders. *Chappell v. Wallace*, 462 U.S. 296, 300 (1983). No military can successfully function where members feel free to define the terms of their own service and which orders they will choose to follow. Plaintiffs' requested injunction would interfere with the military's discretion to handle matters of order and discipline, to the detriment of effectiveness and trust between commander and subordinate. *Orloff v. Willoughby*, 345 U.S. 83, 94-5 (1953).

## IV.    ANY INJUNCTION MUST BE TAILORED TO PLAINTIFFS.

If the Court were to conclude that preliminary injunctive relief were warranted (which it should not, for the reasons explained above), at the very least it must reject Plaintiffs' demand to preliminarily enjoin Defendants from taking various actions against Plaintiffs and "those similarly situated" for failure to take a COVID-19 vaccination. ECF No. 29 at 1. The law is clear that any injunctive relief should be no broader than necessary to provide relief to the plaintiffs before the Court. *See Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury."); *see also Trump*, 138 S. Ct. at 2425 (Thomas, J., concurring) (explaining the harm of nationwide injunctions). This is particularly true in the context of RFRA claims, which by their nature require an individualized analysis "to the person" claiming a religious burden. 42 U.S.C. § 2000bb-1(b). Indeed, the Fifth Circuit and the Supreme Court have emphasized that RFRA claims "contemplate an inquiry more focused than [a] categorical approach." *Gonzales v. O Centro Espírita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006); *Tagore v. United States*, 735 F.3d 324, 331 (5th Cir. 2013) ("A 'categorical approach' is insufficient."). A court must "scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants," looking to "the marginal interest" in enforcing a policy against a particular person. *Burwell,* 573 U.S. at 726-27 (2014) (quotations omitted). Plaintiffs' request for

a broad injunction restraining the Army's actions as to all those deemed "similarly situated" (with no specific definition of that term) is therefore overly broad. ECF No. 29, at 4.

While it is true that Plaintiffs' complaint alleges a putative class, Plaintiffs have neither moved to certify a class nor provided any evidence or argument in support of class certification or class relief, including in their memorandum in support of their motion for preliminary injunction. *See generally*, Fed R. Civ. P. 23; Pls.' Br. "The party seeking certification bears the burden of establishing that *all* requirements of Rule 23 have been satisfied," and the district court is "require[d] . . . to conduct a rigorous analysis of Rule 23 prerequisites." *Unger v. Amedisys Inc*., 401 F.3d 316, 320 (5th Cir. 2005). Because Plaintiffs have established no basis whatsoever for class relief, any relief considered or granted must be limited to the individual named plaintiffs.

## CONCLUSION

The motion for a preliminary injunction should be denied.

Dated: November 8, 2022                          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

ANTHONY J. COPPOLINO
Deputy Branch Director

 /s/ Johnny Walker
KERI BERMAN
JOHNNY H. WALKER (D.C. Bar #991325)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 12304
Washington, D.C. 20530
Tel.: (202) 514-3183 / Fax: (202) 616-8460
Email: johnny.h.walker@usdoj.gov

*Counsel for Defendants*