UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **ROBERT SCHELSKE,** et al., <br><br> Plaintiffs, <br><br> v. <br><br> **LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense, et al, <br><br> Defendants. | Case No. 6:22-cv-00049-H |

**JOINT STATUS REPORT**

### I. Plaintiffs' Position

Plaintiffs, through Counsel, submit this status report. [DE#86]. Before laying out Plaintiffs' position, there are significant unanswered questions about the recent memorandum from the Secretary of Defense. We communicated with Defendants in an attempt to obtain answers to a number of those questions, but were unsuccessful other than Defendants confirmed their position that the named Plaintiffs will suffer no ongoing harm and the case is moot – a position that we fundamentally disagree with because it is both factually and legally incorrect. (See Exhibits A & B).

Bringing same into focus, the following chart lists the harms that have occurred to the putative class, whether Secretary of Defense's Memorandum corrects each harm, the parties' respective positions regarding same, and the Plaintiffs' proposed remedy:

1

| HARM | CORREC-TED BY SECDEF'S ORDER | WHEN? | GOVERNMENT'S POSITION | PLAINTIFF'S RESPONSE | PLAINTIFFS' REQUESTED FINAL REMEDY |
|---|---|---|---|---|---|
| GOMOR (General Officer Memo. of Reprimand) | Yes | Unknown | It will eventually be corrected | Not yet corrected | Remove from all Official Military Personnel Files ("OMPF") |
| Non-Judicial Punishment (Article 15) | Uncertain | Unknown | Was not required by Army policy (so no) | Imposable at other command levels. | Remove from OMPF |
| Adverse Enlisted Evaluation Reports | Uncertain | Unknown | Was not required by Army policy (so no) | Imposable at other command levels. | Remove from OMPF |
| Adverse Officer Evaluation Reports | Uncertain | Unknown | Was not required by Army policy (so no) | Imposable at other command levels. | Remove from OMPF |
| Counseling Statements for Failure to Obey Lawful Order (Art. 90 and 92) | Uncertain | Unknown | They claim it does not matter (so no) | Imposable at other command levels. | Remove from OMPF |
| Suspension of Favorable Personnel Actions ("Flags") | Uncertain | Unknown | Did not address this | Flags removed from soldier's file | Remove from OMPF and any DOD systems or personnel docs |
| Rank Reduction | No | N/A | Not addressed | Anyone who lost rank needs to have it restored | Restore rank with back pay |
| Promotions prevented or not selected b/c of adverse actions | No | N/A | Did not address this | Order special promotion board | Order special promotion board |
| Promotions awarded that were Rescinded | No | N/A | Did not address this | Restore promotion with back pay | Restore promotion with back pay |
| Unable to attend schools needed for promotion/career advancement | No | N/A | Did not address this | Provide lost educational opportunity | Provide lost educational opportunities |
| Loss of Pay and Points for Reservists and Guard Soldiers | No | N/A | Indicated no named Ps in this category | The Gov't's position is foreclosed by precedent | Restore pay and points for all drill and annual training lost |
| Removal from active reserve status | No | N/A | Indicated no named Ps in this category | The Gov't's position is foreclosed by precedent | Restore Reservists/Guard Soldiers to drilling status so can drill and be paid |
| Negative/Adverse Separation Codes on DD214 in Block 26 | No | N/A | Indicated no named Ps in this category | The Gov't's position is foreclosed by precedent | Remove all adverse separation codes in Block 26 on DD214 and replace with a favorable code |
| Negative/Adverse Reasons for Separation in Block 28 of DD214 | No | N/A | Indicated no named Ps in this category | The Gov't's position is foreclosed by precedent | Remove all adverse reasons for separation on Soldier's DD214 |
| Ineligible to Reenter the Service Code in Block 27 on DD214 | No | N/A | Indicated no named Ps in this category | The Gov't's position is foreclosed by precedent | Update code in Block 27 on DD214 to allow service reentry |
| Involuntary Separation | No | N/A | Indicated no named Ps in this category | The Gov't's position is foreclosed by precedent | Contact each separated Soldier and provide opportunity to return |
| Below Honorable Discharges (i.e. General discharges) and resulting loss of certain veterans benefits | No | N/A | Indicated no named Ps in this category | The Gov't's position is foreclosed by precedent | Upgrade discharge characterization to "Honorable" from "General" in Block 24 |
| Failure to grant religious accom. to C-19 V requirement | No | N/A | Did not address this | Still discriminating against religious believers | Class will be provided a process that is not discriminatory |
| Remedy additional lingering effects of discrimination | No | N/A | Did not address this | Need root and branch relief | All Army personnel involved in the religious exemption process to receive religious sensitivity training |

The foregoing chart makes clear that the Secretary of Defense's Memorandum will, at best, result in only a portion of the relief sought in this case may *eventually* become moot. For instance,

2

the Secretary of Defense directed the lifting of the vaccination mandate, and directed the military departments to update the records of individuals to remove "adverse actions." [Memo., DE#85-1]. In asking the question of what constitutes an adverse action, Plaintiffs did not get an answer.

That said, until all adverse actions are *actually removed*, which only constitutes a portion of the relief request in this action (see chart above), nothing is rendered moot. We have confirmed that, as of the date of this filing, no adverse actions have actually been removed. Critically, it is Defendants' burden to demonstrate that "subsequent events [must] make it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Trinity Lutheran Church of Columbia, Inc., v. Comer*, 137 S.Ct. 2012, 2019 n.1, 198 L. Ed. 2d 551 (2017) (cleaned up) (emphasis added). That has plainly not occurred including because we do not even know the timeline upon which the undefined remedial actions the Army will purportedly take will occur and the Army has yet to inform Plaintiffs of what actions it is going to take and when.

Consider SSG Costroff and SSG Schelske, from whom the Court heard testimony. Since the Secretary of Defense's Memorandum rescinding the COVID-19 vaccine mandate, both have been denied the ability to attend the Senior Leadership Course ("SLC") solely due to their unvaccinated status. This school is required for their promotion to Sergeant First Class. Consequently, and despite lifting the mandate, Defendants continue to unlawfully discriminate against SSG Costroff and SSG Schelske. Considering the Army's "up or out" system, both will likely be discharged due to their inability to progress in their career fields and solely because of ongoing "adverse actions" taken against them due to their unvaccinated status.

Also consider the thousands of Army reservists who have been denied pay and points since July 2022: in other words, shelved (and denied retirement credit) for the last six months. Will the Army remove these adverse actions and make them whole? Defendants have not indicated that

this will be the case. In fact, their position is that it is effectively none of our business because there are currently no named Plaintiffs who are reservists. This is akin to the argument rejected by the Sixth Circuit in *Doster v. Kendall*, ---F.4th ---, 2022 U.S. App. LEXIS 32847 at \*86-\*87 (6th Cir. Nov. 29, 2022), and *Doster v. Kendall*, 48 F.4th 608, 614-615 (6th Cir. 2022), where Defendants in that case made the same flawed argument that relief could not extend beyond the named Plaintiffs, and where the Sixth Circuit twice told the Government that the theory in question was foreclosed by *Gratz v. Bollinger*, 539 U.S. 244, 263-67, 123 S. Ct. 2411, 156 L. Ed. 2d 257 (2003).

How about Army members who were discharged with discharges that were not full Honorable Discharges (or had DD-214's – the military's discharge paperwork – that prevented re-enlistment or re-commissioning)? Not to mention the difficulty that this will surely cause them in seeking civilian employment. Will the Army remove these adverse actions and make them whole? Defendants have not indicated that these members will be made whole, again erroneously resting on their "well, you don't have any named Plaintiffs in that category" theory that is foreclosed by *Gratz*, 539 U.S. 244, 263-67 (2003).

What about the mandate itself? The Secretary of Defense lifted it because Congress told him to. Could he reimpose a similar mandate or continue to discriminate against Plaintiffs through other directives or policy solely due to their lack of being vaccinated with the COVID-19 vaccine? The NDAA certainly permits him to do so as does Defendants' own mandate rescission memo. "A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). "If it did, the courts would be compelled to leave 'the defendant . . . free to return to his old ways.'" *Id., citing City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

4

As the United States Supreme Court has observed:

> We have recognized, however, that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.
>
> Given this concern, our cases have explained that a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.

*Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

In *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017), the Supreme Court held that a governor's change in policy does not moot a case. Rather, the court held that **the defendant** must show that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. 167 at 190.

Therefore, the temporary lifting of the mandate does not come close to meeting **Defendants' formidable burden**. Defendants have "neither asserted nor demonstrated that [he] will never resume the complained of conduct." *Norman-Bloodsaw v. Lawrence Berkely Lab.*, 135 F.3d 1260, 1274 (9th Cir 1998); *Cf. United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 n.* (2018) (holding "the rescission of the policy does not render this case moot").

"This standard is strict because courts are naturally suspicious—or at least they should be—of officials who try to avoid judicial review by voluntarily mooting a case." *Tucker v. Gaddis*, 40 F.4th 289, 295 (5th Cir. 2022) (Ho, J. concurring). "The skepticism is warranted because the opportunities and incentives for government defendants are obvious: Any 'defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where

5

he left off, repeating this cycle until he achieves all his unlawful ends." *Id., citing Already*, 568 U.S. at 91.

"If a government not only ceases the challenged behavior, but also assures the plaintiffs and the courts that it will never return to its previous course of conduct, a court might reasonably decide to credit that promise, and hold the case moot, so long as it finds no reason to doubt the government's credibility on this score." *Id.*

The Supreme Court has noted that in addition to a court retaining the ability to hear a case after voluntarily cessation (considerations of mootness), "the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). "The necessary determination is that there exists some cognizable danger of recurrent violation…." *Id.*

We observe, also, that a class certification motion has been filed and is fully briefed. That, in turn, raises other issues in this matter, with respect to follow on relief – namely that the action must generally be moot as to the class as a whole, to be moot. *Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976); *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75-76, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013).

In fact, Fifth Circuit precedent supports that position. *Castillo v. Cameron County*, 238 F.3d 339, 343, n.1 (5th Cir. 2001), citing *Davis v. Ball Mem'l Hosp. Ass'n., Inc.*, 753 F.2d 1410, 1416 (7th Cir. 1985) ("When the claims of **all the class members** are moot, the action is moot."). See generally CHARLES ALAN WRIGHT ET AL., 13A FEDERAL PRACTICE AND PROCEDURE § 3533.9, at 401 (2d ed. 1984) ("If the claim of the **entire class** is moot, the case is finished.").

One of the greatest challenges, at present, is that Defendants are not and have not been transparent with what they intend to do, and on what timeframe. We find this concerning at best and suspicious at worst, particularly in light of their refusal to answer basic questions. Plaintiffs do not want to ask the Court to invest time and resources on issues that are going to go away in a short timeframe (again, we do not know the timeframe, and we do not know what is going to go away). But in the same vein, there is real ongoing harm to the named Plaintiffs and to the putative class that warrants relief.

### *Plaintiffs' Response to the Court's Order of January 11, 2023*

Plaintiffs' position is that the class should be certified, as prayed for. No claims (whether those of the named Plaintiffs or putative class members) are moot at present – the adverse paperwork remains of record and, at some point in the future, it will be removed which then would be the appropriate juncture to address potential mootness. At a minimum, the class should be certified, even if this Court adopts a wait-and-see approach to preliminary injunctive relief. Plaintiffs take this position in light of what they believe are a number of ongoing issues. (See Exhibit A.) We note, again, that class definitions are frequently changed, oftentimes based on occurrences in the case, and this court is granted extensive discretion to make those changes, which can be best informed by Defendants being transparent about what they will correct, and what they will not correct. FRCP 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment").

In terms of whether the class-wide preliminary injunction should also issue, it should. There is ongoing harm. We do acknowledge that it is at least conceivable that some of that harm may be voluntarily addressed by Defendants in the next 30-60 days (see chart above) and any relief granted to the class can be appropriately modified or addressed at that time.

7

In any event, we anticipate, at this juncture, additional litigation. There is no indication that Defendants are going to remove adverse actions in the next 30 days – in fact there is no indication of what the timeline is going to be. There is no indication that Defendants are going to restore reservists or national guard to pay and points, or what that timeline will be. There is no indication that Defendants are going to make whole soldiers like SSG Costroff and SSG Schelske. There is no indication that discharges will be upgraded or that discharge paperwork (DD214's) will be corrected.

We, again, acknowledge, of course, that the landscape may change over the next 30 days. But we must take this case as we find it today, not based on unknowns and possibilities of what tomorrow or next week or next month might bring. Promises, without the teeth of a court order, are simply not sufficient nor prudent for the type and degree of harms occurring to the putative class.

The Court also asked us to address a case schedule. We do so now, understanding that the relief that ultimately is appropriate may be a moving target. Plaintiffs suggest seven months for fact discovery, with a cutoff of July 31, 2023, expert disclosures by the parties by July 31, 2023, rebuttal experts by August 31, 2023, an expert discovery deadline of October 15, 2023, a dispositive motion deadline of November 30, 2023, with briefing to follow the local rules, and, if necessary, a bench trial in early 2024.

**II.  Defendants' Position**

1.  On December 23, 2022, the National Defense Authorization Act for Fiscal Year 2023 ("NDAA") was signed into law, directing the Department of Defense, *inter alia*, to rescind its Covid-19 vaccination mandate within 30 days. On January 10, 2023, the Secretary of Defense issued a memorandum rescinding his August 24, 2021 memorandum "Mandatory Coronavirus

Disease 2019 Vaccination of Department of Defense Service Members," and his November 30, 2021 memorandum, "Coronavirus Disease 2019 Vaccination for Members of the National Guard and the Ready Reserve." ECF No. 85-1.  On January 11, 2023, the Court ordered the parties to submit a supplemental status report indicating "what, if any, issues remain to be litigated." ECF No. 86.

    2.    Plaintiffs' claims are moot and no issues remain to be litigated. Plaintiffs' claim that the August 24, 2021, COVID-19 vaccination policy violates religious liberties and should be enjoined, Compl. at 23, is moot, *see U.S. Dep't of Treasury v. Galioto*, 477 U.S. 556, 559–60 (1986) (holding that an issue becomes moot when intervening legislation "alters the posture" of a case); *Veasey v. Abbott*, 888 F.3d 792, 799 (5th Cir. 2018) ("Ordinarily, a[n] [action] challenging a statute would become moot by the legislature's enactment of a superseding law.").[1] To the extent Plaintiffs allege that they are harmed or that Defendants must be enjoined because Plaintiffs' records reflect adverse actions related to their requests for religious accommodation, those claims are also moot. The Secretary's rescission memorandum also states that "[t]he Military Departments will update records of [individuals currently serving in the Armed Forces who sought religious, administrative, or medical accommodations] to remove any adverse actions solely associated with denials of such requests, including letters of reprimand." ECF No. 85-1.

    3.    Defendants will move to dismiss Plaintiffs' complaint as moot on January 20, 2022, *see* ECF No. 86.

---

[1] Indeed, in litigation challenging the Navy's COVID-19 vaccination requirement, the Fifth Circuit Court of Appeals ordered supplemental briefing on the issue of mootness in light of the NDAA. *See* Order*, U.S. Navy SEALs 1–26 v. Biden*, No. 22-10077 (5th Cir. Jan. 4, 2023); see also Order, U.S. Navy SEALs 1-26 v. Biden, No. 22-10077 (5th Cir. Jan. 9, 2023) (extending the deadline to file supplemental briefs on mootness to January 27, 2023).

4. The Court should also deny the pending motions for class certification and for class-wide injunction. The members of the purported class face no irreparable harm nor are they harmed at all. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring)).[2] No member of the purported class is now subject to the August 24, 2021, vaccination requirement, and any claim based on that requirement is moot. The purported irreparable harm cited in support of the class-wide preliminary injunction—"the crisis of conscience imposed by the mandate," ECF No. 51 at 6—can no longer exist now that the vaccination requirement is rescinded. For the vast majority of the purported class members, whose accommodation requests or appeals were pending, review of their accommodation requests have ceased. ECF No. 85-1. To the extent purported class members' records reflect adverse actions solely associated with the denial of accommodation requests, those adverse actions will be removed. *Id.*

5. If the Court does not conclude that the class motions must be denied on the basis of the rescission alone, it should order supplemental briefing to address the dramatic alteration to the circumstances underlying those motions.

6. Without waiving any right to respond more completely through the appropriate procedural vehicle,[3] Defendants respond that the harms asserted by Plaintiffs are either entirely speculative, mooted by the NDAA and the rescission memorandum, do not exist within the

---

[2] Even absent the rescission, class certification is improper for the reasons set forth in Defendants' opposition to the motion for class certification. ECF No. 70.

[3] Defendants did not have an opportunity to substantively review and consider Plaintiffs' position in advance of the instant filing. Despite multiple requests and attempts to confer, Plaintiffs refused to provide their views on mootness or the pending class motions until 4:00 pm today and did not provide their full position until after 7:30 pm. Consequently, Defendants will respond further in their forthcoming motion to dismiss.

purported class, are not redressable as part of this case, and/or cannot justify preliminary injunctive relief. Plaintiffs have also misrepresented Defendants' response to their various questions. Defendants anticipate that further guidance will be forthcoming from the Army and the Department of Defense that will inform implementation of the rescission, but the rescission of the mandate itself, along with the removal of adverse actions, moots Plaintiffs claims and requires denial of the class motions.

Dated: January 18, 2023

Respectfully submitted,

/s/ Aaron Siri                               .
Aaron Siri (admitted PHV)
Elizabeth A. Brehm (admitted PHV)
Wendy Cox (TX 24090162)
Dana Stone (admitted PHV)
SIRI | GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
(212) 532-1091 (v)
(646) 417-5967 (f)
aaron@sirillp.com
ebrehm@sirillp.com
wcox@sirillp.com

/s/Christopher Wiest
Christopher Wiest (admitted PHV)
Chris Wiest, Atty at Law, PLLC
25 Town Center Boulevard, Suite 104
Crestview Hills, KY 41017
(513) 257-1895 (vc)
(859) 495-0803 (f)
chris@cwiestlaw.com

Thomas Bruns (admitted PHV)
Bruns, Connell, Vollmar & Armstrong, LLC
4555 Lake Forest Drive, Suite 330
Cincinnati, OH 45242
(513) 312-9890 (vt)
tbruns@bcvalaw.com

>John C. Sullivan
>S|L LAW PLLC
>Texas Bar Number: 24083920
>610 Uptown Boulevard, Suite 2000
>Cedar Hill, Texas 75104
>(469) 523–1351 (v)
>(469) 613-0891 (f)
>john.sullivan@the-sl-lawfirm.com
>*Attorneys for Plaintiffs*
>
>
>BRIAN M. BOYNTON
>Principal Deputy Assistant Attorney General
>
>ALEXANDER K. HAAS
>Branch Director
>
>ANTHONY J. COPPOLINO
>Deputy Branch Director
>
> /s/ Keri Berman
>KERI BERMAN
>JOHNNY H. WALKER (D.C. Bar #991325)
>Trial Attorneys
>United States Department of Justice
>Civil Division, Federal Programs Branch
>1100 L Street NW, Rm. 12304
>Washington, D.C. 20530
>Tel.: (202) 514-3183 / Fax: (202) 616-8460
>Email: keri.l.berman@usdoj.gov
>*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2023, a true and correct copy of this Status Report was served by CM/ECF on all counsel or parties of record.

>/s/ Christopher Wiest