UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| ROBERT SCHELSKE, *et al.*,<br><br>    *Plaintiffs,*<br><br>    v.<br><br>LLOYD J. AUSTIN, III,<br>United States Secretary of Defense, *et al.*,<br><br>    *Defendants.* | No. 6:22-cv-0049-H |

# MEMORANDUM OF LAW IN SUPPORT
# OF DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

PROCEDURAL BACKGROUND ........................................................................................1

FACTUAL BACKGROUND ...........................................................................................2

    A.    The DoD Mandate ...........................................................................................2

    B.    The NDAA. ......................................................................................................2

    C.    Plaintiffs ............................................................................................................3

LEGAL STANDARD ........................................................................................................4

ARGUMENT ....................................................................................................................5

    I.    The Court Should Dismiss This Action as Moot. ....................................5

    II.    No Remaining Relief is Available to Plaintiffs. ......................................7

    III.    The Voluntary Cessation Exception Does Not Apply. ........................14

CONCLUSION .................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.*,
  133 S. Ct. 721 (2013) ...................................................................................................5

*Am. Bar Ass'n v. FTC*,
  636 F.3d 641 (D.C. Cir. 2011) ...............................................................................6, 14

*Amawi v. Paxton*,
  956 F.3d 816 (5th Cir. 2020) ...................................................................................5, 17

*Austin v. U. S. Navy Seals 1-26*,
  142 S. Ct. 1301 (2022) ...........................................................................................10, 17

*Ballew v. Cona Airlines, Inc.*,
  668 F.3d 777 (5th Cir. 2012) .........................................................................................4

*Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*,
  941 F.3d 1195 (9th Cir. 2019) .......................................................................................6

*Benton v. United States*,
  960 F.2d 19 (5th Cir. 1992) ............................................................................................4

*Big Tyme Invs. L.L.C. v. Edwards*,
  985 F.3d 456 (5th Cir. 2021) .........................................................................................4

*City of L.A. v. Lyons*,
  461 U.S. 95 (1983) .....................................................................................................8, 9

*Clark v. Library of Congress*,
  750 F.2d 89 (D.C. Cir. 1984) .......................................................................................12

*Ctr. for Individual Freedom v. Carmouche*,
  449 F.3d 655 (5th Cir. 2006) .........................................................................................5

*Davila v. Gladden*,
  777 F.3d 1198, 1210 (11th Cir. 2015) .........................................................................14

*Dehne v. United States*,
  970 F.2d 890 (Fed. Cir. 1992) ......................................................................................14

*de la O v. Hous. Auth. of City of El Paso, Tex.*,
  417 F.3d 495, 499 (5th Cir. 2005) ...............................................................................14

*Dep't of Navy v. Egan*,
    484 U.S. 518 (1988) ...................................................................................17

*F.D.I.C. v. Meyer*,
    510 U.S. 471, 475 (1994) ...........................................................................14

*Fontenot v. McGraw*,
    777 F.3d 741 (5th Cir. 2015) ...........................................................4, 6, 9, 13

*Friends of the Earth, Inc., v. Laidlaw Envtl. Servs., Inc.*,
    528 U.S. 167 (2000) ...................................................................................15

*Garcia v. United States*,
    666 F.2d 960, 966 (5th Cir. 1982) ...............................................................13

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013) .....................................................................................13

*Gilligan v. Morgan*,
    413 U.S. 1 (1973) ..................................................................................10, 17

*Guedes v. ATF*,
    920 F.3d 1 (D.C. Cir. 2019) .......................................................................16

*Harkness v. United States*,
    727 F.3d 465 (6th Cir. 2013) ......................................................................11

*Harris v. City of Houston*,
    151 F.3d 186 (5th Cir. 1998) .........................................................................8

*Hitt v. City of Pasadena*,
    561 F.2d 606 (5th Cir. 1977) .........................................................................4

*Hodges v. Callaway*,
    499 F.2d 417 (5th Cir. 1974) ......................................................................11

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*,
    143 F.3d 1006 (5th Cir. 1998) .......................................................................4

*J. T. v. D.C.*,
    983 F.3d 516 (D.C. Cir. 2020) ....................................................................14

*Johnson v. State*,
    586 F.2d 387 (5th Cir. 1978) .........................................................................5

*K.P. v. LeBlanc*,
   729 F.3d 427 (5th Cir. 2013)....................................................................................4, 5

*Keister v. Bell*,
   29 F.4th 1239 (11th Cir. 2022)....................................................................................5

*Klayman v. Obama*,
   759 F. App'x 1 (D.C. Cir. 2019) .............................................................................6, 15

*Knox v. Serv. Emps. Int'l Union, Local,*
   *1000*, 567 U.S. 298 (2012)..........................................................................................5

*Kreis v. Sec'y of Air Force*,
   866 F.2d 1508 (D.C. Cir. 1989) .................................................................................10

*Log Cabin Republicans v. United States*,
   658 F.3d 1162 (9th Cir. 2011) .....................................................................................6

*Long v. Jayton-Girard Indep. Sch. Dist.*,
   No. 5:21-CV-111-H, 2021 U.S. Dist. LEXIS 256040 (N.D. Tex. Sep. 3, 2021).....................13

*McCorvey v. Hill*,
   385 F.3d 846 (5th Cir. 2004).......................................................................................5

*Mindes v. Seaman*,
   453 F.2d 197 (5th Cir. 1971)......................................................................................11

*N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*,
   140 S. Ct. 1525 (2020)................................................................................................5

*Orloff v. Willoughby*,
   345 U.S. 83 (1953) ............................................................................................10, 17

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*,
   918 F.3d 151 (D.C. Cir. 2019) ...................................................................................16

*Rocky v. King*,
   900 F.2d 864 (5th Cir. 1990)......................................................................................13

*Schelske v. Austin*,
   No. 6:22-cv-049-H, 2022 WL 17835506 (N.D. Tex. Dec. 21, 2022) .........................11

*Smith v. Secretary of Navy*,
   506 F.2d 1250 (8th Cir. 1974).....................................................................................10

*Sossamon v. Lone Star State of Tex.*,
   560 F.3d 316 (5th Cir. 2009)..................................................................14, 15, 16

*Sossamon v. Texas*,
   563 U.S. 277 (2011) .................................................................................15

*Spell v. Edwards*,
   962 F.3d 175 (5th Cir. 2020).....................................................................5, 8

*St. Pierre v. United States*,
   319 U.S. 41 (1943) ...................................................................................7

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021).............................................................................4, 11

*Troiano v. Supervisor of Elections in Palm Beach Cnty.*,
   382 F.3d 1276 (11th Cir. 2004)................................................................16

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .................................................................................11

*United States v. Heredia-Holguin*,
   823 F.3d 337 (5th Cir. 2016).....................................................................4

*Von Hoffburg v. Alexander*,
   615 F.2d 633 (5th Cir. 1980).....................................................................10, 11

*Warnock v. Pecos Cnty.*,
   88 F.3d 341, 343 (5th Cir. 1996)..............................................................14

*Webman v. Fed. Bureau of Prisons*,
   441 F.3d 1022, 1028 (D. C. Cir. 2006).....................................................14

*Zeidman v. J. Ray McDermott & Co.*,
   651 F.2d 1030 (5th Cir. 1981)...................................................................13

**Statutes**

10 U.S.C. § 1552........................................................................................12

10 U.S.C. § 14502......................................................................................11

28 U.S.C. § 1331........................................................................................11

James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA"),
   Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2571-72 (Dec. 23, 2022)....................1

**Other Authorities**

168 Cong. Rec. H9441 (Dec. 8, 2022) ..................................................................................2, 3

Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758 ..............................................2

On December 23, 2022, the President signed into law the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA"). *See* Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2571-72 (Dec. 23, 2022). Section 525 of the NDAA directs the Secretary of Defense, within 30 days, to rescind the August 2021 memorandum requiring vaccination of service members for COVID-19. On January 10, 2023, the Secretary rescinded the mandate as directed. *See* ECF No. 85-1. The rescission memorandum prohibits separations based solely on refusal of the COVID-19 vaccine by service members who sought an exemption from the mandate and directs the Services to "remove any adverse actions solely associated with denials of such requests." The memorandum also halts the processing of religious accommodation requests ("RARs") for an exemption to the now-defunct mandate. Plaintiffs' challenges to the Department of Defense's August 24, 2021, policy memorandum and the Army's September 14, 2021, policy memorandum are therefore moot in their entirety, and the case should be dismissed.

## PROCEDURAL BACKGROUND

Plaintiffs filed their complaint, ECF No. 1, on October 3, 2022, and moved for a preliminary injunction as to the named Plaintiffs on October 18, 2022, ECF No. 29. On November 23, 2022, Plaintiffs separately moved to certify a class and for a class-wide injunction. ECF Nos. 48 & 50. After a hearing on December 16, 2022, the Court entered a preliminary injunction as to only the named Plaintiffs on December 21, 2022. On December 29, 2022, Defendants notified the Court that the Army had suspended all separation actions related to COVID-19 vaccine refusal pursuant to the enactment of the NDAA. ECF No. 82. On January 11, 2023, Defendants notified the Court that, as required by the NDAA, the Secretary of Defense had rescinded the COVID-19 vaccination requirement that is the subject of this case. ECF No. 85. Pursuant to the Court's order, ECF No. 86, Defendants informed the Court on January 18, 2023, that Plaintiffs claims had been

rendered moot, ECF No. 87. Plaintiffs' motions for class certification and for class-wide preliminary injunction remain pending at this time.

## FACTUAL BACKGROUND

**A.    The DoD Mandate.**  On August 24, 2021, the Secretary of Defense directed the Secretaries of the Military Departments to ensure that all members of the Armed Forces were fully vaccinated against COVID-19. Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758. The Army implemented the August 2021 vaccine requirement, consistent with DoD requirements and existing Army policies, permitted service members to seek medical, religious, or administrative exemptions based on their individual circumstances. Mahoney Decl. ¶¶ 13–26, A535–43, ECF No. 39-1. Soldiers were not subject to adverse action while final adjudications of any exemption or appeal were pending. *Id.* ¶ 20, A538–39.

**B.    The NDAA.**  On December 23, 2022, the President signed the NDAA into law. Section 525 directs the Secretary, within 30 days, to rescind the August 2021 memorandum requiring vaccination of service members against COVID-19. An explanatory statement in the Congressional Record notes that DoD "has mechanisms to correct a servicemember's military record for discharge due to failure to receive the COVID-19 vaccine" and that "the military departments have the ability to consider applications for reinstatement of servicemembers who were previously separated for refusing the vaccine." *See* 168 Cong. Rec. H9441 (Dec. 8, 2022).

On January 10, 2023, the Secretary of Defense rescinded the mandate as directed. ECF No. 85-1. The rescission memorandum directs that currently serving service members who sought an exemption may not be "separated solely on the basis of their refusal to receive the COVID-19 vaccination" and directs the Services to "update the records of such individuals to remove any

2

adverse actions solely associated with denials of such requests." *Id*.[1] It further directs that decisionmakers should "cease any ongoing reviews" of requests for accommodation from the COVID-19 vaccination requirement. *Id*. Other policies regarding immunizations remain in effect, including "the ability of Commanders to consider, as appropriate, the individual immunization status of personnel in making deployment, assignment, and other operational decisions." *Id*. In light of these actions, at least one district court has stayed proceedings in a case challenging the rescinded vaccination requirement until the issue of mootness can be fully briefed. Order, *Col. Fin. Mgmt. Off. v. Austin*, No. 8:22-cv-1275-SDM- TGW (M.D. Fla. Jan. 20, 2023).

   **C.**   **Plaintiffs.** Under the rescission memorandum, none of the named Plaintiffs are subject to the August 2021 vaccine mandate, and their records will be updated, as directed by the rescission memorandum, to remove any records of adverse actions solely related to their vaccine refusal.   None of the named Plaintiffs have completed the administrative separation process. Pursuant to the rescission memorandum, that process is permanently halted and any adverse action reflecting that process will be removed from the record of each of these Plaintiffs. Rescission Memorandum, ECF No. 85-1. Any Plaintiffs who have a record of past adverse action based on vaccine refusal, including General Officer Memorandums of Reprimand ("GOMOR"), will also have that action removed from their record. *Id.*

   No class has been certified; however, the rescission of the vaccine mandate, halting the review of the requests for accommodation from COVID-19 vaccination, and removal of adverse actions applies equally to all members of the purported class.

---

[1]    Former service members administratively discharged on the sole basis that the service member failed to obey a lawful order to receive a vaccine for COVID-19, "may petition their Military Department's Discharge Review Boards and Boards for Correction of Military or Naval Records to individually review and correct personnel records, including records regarding the characterization of their discharge." *Id*.

**LEGAL STANDARD**

The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss and must prove jurisdiction exists by a preponderance of the evidence. *Ballew v. Cona Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) (citations omitted). A 12(b)(1) motion should be granted only if the party asserting jurisdiction "cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (footnote omitted) (citing *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992)). "[A] dismissal on jurisdictional grounds alone is not on the merits and permits the plaintiff to pursue his claim in the same or in another forum." *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

"Whether an appeal is moot is a jurisdictional matter, since it implicates the Article III requirement that there be a live case or controversy." *Big Tyme Invs. L.L.C. v. Edwards*, 985 F.3d 456, 464 (5th Cir. 2021) (quoting *United States v. Heredia-Holguin*, 823 F.3d 337, 340 (5th Cir. 2016) (en banc)). "Plaintiffs must maintain their personal interest in the dispute at all stages of litigation." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). "Even when a plaintiff has standing at the outset '[t]here must be a case of controversy through all stages of a case.'" *Fontenot v. McGraw*, 777 F.3d 741, 747 (5th Cir. 2015) (quoting *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013)). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726-27 (2013) (citation omitted)).

"Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Id.* (quoting *Ctr. for Individual Freedom v.*

*Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)). "A matter is moot 'when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). A case "usually becomes moot if the challenged law has expired or been repealed . . . [o]nce the law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do." *Id.*; *see also, e.g.*, *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (holding that a claim for injunctive relief against a law was moot when the law was amended to give "the precise relief that [the plaintiffs] requested"); *Amawi v. Paxton*, 956 F.3d 816, 819, 821 (5th Cir. 2020) (dismissing an appeal as moot because a statutory amendment "provided the plaintiffs the very relief their lawsuit sought");

## <u>ARGUMENT</u>

**I.**     **The Court Should Dismiss This Action as Moot.**

The Fifth Circuit and other circuits have repeatedly confirmed that the repeal of a rule or its substitution by intervening legislation moots any challenge against it. *See, e.g.*, *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004) ("Suits regarding the constitutionality of statutes become moot once the statute is repealed."); *Johnson v. State*, 586 F.2d 387, 388 (5th Cir. 1978) ("[T]he enactment of a superseding statute which satisfies all the principles sought in an attack on the prior statute simply moots the case."); *see also, e.g.*, *Keister v. Bell*, 29 F.4th 1239, 1250 (11th Cir. 2022), *pet. for cert. filed*, No. 22-388 (U.S. Oct. 25, 2022) ("[W]hen a government fully repeals a challenged law, a case challenging that law is almost surely moot."); *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) ("[T]he repeal, amendment, or expiration of challenged legislation is generally enough to render a case moot and appropriate for dismissal."); *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 643 (D.C. Cir. 2011) ("It is well

established that a case must be dismissed as moot if new legislation addressing the matter in dispute is enacted while the case is still pending."); *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166–68 (9th Cir. 2011) (finding moot a challenge to the military's don't-ask-don't-tell policy when the policy was repealed by statute after judgment).

This is especially true when intervening legislation moots an agency's policy. *See, e.g.*, *Klayman v. Obama*, 759 F. App'x 1, 3 (D.C. Cir. 2019) (dismissing as moot challenge to bulk collection of telephone metadata where intervening legislation terminated telephone metadata collection program); *Am. Bar Ass'n*, 636 F.3d at 643 (dismissing as moot challenge to FTC policy statement where intervening legislation materially redefined the term at issue).

The NDAA is intervening legislation that, as implemented by the Secretary's statutorily mandated rescission memorandum, ends any live controversy. The NDAA as implemented through the rescission memorandum gives Plaintiffs the relief sought in their complaint. It terminates the challenged vaccination requirement, rendering moot Plaintiffs' requests for declaratory relief and injunctive relief barring enforcement of that requirement. It confirms that Plaintiffs will not be discharged based on their refusal to comply with the vaccination requirement, that any preexisting adverse action issued solely based on refusal to comply with the vaccination requirement will be removed, and that no new adverse actions for declining COVID-19 vaccination will be issued. Plaintiffs have no further relief to be gained by pursuing this lawsuit challenging the now-rescinded mandate, and thus "lack any legally cognizable interest in the outcome." *Fontenot*, 777 at 747. A judicial ruling as to whether the rescinded policy violated Religious Freedom Restoration Act ("RFRA") or the First Amendment would be an impermissible advisory opinion. *See St. Pierre v. United States*, 319 U.S. 41, 42 (1943) ("A federal court is

without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants in the case before it.").

## II.    No Remaining Relief is Available to Plaintiffs.

Under the terms of the rescission, Defendants can no longer enforce the August 2021 mandate with respect to the named Plaintiffs or any member of their purported class, nor may Defendants take adverse action against them based on that defunct policy. ECF No. 85-1. The declaratory and injunctive relief sought by Plaintiffs is thus no longer available, as there is no requirement from which an exemption can be sought, or a determination made by the Defendants. Indeed, the Secretary's recission memorandum halts the processing of requests for exemption to the now-defunct mandate. *Id.*

More specifically, the complaint requests that the Court "issue a declaration" that the vaccine mandate and alleged policy of denying religious accommodation requests "are unconstitutional and illegal under RFRA and the First Amendment." ECF No. 1 at 23. As explained above, the mandate has been rescinded and the religious accommodation process discontinued, so any opinion as to either would be advisory and impermissible. The complaint also requests a preliminary injunction "precluding Defendants from taking any further enforcement/punitive action against Plaintiffs…related to their request for a religious accommodation . . . ." *Id.* The rescission itself provides such relief, as there is no longer an exemption process nor a requirement from which an exemption can be sought. Likewise, in addition to the various reasons described in Defendants' opposition to Plaintiffs' class certification and class-wide injunction motions, ECF No. 70, there is no basis to certify a class of individuals previously subject to the vaccine requirement, *see* ECF No. 87 at 10 ¶ 4.

Plaintiffs also request preliminary and final injunctive relief to:

(i) prohibit retaliation for those seeking religious accommodations or participating in this litigation; (ii) directing Defendants to cease and discontinue their religious discrimination and eradicate it root and branch; (iii) prohibit punitive measures from being taken against anyone who had their religious accommodation denied due to the discriminatory policy . . . .

But such relief is either moot, speculative, or both. No evidence of a threat of retaliation against Plaintiffs or any purported class members for requesting accommodation or participating in the litigation has been adduced, and the religious accommodation process has been discontinued as have any allegedly "punitive measures" that could flow from it. For the same reason, no relief is available as to Plaintiffs' requests to enjoin Defendants to reprocess religious accommodation requests and to provide record correction. To the extent Plaintiffs seek injunction against other possible future adverse acts, they do not have standing to seek relief where there is no "real and immediate threat" of future injury. *City of L.A. v. Lyons*, 461 U.S. 95, 110 (1983).

Plaintiffs contend that the case is not moot in their response, ECF No. 87, to the Court's order directing the parties to describe "what, if any, issues remain to be litigated," ECF No. 86. Notably, however, Plaintiffs do not appear to dispute that their claims are moot insofar as they seek an injunction against prospective application of the prior alleged discriminatory vaccination requirement. *See Spell*, 962 F.3d at 178–79 (holding that a case challenging a policy becomes moot if the challenged policy is rescinded). Plaintiffs also do not assert that they may continue to pursue a declaratory judgment pronouncing the rescinded vaccination requirement to violate RFRA and the First Amendment. *See Harris v. City of Houston*, 151 F.3d 186, 190–91 (5th Cir. 1998) ("Requests for declaratory relief may sustain a suit only when the claims challenge . . . some ongoing underlying policy rather than merely attack[ing] an isolated . . . action."). There is accordingly no impediment to dismissal of those claims for relief as moot.

Plaintiffs insist, however, that the case remains live because the Army has yet to remove "adverse actions" stemming from service members' refusals to comply with the rescinded vaccination policy. ECF No. 87 at 3. But there is no question that the Army must do so. The Secretary of Defense has directed the military services, including the Army, to "remove any adverse actions solely associated with denial of [requests for accommodation on religious, administrate, or medical grounds], including letters of reprimand." ECF No. 85-1 at 1. Thus, Plaintiffs' request for the Court to issue an injunction to the same effect seeks a remedy that they have already obtained from the Secretary of Defense. That request is therefore moot. *See Fontenot,* 777 F.3d at 747 ("Because there remains no live controversy between the parties . . . the injunction they seek would be meaningless.").

Plaintiffs also apparently believe that the Court should enjoin the Army from ever imposing some "similar requirement" concerning COVID-19 vaccination in the future and, in the event there is such a requirement, that the Court should dictate in advance a nondiscriminatory process for adjudicating exemption requests and impose "sensitivity training" for "[a]ll Army personnel involved" in that process. ECF No. 87 at 2, 4. But Plaintiffs merely speculate that there will be some future "similar requirement" that will discriminate on behalf of religion and cause them remediable harm, and the mere fact that they have alleged some past harm from a vaccination policy does not give them standing to obtain injunctive relief against the alleged possibility of some future "similar requirement" or the means by which the Army might later adjudicate exemptions to such a requirement. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) ("The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again . . . .").

Plaintiffs also contend that the case must proceed so that the Court may award promotions, training assignments (including a training that Plaintiffs Schelske and Costroff wish to attend), and adjustments to rank that they believe were denied to them and to purported class members on account of their unvaccinated status. ECF No. 87 at 2–3. Relief of that nature, however, would be nonjusticiable. The Supreme Court has recognized that "judges are not given the task of running the Army." *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953).  Rather the "power of oversight and control of military force by elected representatives and officials […] underlies our entire constitutional system." *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973); *see also id.* ("The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments."). The promotion of officers in particular is a decision left exclusively to the President. *See Orloff*, 345 U.S. at 90 ("It is obvious that the commissioning of officers in the Army is a matter of discretion within the province of the President as Commander in Chief."); *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989) ("Appellant's request for retroactive promotion falls squarely within the realm of nonjusticiable military personnel decisions."). The forum for these disputes is not federal court, at least at first, but the Military Departments' Discharge Review Boards and Boards for Correction of Military or Naval Records.  *See generally Von Hoffburg v. Alexander*, 615 F.2d 633, 641 (5th Cir. 1980); *Smith v. Secretary of Navy*, 506 F.2d 1250 (8th Cir. 1974) (noting that administrative remedies must be exhausted before a denial of corrective action can be reviewed in federal court).

Importantly, in another case challenging the military's COVID-19 vaccination requirement, the Supreme Court stayed a preliminary injunction "insofar as it precludes the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions." *Austin v. U. S. Navy Seals 1-26*, 142 S. Ct. 1301 (2022). Because Plaintiffs

cannot obtain judicial relief directing them into certain promotions or training assignments, their insistence upon such relief does not foreclose dismissal on mootness grounds.

In any event, other than the training to which Plaintiffs Schelske and Costroff wish to be assigned (which is nonjusticiable), Plaintiffs have not tied any of the purported injuries in their chart, ECF No. 87 at 2, to any specific Plaintiff or would-be class member. "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *See TransUnion*, 141 S. Ct. at 2208 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring)). Without identifying any injured party with a justiciable claim, Plaintiffs cannot demonstrate a live claim.

In addition, to the extent that Plaintiffs seek to remedy discreet personnel actions, they must first exhaust administrative remedies for doing so. The Fifth Circuit has long required that a plaintiff first exhaust all "available intraservice corrective measures" before bringing to federal court claims implicating "internal military affairs." *Hodges v. Callaway*, 499 F.2d 417, 419–20 (5th Cir. 1974) (quoting *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971)); *see also Von Hoffburg*, 615 F.2d at 637 (collecting cases); *Schelske v. Austin*, No. 6:22-cv-049-H, 2022 WL 17835506, at *12 (N.D. Tex. Dec. 21, 2022) ("taking the Fifth Circuit's lead" and applying *Mindes*). Thus, Plaintiffs (and class members) must pursue interservice remedies for any allegedly improper personnel actions. For example, Plaintiffs' demand for special selection boards, ECF No. 87 at 2, implicates exhaustion requirements mandated by statute. *See Harkness v. United States*, 727 F.3d 465, 470 (6th Cir. 2013) ("The text of [10 U.S.C. § 14502(g)(1)(A)–(b)] expressly takes away the jurisdiction that other statutes, including 28 U.S.C. § 1331, confer on the federal courts to hear promotion-based claims, at least temporarily."). And Plaintiffs can generally seek relief regarding personnel actions through resort to the Army Board for the Correction of Military

Records, which has broad authority to remove an error or injustice from Army personnel records. 10 U.S.C. § 1552 ("The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice.").

Plaintiffs may attempt to avoid their exhaustion obligations by pointing to this Court's prior finding that the process for seeking a religious accommodation was futile, based substantially on a disproportional rate of denied requests. ECF No. ECF No. 78 at 27–30. But the circumstances of the Army's review of request for religious accommodation are no longer present here. Plaintiffs have no basis to assert that administrative remedies for discreet personnel actions would be futile following the rescission of the vaccination requirement, and in any event the military has authority to decide those issues in the first instance. Any contrary contention is entirely speculative.

Plaintiffs further ask that the case proceed to remediate alleged harm to former service members and reservists who were separated due to their vaccination status, some with less-than-honorable discharges. ECF No. 87 at 4. But none of the named Plaintiffs in this action has been separated, and Plaintiffs do not seek to represent separated service members as class representatives. Their purported class definition is limited to "Army service members (including active and reserve members, and Army National Guard, and all inductees and appointees of the Army)." ECF No. 48 at 1. Because this lawsuit seeks no remedy on behalf of those who were separated from the Army, any purported harm to that category of persons cannot stand in the way of mootness. Similarly, the perceived ongoing harm to reservists that Plaintiffs refer to cannot prevent their claims from becoming moot because Plaintiffs themselves are not reservists and do not allege to have experienced any such harm.

Plaintiffs also argue incorrectly that this case is not moot until the claims of every member of the purported class become moot. ECF No. 87 at 6. As an initial matter, the wholesale rescission of the challenged vaccination policy and the order by the Secretary of Defense to remove adverse actions stemming from that policy does indeed render the claims of every purported class member moot. But Plaintiffs' motion for class certification has not been granted (and, as explained, is now subject to denial given the rescission of the vaccination policy upon which it is based, ECF No. 87 at 10 ¶4). Also, where no class has yet been certified, the mooting of the named Plaintiffs' claims moots the purported class action. *See Rocky v. King*, 900 F.2d 864, 869 (5th Cir. 1990) ("This Court generally has concurred with the proposition that a purported class action is moot where the named plaintiff's individual claim became moot before class certification."). This case does not fit within the limited exception that permits class certification to relate back to the filing of the complaint. *See Fontenot*, 777 F.3d at 748–50. As previously explained, ECF No. 87 at 10 ¶ 4, the rescission of the vaccination requirement renders class certification improper, so there will be no certified class to relate back. In any event, the relation-back exception does not apply because the vaccination requirement was not "inherently transitory," *id.* at 749 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)), and mootness here is not a result of Defendants "picking off" individual Plaintiffs' claims through "purposive action," *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1050 (5th Cir. 1981). To the contrary, the challenged vaccination requirement was a lasting and ongoing military policy, applicable to all members of the military, that was rescinded only because of a directive from Congress, not any voluntary action on the part of Defendants to moot Plaintiffs' claims.

In *Long v. Jayton-Girard Indep. Sch. Dist.*, this Court dismissed Plaintiffs claims for equitable relief but held that "[c]laims for damages or other monetary relief automatically avoid

mootness, so long as the underlying claim remains valid on its merits." No. 5:21-CV-111-H, 2021 U.S. Dist. LEXIS 256040, at *15 (N.D. Tex. Sep. 3, 2021) (quoting *de la O v. Hous. Auth. of City of El Paso, Tex.*, 417 F.3d 495, 499 (5th Cir. 2005). Here, Plaintiffs' complaint seeks only equitable relief. As far as Plaintiffs now claim to seek backpay for unnamed putative class members, that request fails for many reasons. *See* ECF No. 87 at 2 (requesting that the Court award ranks and promotions "with back pay"). First, no named Plaintiff has made any allegations supporting an entitlement to back pay (nor would it be possible to award back pay, which is individualized, on a class-wide basis). Second, sovereign immunity forbids money damages against the United States or official-capacity federal defendants based on a claim under the Constitution or FRA. *See Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. 1982) ("The Constitution does not waive the Government's sovereign immunity in a suit for damages"); *Davila v. Gladden*, 777 F.3d 1198, 1210 (11th Cir. 2015) ("RFRA does not therefore authorize suits for money damages against officers in their official capacities."); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1028 (D. C. Cir. 2006) (internal citation omitted) ("RFRA's purpose does not 'produce evidence of a waiver' of sovereign immunity for damages claims, much less evidence unequivocal enough to satisfy the strict standard for waivers of sovereign immunity.") *cf. Sossamon*, 563 U.S. 277 (holding that identical "appropriate relief" language in the related statute RLUIPA did not waive states' sovereign immunity from money damages). Finally, even if Plaintiffs had sought backpay pursuant to Tucker Act jurisdiction, backpay can only be awarded for work actually performed. *See Dehne v. United States*, 970 F.2d 890 (Fed. Cir. 1992). Here, Plaintiffs specifically seek backpay for unnamed putative class members who they claim were unable to perform reserve duty. Accordingly, any claim for damages, to the extent they have even been made in this case, should also be dismissed pursuant to FRCP 12(b)(1). *F.D.I.C. v. Meyer*,

510 U.S. 471, 475 (1994) ("Sovereign immunity is, jurisdictional in nature."); *see also Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice.").

### III.   The Voluntary Cessation Exception Does Not Apply.

Plaintiffs also assert in the parties' Joint Status Report, ECF No, 87, that the NDAA and subsequent rescission memorandum cannot moot the case because they were voluntary enactments. Under the voluntary cessation exception to the mootness doctrine, "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" and "[t]his is a 'heavy burden,' which must be born by the party asserting mootness." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009) (*aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011)) (quoting *Friends of the Earth, Inc., v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)).

First, contrary to Plaintiff's assertions, Defendants' cessation of the vaccination requirement was not voluntary. Defendants "most assuredly did not alter [their own course] in order to avoid litigation." *Am. Bar Ass'n*, 636 F.3d at 648. Rather, intervening legislation—in the form of the NDAA—required DoD to rescind the vaccination mandate. *See id.* (finding voluntary cessation exception did not apply where "intervening legislation simply nullified the [agency's challenged] policy statement"). The NDAA "specifically forbids the kind of [action] challenged in this suit" and "[t]he cessation of the [vaccination requirement] was therefore not voluntary." *Klayman*, 759 F. App'x at 3; *see also J. T. v. D.C.*, 983 U.S. 516, 523 (D.C. Cir. 2020) ("'The voluntary-cessation doctrine has no apparent relevance' where the 'source of cessation . . . lies

beyond the unilateral legal authority of any of the named defendants.'" (quoting *Guedes v. ATF*, 920 F.3d 1, 15 (D.C. Cir. 2019) (per curiam)).

Second, even if Congress's enactment of the NDAA could be considered a voluntary change on the part of Defendants, the Fifth Circuit has held that "courts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity." *Sossamon*, 560 F.3d at 325. Indeed, despite the burden typically imposed in instances of voluntary cessation, "government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties. Without evidence to the contrary, [the Fifth Circuit] assume[s] that formally announced changes to official governmental policy are not mere litigation posturing." *Id.*; *see also, e.g.*, *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 918 F.3d 151, 157–59 (D.C. Cir. 2019) (recognizing that an unambiguous representation by an agency official would be entitled to presumption of regularity and could satisfy burden for voluntary cessation purposes); *Troiano v. Supervisor of Elections in Palm Beach Cnty.*, 382 F.3d 1276, 1283 (11th Cir. 2004) ("[W]hen the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur.").

Plaintiffs have provided no basis to suggest that the rescission of the vaccine requirement is pretextual or that the same or a substantially similar requirement will recur. On the contrary, Defendants have gone beyond what was required by Congress by in the NDAA, for example, requiring the records of current service members who sought an exemption to be updated.[2]

---

[2]     Other policies related to immunization remain in effect, including command discretion to consider vaccination status in making operational decisions, but Plaintiffs have never claimed to challenge such decisions directly; nor have they sought waivers from any individual operational

Plaintiffs provide no evidence that the challenged vaccine requirement will be reinstated, that they will once again be subject to that requirement, or that any accommodation they seek regarding a substantially similar new requirement would be denied. Without direct evidence to the contrary, "it is remote, and indeed unrealistically speculative, that these defendants will ever again expose the plaintiffs to the claimed injury that prompted this lawsuit. The very process of the enactment of [the new law] by the state legislature and governor, combined with the presumption of good faith that we afford government actors, overcomes concerns of voluntary cessation." *Amawi*, 956 F.3d at 821. For these reasons, Plaintiffs cannot overcome the presumption that the NDAA and rescission memorandum moot this case.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's complaint as moot.

Dated:  January 20, 2023                           Respectfully submitted,

                                                   BRIAN M. BOYNTON
                                                   Principal Deputy Assistant Attorney General

                                                   ALEXANDER K. HAAS
                                                   Branch Director

                                                   ANTHONY J. COPPOLINO
                                                   Deputy Branch Director

---

decisions. Any future new vaccination requirement would present wholly different burden, compelling-interest, and least-restrictive-means issues. The future of these policies is uncertain in light of the very recent passage of the NDAA and subsequent rescission of the mandate and, in any event, assignment and other operational decisions are nonjusticiable. *See, e.g., Orloff v. Willoughby*, 345 U.S. 83, 93 (1953); *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988); *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973); *Navy SEALs 1-26*, 142 S. Ct. at 1301; *id*. at 1302 (Kavanaugh, J., concurring); *Navy SEAL 1*, No. 22-10645 (11th Cir. Mar. 30, 2022).

_/s/ Keri Berman_

KERI BERMAN
JOHNNY H. WALKER (D.C. Bar #991325)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 12304
Washington, D.C. 20530
Tel.: (202) 514-3183 / Fax: (202) 616-8460
Email: keri.l.berman@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2023, a true and correct copy of this Memorandum was served by CM/ECF on all counsel or parties of record.

/s/ *Keri Berman*