UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| **ROBERT SCHELSKE, HUNTLEY W. BAKICH, ZAKAI BUFKIN, SAMUEL L. CONKLIN, JOSHUA J. COSTROFF, SAMUEL GALLOWAY, DOMINIC O. MELL, COLLIN M. MORRISON, NICHOLAS SABALLA, PETER TESTA, LUKE T. CHRISMAN,** *on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>**LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense; **CHRISTINE WORMUTH**, in her official capacity as Secretary of the Army; **YVETTE K. BOURCICOT**, in her official capacity as Acting Assistant Secretary of the Army (Manpower and Reserve Affairs); **RAYMOND S. DINGLE**, in his official capacity as The Surgeon General and Commanding General, USA Medical Command; and **UNITED STATES OF AMERICA,**<br><br>Defendants. | Case No. 6:22-cv-00049-H<br><br>**PLAINTIFFS' AMENDED VERIFIED CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** |

## PLAINTIFFS' AMENDED VERIFIED CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiffs, through Counsel, and pursuant to FRCP 15(a)(1)(B), for themselves and others similarly situated, state for their Verified Amended Complaint as follows:[1]

---

[1] Plaintiffs reincorporate, by reference, their original Verified Complaint, as if fully stated herein).

## INTRODUCTION

1.     This action involves the continued systematic violation of federal law and the United States Constitution, specifically the Religious Freedom and Restoration Act, 42 U.S.C. § 2000bb through 42 U.S.C. § 2000bb-4 ("**RFRA**"), and the First Amendment's Free Exercise Clause by Defendants Lloyd J. Austin III, Christine Wormuth, Yvette K. Bourcicot, and Raymond S. Dingle, and those who report to them, (collectively, "**Defendants**" or "**Army**") , in a concerted and deliberate circumvention of the religious rights of members of the United States Army. All Plaintiffs have documented and confirmed sincerely held religious beliefs concerning Defendants' COVID-19 vaccination requirement. They all sought temporary religious accommodations from the COVID-19 vaccination requirement ("**Vaccine Mandate**"), but none of them had had their requests granted.[2] As a consequence of the exercise of their rights under RFRA, they had—and continue to have—adverse actions taken against them, which, as of the date of this Amended Complaint, have not been remedied.

2.     All Plaintiffs had their accommodation requests processed by and through their chain of command. As part of that process, each of them was interviewed at least once by an Army Chaplain who confirmed the sincerity of each Plaintiff's beliefs and the substantial burden being placed upon each Plaintiff to comply with Defendants' Vaccine Mandate. In each case, that Chaplain recommended approval of the religious accommodation.

3.     On a routine basis, and until the filing of this lawsuit, the Army failed to approve all but a few of the temporary religious accommodation requests, and all available information

---

[2] *Army Command Policy*, Army Regulation 600-20, Para. 5-6 f. (1). "Approved accommodations pertaining to worship practices, dietary practices, medical care, and modesty concerns are temporary and subject to modification or revocation by immediate commanders in accordance with the provisions of para 5–6 a. (4)."

indicates that those limited approvals were only for end-of-service personnel who would soon be exiting the service. At the same time, the Army has approved thousands of temporary exemptions to the same mandate, but for secular reasons.[3] In the same vein, the Army employed a double standard for the processing of religious accommodations, requiring centralized decision-making as part of a burdensome, multi-step process, while allowing medical exemptions to be approved at the local level as part of a much simpler, more straightforward process.

4.      In January 2023, the Secretary of Defense announced a general end to the Vaccine Mandate, at least for now, while permitting lower level commanders the ability to reimpose substantially similar requirements and reserving to themselves the ability to reimpose an identical requirement in the future. The Secretary simultaneously made statements that he believed the Vaccine Mandate was lawful, including as to religious adherents and objectors. At the same time, the Secretary of Defense announced that, at some unknown point in the future, letters of reprimand (General Officer Memoranda of Reprimands, "**GOMOR**")—which are career ending—will be removed from soldier records. He failed to clarify if other adverse actions (detailed in paragraphs 13-23 and 59-63 below) would be removed for those who, for religious reasons, were unable to comply with the Vaccine Mandate.

5.      Consequently, the Plaintiffs, all of whom have and will continue to suffer from past and ongoing adverse consequences, seek declaratory and injunctive relief, including equitable relief to be made whole from the ongoing violations of RFRA.

6.      Defendants' policies and actions have deprived and will continue to deprive

---

[3] As of September 1, 2022, the Department of the Army has only approved 32 active Army requests for religious accommodation, while approving 2,499 active-duty accommodations. *Department of the Army Updates Total Army COVID-19 Vaccination Statistics*, https://www.army.mil/article/259919/department_of_the_army_updates_total_army_covid_19_vaccination_statistics (last visited Sept. 13, 2022).

Plaintiffs of their paramount rights and guarantees under the United States Constitution and federal law.

7.      Defendants committed each act alleged herein under the color of law and authority.

## JURISDICTION AND VENUE

8.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and federal law.

9.      The Court also has jurisdiction under 28 U.S.C. § 1346 because this is a civil action against the United States.

10.     The Court also has jurisdiction under 28 U.S.C. § 1361 to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

11.     The Court also has jurisdiction pursuant to 42 U.S.C. § 2000bb-1(c) because Plaintiffs' religious exercise has been burdened by Defendants.

12.     Venue is proper in this district under the provisions of 28 U.S.C. § 1402 and 28 U.S.C. § 1391(e) as at least one Plaintiff resides in this judicial district.

## PLAINTIFFS

13.     Plaintiff Huntley Bakich, Jr. is a First Lieutenant on active duty in the Army and is currently assigned at Fort Bliss, Texas. Lieutenant Bakich submitted his religious accommodation request to the Vaccine Mandate on September 20, 2021, documenting his objections to the use of fetal cell lines in any part of the COVID-19 vaccine process. Army Chaplain Adam Cavalier confirmed that Lieutenant Bakich's religious beliefs were sincere and that requiring him to receive the COVID-19 vaccine would place an undue and substantial burden on his ability to practice his religion. On October 11, 2021, Lieutenant Bakich's Commander recommended approval of his request for religious accommodation. Eleven months later, Lieutenant Bakich's request for religious accommodation was denied on August 3, 2022 by Lieutenant General Raymond S.

4

Dingle, the Surgeon General of the Army. Lieutenant Bakich appealed that denial on August 16,

2022, to the Assistant Secretary of the Army for Manpower and Reserve Affairs ("**ASA/MR**").

While waiting for his religious accommodation to be acted on, Lieutenant Bakich was recognized

as the most qualified tank platoon leader in his company, and now has taken command of a Scout

Platoon. Since taking command of the Scout Platoon, he successfully redeployed his platoon from

Korea and prepared his platoon for a return to the National Training Center and a follow-on

deployment. The mission has continued to be accomplished despite his unvaccinated status, and

no mission has failed or in any way been impaired for that reason. However, because of

Defendants' continued desire to punish Lieutenant Bakich for his sincerely held religious beliefs,

his career progression was halted while he was waiting for his religious accommodation request

to be acted on. Although LT Bakich has now been permitted to attend the Maneuver Captain's

Career Course (MCCC), he is still behind his peers for promotion and assignment opportunities

due to the delay in attending this career required course. The delay in processing his request for

religious accommodation was deliberate and was intentionally used to coerce him into violating

his sincerely held religious beliefs. Lt. Bakich also now has discriminatory language on his Officer

Record Brief ("ORB"), which reads, "Assignment Considerations – PEND COVID-19 VACC

ACTION." If the discriminatory language remains in his record, it will affect his ability to get a

competitive assignment in the future. *See* Appendix, filed herewith, Exhibit 1. Despite his repeated

inquiries to his chain of command, and his counsel's inquiries to the U.S. Department of Justice,

he has not been informed whether, and on what timeline, any corrective or remedial action might

occur, and that uncertainty continues as of the filing of this Amended Complaint.

      14.    Plaintiff Zakai Bufkin is a Cadet First Class (Senior) at the United States Military

Academy ("**USMA**" or "**West Point**"). Cadet Bufkin submitted his religious accommodation

request on August 1, 2021, documenting his objections to the use of fetal cell lines in any part of the COVID-19 vaccine process. Army Chaplain Jose M. Rondon confirmed that Cadet Bufkin's religious beliefs were sincere, as well as substantially burdened by the Vaccine Mandate. Cadet Bufkin's request for religious accommodation was denied on December 10, 2021, by Lieutenant General Raymond S. Dingle. Cadet Bufkin appealed that denial on December 17, 2021. While awaiting his final denial, the mission at USMA was unaffected and was not in any way impaired. That was unsurprising since Cadet Bufkin has natural immunity to COVID-19. However, Cadet Bufkin's mental health began to deteriorate as he was subjected to coercion, ongoing harassment, and discrimination because of his unvaccinated status. On August 10, 2022, his final appeal was denied by the Acting Assistant Secretary of the Army for Manpower and Reserve Affairs ("ASA/MR") Secretary Yvette K. Bourcicot. Prior to that denial, and due to the stress placed upon him by West Point commanders and leadership through threats of adverse action, segregation and harassment—all due solely to his unvaccinated status and pending religious accommodation request—Cadet Bufkin was diagnosed with medical depression. As a result, his grades suffered in the Spring 2022 semester, and he failed three classes. West Point then expeditiously disenrolled him for academics, refusing to wait one week for the results of his full psychological evaluation despite notice of a preliminary depression diagnosis. But for the religious discrimination he suffered at the hands of the Defendants, he would have passed all his courses. He was also required to pay all travel expenses out of pocket for his return to his home of record in Florida. Cadet Bufkin currently sits at home in limbo waiting for his impending punishment (including the potential of being ordered to active duty for service recoupment) due to his separation from West Point for academics that were only substandard because of the religious discrimination and harassment he was forced to endure. He was issued a GOMOR which, to date, remains of record pending final

action. Despite his inquiries to his chain of command, and his counsel's inquiries to the U.S. Department of Justice, Cadet Bufkin has not been informed whether, and on what timeline, any corrective or remedial action might occur. That uncertainty continues as of the filing of this Amended Complaint.

15.     Plaintiff Samuel L. Conklin is a Cadet Corporal (Sophomore) at the USMA. Cadet Conklin submitted his religious accommodation request on October 1, 2021, documenting his objections to the use of fetal cell lines in any part of the COVID-19 vaccine process. Army Chaplain Jeffrey Tilden confirmed that Cadet Conklin's religious beliefs were sincere and substantially burdened by the Vaccine Mandate. Cadet Conklin's request for religious accommodation was denied on December 15, 2021, by Lieutenant General Raymond S. Dingle. He appealed that denial on December 21, 2021, but that appeal was denied on August 10, 2022, by the Acting ASA/MR Yvette K. Bourcicot. Since the start of the pandemic, Cadet Conklin has attended and completed all academic classes, completed summer training for his freshman and sophomore year, and completed all required physical testing without a single mission failure or impairment despite his unvaccinated status. He was issued a General Officer Memorandum of Reprimand ("GOMOR"), which, to date, remains of record pending final action. Cadet Conklin has natural immunity to COVID-19. Despite his repeated inquiries to his chain of command, and his counsel's inquiries to the U.S. Department of Justice, he has not been informed whether, and on what timeline, any corrective or remedial action might occur, and that uncertainty continues as of the filing of this Amended Complaint.

16.     Plaintiff Joshua Costroff is a highly decorated Staff Sergeant (E-6, or "SSG") in the Army and is currently stationed at Goodfellow Air Force Base in San Angelo, Texas, in this District and Division. SSG Costroff has successfully accomplished multiple overseas deployments

attached to Army special forces units. Outside of the imposition of the Vaccine Mandate, his service record is impeccable. SSG Costroff submitted his religious accommodation request on September 30, 2021, documenting his objections to the use of fetal cell lines in any part of the COVID-19 vaccine process. An Army Chaplain confirmed that SSG Costroff's religious beliefs were sincere and substantially burdened by the Vaccine Mandate, and recommended approval of his religious accommodation request. His Company Commander and his Battalion Commander also recommended approval of his religious accommodation request. SSG Costroff's request for religious accommodation was denied, however, by Lieutenant General Raymond S. Dingle on April 14, 2022. He appealed that denial on April 21, 2022. On September 8, 2022, SSG Costroff's appeal was denied by the Acting ASA/MR Yvette K. Bourcicot. While his religious accommodation request was pending, SSG Costroff, despite his natural immunity to COVID-19, was prohibited from attending the Senior Leader Course ("SLC") on May 31, 2022. Appendix, Exhibit 2). This forestalled his career progression, and made him ineligible for promotion to Sergeant First Class (E-7).  But for the inability to attend the Senior Leader Course unvaccinated (but naturally immune), and in light of his past career accomplishments, time in grade, time in service, decorations, overseas deployments, and general service, SSG Costroff would likely have been selected for Sergeant First Class. Since the start of the pandemic, he has trained and mentored nearly 500 students and his unvaccinated status has not had any impact on the mission in any way. Despite his repeated inquiries to his chain of command, and his counsel's inquiries to the U.S. Department of Justice, SSG Costroff has not been informed whether, and on what timeline, any corrective or remedial action might occur, and that uncertainty continues as of the filing of this Amended Complaint.

17.     Plaintiff Samuel Galloway is a Staff Sergeant in the Army and is currently stationed

at Caserma Del Din, Italy. SSG Galloway submitted his religious accommodation request on August 14, 2021, documenting his objections to the use of fetal cell lines in any part of the COVID-19 vaccine process and his belief that his body belongs to God and is the temple of the Holy Spirit. Army Chaplain Vernon G. Snyder IV confirmed that SSG Galloway's religious beliefs were sincere as well as substantially burdened by the Vaccine Mandate, and recommended approval of his religious accommodation request. On January 12, 2022, however, SSG Galloway's request for religious accommodation was denied by Lieutenant General Raymond S. Dingle. SSG Galloway appealed that denial on January 31, 2022. While awaiting a decision on his final appeal, SSG Galloway was ordered by his command to report to the behavioral health clinic for a command directed behavioral health appointment on June 3, 2022. Sergeant Galloway was told by his command that "[t]his is a mandatory process for anyone who submitted a religious accommodation request" and "a requirement for anyone who is being involuntarily separated." The command then noted that "I completely understand that your [Sergeant Galloway's] appeal is still pending but the direction from the BDE [Brigade] Commander is that we still complete all separation prerequisites (TAP, physical health assessment, etc.) so this is one of those appointments. It isn't personal." SSG Galloway's final appeal was denied on September 28, 2022. From March 2020 through August 2021, his unit, and those in his career field with similar duties, were able to perform their duties and accomplish mission objectives, notwithstanding the lack of a vaccine for COVID-19 during much of that time or the occurrence of COVID-19 generally in the community and in the Army. SSG Galloway's unit was able to deploy and operate in forward locations and accomplish their mission notwithstanding COVID-19. SSG Galloway has natural immunity to COVID-19. SGT Galloway has requested to reenlist for two years and is currently awaiting approval of that request, which is delayed solely due to his vaccination status. He is also scheduled to PCS

("Permanent Change of Duty Station") to Fort Bragg, North Carolina in May of 2023. He has been unable to confirm whether he will still be able to PCS, or whether he is able to reenlist, and, as of the date of this Amended Complaint, has not received approval for either. Despite his repeated inquiries to his chain of command, and his counsel's inquiries to the U.S. Department of Justice, SGT Galloway has not been informed whether, and on what timeline, any corrective or remedial action might occur. That uncertainty continues as of the filing of this Amended Complaint.

18.     Plaintiff Dominic O. Mell is a Cadet Sergeant (Junior) at the USMA. Cadet Mell submitted his religious accommodation request on October 2, 2021, documenting his objections to the use of fetal cell lines in any part of the COVID-19 vaccine process. An Army chaplain confirmed that Cadet Mell's religious beliefs were sincere and substantially burdened by the Vaccine Mandate. Nevertheless, Cadet Mell's request for religious accommodation was denied on December 13, 2021, by Lieutenant General Raymond S. Dingle. Cadet Mell appealed that denial on December 19, 2021, and his appeal was denied on August 10, 2022, by the Acting ASA/MR Yvette K. Bourcicot. On August 12, 2022, Cadet Mell received a GOMOR. Cadet Mell submitted rebuttal letters to the GOMOR on August 19, 2022. On August 29, 2022, the GOMOR was permanently filed in his Army Military Human Resource Record by Brigadier General Mark C. Quander, which, to date, remains of record. That same day, Cadet Mell was notified that he was under investigation for alleged misconduct for his failure to comply with the Vaccine Mandate. That board convened on September 21, 2022, and found that he had violated Article 90 of the Uniform Code of Military Justice (not following an order to vaccinate given to him by failing to get one of the currently-available COVID-19 vaccines against his sincerely held religious beliefs). The board of officers recommended that he be separated from West Point with an Honorable Discharge due to his sincerely held Catholic beliefs and the determination that his faith requires

him not to comply with the Vaccine Mandate. His separation remains imminent. During that same board, the United Stated Corps of Cadets Senior Medical Officer, Colonel Laura K. Dawson, admitted under oath that no West Point Cadet had ever been hospitalized because of COVID. Additionally, Cadet Mell has natural immunity to COVID-19. Despite his repeated inquiries to his chain of command, and his counsel's inquiries to the U.S. Department of Justice, Cadet Mell has not been informed whether, and on what timeline, any corrective or remedial action might occur, or even whether the Army has ceased processing his discharge. That uncertainty continues as of the filing of this Amended Complaint.

19.     Plaintiff Collin M. Morrison is a Cadet Corporal (Sophomore) at the USMA. Cadet Morrison submitted his religious accommodation request on November 19, 2021, documenting his objections to the use of fetal cell lines in any part of the COVID-19 vaccine process. Army Chaplain Jose M. Rondon confirmed that Cadet Morrison's religious beliefs were sincere and substantially burdened by the Vaccine Mandate. Cadet Morrison's request for religious accommodation was denied on December 20, 2021, by Lieutenant General Raymond S. Dingle. Cadet Morrison appealed that denial on January 1, 2022, and his appeal was denied on August 10, 2022, by the Acting ASA/MR Yvette K. Bourcicot. He was issued a GOMOR, which, to date, remains of record pending final action. Cadet Morrison has been ostracized by West Point leadership and his command, and now faces punitive measures and separation. While awaiting a decision on his religious accommodation, Cadet Morrison has been forced to eat by himself and has been singled out for harassment by leadership attempting to coerce him into violating his sincerely held religious beliefs to comply with the Vaccine Mandate. He was permitted, however, to participate in most activities with a mask and performed extremely well during those times with no mission failure occurring due to his unvaccinated status. Cadet Morrison also has natural

immunity to COVID-19. Despite his repeated inquiries to his chain of command, and his counsel's inquiries to the U.S. Department of Justice, he has not been informed whether, and on what timeline, any corrective or remedial action might occur. In fact, in a text communication between Cadet Morrison and his commander, Major Hagen, on February 7, 2023, Major Hagen stated:

> …we were all told to hold any action because you are part of that whole federal litigation thing, right? … if the case doesn't go well, the army could (emphasis) continue all the adverse action against unvaxxed [sic] persons…but if they say DoD can make a vaccine mandate, then I bet the action continues because it's still disobeying a legal order.

*See* Appendix, Exhibit 3. Cadet Morrison's uncertainty as to his status continues as of the filing of this Amended Complaint.

20.     Plaintiff Nicholas Saballa is a Cadet Corporal (Sophomore) at the USMA. Cadet Saballa submitted his religious accommodation request on December 1, 2021, documenting his objections to the use of fetal cell lines in any part of the COVID-19 vaccine process and his belief that his body is sacred. An Army chaplain confirmed that Cadet Saballa's religious beliefs were sincere and substantially burdened by the Vaccine Mandate. Cadet Saballa's request for religious accommodation was denied on December 15, 2021, by Lieutenant General Raymond S. Dingle. Cadet Saballa appealed that denial on December 21, 2021, and his appeal was denied on August 10, 2022, by the Acting ASA/MR Yvette K. Bourcicot. After receiving his final denial and the renewed order to get the COVID-19 vaccination, he was issued a GOMOR, which, to date, remains of record pending final action. Although he is not currently involved in any activities, no mission at USMA has failed or been impaired due to his unvaccinated status. Cadet Saballa also has natural immunity to COVID-19. Despite his repeated inquiries to his chain of command, and his counsel's inquiries to the U.S. Department of Justice, he has not been informed whether, and on what timeline, any

corrective or remedial action might occur, and whether the Army has ceased processing his discharge. That uncertainty continues as of the filing of this Amended Complaint.

21.     Plaintiff Robert Schelske is a Staff Sergeant in the Army and is currently stationed at Goodfellow Air Force Base in San Angelo, Texas, in this District and Division. SSG Schelske submitted his religious accommodation request on September 14, 2021, documenting his objections to the use of fetal cell lines in any part of the COVID-19 vaccine process. An Army Chaplain confirmed that SSG Schelske's religious beliefs were sincere and substantially burdened by the Vaccine Mandate and recommended approval of his religious accommodation request. Indeed, prior to his denial, both SSG Schelske's Company Commander and his Battalion Commander recommended approval of his religious accommodation request. However, SSG Schelske's request for religious accommodation was denied by Lieutenant General Raymond S. Dingle on February 1, 2022. SSG Schelske appealed that denial on February 13, 2022. On August 10, 2022, his appeal was denied by Acting ASA/MR Yvette K. Bourcicot. Since the beginning of the pandemic, SSG Schelske has served in the role of interim First Sergeant, being selected for this position over other higher-ranking non-commissioned officers ("**NCO**"). He was also selected to serve as the NCO in charge of the course that he currently instructs, and he has instructed for more than 1500 hours since the pandemic began. Despite his unvaccinated status, the mission has continued, and no mission in his command has failed or been impaired. SSG Schelske has natural immunity to COVID-19. SSG Schelske was eligible to attend the Senior Leader Course ("SLC") in December of 2022 and January of 2023, but was not allowed to attend due to his unvaccinated status, and despite his natural immunity. But for that inability to attend the SLC unvaccinated (but naturally immune), and in light of his past career accomplishments, time in grade, time in service,

decorations, and general service, SSG Schelske could have been selected for Sergeant First Class. In early February 2023, SSG Schelske learned that he had been flagged by Headquarters, Department of the Army, due to his vaccination status, such as to prevent him from changing stations, from promoting, and would further result in other harms. In the days leading up to the filing of this Amended Complaint, that flag was lifted, suggesting litigation posturing. Despite his repeated inquiries to his chain of command, and his counsel's inquiries to the U.S. Department of Justice, he has not been informed whether, and on what timeline, any corrective or remedial action might occur. That uncertainty continues as of the filing of this Amended Complaint.

22.     Plaintiff Peter Testa is a Staff Sergeant in the Army and is currently stationed at Fort Bliss, Texas. Sergeant Testa submitted his religious accommodation request on September 23, 2021, documenting his objections to the use of fetal cell lines in any part of the COVID-19 vaccine process. Chaplain Adam G. Cavalier confirmed that SSG Testa's religious beliefs were sincere and substantially burdened by the Vaccine Mandate, and recommended approval of his religious accommodation request. On October 9, 2021, SGT Testa's Commander recommended approval of his request for religious accommodation. Eleven months later, SSG Testa's request for religious accommodation was denied by Lieutenant General Raymond S. Dingle on August 15, 2022. SSG Testa appealed that denial on August 20, 2022 and action on that appeal has now been halted. Since submitting his request for religious accommodation, SSG Testa's career progression has also been halted, and he is now behind his peers. He was told by his command that he would not be permitted to attend SLC, due to his vaccination status. He still does not have a class date for SLC, which he needs to attend in order to be promoted. But for that inability to attend the SLC unvaccinated (but

naturally immune), and in light of his past career accomplishments, time in grade, time in service, decorations, and general service, SSG Testa could have been selected for Sergeant First Class. Without the course, he is stuck in limbo—prevented not just from career advancement but even from moving to a different post or doing an interpose transfer to another unit. Despite SSG Testa's unvaccinated status, the mission has continued, and no mission in his command has failed or been impaired. Despite his repeated inquiries to his chain of command, and his counsel's inquiries to the U.S. Department of Justice, he has not been informed whether, and on what timeline, any corrective or remedial action might occur. That uncertainty continues as of the filing of this Amended Complaint.

23.     Plaintiff Luke Tyler Chrisman was a Private First Class ("PFC") in the Army and was stationed overseas at Camp Casey, Korea prior to his separation. On September 8, 2021, Mr. Chrisman submitted his religious accommodation request, documenting his objections to the use of abortion-derived fetal cell lines in the production and testing of the COVID-19 vaccines as well as the belief that his "body is the temple of the Holy Ghost." Chaplain Caruso interviewed Mr. Chrisman on September 9, 2021 and confirmed that Mr. Chrisman's religious beliefs were sincere and substantially burdened by the Vaccine Mandate. Mr. Chrisman's request for religious accommodation was denied by Lieutenant General Raymond S. Dingle on November 18, 2021. Mr. Chrisman then appealed that denial on December 3, 2021. His appeal was denied on June 16, 2022 despite his Commander at the time stating that 99% of his company was vaccinated. After his appeal was denied by Acting ASA/MR, Yvette K. Bouricot, Mr. Chrisman was given another order to be vaccinated with the currently available COVID-19 vaccines. In that counseling statement, Mr. Chrisman wrote, "I am not refusing or disobeying an order to being vaccinated. I am seeking protection under the

15

religious freedoms [sic] restoration act of 1993." On June 30, 2022, his commander, CPT Kristopher Reed initiated a flag for "Adverse Action (A)." Mr. Chrisman was given a GOMOR for his failure to follow the order to receive the COVID-19 vaccine on July 14, 2022. After submitting his rebuttal to the GOMOR, Brigadier General Frederick L. Crist made the decision to file his GOMOR in Mr. Chrisman's Military Human Resource Record ("AMHRR"). Immediately after, CPT Reed initiated action to separate Mr. Chrisman from the Army for the commission of a serious offense. Mr. Chrisman was separated from the Army on November 25, 2022 with a General discharge. His reason for separation was characterized as "MISCONDUCT (SERIOUS OFFENSE)." Most recently, Mr. Chrisman went to an interview for a paralegal position in Waynesville, Missouri. During the interview, he was asked about the discharge characterization on his DD214 and to provide an explanation as to why it said "Misconduct (Serious Offense)." He explained to the interviewer that this is what the Army gives those who are unable to receive the currently available COVID-19 vaccination due to their religious beliefs. Mr. Chrisman felt embarrassed and humiliated that he had to even answer that question and he believed that the Army had used his religious beliefs to punish and humiliate him, knowing that this harm would continue as he tried to move on with his life. Mr. Chrisman also has natural immunity to COVID-19. *See* Appendix, Exhibit 4. There is no indication that Defendants will take any corrective action on this discharge, or similar discharges, as the Secretary of Defense's rescission memoranda indicated that a discretionary administrative review process could be pursued (with no guaranties of success or even due process), notwithstanding the patent violations of RFRA by Defendants.

**DEFENDANTS**

24.     Defendant Lloyd J. Austin, III is the United States Secretary of Defense. Secretary Austin issued a memorandum on August 24, 2021, requiring the United States Armed Forces to vaccinate all service members, including Plaintiffs. Secretary Austin also ensured that his directive was followed through the implementation of various enforcement mechanisms. Secretary Austin is sued in his official capacity.

25.     Defendant Christine Wormuth is the United States Secretary of the Army. Secretary Wormuth issued a directive on September 14, 2021, which required the Army to vaccinate all Army service members, including Plaintiffs, against COVID-19—the Vaccine Mandate. Secretary Wormuth also ensured that her directive was followed by implementing various enforcement mechanisms. Secretary Wormuth is sued in her official capacity.

26.     Defendant Yvette K. Bourcicot is the acting ASA/MR and is responsible for the denial of thousands of religious accommodation appeals as the final appellate authority for the Army. Assistant Secretary Bourcicot is sued in her official capacity.

27.     Defendant Raymond S. Dingle is the Surgeon General and Commanding General, Army Medical Command and is responsible for the initial denial of thousands of requests for religious accommodation from Army soldiers. Lieutenant General Dingle is sued in his official capacity.

28.     Defendant United States of America, whose policies are requiring the United States Armed Forces to vaccinate all service members contrary to federal and constitutional law, including Plaintiffs, by not providing religious accommodations is also sued herein.

**FACTUAL BACKGROUND**

29.     On August 24, 2021, Secretary Austin issued a memorandum titled "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members" (the Vaccine

17

Mandate).[4] The Vaccine Mandate directs DoD to vaccinate all active duty and reserve service members against COVID-19.

30.    The Vaccine Mandate states that the Military Departments, including the Army, should use existing policies and procedures to manage mandatory vaccination of service members to the extent practicable.

31.    On September 14, 2021, Defendant Wormuth, Secretary of the Army, issued an order to members of the Army to be vaccinated for COVID-19.[5]

32.    On November 16, 2021, Secretary Wormuth issued an order to punish soldiers who refuse to "become vaccinated against COVID-19."[6] In that memorandum, Secretary Wormuth ordered that those soldiers who refused to vaccinate against COVID-19 would be removed from receiving the following favorable actions: reenlistment, reassignment, promotion, appearance before promotion boards, receipt of awards and decorations, attendance at military or civilian schools, use of earned tuition assistance, receipt of enlistment bonuses or reenlistment bonuses, and assumption of command positions.[7] After the soldier is flagged, they will receive a GOMOR.[8]

33.    Secretary Wormuth issued subsequent guidance on January 31, 2022, establishing personnel actions for unvaccinated active, reserve, national guard soldiers, cadets at the USMA,

---

[4]    https://media.defense.gov/2021/Aug/25/2002838826/-1/-1/0/MEMORANDUM-FOR-MANDATORY-CORONAVIRUS-DISEASE-2019-VACCINATION-OF-DEPARTMENT-OF-DEFENSE-SERVICE-MEMBERS.PDF (last visited Sept. 28, 2022).

[5] *Army Announces Implementation of Mandatory Vaccines for Soldiers,* Sept. 14, 2021, https://www.army.mil/article/250277/army_announces_implementation_of_mandatory_vaccines_for_soldiers (last visited Sept. 12, 2022).

[6] *Flagging and Bars to Continued Service of Soldiers Who Refuse the COVID-19 Vaccination Order*, Memorandum dated Nov. 16, 2021. Available at: https://www.govexec.com/media/secarmy_memo_flags_and_bars_vaccination_refusal.pdf

[7] *Id.*

[8] *Id.*

and Senior Reserve Officers' Training Corps who refuse the COVID-19 vaccination order.[9]

34.     Applicable Army regulations employed a double standard for the processing of religious accommodations, versus other grounds for exemption from the Vaccine Mandate. For religious objectors, the Army implemented a burdensome, multi-step process involving: interviews with chaplains to make sincerity and substantial burden determinations and recommendations, command counseling, medical provider counseling, and a multi-step recommendation process to the Army Surgeon General.[10] Conversely, soldiers qualifying for administrative end of service or temporary medical exemptions involve a much simpler process with localized determinations. *Id.* Predictably, the discriminatory religious exemption process and policy has yielded discriminatory results. And, notwithstanding the rescission of the Vaccine Mandate, the same (sham) general processes exist to provide exemptions to soldiers from any future mandate, which all of these Plaintiffs and putative class members (except Plaintiff Chrisman) are likely to avail themselves of in the future given their sincerely held religious beliefs and the Army's insistence on a variety of other official and unofficial means to coerce soldiers into receiving the COVID-19 vaccine.

35.     As outlined in the following paragraphs, all Plaintiffs have sought religious exemptions from the Vaccine Mandate pursuant to the federal RFRA (42 USC 2000bb) and its implementing regulations, including Department of Defense Instruction ("DoDI") 1300.17.[11]

---

[9]     https://armypubs.army.mil/epubs/DR_pubs/DR_a/ARN34562-ARMY_DIR_2022-02-000-WEB-1.pdf (last visited Sept 13, 2022).

[10]    https://armypubs.army.mil/epubs/DR_pubs/DR_a/pdf/web/r40_562.pdf (last visited Feb. 6, 2023) at AR40-562, ¶ 2.6.

[11]    https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/130017p.pdf (last visited Sept. 13, 2022) ("Establishes DoD policy providing that an expression of sincerely held beliefs (conscience, moral principles, or religious beliefs) may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, or assignment.").

36.     All Plaintiffs have received an order to receive a COVID-19 vaccination with threats of administrative action to include separation and/or punitive action if they fail to comply with the vaccination requirement.

37.     All Plaintiffs have documented and confirmed sincerely held religious beliefs from Defendants' COVID-19 Vaccine Mandate. They all seek temporary religious accommodations from the COVID-19 vaccination requirement, but none of them had their requests approved.

38.     All Plaintiffs have contracted and recovered from COVID-19 and now have natural immunity to COVID-19.

39.     The former COVID-19 vaccination mandate required servicemembers to receive the primary dose(s) only. As of December 8, 2022, 97% of active-duty, 91% of National Guard, and 92% of the Army Reserve servicemembers were vaccinated.[12] Updated CDC guidance indicates that primary doses alone do not offer lasting protection against COVID-19, with estimated vaccine effectiveness decreasing to 37% only five months post-vaccination. This dwindling efficacy was further demonstrated during the Omicron-predominant period, when a greater percentage of COVID-19 hospitalizations involved patients who were vaccinated with the primary doses (45%) than unvaccinated patients (43%).[13]

40.     On December 23, 2022, the President signed into law the James M. Inhofe National Defense Authorization Act for fiscal Year 2023 ("NDAA"). *See* Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2571-72 (Dec. 23, 2022). The NDAA directed the Secretary of Defense to rescind the

---

[12] [Department of the Army updates Total Army COVID-19 vaccination statistics | Article | The United States Army.](#)

[13] *Waning 2-Dose and 3-Dose Effectiveness of mRNA Vaccines Against COVID-19–Associated Emergency Department and Urgent Care Encounters and Hospitalizations Among Adults During Periods of Delta and Omicron Variant Predominance — VISION Network, 10 States, August 2021–January 2022 | MMWR (cdc.gov)* [https://www.cdc.gov/mmwr/volumes/71/wr/mm7107e2.htm](https://www.cdc.gov/mmwr/volumes/71/wr/mm7107e2.htm) (last visited Feb. 8, 2023).

August 2021 memorandum requiring vaccination of service members for COVID-19 within 30 days.

  41. On January 10, 2023, Secretary Austin rescinded the mandate as directed. (*See* ECF No. 85-1). Under that memorandum, separation from the service is prohibited based on refusal of the COVID-19 vaccine by service members who sought an exemption from the mandate and all services were directed to "remove any adverse actions solely associated with denials of such requests." The memorandum also stopped all processing of religious accommodation requests, while stating:

> Other standing Departmental policies, procedures, and processes regarding immunizations remain in effect. These include the ability of commanders to consider, as appropriate, the individual immunization status of personnel in making deployment, assignment, and other operational decisions including when vaccination is required for travel to, or entry into a foreign nation.

*Id.* Neither the NDAA, nor any statements by Secretary Austin, indicate that the Vaccine Mandate would not be reimposed, and the Secretary reserved to himself the ability to reimpose the Vaccine Mandate, or ones substantially similar to it. In fact, he has made it known to the public that he believes his order was lawful and appropriate ("Secretary Austin has been very clear that he opposes the repeal of the vaccine policy . . . He continues to believe that all Americans, including those in the armed forces, should be vaccinated and boosted for Covid-19.").[14] As seen in the case of Cadet Morrison, it appears that Defendants still defend their actions, have not undone the harm from their actions, and are simply awaiting the outcome of this litigation to finalize the harm from their ongoing, discriminatory policies.

---

[14] Connor O'Brien, *Defense Bill Rolls Back Pentagon's Covid Vaccine Mandate,* POLITICO (Dec. 6, 2022), https://www.politico.com/news/2022/12/06/ndaa-pentagon-coronavirus-vaccine-mandate-00072668 (last visited Feb. 8, 2023).

42.     Defendants continue to discriminate against those who requested religious accommodation by imposing restrictions on them despite the COVID-19 vaccine mandate being rescinded. Most recently, FRAGO 38 HQDA EXORD 225-21 was published and now prevents unvaccinated service members from moving from their current duty stations (PCS), which prohibits their ability to take and be considered for future career-enhancing assignments.[15] *See* Appendix, Exhibit 5. Defendants deliberately included this provision in FRAGO 38 on February 2, 2023, for the purpose of identifying and continuing to punish those who were flagged because they were unable to get the COVID-19 vaccine.

43.     Although soldiers may no longer be directly separated from the military solely based on COVID-19 vaccination status, these ongoing restrictions work to prevent unvaccinated servicemembers from being promoted in rank and otherwise advancing their military careers. Because military service members are legally and contractually bound to service for specific lengths of time, they do not enjoy the same freedoms as civilians with respect to pursuing alternative employment. Furthermore, under the Army's "up or out" system, unvaccinated long-term servicemembers face involuntary separation if they are unable to achieve promotions. As such, the Army's continued implementation of these discriminatory, career-ending policies ultimately results in a soldier's permanently diminished earning potential at best, and *de facto* or "constructive" separation at worst.

---

[15] Paragraph 3.D.15.B.3.K. states "Soldiers who are flagged in accordance with Annex YYY will not PCS." Annex YYY is the Secretary of the Army memorandum titled, "Flagging and Bars to Continued Service of Soldiers who Refuse the COVID-19 Vaccination Order," dated 16 November 2021. *See* ECF No. 14, Ex. 3, Pg. ID 86.

**The Army Employs an Unconstitutional Double Standard for Exemption
Requests, Granting Thousands of Secular Requests While Denying All But a Few
Religious Accommodation Requests**

44.     As of the date of the initial Complaint, the Army had received over 10,000 requests

for religious accommodation from the Vaccine Mandate and had only approved 32 of those

requests.[16] In the meantime, the Army had granted close to 15,000 permanent and temporary

secular exemption requests to that same Vaccine Mandate.[17]

| U.S. ARMY COVID-19 EXEMPTION DATA | | | |
|---|---|---|---|
| **Temporary** | **Approved:** *(includes requests for permanent exemptions)* | | |
| **Active Army** | 2,499 | | |
| **Army National Guard** | 7,593 | | |
| **Army Reserve** | 4,660 | | |
| **Permanent Medical** | Approved: | Disapproved: | Requested: |
| **Active Army** | 27 | 705 | 759 |
| **Army National Guard** | 10 | 48 | 63 |
| **Army Reserve** | 4 | 296 | 325 |
| **Permanent Religious** | Approved: | Disapproved: | Requested: |
| **Active Army** | 32 | 1,673 | 4,783 |
| **Army National Guard** | 0 | 49 | 1,674 |
| **Army Reserve** | 0 | 33 | 1,935 |

[18]

45.     The granting of almost fifteen thousand secular waivers to the Vaccine Mandate

belies any claim that vaccination is a compelling need for mission accomplishment, and this fact

conclusively rebuts any asserted compelling interest. Moreover, and upon information and belief,

the 32 religious exemptions were all granted to either end-of-service personnel or to those who

otherwise qualified for a medical or administrative exemption. This was confirmed when Secretary

---

[16] *Department of the Army Updates Total Army COVID-19 Vaccination Statistics*,
https://www.army.mil/article/259919/department_of_the_army_updates_total_army_covid_19_v
accination_statistics (last visited Feb. 10, 2023).

[17] *Id.*

[18] *Id.*

Wormuth testified before the House Armed Services Committee on May 12, 2022, that the vast majority, if not all, of the approved religious accommodation requests at that point were for those Soldiers who were in the process of leaving the Army.[19]

46.     Defendants Austin, Wormuth, Bourcicot, and Dingle, in violation of RFRA, each failed to grant (or even meaningfully and individually consider) thousands of well-founded religious accommodation requests. In contrast, thousands of secular requests for accommodation, involving job duties similar in risk from a COVID-19 perspective, were granted at the local level without any of the additional steps that were required for religious accommodation purposes taking place.

47.     Defendants now continue to violate RFRA as they have taken, continue to take, and threaten to take additional actions against Plaintiffs.

48.     In the Fall of 2022, it came to light that the Department of Defense ("**DOD**") Acting Inspector General ("**IG**"), Mr. Sean W. O'Donnell, notified Defendant Austin in an official memorandum that the IG "found a trend of generalized assessments" when reviewing dozens of complaints regarding denied religious accommodation requests, "rather than the individualized assessment that is required by Federal law and DoD and Military Service policies."[20] The DOD IG further explained that "[t]he denial memorandums we reviewed generally did not reflect an individualized analysis, demonstrating that the Senior Military Official considered the full range

---

[19] Testimony of Secretary of the Army Christine Wormuth before the House Armed Services Committee on May 12, 2022, https://armedservices.house.gov/hearings?ID=BC7D976E-87D8-47A4-B818-7711504FC4E9 .

[20] Memorandum from Department of Defense Inspector General, Mr. Sean W. O'Donnell, to Secretary of Defense, Lloyd Austin, *Subject: Denials of Religious Accommodation Requests Regarding Coronavirus Disease-2019 Vaccination Exemptions*, dated June 2, 2022. *Available at* https://s3.amazonaws.com/static.militarytimes.com/assets/pdfs/1663774585.pdf

of facts and circumstances relevant to the particular religious accommodation request."[21] The IG's review included a review of religious accommodation requests from all branches of the military, including the Army.

49.     Plaintiffs were unable to comply with the order to receive the COVID-19 vaccination because it violated their fundamental dictates of religion, even in the face of severe punishments under military law.

### Defendants Fail to Meet the Compelling Interest Standard and Fail to Provide Any Accommodation to Plaintiffs as Required by RFRA

50.     Dr. Deborah Birx revealed in her testimony before Congress on June 23, 2022, that the COVID-19 vaccines do not prevent infection, do not prevent transmission, and do not prevent hospitalization,[22] thereby refuting the stated basis for Defendants' vaccine mandate, and refuting any stated compelling interest.

51.     It has also been known for more than a year that natural immunity provides better protection against reinfection and death than immunity derived from the currently available vaccinations.[23]

52.     In further refutation to Defendants' stated compelling need argument, updated guidance published in August 2022 by the CDC confirmed that those previously infected with

---

[21] *Id.*

[22] *Dr. Birx Says She Knew of Natural COVID-19 Reinfections as Early as December* 2020, June 23, 2022, https://www.c-span.org/video/?c5021092/dr-birx-knew-natural-covid-19-reinfections-early-december-2020 (last visited Feb. 10, 2023).

[23] *Previous infection provides equivalent or better immunity to being fully vaccinated and boosted*, http://www.nejm.org/doi/full/10.1056/NEJMoa2203965/ (last visited Feb. 10, 2023); *see also* CDC, *COVID-19 Cases and Hospitalizations by COVID-19 Diagnosis—California and New York, May–November 2021*, https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e1.htm?s_cid=mm7104e1_w (noting that "[b]y October [of 2021], persons who survived a previous infection had lower case rates than persons who were vaccinated alone").

COVID-19 have at least the same degree of protection against severe illness as those who have been vaccinated.[24]

53.     CDC findings reveal that 95% of Americans have natural immunity from COVID-19 (again, now known to be equivalent to vaccine-derived immunity),[25] and that recent prevalent COVID-19 strains are less pathogenic than those prevalent in 2020 and 2021.[26]

54.     Further, the Commander in Chief has made public acknowledgments that the pandemic is over.[27]

55.     Among other less restrictive methods, the Army could have accommodated Plaintiffs' requests for religious accommodation by:

    a.     Requiring testing to determine infection;

    b.     Administering temperature checks and/or other screening to determine infection;

    c.     Permitting Plaintiffs to demonstrate they have robust and long-lasting natural immunity to count for compliance with the Vaccine Mandate;

    d.     Providing an exemption as vaccination will not guarantee immunity (and there are members who are currently serving who are not immune to

---

[24] *Summary of Guidance for Minimizing the Impact of COVID-19 on Individual Persons, Communities, and Health Care Systems — United States, August 2022,* https://www.cdc.gov/mmwr/volumes/71/wr/mm7133e1.htm, (last visited Feb. 10, 2023). "CDC's COVID-19 prevention recommendations no longer differentiate based on a person's vaccination status because breakthrough infections occur, though they are generally mild, and persons who have had COVID-19 but are not vaccinated have some degree of protection against severe illness from their previous infection."

[25] https://covid.cdc.gov/covid-data-tracker/#nationwide-blood-donor-seroprevalence (last visited Feb. 10, 2023).

[26] https://www.cdc.gov/mmwr/volumes/71/wr/mm7137a4.htm (last visited Feb. 10, 2023).

[27] https://www.cbsnews.com/news/president-joe-biden-60-minutes-interview-transcript-2022-09-18/ (last visited Feb. 10, 2023).

diseases for which they were vaccinated, yet they remain able to serve and deploy); and/or

e.     Given the significant level of vaccine compliance within the military, accommodating the few numbers of religious exemption requests by providing an exemption (which they *are* already doing for other exemptions), which is not a burden.

**Injunctive Relief Allegations**

56.     Plaintiffs have had (and will continue to have) their fundamental constitutional and statutory rights violated by these official capacity Defendants, each of whom is personally involved with the enforcement and/or threatened enforcement of the challenged orders. Plaintiffs have and continue to be irreparably harmed if injunctive relief is not issued.

57.     The public interest is served by the vindication of constitutional and statutory rights, and the weighing of harms warrants issuing injunctive relief. Because the scope of the violations extend to numerous other members of the Army who are similarly situated, Plaintiffs seek an injunction that covers others similarly situated to remedy the violations at issue.

**Ongoing Harm and Requested Forward Looking Equitable Relief**

58.     While the Secretary of Defense has, at least temporarily, rescinded the Vaccine Mandate, harm continues for thousands of soldiers as a result of ongoing religious discrimination. First, there is nothing in the NDAA that prevents the Secretary from reimposing the mandate or a substantially similar mandate.

59.     Second, hundreds of former soldiers, like Mr. Chrisman, who sought religious accommodations to the vaccination mandate, were given life-long stigmatizing discharges, which Defendants refuse to correct without forcing soldiers to resort to an uncertain and, at-best, arbitrary

administrative process. For such persons with such discharges, Plaintiffs seek "root and branch relief" requiring the Army to correct their records, to reflect non-adverse reasons for discharge, to remove all codes that would prohibit a soldier from reenlisting or continued service, and upgrade all General discharge characterizations to Honorable. Such "root and branch" relief could also include reinstatement and/or return to duty.

60.     Third, hundreds of soldiers who sought religious accommodations to the vaccination mandate were denied the ability to attend required career progression courses. This includes classes such as the Senior Leader Course for SSG Schelske, SSG Testa, and SSG Costroff—which is required for promotion to Sergeant First Class—or the Maneuver Captain's Career Course for LT Bakich. While each have been recently permitted to attend these courses, they were unable to do so in a timely manner, resulting in significant career harm. For such persons, the inability to attend career courses has delayed promotions solely because of their unvaccinated, but naturally immune, status. For those soldiers we seek "root and branch relief" requiring the Army, to correct those service member records appropriately to reflect that they completed these courses when they would otherwise have done so, and to order special promotion selection boards to reconsider such soldiers for promotion.

61.     Fourth, thousands of soldiers who sought religious accommodations to the vaccination mandate received negative GOMORs for their failure to comply with the Vaccine Mandate, such as those given to Cadets Bufkin, Conklin, Mell, Morrison, and Sabala. All of these remain in their files as of the date of this Amended Complaint. While the Army has indicated that at some point, perhaps a year from now, it will take action to remove such adverse action, the timely failure to do so causes ongoing career harm, and, for these cadets, can be used as a basis to deny them the ability to commission. For such persons, we seek "root and branch relief" requiring

the Army to remove these actions from the soldiers' files.

62.   Fifth, hundreds of soldiers who sought religious accommodations to the Vaccine Mandate, such as SSG Galloway, have had their ability to reenlist put on hold, due to their vaccination status. It is unclear whether or when such soldiers may be permitted to reenlist. For such persons, we seek "root and branch relief" requiring the Army to permit the re-enlistment of soldiers denied re-enlistment solely due to their vaccination status.

63.   Sixth, and finally, the Army has caused some soldiers who sought religious accommodations to the Vaccine Mandate to suffer other forms of harm, including soldiers like Cadet Bufkin who suffered career ending consequences that flowed directly from Defendants' discriminatory actions and his related diagnosed depression. We seek "root and branch" relief for these soldiers as well, directing the Army to undertake appropriate corrective action to place them back where they would have been but for Defendants' illegal conduct.

### Class Action Allegations

64.   Plaintiffs reincorporate the preceding paragraphs as if fully written herein.

65.   The actions and violations outlined in this Complaint affect not only the Plaintiffs but also thousands of active, reserve, Guard, and discharged service members similarly situated.

66.   Pursuant to FRCP 23(a): (i) the class is so numerous that joinder of all members is impracticable (with thousands of potential plaintiffs); (ii) there are questions of law or fact common to the class (including identical claims and an identical policy of religious discrimination); (iii) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (iv) the representative parties will fairly and adequately protect the interests of the class.

67.   Pursuant to FRCP 23(b): (i) prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to

individual class members that would establish incompatible standards of conduct for the party

opposing the class; and (ii) the party opposing the class has acted or refused to act on grounds that

apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole.

68.     Plaintiffs seek a Plaintiff class, consisting of those persons who: (i) submitted a

religious accommodation request to the Army from the Army's COVID-19 vaccination

requirement, where the request was submitted or was pending at any time from August 1, 2021 to

present; (ii) were confirmed as having a sincerely held religious belief substantially burdened by

the Army's COVID-19 vaccination requirement by or through Army Chaplains; (iii) either (a) had

their requested accommodation denied; or (b) did not have action on that request; and (iv) had

adverse actions taken against them due to their refusal to vaccinate,[28] which have not been removed

or corrected as of the date of the Amended Complaint.

### FIRST CAUSE OF ACTION
### Violation of Plaintiffs' Rights Under the
### Religious Freedom Restoration Act
### 42 U.S.C. § 2000bb *et seq.*

69.     Plaintiffs reincorporate the foregoing as if fully written herein.

70.     Pursuant to 42 U.S.C. 2000bb-1(a), "[i]n general Government shall not

substantially burden a person's exercise of religion even if the burden results from a rule of general

applicability, except as provided in subsection (b)."

71.     The exception in 42 U.S.C. 2000bb-1(b) provides that "Government may

substantially burden a person's exercise of religion only if it demonstrates that application of the

---

[28] Including harms set forth in Paragraphs 59 to 63.

burden to the person— (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

72.     Defendants substantially burdened, and continue to substantially burden, Plaintiffs' exercise of religion by failing to grant religious accommodations and failing to timely process Plaintiffs' accommodation requests (even though this is required by applicable regulation), and then taking and continuing to take adverse actions against the Plaintiffs for their exercise of sincerely held religious beliefs, which is further prohibited under DODI 1300.17.

73.     Defendants' burden on Plaintiffs' exercise of religion is not in furtherance of a compelling governmental interest, particularly given the Defendants' serial granting of secular exemptions, and in light of recent findings about robust natural immunity present in the population (and all of these Plaintiffs) through natural immunity, as well as recent findings that vaccination does not stop the spread or transmission of the disease.

74.     Further, even if the government can assert a compelling governmental interest, the Vaccine Mandate is and was not the least restrictive means of furthering that interest, as evidenced by the Government granting thousands of secular exemptions from the same mandate, and because less restrictive means—such as those set forth in Paragraph 55—exist.

75.     Pursuant to 42 U.S.C. 2000bb-1(c), "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."

76.     Plaintiffs have no adequate remedy at law for the past and continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

77.     Plaintiffs have suffered and continue to suffer irreparable harm as a direct result of Defendants' policy and actions.

78.     Further, Plaintiffs seek injunctive relief to halt the ongoing violations of federal law, to obtain compliance by Defendants with same, and to order appropriate forward-looking corrective action via "root and branch" relief.

79.     Further, Plaintiffs seek reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988(b) (providing that attorney fees and costs awards are available against the federal government and its officials pursuant to RFRA claims).

**SECOND CAUSE OF ACTION**
**Violation of Plaintiffs' First Amendment Right to**
**the Free Exercise of Religion,**
**U.S. Const. Amend. I**

80.     Plaintiffs reincorporate the foregoing as if fully written herein.

81.     The First Amendment of the Constitution protects the "free exercise" of religion. Fundamental to this protection is the right to gather and worship. *See W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943) ("The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts . . . [such as the] freedom of worship and assembly."). As the Supreme Court has noted, "a law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Church of the Lukumi Babalu Aye, Inc.v. Hialeah*, 508 U.S. 520, 546 (1993). Because of the Army's policy of granting secular exemptions to the Vaccine Mandate on a case-by-case basis, its refusal to grant religious accommodations on that same basis triggers strict scrutiny. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021).

82.     Defendants have violated and continue to violate the First Amendment's Free Exercise Clause, as described herein, and cannot meet strict scrutiny because they can neither establish a compelling governmental interest, nor narrow tailoring, given that they grant thousands

32

of accommodations to the Vaccine Mandate for secular reasons while simultaneously refusing accommodations to those who request religious exemptions.

83.     Plaintiffs have sincerely held religious beliefs that are substantially burdened by the Vaccine Mandate.

84.     Plaintiffs have no adequate remedy at law for the past and continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

85.     Plaintiffs have suffered and continue to suffer irreparable harm as a direct result of Defendants' policy and actions.

86.     Plaintiffs thus seek declaratory and injunctive relief under 28 USC § 2201 and 28 USC § 2202 for these First Amendment violations, as well as reasonable attorney fees pursuant to 42 U.S.C. § 1988(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment against Defendants and provide Plaintiffs with the following relief:

a.      That this Court issue a declaration that the challenged actions are unconstitutional and illegal under RFRA and/or the First Amendment, as applied to those submitting religious accommodation requests, because Defendants' illegal policy substantially burdens Plaintiffs' sincerely held religious beliefs when the Army does not have a compelling interest in forcing the Vaccine Mandate on Plaintiffs, and less restrictive means are available for accomplishing any legitimate goals;

b.      That this Court certify a class;

c.      That this Court continue the preliminary injunctive relief it has issued that precludes Defendants from taking any further enforcement/punitive action against

Plaintiffs, and expand such relief to others similarly situated, during the pendency of this matter related to their request for a religious accommodation from the Vaccine Mandate;

d.    That this Court direct appropriate final and preliminary injunctive relief directing full "root and branch" relief to eliminate all vestiges of the discriminatory policy; this includes, without limitation, the following relief: (i) prohibit retaliation for those seeking religious accommodations or participating in this litigation; (ii) directing Defendants to cease and discontinue their religious discrimination and eradicate it "root and branch"; (iii) prohibit current and future punitive and adverse measures from being taken against anyone who had their religious accommodation denied due to the discriminatory policy; and (iv) direct, in final relief, Defendants to undertake the following "root and branch" relief: (a) for any soldier in the class who received an adverse discharge, upgrade discharges to Honorable discharges, and remove any adverse wording or characterizations or prohibitive re-enlistment codes and/or offer them reinstatement; (b) for any soldier denied a promotion or denied the ability to attend a course required for promotion, direct the institution of special promotion selection boards to consider/re-consider any promotion(s), with instructions to be issued by the Secretary of the Army to the board that the board cannot and should not hold against any soldier any failure to fulfill assignments or educational opportunities due to vaccination status; (c) direct the removal of any and all adverse actions, performance reports, or other items related to and flowing from Defendants' discriminatory actions; and (d) direct appropriate restorative relief including record correction to remove the

34

effects or efforts of Defendants to enforce their discriminatory policy, including back pay or points if warranted, or other appropriate relief (for example, providing that Cadet Bufkin either be reinstated to West Point or be given an Honorable Discharge with a waiver from monetary or service recoupment);

e.    Enjoin AR 40-562, and order Defendants to revise their religious accommodation policies concerning the processing of vaccine exemptions to ensure that those policies are in compliance with RFRA and the First Amendment, specifically preventing Defendants from using generalized compelling interests to determine whether a Soldier is eligible for an exemption and implementing a double standard for the processing of medical or other administrative exemptions;

f.    That this Court award Plaintiffs reasonable attorney fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

g.    All other further relief to which Plaintiffs may be entitled and that this Court shall deem just and proper.

Dated: February 10, 2023                    Respectfully submitted,

                                            */s/Aaron Siri*
                                            Aaron Siri (Admitted PHV)
                                            Elizabeth A. Brehm (Admitted PHV)
                                            Wendy Cox (Admitted Texas Bar
                                            No.24080162)
                                            Dana Stone (Admitted PHV)
                                            SIRI | GLIMSTAD LLP
                                            200 Park Avenue, 17th Floor
                                            New York, NY 10166
                                            (212) 532-1091 (v)
                                            (646) 417-5967 (f)
                                            aaron@sirillp.com
                                            ebrehm@sirillp.com
                                            wcox@sirillp.com
                                            dstone@sirillp.com

35

*/s/Christopher Wiest*
Christopher Wiest (Admitted PHV)
Chris Wiest, Atty at Law, PLLC
25 Town Center Boulevard, Suite 104
Crestview Hills, KY 41017
(513) 257-1895 (c)
(859) 495-0803 (f)
chris@cwiestlaw.com

Thomas B. Bruns (Admitted PHV)
BCVA Law
4555 Lake Forest Drive, Suite 330
Cincinnati, OH 45242
(513) 312-9890 (t)
tbruns@bcvalaw.com

*/s/ John C. Sullivan*
John C. Sullivan
S|L LAW PLLC
Texas Bar Number: 24083920
610 Uptown Boulevard, Suite 2000
Cedar Hill, Texas 75104
(469) 523–1351 (v)
(469) 613-0891 (f)
john.sullivan@the-sl-lawfirm.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing Verified Amended Complaint, via

CM/ECF, this 10 day of February, 2023.

*/s/Christopher Wiest*
Christopher Wiest (Admitted PHV)

36

**VERIFICATION**

Pursuant to 28 U.S.C. 1746, I, Huntley Bakich, Jr., declare under penalty of perjury that I have read the foregoing Amended Verified Complaint, and state that the factual statements therein are true and accurate and any documents attached are true and accurate copies of what they purport to be.

Executed on 02 / 09 / 2023

_____
Huntley Bakich, Jr.

**VERIFICATION**

Pursuant to 28 U.S.C. 1746, I, Zakai Bufkin, declare under penalty of perjury that I have read the foregoing Amended Verified Complaint, and state that the factual statements therein are true and accurate and any documents attached are true and accurate copies of what they purport to be.

Executed on 02 / 07 / 2023

_Zakai Bufkin_
Zakai Bufkin

Doc ID: c583d9d64c6fefee3ec08a438c6f49bfca631c4f

**VERIFICATION**

Pursuant to 28 U.S.C. 1746, I, Luke Chrisman, declare under penalty of perjury that I have read the foregoing Amended Verified Complaint, and state that the factual statements therein are true and accurate and any documents attached are true and accurate copies of what they purport to be.

Executed on 02 / 09 / 2023

_____
Luke Chrisman

**<u>VERIFICATION</u>**

Pursuant to 28 U.S.C. 1746, I, Samuel Conklin, declare under penalty of perjury that I have read the foregoing Amended Verified Complaint, and state that the factual statements therein are true and accurate and any documents attached are true and accurate copies of what they purport to be.

Executed on 02 / 07 / 2023

_Samuel L Conklin_
Samuel Conklin

**VERIFICATION**

Pursuant to 28 U.S.C. 1746, I, Joshua Costroff, declare under penalty of perjury that I have read the foregoing Amended Verified Complaint, and state that the factual statements therein are true and accurate and any documents attached are true and accurate copies of what they purport to be.

Executed on 02 / 07 / 2023

_____
Joshua Costroff

**VERIFICATION**

Pursuant to 28 U.S.C. 1746, I, Samuel Galloway, declare under penalty of perjury that I have read the foregoing Amended Verified Complaint, and state that the factual statements therein are true and accurate and any documents attached are true and accurate copies of what they purport to be.

Executed on 02 / 08 / 2023

_____
Samuel Galloway

**<u>VERIFICATION</u>**

Pursuant to 28 U.S.C. 1746, I, Dominic Mell, declare under penalty of perjury that I have read the foregoing Amended Verified Complaint, and state that the factual statements therein are true and accurate and any documents attached are true and accurate copies of what they purport to be.

Executed on 02 / 09 / 2023

_____
Dominic Mell

## **VERIFICATION**

Pursuant to 28 U.S.C. 1746, I, Collin Morrison, declare under penalty of perjury that I have read the foregoing Amended Verified Complaint, and state that the factual statements therein are true and accurate and any documents attached are true and accurate copies of what they purport to be.

Executed on 02 / 09 / 2023

Collin Morrison

**VERIFICATION**

Pursuant to 28 U.S.C. 1746, I, Nicholas Saballa, declare under penalty of perjury that I have read the foregoing Amended Verified Complaint, and state that the factual statements therein are true and accurate and any documents attached are true and accurate copies of what they purport to be.

Executed on 02 / 09 / 2023

_____
Nicholas Saballa

**VERIFICATION**

Pursuant to 28 U.S.C. 1746, I, Robert Schelske, declare under penalty of perjury that I have read the foregoing Amended Verified Complaint, and state that the factual statements therein are true and accurate and any documents attached are true and accurate copies of what they purport to be.

Executed on 02 / 07 / 2023

*Robert M. Schelske*
Robert Schelske

**VERIFICATION**

Pursuant to 28 U.S.C. 1746, I, Peter Testa, declare under penalty of perjury that I have read the foregoing Amended Verified Complaint, and state that the factual statements therein are true and accurate and any documents attached are true and accurate copies of what they purport to be.

Executed on 02 / 09 / 2023

_____
Peter Testa