**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **ROBERT SCHELSKE,** et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>**LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense, et al,<br><br>      Defendants. | Case No. 6:22-cv-00049-H |

<u>**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

I.      Standard of Review ............................................................................................. 1

II.     Facts – as alleged in the Verified Amended Complaint and established via other
        evidence ............................................................................................................. 2

III.    ARGUMENT ...................................................................................................... 8

A.      Defendants have not met their formidable burden of establishing mootness ............ 8

B.      Defendants' Motion should be denied because the voluntary cessation exception to
        mootness applies .............................................................................................. 14

C.      Defendants' Motion should be denied because the capable of repetition, yet evading
        review exception to mootness applies ................................................................. 22

D.      Defendants' Motion should be denied because the pickoff/class-action exception
        applies ............................................................................................................ 25

E.      As to wholly past harms (which continue), Defendants' Motion should be denied
        because the collateral consequences exception applies .......................................... 26

1.      RFRA permits wide-ranging equitable relief, which can be awarded to Plaintiffs and
        members of the putative class ............................................................................ 27

2.      The violation of orders by Plaintiffs and others in the class, which give rise to
        criminal liability, and in which the relevant statute of limitations has not passed,
        renders the action not moot ............................................................................... 28

3.      The declaratory relief in this case can serve as a basis for monetary damage claims
        for members of the class (perhaps against Secretary Austin or Secretary Wormuth
        in their individual capacities), also rendering the case not moot ............................. 29

IV.     CONCLUSION .................................................................................................. 30

# TABLE OF AUTHORITIES

## **Cases**

*A. Philip Randolph Inst. v. Husted*, 838 F.3d 699, 713 (6th Cir. 2016)……………………………19

*Able v. United States*, 155 F.3d 628 (2d Cir. 1998) ........................................................................7

*Adkins v. United States*, 68 F.3d 1317 (Fed. Cir. 1995)..................................................................7

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)........................................................................14, 15

*Am. Bar Ass'n v, FTC*, 636 F.3d 641 (D.C. Cir. 2011)............................................................21, 22

*Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301 (2022)..................................................................7

*Bennie v. Munn*, 822 F.3d 392 (8th Cir. 2016)..............................................................................29

*Board of Education of Oklahoma City Public Schools v. Dowell*, 498 U.S. 237 (1991)..............14

*Bond v. United States*, 47 Fed. Cl. 641 (Ct. Cl. 2000)....................................................................7

*Bowman v. Schwarzenegger*, 2009 U.S. Dist. LEXIS 24678 (ED Cal 2009)...............................29

*Castillo v. Cameron County*, 238 F.3d 339 (5th Cir. 2001).........................................................26

*Ctr. for Individual Freedom v. Tennant*, 706 F.3d 270, 293 (4th Cir. 2013)...............................29

*Chafin v. Chafin*, 568 U. S. 165 (2013)........................................................................................11

*Chen v. Allstate Ins. Co.*, 819 F.3d 1136 (9th Cir. 2016).............................................................12

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982)............................................14, 18

*Clark v. Tarrant Cnty.*, 798 F.2d 736 (5th Cir. 1986)....................................................................2

*Cruz v. Hauck*, 627 F.2d 710 (5th Cir. 1980)...............................................................................25

*Dailey v. Vought Aircraft Co.*, 141 F.3d 224 (5th Cir. 1998).......................................................26

*Davis v. Ball Mem'l Hosp. Ass'n., Inc.*, 753 F.2d 1410 (7th Cir. 1985)........................................26

*Dean Foods Co. v. Tracy*, 990 F. Supp. 646 (W.D. Wis. 1997)....................................................29

*Dehne v. United States*, 970 F.2d 890 (Fed. Cir. 1992)................................................................28

*DeJohn v. Temple Univ.*, 537 F.3d 301 (3d Cir. 2008)..................................................................21

*Doe v. Trump*, 275 F. Supp.3d 167 (D.D.C. 2017).........................................................................7

*Doster v. Kendall*, 48 F.4th 608 (6th Cir. 2022)..........................................................................14

*Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022)...............................................................14, 29, 30

*Empower Texans, Inc. v. Geren*, 977 F.3d 367 (5th Cir. 2020).....................................................23

*Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449 (2007)......................22, 24

*Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924 (7th Cir. 2003)....9

*Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561 (1984)..............................................26

*First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765 (1978)....................................................22, 23

*Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976).................................................................25

*Frontiero v. Richardson*, 411 U.S. 677 (1973).............................................................................7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
     528 U. S. 167 (2000)..........................................................................................8, 14, 15, 19

*Genesis HealthCare Corp. v. Symczyk*, 569 U. S. 66 (2013)........................................................8

*Green v. County Sch. Bd. Of New Kent County, Va.*, 391 U.S. 430 (1968)..................................14

*Harris v. city of Houston*, 151 F.3d 186 (5th Cir. 1998)........................................................12, 13

*Haselrig v. United States*, 53 Fed. Cl. 111 (Ct. Cl. 2002)............................................................7

*Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006 (5th Cir. 1998)................1

*Honig v. Doe*, 484 U.S. 305 (1988)............................................................................................23

*Hunter v. Underwood*, 471 U.S. 222 (1985)................................................................................9

*J.R. v. Austin Indep. Sch. Dist.*, 574 F. Supp. 3d 428 (2021)………………………………….24

*J. T. v. D.C.*, 983 F.3d 516 (D.C. Cir. 2020)..............................................................................26

*King v. Dogan*, 31 F.3d 344 (5th Cir. 1994)...............................................................................2

*Kingdomware Tech., Inc. v. United States*, 136 S. Ct. 1969 (2016).............................................22

*Kolstad v. ADA*, 527 U.S. 526 (1999).......................................................................27, 28

*Marks v. United States*, 430 U.S. 188 (1977)....................................................................7

*Meadows v. Odom*, 198 F. App'x 348 (5th Cir. 2006)………………………………………..24

*Miss. State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400 (5th Cir. 1991).....................9

*Murphy v. United States*, 993 F.2d 871 (Fed. Cir. 1993)...................................................7

*N.Y. State Rifle & Pistol Ass'n v. City of New York*, 140 S. Ct. 1525 (2020)..........................11, 12

*Norman-Bloodsaw v. Lawrence Berkely Lab.*, 135 F.3d 1260 (9th Cir 1998)......................17, 18

*N.C. State Conference of NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016)..............................9

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
    508 U.S. 656, 662 (1993)........................................................................13

*Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323 (6th Cir. 2007)..........................19

*Olagues v. Russoniello*, 770 F.2d 791 (9th Cir. 1985).......................................................20

*Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279 (5th Cir. 2012)....................13

*Owens v. Brown*, 455 F. Supp. 291 (D.D.C. 1978)...........................................................7

*Parents Involved in Community Schools v. Seattle School Dist. No. 1*,
    551 U. S. 701 (2007)........................................................................18, 20, 21

*Perez v. Abbott*, 2017 U.S. Dist. LEXIS 35012, 2017 WL 962947 (W.D. Tex. Mar. 10, 2017) ...9

*Perez v. Texas*, 970 F. Supp. 2d 593 (W.D. Tex. 2013)........................................................9

*Philips v. Perry*, 106 F.3d 1420 (9th Cir. 1997)................................................................7

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001)...................................................1, 2

*Ramsek v. Beshear*, 989 F. 3d 494 (6th Cir. 2021).........................................................29

*Roe v. Wade*, 93 S. Ct. 705 (1973)...............................................................................23

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020).................................23

*Sacks v. Office of Foreign Assets Control*, 466 F.3d 764 (9th Cir. 2006)...............................29

iv

*Scarseth v. United States*, 46 Fed. Cl. 406 (Ct. Cl. 2000)...................................................................7

*Schlesinger v. Ballard*, 419 U.S. 498 (1975)..................................................................................7

*Sosna v. Iowa*, 419 U.S. 393 (1975)...............................................................................................25

*Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498 (1911).............................................................23

*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019)...........................................19, 20, 21

*T.M. ex rel. H.C. v. DeWine*, 49 F.4th 1082 (6th Cir. 2022)..........................................................29

*Tandon v. Newsom*, 141 S. Ct. 1294 (2021)...................................................................................20

*Tanzin v. Tanvir*, 141 S. Ct. 486 (2020)...........................................................................27, 28, 29

*Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017)....................14, 18

*Tucker v. Gaddis*, 40 F.4th 289 (5th Cir. 2022)..................................................................15, 21

*Turner v. Rogers*, 564 U.S. 431 (2011)..........................................................................................22

*Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017)……………………………....25

*United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199 (1968)……………….....9

*United States v. Sanchez-Gomez*, 138 S. Ct. 1532 (2018)……………………………………….....18

*United States v. W. T. Grant Co.*, 345 U.S. 629 (1953)..................................................................22

*United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980)..................................................25

*Veasey v. Abbott*, 248 F. Supp. 3d 833 (SDTX 2017)..................................................................8, 9

*Warnock v. Pecos Cnty.*, 88 F.3d 341 (5th Cir. 1996).................................................................28

*West v. Gibson*, 527 U.S. 212 (1999)........................................................................................27, 28

*West Virginia v. EPA*, 142 S. Ct. 2587 (2022)............................................................................8, 9

*Wooten v. Housing Authority of Dallas*, 723 F.2d 390 (5th Cir. 1983)........................................12

*Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981)....................................25, 26

**Statutes**

10 U.S.C. § 843 ....................................................................................................5, 29

10 U.S.C. § 890 ....................................................................................................5, 29

10 U.S.C. § 892 ....................................................................................................5, 30

42 U.S.C. 2000bb-1(c)..........................................................................................27, 28

**Rules**

FRCP 12(b)(1)..........................................................................................................1

**Other Sources**

Four weeks later, military still waiting on post-vaccine guidance (militarytimes.com) Available at: https://www.militarytimes.com/news/your-military/2023/02/09/four-weeks-later-military-still-waiting-on-post-vaccine-guidance/ …………………………………….....................2

Pentagon: No Back Pay to Troops Discharged for Refusing COVID-19 Vaccine | National News | U.S. News (usnews.com) Available at https://www.usnews.com/news/national-news/articles/2023-01-17/pentagon-no-back-pay-to-troops-discharged-for-refusing-covid-19-vaccine …………………………………………………………………………………...3

Heather Mongilio, Pentagon Unclear How Military Would Manage End of Mandatory COVID-19 Vaccines, USNI NEWS (Dec. 7, 2022), https://news.usni.org/2022/12/07/pentagon-unclear-how-military-would-handle-end-of-mandatory-covid-19-vaccines ...............................3, 13, 20

https://media.defense.gov/2023/jan/10/2003143118/-1/-1/1/secretary-of-defense-memo-on-rescission-of-coronavirus-disease-2019-vaccination-requirements-for-members-of-the-armed-forces.pdf ....................................................................................................4, 11, 16

Argument, *Doster v. Kendall*, https://www.opn.ca6.uscourts.gov/internet/court_audio/aud2.php?link=audio/10-19-2022%20-%20Wednesday/22-3497%20Hunter%20Doster%20v%20Frank%20Kendall%20et%20al.mp3&name=22-3497%20Hunter%20Doster%20v%20Frank%20Kendall%20et%20al .........................................4

https://jsc.defense.gov/Portals/99/Documents/2019 MCM (Final) (20190108).pdf?ver=2019-01-11-115724-610 ....................................................................................................7, 29

https://www.ca5.uscourts.gov/OralArgRecordings/22/22-10077_2-6-2023.mp3 …………….....8

https://www.congress.gov/117/bills/hr7776/BILLS-117hr7776enr.pdf ……………….......10, 16

CHARLES ALAN WRIGHT ET AL., 13A FEDERAL PRACTICE AND PROCEDURE § 3533.9, at 401 (2d ed. 1984)..........................................................................................................26

## INTRODUCTION

The plain language of Defendant Secretary of Defense's January 10, 2023 Memorandum repealing the August 24, 2021 COVID-19 vaccination mandate confirms that the rescission was in name only. Within the very document that cancels the DoD mandate, a *de facto* vaccination mandate remains, leaving the door wide open for commanders to continue considering vaccination status "in making deployment, assignment, and other operational decisions," Without the continued protection of the injunction, the class members' religious liberty rights continue to be violated, and many class members will eventually be separated from the Army because they will be unable to meet milestones or obtain required training. Thus, the coercion and discrimination that the Plaintiffs have suffered since 2021 has not ended. In fact, Defendants motion to dismiss was the perfect opportunity to provided assurance to this Court that all harm has been undone and that no further harm will occur. They have offered no proof of such and based on past experience in this case, without an enforceable order, the Defendants will do as they want.

Defendants failed to meet their "formidable" burden for demonstrating mootness, particularly where, as here, several exceptions apply. For these reasons, Defendants' Motion should be denied.

### I.      Standard of Review

Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). In assessing jurisdiction, the district court is to accept as true the allegations and facts set forth in the complaint, and "is empowered to consider matters of fact which may be in dispute." *Ramming v. United States*,

1

281 F.3d 158, 161 (5th Cir. 2001).  The court may "make factual findings which are decisive of its jurisdiction." *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986). "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.*

## II.    Facts – as alleged in the Verified Amended Complaint and established via other evidence

As the Verified Amended Complaint makes clear, each of the Plaintiffs (including the new Plaintiff) suffer ongoing harm, all of which requires a remedy, and all of which continues to this very day.  [Am. Compl., DE#92].  That verified Amended Complaint is competent evidence.  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).  For instance, each of the Cadet Plaintiffs (Bufkin, Conklin, Mell, Morrison, and Saballa) received General Officer Memorandum of Reprimands ("GOMOR"), and each of those adverse actions are, as of today, *still of record*.  [*Id.* at ¶¶ 14, 15, 18, 19, 20, 61].    In other words, their harm continues, as do their active controversies with Defendants.  Each made repeated inquiries to their chain of command, and undersigned counsel made inquiries to the U.S. Department of Justice about the status of these reprimands, and each has not been informed whether, and on what timeline, any corrective or remedial action might occur, and that uncertainty continues as of the filing of the Amended Complaint.  *Id.*

Recently, media and legislative representatives asked the military similar questions and received the same noncommittal responses.[1]  Gil Cisneros, Department of Defense Personnel Chief, offered the following noncommittal response to the *Military Times* on January 11, 2023:

---

[1] Four weeks later, military still waiting on post-vaccine guidance (militarytimes.com) Available at: https://www.militarytimes.com/news/your-military/2023/02/09/four-weeks-later-military-still-waiting-on-post-vaccine-guidance/

"There are still things that we need to kind of tie up." *Id.* In fact, the only thing the military has been clear about is that they have no intention of awarding backpay to any servicemembers who were discharged or otherwise lost pay due to refusing the COVID-19 vaccine. On January 17, 2023, Brig. Gen. Pat Ryder, Defense Department spokesman, stated, "Right now, we are not pursuing, as a matter of policy, back pay for those who refused the vaccine… [because] at the time those orders were refused, it was a lawful order."[2]

Even worse, the Executive Branch believes that Congress's direction to rescind the mandate was a "mistake,"[3] and nothing in the NDAA prevents Defendants from instituting a new mandate. Defendants apparently have no desire to ensure Plaintiffs' religious liberties are protected. And if the class members had any hope of returning to the operational fold with the rescission of the formal mandate, such hopes were dashed when Pentagon spokespersons including the Secretary of the Navy indicated that the repeal of the mandate will "unquestionably . . . create almost two classes of citizens in our services . . . Those that can't deploy and those that can deploy."[4]

Nor does the most recent implementation directives from Army Headquarters indicate the rescission that Defendants claim. (Doc. 93, at PageID#2184-2196). It continues restrictions on duty station changes for soldiers (*id.*, at ¶ 3D.15.B.3.K, PageID#2189), and it continues in force several annexes that reflect the continuation of policies that reflect administrative actions for

---

[2] [Pentagon: No Back Pay to Troops Discharged for Refusing COVID-19 Vaccine | National News | U.S. News (usnews.com)](https://www.usnews.com) Available at https://www.usnews.com/news/national-news/articles/2023-01-17/pentagon-no-back-pay-to-troops-discharged-for-refusing-covid-19-vaccine (last accessed 2/15/2023)

[3] Heather Mongilio, *Pentagon Unclear How Military Would Manage End of Mandatory COVID-19 Vaccines*, USNI NEWS (Dec. 7, 2022), https://news.usni.org/2022/12/07/pentagon-unclear-how-military-would-handle-end-of-mandatory-covid-19-vaccines (last accessed 2/15/2023).

[4] Mongilio, *supra* n.3.

soldiers who did not follow vaccination directives.  (*Id.* at Annexes XX, YY, ZZ, AAA, BBB, MMMM, NNNN, SSSS, PageID#2193, 2195).  While it appears that the Army has halted new adverse actions, they have done *nothing* with those already in place.

Finally, the new DoD and Army policies made the accommodation process *worse*: DoD and the Army state their intention to continue using vaccination status to make a wide range of decisions involving the class members, yet now will no longer consider requests for religious accommodation.[5]  Based on Defendants' previous conduct and their admissions in a similar case involving the Air Force in the Sixth Circuit,[6] it is likely they will use these broad categories to discriminate against and  treat Plaintiffs as second-class citizens who are prevented from advancing in their military careers.

Speaking of orders, all Plaintiffs in this action received orders to vaccinate.  *See* ECF No. 14, Ex. 8, PageID#132 ¶ 8, Ex. 9, PageID#170, ¶ 6, Ex. 10, PageID#193, ¶ 7, Ex. 11, PageID#219, ¶ 7, Ex. 12, PageID#264, 282, Ex. 13, PageID#296, ¶ 6, Ex. 14, PageID#332, ¶ 6, Ex.15, PageID# 352, ¶ 7, Ex. 16, PageID#385, ¶ 7; ECF No. 93, Ex. 4, PageID#2145, ¶ ¶ 6, 7).  None of them complied.  Accordingly, each Plaintiff (except for Luke Chrisman) remains subject to criminal prosecution at any time for violations of either Article 90 or Article 92 of the Uniform Code of

---

[5] Available at: https://media.defense.gov/2023/jan/10/2003143118/-1/-1/1/secretary-of-defense-memo-on-rescission-of-coronavirus-disease-2019-vaccination-requirements-for-members-of-the-armed-forces.pdf. (last accessed 2/15/2023).

[6] During oral argument in *Doster*, the Court asked, "Is it the Executive Branch's position that you don't have to worry about RFRA until somebody sues?" Defendant's counsel responded, "More or less, yes. RFRA itself is not a record review statute and does not require the government to take any particular process." Oral Argument at 18:38-18:55, *Doster v. Kendall*, No. 22-3497 (6th Cir. Jul. 25, 2022).   Available at: https://www.opn.ca6.uscourts.gov/internet/court_audio/aud2.php?link=audio/10-19-2022%20-%20Wednesday/22-3497%20Hunter%20Doster%20v%20Frank%20Kendall%20et%20al.mp3&name=22-3497%20Hunter%20Doster%20v%20Frank%20Kendall%20et%20al (last accessed 2/15/2023).

Military Justice for the next five-years if the Defendants so choose.  10 U.S.C. § 843 (five-year

statute of limitations); 10 U.S.C. § 890 (Article 90); 10 U.S.C. § 892 (Article 92).  Each faces the

prospect and potential punishment of up to five years in a military prison for these violations.[7]

Perhaps most indicative of Defendants' intent to continue their discrimination against those

who sought religious accommodation was a text communication between Cadet Morrison and his

commander, Major Hagen, on February 7, 2023, where Major Hagen stated:

> …we were all told to hold any action because you are part of that whole federal
> litigation thing, right? … if the case doesn't go well, the army could (emphasis)
> continue all the adverse action against unvaxxed [sic] persons…but if they say DoD
> can make a vaccine mandate, then I bet the action continues because it's still
> disobeying a legal order.

[Am. Compl., DE#92 at ¶19; Appendix, DE#93, Exhibit 3].

"While the Army has indicated that at some point, perhaps a year from now, it will take

action to remove such adverse action, the timely failure to do so causes ongoing career harm, and,

for these cadets, can be used as a basis to deny them the ability to commission."  [Am. Compl.,

DE#92 at ¶61].  For Cadet Mell, he has received no indication that the Army even stopped

processing his discharge, nor any indication that it will, in fact, decline to discharge him, despite

his specific inquiry about it.  [*Id.* at ¶18].

Some Plaintiffs were denied the ability to attend courses required for promotion, such as

Staff Sergeants Schelske, Costroff, and Testa, all of whom missed the Senior Leaders Course due

to their vaccination status, or Lt. Bakich, who was not permitted to attend the Maneuver Captain's

Career Course until now, due to his vaccination status, each of them missing the opportunity to

promote, and seek equitable relief in the form of corrective action.  [*Id.* at ¶¶ 13, 16, 21, 22, 20,

---

[7] https://jsc.defense.gov/Portals/99/Documents/2019 MCM (Final) (20190108).pdf?ver=2019-
01-11-115724-610 (last accessed 2/15/2023) at Section IV-25 and IV-28 (pages 332 and 335).

60].  All have inquired about corrective action, if any, and each has not had any indication they will receive any such corrective action by the Army, or if so, on what timeline.  *Id.*

Then there is SSG Galloway, who has been pending both a permanent change of station (i.e. a move of duty station) back to the United States, as well as re-enlistment, which has also been delayed indefinitely due to his vaccination status.  [*Id.* at ¶¶ 17, 62].  He likewise undertook inquiries about whether he would receive corrective action, and on what timeline, but has not had any indication he will receive any such corrective action by the Army, or if so, on what timeline. *Id.*

Finally, the Amended Complaint adds a new Plaintiff to this case: former soldier Luke Chrisman.  He was punitively discharged – namely he was given a General Discharge (which is indisputably adverse), along with adverse separation reasons and codes, due to his vaccination status, despite pursuing a religious accommodation, which was denied by Defendants' discriminatory process.  [*Id.* at ¶¶ 23, 59].  His harm continues to date, which includes uncomfortable inquiries by potential employers into his discharge reasons, and, per the Secretary of Defense's own directives, there is no apparent remedying of his harm. [*Id.* at ¶¶ 4, 23, 59].

Despite this Court's injunctive relief, the continuing discriminatory actions will achieve the intended result of these servicemembers being involuntarily separated from service. Simply because the Army has been foreclosed from overtly punishing and formally issuing adverse administrative and discharge paperwork to the Plaintiffs for seeking religious accommodations from the vaccine mandate does not account for the "deployment, assignment, and other operational decisions" that have been and will continue to be intentionally made to irreversibly damage the Plaintiffs' careers as reprisal for their vaccination status.  Defendants have taken an extraordinarily broad view of what constitutes an "operational decision," and as stated above, there is sufficient

6

evidence demonstrating that they will seek to impose that broad view to continue punishing

servicemembers for their religious beliefs. *See Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301,

1305–06 (2022) (Alito, J., dissenting) ("[T]he terms seemingly allow the Navy to do just about

anything it wants short of punishing [Plaintiffs] and drumming them out of service.").

        Defendants may argue that this Court cannot reach operational, assignment, or

deployment decisions under *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301 (2022). We do not

read *Austin* as broadly as the Defendants do, and believe it limited to preliminary injunctive

relief, versus what the Court can direct in final relief. That stems from the lack of any discussion

or rationale in the *Austin* decision, requiring under *Marks v. United States*, 430 U.S. 188 (1977),

a narrow construction and holding. There is a long history of courts adjudicating claims in the

assignment, operational, and deployment arena, so long as there is a statutory authority to do so,

as there is here. *Adkins v. United States*, 68 F.3d 1317, 1325 (Fed. Cir. 1995) (claim for back

pay is justiciable); *Scarseth v. United States*, 46 Fed. Cl. 406, 413 (Ct. Cl. 2000) (same);

*Haselrig v. United States*, 53 Fed. Cl. 111, 120 (Ct. Cl. 2002) (same); *Bond v. United States*, 47

Fed. Cl. 641, 651 (Ct. Cl. 2000) (military duty assignment review); *Murphy v. United States*, 993

F.2d 871, 873 (Fed. Cir. 1993). Indeed, courts are not compelled "to abdicate their responsibility

to decide cases and controversies merely because they arise in the military context." *Owens v.

Brown*, 455 F. Supp. 291, 300 (D.D.C. 1978); *Philips v. Perry*, 106 F.3d 1420 (9th Cir. 1997)

(addressing merits); *Able v. United States*, 155 F.3d 628 (2d Cir. 1998) (same); *Doe v. Trump*,

275 F. Supp.3d 167 (D.D.C. 2017) (addressing merits of claims). The United States Supreme

Court has reviewed, and permitted the review, of assignments, benefits, housing, and yet other

challenges. *Schlesinger v. Ballard*, 419 U.S. 498 (1975) (promotion policies); *Frontiero v.

Richardson*, 411 U.S. 677 (1973) (housing, medical, and dental benefits).

7

For these and other reasons, Plaintiffs maintain a cognizable interest in pursuing their claims in this Court to protect themselves from suffering ongoing harm based on their religious objections to the COVID-19 vaccine. Neither the Secretary of Defense's Memorandum nor the Army's implementation directives to date take any action to correct the detrimental career impacts that have been and continue to be suffered by Plaintiffs. In fact, as Judge Duncan implied during the February 6, 2023, oral argument at the Fifth Circuit in *Seals*, in which the Court thoroughly addressed the issue of mootness, the sham process is even more damaging now that the Army's multi-step process is a zero-step process[8] because "the Secretaries of the Military Departments will further cease any ongoing reviews of current Service member religious . . . accommodation requests solely for exemption from the COVID-19 vaccine or appeals of denials of such requests."

Defendants now claim, without any legal authority, that the half measures promised (but inexplicably not yet taken to date), somehow render the case moot. As demonstrated below, they are wrong.

## III.    ARGUMENT

### A.    Defendants have not met their formidable burden of establishing mootness

Mootness addresses whether "an intervening circumstance [has] deprive[d] the plaintiff of a personal stake in the outcome of the lawsuit." *Genesis HealthCare Corp. v. Symczyk*, 569 U. S. 66, 72 (2013) (internal quotation marks omitted); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U. S. 167, 189-192 (2000). "The Supreme Court has placed the difficult burden of demonstrating mootness squarely upon the party who asserts the defense." *Veasey v. Abbott*, 248 F. Supp. 3d 833, 835 (SDTX 2017). *See, also, West Virginia v. EPA*, 142

---

[8] Available at: https://www.ca5.uscourts.gov/OralArgRecordings/22/22-10077_2-6-2023.mp3 (last accessed 2/15/2023).

S. Ct. 2587, 2607 (2022) ("the Government, not petitioners, bears the burden to establish that a once-live case has become moot.").  In *Veasey*, the Court explained:

> [T]he standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

*Id.; citing Friends of the Earth, Inc.*, 528 U.S. 167, 189 (*quoting United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203, 89 S. Ct. 361, 21 L. Ed. 2d 344 (1968)).

"It is well-settled that new legislation does not *ipso facto* eliminate the discriminatory intent behind older legislation and moot a dispute regarding the violation of law."  *Id., citing Hunter v. Underwood*, 471 U.S. 222, 232-33 (1985) (events over 80 years to change the terms of the law do not eliminate its original discriminatory intent); *Miss. State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 408-09 (5th Cir. 1991); *N. C. State Conference of NAACP v. McCrory*, 831 F.3d 204, 240 (4th Cir. 2016) (amendment does not eliminate all lingering effects of law that was discriminatory when passed); *Perez v. Texas*, 970 F. Supp. 2d 593, 603 (W.D. Tex. 2013) (claims of intentional discrimination in connection with legislation are not mooted by subsequent legislation so long as requested relief is available for purposeful discrimination); *Perez v. Abbott*, 2017 U.S. Dist. LEXIS 35012, 2017 WL 962947, at *3 (W.D. Tex. Mar. 10, 2017) (finding intentional discrimination claims not moot so long as relief was available to remedy the associated harm, even if remedy for discriminatory effects claim was mooted by later legislation).

The discussion in *Veasey* is instructive here.  The *Veasey* court explained that it is sometimes the case that "complete repeal of a challenged law renders a case moot unless there is evidence creating a reasonable expectation that the City will reenact the ordinance or one substantially similar." 248 F. Supp. 3d 833, 835*, citing Fed'n of Advert. Indus. Representatives,*

*Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003). However, that is not the rule for all cases. The *Veasey* Court also went on to explain that "[t]hat rule fit the circumstances of that case because the only relief sought was an injunction against enforcing the law." *Id.* "If the law is repealed, there is nothing left to enforce." *Id.* "Here, however, Plaintiffs are arguing for additional relief to redress the lingering injury of an alleged discriminatory purpose in passing the statute." *Id.* "The existence of additional injuries, some of which carry additional remedies prevents application of this mootness holding." *Id.* Thus, "[w]hile the only relief they can obtain is prospective, the injuries are not eliminated as a result of a single provision that ameliorates the harshest effect of the law." *Id.* at 837.

To understand how fatally flawed Defendants' argument is, one must begin by looking at the plain language of the relevant portion of the NDAA (§ 525, pages 177-178):

> Not later than 30 days after the date of the enactment of this Act, the Secretary of Defense shall rescind the mandate that members of the Armed Forces be vaccinated against COVID-19 pursuant to the memorandum dated August 24, 2021, regarding "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members."[9]

The NDAA <u>only</u> requires the rescission of the policy. It does not prevent Defendants from re-imposing a vaccine mandate (even an identical one) at a later date, it does not require halting separations for those who disobeyed orders to vaccinate (particularly where Defendants continue to insist those orders were lawful), it does not require the removal of adverse actions taken against such soldiers, it does not bar criminal prosecutions for those who previously violated the prior mandate, and it does not require rectifying any other harms.

---

[9] Available at: https://www.congress.gov/117/bills/hr7776/BILLS-117hr7776enr.pdf (last accessed 2/10/2023).

The Secretary's January, 2023 Memorandum contains various statements demonstrating that the Secretary of Defense believes that everything Defendants did was lawful, which suggests a return to past practices is not out of the question.[10]  As to Defendants' worn-out mantra in this and other cases about the Department of Defense's purported compelling interests, the Secretary of Defense unambiguously states: "All commanders have the responsibility and authority to preserve the Department's compelling interests in mission accomplishment [including] … the ability to maintain military readiness, unit cohesion, good order and discipline, and the health and safety of a resilient Joint Force."  *Id.*  These statements are a directive to lower-level commanders that they have the freedom to impose vaccine mandates to "maintain military readiness, unit cohesion, good order and discipline, and the health and safety of a resilient Joint Force."

While separations solely for refusing to vaccinate will apparently no longer occur, separations for failing to obey an order to vaccinate can occur in the future ("separated solely on the basis…").  Other discriminatory policies based on vaccination status will continue in light of the Secretary's Memorandum ("Other standing Departmental policies, procedures, and processes regarding immunizations remain in effect…"), and discharged soldiers will not automatically have their discharges upgraded, but rather are confined to an arbitrary process that is far from assured ("Former Service members may petition…").  10 U.S.C. § 1552.  Without question, the Secretary of Defense retains the authority to reinstate a COVID-19 vaccine requirement at any moment, and he has not given *any* assurances that he will not do so.

At bottom, then, and as the Supreme Court observed just a few years ago, even if "[i]t is certainly true that the [NDAA and Secretary's Memorandum] … give petitioners most of what

---

[10] Available at: https://media.defense.gov/2023/jan/10/2003143118/-1/-1/1/secretary-of-defense-memo-on-rescission-of-coronavirus-disease-2019-vaccination-requirements-for-members-of-the-armed-forces.pdf

they sought, … that is not the test for mootness." *N.Y. State Rifle & Pistol Ass'n v. City of New York*, 140 S. Ct. 1525, 1528 (2020).   "Instead, 'a case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'"" *Id., citing Chafin v. Chafin*, 568 U. S. 165, 172 (2013) (emphasis added). "'As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Id.*

At present, it remains a fact that all Plaintiffs who have General Officer Memorandum of Reprimands, flags, and other forms of adverse action still have not had corrective action taken. [Am. Compl., DE#92, at ¶¶ 13 - 23].  There have been no concrete and irrevocable (or for that matter *any*) directives or actions that would bar criminal prosecutions for failing to adhere to prior orders to vaccinate.  It has been over a month since the Secretary rescinded the mandate and still there is no date on when these adverse actions will be removed, if ever.   Despite repeated requests, Defendants refuse to tell anyone when those steps might occur.  *Id.*   An ambiguously worded promise to correct a harm at some unspecified point in the future is woefully insufficient to establish mootness, and to assert otherwise is to gaslight the Plaintiffs and this Court.  *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1138 (9th Cir. 2016) ("a claim becomes moot when a plaintiff actually receives complete relief on that claim, not merely when that relief is offered or tendered"); *Wooten v. Housing Authority of Dallas*, 723 F.2d 390, 392 (5th Cir. 1983) (explaining that only receipt of "all of the relief sought" will moot the case).  Plainly, then, the case is not moot, as Defendants have not yet afforded Plaintiffs full corrective action relief, will not do so for discharged soldiers, and may never do so for the putative class of Plaintiffs.

Defendants cite *Harris v. city of Houston*, 151 F.3d 186 (5th Cir. 1998), a case where the plaintiffs only challenged an annexation after the election occurred.  *Id.*   Because the event at

issue had come and completely gone, with no prospect for further relief, and Plaintiffs had no further relief that they sought, the case was moot. *Id. Harris* is not this case.

Precedent from the Supreme Court and the Fifth Circuit hold that a case is not mooted if the challenged conduct continues after the repeal of an unconstitutional policy. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 662 (1993) ("There is no mere risk that [Defendant] will repeat its allegedly wrongful conduct; it has already done so."); *Opulent Life Church v. City of Holly Springs Miss.*, 697 F.3d 279, 286 (5th Cir. 2012) (holding a case was not moot where a defendant "doubled down" on its challenged action after repealing a policy). That is exactly what is happening here. Defendants have doubled down on their wrongful conduct by repealing the vaccine mandate in name only, denying Plaintiffs any avenue to seek a religious accommodation based on vaccination status, and continuing to take adverse actions against Plaintiffs that will ultimately accomplish the same result as the vaccine mandate: forcing all servicemembers with religious objections to the COVID-19 vaccine out of the Army. To rectify the previous harms and to prevent ongoing violations of RFRA and the First Amendment, Plaintiffs must obtain permanent relief from this Court.

Further, decisions regarding the operational status of service members are causing current harm in the form of lost promotions, threat of recoupment of expenses and bonuses, lack of training opportunity, and most importantly, constant coercion to become vaccinated to avoid a stalled career. Any controversy regarding assignment, deployment, and operational decisions is far from speculative, as we presently know DoD Officials envision "two classes" within the military and has merely only "suspend[ed] any new adverse actions associated with refusing the COVID-19 vaccine."[11]

---

[11] See Mongilio, *supra* n.3.

In light of the ongoing harm caused by Defendants' unconstitutional actions, Plaintiffs seek "root and branch" relief of the kind described by the Sixth Circuit in *Doster v. Kendall*, 54 F.4th 398, 439 (6th Cir. 2022), and seek "to enjoin ***any adverse action*** against the class members on the basis of denials of religious exemptions." *Doster v. Kendall*, 48 F.4th 608, 615 (6th Cir. 2022) (emphasis added).  That language by the Sixth Circuit is no accident – it comes from a long line of discrimination cases that ended not only the illegal discriminatory policies, but also all remaining vestiges of that illegal discrimination.  *Board of Education of Oklahoma City Public Schools v. Dowell*, 498 U.S. 237 (1991); *Green v. County Sch. Bd. Of New Kent County, Va.*, 391 U.S. 430, 437 (1968).  Those vestiges include a wide variety of harms, including any ongoing discrimination in operational, assignment, and deployment decisions, lost promotions, lost schooling, upgrading of adverse discharges, and other full scale "root and branch" relief.

Defendants' Motion doesn't even pretend to claim that the harm they caused has been undone.   Rather, the record evidence is unrebutted that Plaintiffs have not received "root and branch" relief, to include adverse record corrective action, adverse discharge relief, and relief for a variety of other harms.  As such, the case is not moot.

### B. Defendants' Motion should be denied because the voluntary cessation exception to mootness applies

The already high burden of establishing mootness is made even higher when it comes to voluntary cessation.  "A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case."  *Friends of the Earth, Inc.*, 528 U.S. 167, 189.  "If it did, the courts would be compelled to leave 'the defendant . . . free to return to his old ways.'"  *Id., citing City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

As the United States Supreme Court has observed in *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013):

> We have recognized, however, that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.
>
> Given this concern, our cases have explained that a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is **absolutely clear** the allegedly wrongful behavior could not reasonably be expected to recur.

*Id.* (emphasis added).  In *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017), the Supreme Court held that a government actor's change in policy does not moot a case.  Rather, the court held that the defendant must prove that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. 167 at 190.  "This standard is strict because courts are naturally suspicious—or at least they should be—of officials who try to avoid judicial review by voluntarily mooting a case." *Tucker v. Gaddis*, 40 F.4th 289, 295 (5th Cir. 2022) (Ho, J. concurring).  "The skepticism is warranted because the opportunities and incentives for government defendants are obvious:  Any 'defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id., citing Already*, 568 U.S. at 91.

"If a government not only ceases the challenged behavior, but also assures the plaintiffs and the courts that it will never return to its previous course of conduct, a court might reasonably decide to credit that promise, and hold the case moot, so long as it finds no reason to doubt the government's credibility on this score." *Id.*  Here, not only do Defendants not promise to "never do it again," but in light of the language in the Secretary's Memorandum, this Court has plenty of reason to doubt the Defendants' "credibility on this score" if they did make such an empty promise.

Defendants suggest that this is not a voluntary cessation case because, they argue, Congress in the NDAA required the rescission of the Vaccine Mandate. To understand how fatally flawed that argument is, one must again look to the plain language of the NDAA (§ 525, pages 177-178):

> Not later than 30 days after the date of the enactment of this Act, the Secretary of Defense shall rescind the mandate that members of the Armed Forces be vaccinated against COVID-19 pursuant to the memorandum dated August 24, 2021, regarding "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members."[12]

Once again, the NDAA _only_ required the rescission of the policy. It did not require lifting the implementation orders by the Secretary of the Army. It did not require halting separations for those who disobeyed the orders to vaccinate. It did not require the removal of adverse actions and reprimands. Rather, the Secretary of Defense made a voluntary decision to do certain of those things himself. Any argument that this was not voluntary (and perhaps mere litigation posturing) is a gross mischaracterization of fact.

Next, we turn to the Secretary of Defense's January, 2023 Memorandum.[13] That Memorandum contains explicit statements clearly indicating that the Secretary of Defense believes that everything the Defendants did was lawful, foreshadowing a return to past practices. The Secretary reiterated the Department of Defense's purported compelling interests in vaccination: "All commanders have the responsibility and authority to preserve the Department's compelling interests in mission accomplishment. This responsibility and authority includes the ability to maintain military readiness, unit cohesion, good order and discipline, and the health and safety of a resilient Joint Force." _Id._ These statements, about compelling interests being furthered by

---

[12] Available at: https://www.congress.gov/117/bills/hr7776/BILLS-117hr7776enr.pdf (last accessed 2/10/2023).

[13] Available at: https://media.defense.gov/2023/jan/10/2003143118/-1/-1/1/secretary-of-defense-memo-on-rescission-of-coronavirus-disease-2019-vaccination-requirements-for-members-of-the-armed-forces.pdf. (last accessed 2/15/2023).

vaccination, effectively acts as a directive to lower-level commanders that they have the freedom to impose vaccination requirements in the future, particularly in light of the later statement that "[o]ther standing Departmental policies, procedures, and processes regarding immunizations remain in effect."

Significant to the voluntary cessation issue, the Secretary voluntarily directed certain (carefully crafted) actions that were not required by the NDAA:

> No individuals currently serving in the Armed Forces shall be **separated solely** on the basis of their refusal to receive the COVID-19 vaccination if they sought an accommodation on religious, administrative, or medical grounds. The Military Departments **will update the records of such individuals to remove any adverse actions solely associated with denials of such requests, including letters of reprimand.** The Secretaries of the Military Departments will further cease any ongoing reviews of current Service member religious, administrative, or medical accommodation requests solely for exemption from the COVID-19 vaccine or appeals of denials of such requests. *Id.*

> **Other standing Departmental policies, procedures, and processes regarding immunizations remain in effect**. These include the ability of commanders to consider, as appropriate, the individual immunization status of personnel in making deployment, assignment, and other operational decisions, including when vaccination is required for travel to, or entry into, a foreign nation. *Id.*

> For Service members administratively discharged on the sole basis that the Service member failed to obey a lawful order to receive a vaccine for COVID-19, the Department is precluded by law from awarding any characterization less than a general (under honorable conditions) discharge. Former Service members may petition their Military Department's Discharge Review Boards and Boards for Correction of Military or Naval Records to individually request a correction to their personnel records, including records regarding the characterization of their discharge.

In light of the Defendants' practices to date, and the carefully crafted language in the Secretary of Defense's Memorandum, it is "absolutely clear" that Defendants will continue their wrongful behavior.  The Secretary's mere temporary lifting of his edict does not come close to meeting the Defendants' "formidable" burden.  The Defendants have "neither asserted nor

demonstrated that [they] will never resume the complained of conduct" and we don't expect that they will. *Norman-Bloodsaw v. Lawrence Berkely Lab.*, 135 F.3d 1260, 1274 (9th Cir 1998); *Cf. United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 n.* (2018) (holding "the rescission of the policy does not render this case moot").

 It is Defendants' burden to prove that the proffered "subsequent events make it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Trinity Lutheran Church of Columbia, Inc.*, 137 S.Ct. 2012, 2019 n.1. That formidable burden has not been met here and, in fact, the Defendants "nowhere suggest that if this litigation is resolved in their favor they will not" reimpose the vaccine mandate. Indeed, Defendants "vigorously defend" the legality of such an approach. *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U. S. 701, 719 (2007). Courts do not dismiss a case as moot in such circumstances. *See City of Mesquite*, 455 U. S. 283, 288-289.

 Next consider the Amended Complaint. The Army recently issued policy demonstrating its commitment towards continuing discrimination based on vaccination status. [Am. Compl., DE# 92, at ¶42; Appendix, DE# 93 at Exhibit 5]. Also consider the statement by Cadet Morrison's commanding officer:

> …we were all told to hold any action because you are part of that whole federal litigation thing, right? … if the case doesn't go well, the army could (emphasis) continue all the adverse action against unvaxxed [sic] persons…but if they say DoD can make a vaccine mandate, then I bet the action continues because it's still disobeying a legal order. [Am. Compl., DE#_92_, at ¶19; Appendix, DE#93 at Exhibit 3].

 This statement is a textbook example of why Government defendants have a formidable burden in voluntary cessation cases. This statement is also fatal to any assertion by Defendants that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Parents Involved in Community Schools*, 551 U. S. 701, 719. In fact, it appears to be

18

reasonably certain that Defendants will continue their illegal activities, as soon as they are no longer burdened by "that whole federal litigation thing."

Determining whether the ceased action "could not reasonably be expected to recur," *Friends of the Earth*, 528 U.S. at 189, takes into account the totality of the circumstances surrounding the voluntary cessation, including the manner in which the cessation was executed. *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019). Where, as here, "a change is merely regulatory [or by executive action], the degree of solicitude the voluntary cessation enjoys is based on whether the regulatory processes leading to the change involved legislative-like procedures or were ad hoc, discretionary, and easily reversible actions." *Id.* Thus, where, as here, "[i]f the discretion to effect the change lies with one agency or individual, or there are no formal processes required to effect the change, significantly more than the bare solicitude itself is necessary to show that the voluntary cessation moots the claim." *Id.*

Given the waiting game being played here, Plaintiffs submit that the temporary recission or expiration or termination of the vaccine mandate order, in the midst of litigation, is entitled to no weight whatsoever. *See A. Philip Randolph Inst. v. Husted*, 838 F.3d 699, 713 (6th Cir. 2016), *rev'd on other grounds*, 138 S. Ct. 1833 (2018) ("[T]he circumstances of the Secretary's issuance of the new form do not inspire confidence in his assurances regarding the likelihood of recurrence—he issued that new form on the same day as the parties' final merits briefs were due before the district court, attaching the form as an exhibit to his brief and only then presenting his mootness argument. This fact makes the Secretary's voluntary cessation appear less genuine."); *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 342-43 (6th Cir. 2007) ("In this case, that burden is increased by the fact that the voluntary cessation only appears to have occurred in response to the present litigation, which shows a greater likelihood that it could be resumed.").

19

Further, and most important to the mootness inquiry, is the fact that Defendants "vigorously defend[] the constitutionality of [their] . . . program". *Schlissel*, 939 F.3d 756 at 770, *citing Parents Involved in Cmty. Sch.*, 551 U.S. 701, 719. Simply put, nothing the Secretary has said or done shows that he understands that his policies resulted in violations of RFRA and the First Amendment. In fact, the opposite is true as the Secretary continues to publicly defend his decisions and policies. A case is not moot where, as here, the Secretary "did not voluntarily cease the challenged activity because he felt [it] was improper," and "has at all times continued to argue vigorously that his actions were lawful." *Olagues v. Russoniello*, 770 F.2d 791, 795 (9th Cir. 1985).

Defendants cannot reasonably deny that they voluntarily ceased at least some of the challenged conduct, thus rendering the only remaining issue is whether they have met the formidable burden of showing that the complained of conduct cannot recur. A simple review of Plaintiffs' evidence should allow this Court to quickly determine that Defendants do not satisfy this burden. Not only do Defendants retain the authority to reinstitute a new vaccine mandate at any time, but, as explained above, the very rescission document demonstrating *de minimis* compliance with the FY 2023 NDAA also institutes a *de facto* vaccine mandate–with no formal repeal, recission, or cancellation of two enjoined policies. This "authority to reinstate [the challenged policies] at any time" from officials "with a track record of 'moving the goalposts'" subjects Plaintiffs to a credible threat of widespread enforcement of Defendants' discriminatory vaccination requirements in the future. *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021). Defendants also continue to defend the merits of their mandate. *See* Mongilio, *supra* n.3.

The fact that Defendants are government actors does not change the doctrine's application. When the government changes a law or policy in response to litigation, as here, the voluntary

Case 6:22-cv-00049-H   Document 96   Filed 02/15/23   Page 29 of 39   PageID 2229

cessation doctrine prevents dismissal of a plaintiff's claim based on mootness. *See Parents Involved in Cmty. Schs.*, 551 U.S. 701, 719 (finding voluntary cessation doctrine applied because government actors vigorously defended the constitutionality of its race-based program, and did not deny that if the litigation was resolved in its favor it would resume using race to assign students); *Tucker*, 40 F.4th 289, 293 (holding a prison's changed policy did not moot a case where the prison gave no assurances that it would not repeat the challenged conduct); *DeJohn v. Temple Univ.*, 537 F.3d 301, 309-10 (3d Cir. 2008) (holding public university's policy change during litigation and continued defense of that policy on appeal did not moot case).

Indeed, even if this Court applies the more relaxed standard sometimes used when the defendant is a government actor, the result is the same. Courts consider three factors when applying its more relaxed standard: "(1) the absence of a controlling statement of future intention [not to repeat the challenged policy]; (2) the suspicious timing of the change; and (3) the [governmental entity's] continued defense of the challenged polic[y]" after the supposedly mooting event. *Speech First,* 979 F.3d at 328. These factors are easily satisfied here. First, Defendants have made no representations that they will *not* continue to discriminate against Plaintiffs based on their religious beliefs. In fact, their actions and statements demonstrate an intent to do just the opposite—specifically treating unvaccinated religious soldiers as second-class citizens. Second, Defendants continue to defend the repealed policy and have publicly stated that the vaccine mandate was a lawful order at the time it was issued. Even under a more relaxed standard, Plaintiffs' claims are not moot.

Defendants rely upon *Am. Bar Ass'n v, FTC*, 636 F.3d 641, 648 (D.C. Cir. 2011), however that case is distinguishable because  the intervening legislation in *ABA* <u>completely eradicated</u>, (and prevented re-enactment of) the offending policy, and there was not, as there is here, (i) the ability

to re-enact the policy; (ii) other similar discriminatory policies that the Defendants are presently

pursuing; (iii) ongoing harm from the policy that have not been eradicated; and (iv) no evidence,

as there is here, of a litigation motive.

Finally, the Supreme Court has noted that in addition to a court retaining the ability to hear

a case after voluntarily cessation (considerations of mootness), "the court's power to grant

injunctive relief survives discontinuance of the illegal conduct." *United States v. W. T. Grant Co.*,

345 U.S. 629, 633 (1953). "The necessary determination is that there exists some cognizable

danger of recurrent violation…." *Id.* That is for a reason: it is to permit the correction of past

harms. Here, there are plenty of not only past, but present and ongoing harms.

### C. Defendants' Motion should be denied because the capable of repetition, yet evading review exception to mootness applies

Defendants not only fail to meet their formidable burden of proving that the voluntary

cessation doctrine does not apply, but they also fail to prove that this case is not one that is capable

of repetition, yet evading review. "The exception applies where '(1) the challenged action is in its

duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable

expectation that the same complaining party will be subject to the same action again.'" *Fed.

Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462 (2007). Both requirements

are present here.

First, given the rapidly changing COVID-19 landscape and the changes in policy

throughout the Department of Defense (which seem to occur daily) there is no question that the

duration of the vaccine mandate and the policies related to it will perpetually be "too short to be

fully litigated prior to cessation or expiration." *See Kingdomware Tech., Inc. v. United States*, 136

S. Ct. 1969, 1976 (2016) (two years is too short); *Turner v. Rogers*, 564 U.S. 431, 440 (2011) (12

months is too short); *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 774 (1978) (18 months is

too short); *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911) (two years is too short); *Roe v. Wade*, 93 S. Ct. 705 (1973) (266 days is too short).  Under the first element, a case evades review if its duration is too short to receive "complete judicial review," including review by the Supreme Court.  *First Nat'l Bank of Bos.*, 435 U.S. 765, 774; *see also Empower Texans, Inc. v. Geren*, 977 F.3d 367, 370 (5th Cir. 2020).

When analyzing the second element, courts are concerned with whether the conduct was "*capable* of repetition and not . . . whether the claimant had demonstrated that a reoccurrence of the dispute was more probable than not." *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988). Plaintiffs need not demonstrate with "mathematical precision" that they will be subject to the same illegal conduct; rather, they just need to show "a reasonable expectation" that the challenged action will reoccur. *Id.*  In *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), the Supreme Court held that a church's First Amendment challenge to New York's COVID-19 lockdown orders was not moot because it was capable of repetition, yet evading review. The church "remain[ed] under a constant threat" that the government would reinstitute a lockdown in its area. *Id*. at 68. Because the challenged action was too short in duration to be fully litigated prior to cessation, and there was a reasonable expectation that the church would be subject to the same action in the future, the case was not moot. *Id*. Plaintiffs have a reasonable expectation that the challenged action— application of a vaccine mandate that violated their religious beliefs—will recur. The FY23 NDAA forced Defendants to rescind the 2021 mandate to be vaccinated against COVID-19. Yet, as explained above, Defendants implemented a *de facto* mandate in the very document that repealed the original mandate in name only. Defendants remain free to make decisions about soldiers that will unlawfully harm their careers based on their vaccination status while providing no assurances that they will not continue to discriminate against Plaintiffs in violation of RFRA and the First

Amendment because they sought religious accommodations from the mandate and remain unvaccinated against COVID-19. Defendants also retain the power to institute an identical and more widespread vaccine mandate at any time, and they have already stated they have a compelling interest in doing so.

Second, Plaintiffs reasonably fear that the challenged requirements will be reinstituted, and Defendants' submissions validate those fears.[14] And as is requested in this case, "[c]laims for declaratory relief can preclude mootness if it is shown that there is a 'demonstrated probability' that the harm the declaration addresses could occur again." *Meadows v. Odom*, 198 F. App'x 348, 351 (5th Cir. 2006); *J.R. v. Austin Indep. Sch. Dist.*, 574 F. Supp. 3d 428, 438 (2021). As of the date of the initial complaint, the Army received over 10,000 requests for religious accommodation and only approved 32, while granting thousands of secular exemption requests to the same mandate. [Am. Compl., DE# 92, ¶ 44]. The actions of Defendants were not unintentional and were not isolated. In fact, they were calculated. And, in light of Defendants continued insistence they did nothing wrong, particularly where this Court found Defendants violated RFRA and the First Amendment, the mere temporary recission of the vaccine mandate means little to nothing. Given this evidence, there is ". . . a [more than] reasonable expectation that the [Plaintiffs] will be subject to the same action again." *Fed. Election Comm'n,* at 462. Plaintiff's claims are not moot.

### D. Defendants' Motion should be denied because the pickoff/class-action exception applies

There is a pending (and fully briefed) motion for class certification pending with this Court. [DE#48, DE#49]. There is also an updated Notice requesting the addition of the additional named

---

[14] "Other standing Departmental policies, procedures, and processes regarding immunizations remain in effect. These include the ability of commanders to consider, as appropriate, the individual immunization status of personnel in making deployment, assignment, and other operational decisions, including when vaccination is required for travel to, or entry into, a foreign nation." Secretary of Defense's January 10, 2023 Memorandum.

Plaintiff/representative, which has also been filed. [Am. Compl., DE# 95]. It is inappropriate to adjudicate a motion to dismiss for mootness, without taking up and deciding the motion for class certification. *Cruz v. Hauck*, 627 F.2d 710 (5th Cir. 1980). "The plaintiffs initially contend that it was improper to consider the alleged mootness of the claims of the class in determining whether to certify the action as a class action." *Id.* at 715. "We agree." *Id.* "It is not appropriate to decide a case on its merits before determining whether it can be certified as a class action." *Id.*

Moreover, mootness of a class representative's individual claim post-certification does not moot the entire class action. *Sosna v. Iowa*, 419 U.S. 393, 399 (1975) ("When the [d]istrict [c]ourt certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by [plaintiff]."); *see also Franks v. Bowman Transp. Co.*, 424 U.S. 747, 755-57, 96 S. Ct. 1251, 47 L. Ed. 2d 444 (1976) (extending *Sosna* by holding that a certified class action will not be rendered moot by the mootness of the class representative's individual claims in instances in which the class claims are not inherently transitory). In such cases, the Article III "controversy may exist . . . between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot." *Id.* at 402. Moreover, so long as one Plaintiff has non-moot claims, the case may not be dismissed. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 100 S. Ct. 1202 (1980); *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1647 (2017) (one plaintiff is sufficient).

The Fifth Circuit has explained that "a suit brought as a class action must as a general rule be dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no class has properly been certified." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1045 (5th Cir. 1981). However, in considering mootness of the plaintiffs' claims through a Rule 68 offer of

judgment, *Zeidman* held "that a suit brought as a class action should not be dismissed for mootness upon tender to the named plaintiffs of their personal claims . . . when . . . there is pending before the district court a timely filed and diligently pursued motion for class certification." *Id.* at 1051 (emphasis added).  In such instances, certification is said to "relate back" to the filing of the class complaint for purposes of subject matter jurisdiction. *Id.* at 1047-48.

Fifth Circuit precedent continues to support that position.  *Castillo v. Cameron County*, 238 F.3d 339, 343, n.1 (5th Cir. 2001), *citing Davis v. Ball Mem'l Hosp. Ass'n., Inc.*, 753 F.2d 1410, 1416 (7th Cir. 1985) ("When the claims of **all the class members** are moot, the action is moot"). See generally CHARLES ALAN WRIGHT ET AL., 13A FEDERAL PRACTICE AND PROCEDURE § 3533.9, at 401 (2d ed. 1984) ("If the claim of the **entire class** is moot, the case is finished.").  Collectively, this is known as the pickoff, or class action exception to mootness.  Here, as demonstrated above, all of the Plaintiffs have ongoing harms that have not dissipated and require relief (although only one will suffice). Therefore, Defendants' Motion should be denied because the pick-off/class exception to mootness applies.

### E.   As to wholly past harms (which continue), Defendants' Motion should be denied because the collateral consequences exception applies

Under the collateral consequences exception, when the plaintiff's primary injury (here, the discriminatory exemption process) has ceased, the case is not moot if the challenged conduct continues to cause other harm (i.e., "collateral consequences") that the court is capable of remedying.  *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998) (*citing Sibron v. New York*, 392 U.S. 40, 53-59, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968)).  A continuing collateral consequence is one that provides the plaintiff with a "concrete interest" in the case and for which "effective relief" is available.  *Id.* (*citing Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 571, 104 S. Ct. 2576, 81 L. Ed. 2d 483 (1984)).  Here, this issue turns on whether the Court

can still award relief to these Plaintiffs.  It can.  These Plaintiffs all have ongoing collateral harms that still require relief (although having only one such Plaintiff will suffice).

Perhaps anticipating this argument, Defendants cite *J. T. v. D.C.*, 983 F.3d 516, 523 (D.C. Cir. 2020).  But again, in that case, there were no lingering adverse effects at issue.  Yet again, that is not this case.  Here, 1) the NDAA does not address all of Plaintiffs' ongoing harms/issues with the Army's enforcement of the mandate; 2) All parties did not agree on anything; and 3) Plaintiffs are seeking retrospective relief stemming from past harms alleged in the suit.

### 1. RFRA permits wide-ranging equitable relief, which can be awarded to Plaintiffs and members of the putative class

Beyond the Sixth Circuit's observation in *Doster*, 54 F.4th 398, 439 and *Doster*, 48 F.4th 608, 615 that root and branch relief is available, Congress plainly afforded this Court ample authority to award the requested relief in RFRA at 42 U.S.C. 2000bb-1(c):

> (c)Judicial relief.  A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

And, in explaining the scope of this "appropriate relief," the Supreme Court adopted an expansive view of the remedy.  *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020).  In part, Defendants (citing mostly outdated case law) argue that this Court cannot award equitable relief, such as back pay. Well, *Tanzin* forecloses that argument, and, as with Title VII claims, the "appropriate relief" mandate and the characterization of backpay as equitable, rather than legal relief, empowers this Court to award such appropriate relief irrespective of immunity arguments (which Congress waived in passing RFRA), in connection with lost promotion or the like.  *Kolstad v. ADA*, 527 U.S. 526, 119 S. Ct. 2118 (1999); *West v. Gibson*, 527 U.S. 212, 119 S. Ct. 1906 (1999).  And even if backpay cannot be awarded, retirement credit, points, and other relief plainly can.

27

Defendants also argue that back pay claims can only be paid for work actually performed, and such relief would not be available to those who were deprived of promotions (or were illegally discharged), *citing Dehne v. United States*, 970 F.2d 890 (Fed. Cir. 1992). But *Dehne* does not stand for the proposition for which Defendants cite it for. There, the holding was that "Dehne must find a substantive right in the Constitution, an act of Congress, or an executive department regulation on which to base his claim that 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Id.* at 893.

Here, of course, there is a substantive right in the Constitution, and an act created by Congress, one that provides equitable relief, and monetary relief, 42 U.S.C. 2000bb-1(c). The Supreme Court has read RFRA to have a far-reaching ability to provide relief and even to subject individual Government actors to personal liability. *Tanzin*, 141 S. Ct. at 491. And in the same vein, *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996) does not stand for the proposition for which Defendants cite it. Congress waived sovereign immunity by enacting RFRA, and RFRA provides for equitable and monetary relief. Again, back pay is not monetary relief, but is considered equitable. *Kolstad*, 527 U.S. 526, 119 S. Ct. 2118; *West*, 527 U.S. 212.

**2. The violation of orders by Plaintiffs and others in the class, which give rise to criminal liability, and in which the relevant statute of limitations has not passed, renders the action not moot**

All Plaintiffs in this action received orders to vaccinate. None of them complied. Accordingly, under the Uniform Military Code of Justice (USMC), each (except for Luke Chrisman) remains subject to criminal prosecution at any time, for violations of either Article 90 or Article 92 of the Uniform Code of Military Justice, during the full five-year statute of limitations if the Defendants so choose. 10 U.S.C. § 843 (statute of limitations); 10 U.S.C. § 890 (Article 90);

10 U.S.C. § 892 (Article 92).  Each faces the prospect and potential punishment of up to five years in a military prison for these violations.[15]

The current injunction, and requested relief in final judgment, continues to protect these plaintiffs from prosecution, and thus the matter is not moot.  *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764 (9th Cir. 2006) (violation of repealed statute does not foreclose relief if the statute was violated); *Bowman v. Schwarzenegger*, 2009 U.S. Dist. LEXIS 24678 (ED Cal 2009) (same); *Dean Foods Co. v. Tracy*, 990 F. Supp. 646 (W.D. Wis. 1997) (claim not moot where enforcement possible); *Bennie v. Munn*, 822 F.3d 392 (8th Cir. 2016) (same); *Ctr. for Individual Freedom v. Tennant*, 706 F.3d 270, 293 (4th Cir. 2013) (possibility of enforcement for past violation rendered matter not moot); *Ramsek v. Beshear*, 989 F. 3d 494 (6th Cir. 2021) (not finding mootness due to possibility of future prosecution in light of unexpired criminal statute of limitations).

**3.  The declaratory relief in this case can serve as a basis for monetary damage claims for members of the class (perhaps against Secretary Austin or Secretary Wormuth in their individual capacities), also rendering the case not moot**

In *Doster*, 54 F.4th 398, 426, one of the arguments raised by the Government was that two of the Plaintiffs' claims were moot because, after being threatened with loss of their pilot training slots, they undertook a dangerous sojourn to Mexico to get vaccinated.  The response by the Sixth Circuit was telling: "The Air Force now alleges that these two Plaintiffs' claims are moot.  We will leave that issue for the district court because other Plaintiffs have live claims for injunctive relief, *see T.M. ex rel. H.C. v. DeWine*, 49 F.4th 1082, 1087 n.3 (6th Cir. 2022), and because RFRA permits damages suits, *see Tanzin*, 141 S. Ct. at 491."  *Id*. Indeed, the declaratory relief here can

---

[15] https://jsc.defense.gov/Portals/99/Documents/2019 MCM (Final) (20190108).pdf?ver=2019-01-11-115724-610 (last accessed 2/15/2023) at Section IV-25 and IV-28 (pages 332 and 335).

thus serve, under principles of res judicata and/or collateral estoppel, as a follow-on to monetary relief in individual cases against the Defendants, particularly in light of *Tanzin*.  As the Sixth Circuit observed in *Doster*, 54 F.4th 398 at 426, that renders the case not moot. *Id*.

## IV.     CONCLUSION

Defendants have woefully failed to meet *their* formidable burden to establish mootness. They claim mootness merely due to 1) rescission of a policy that  can be re-enacted at any time; 2) but which ignores ongoing harms that continue to date (and have not been corrected and may never be corrected); while they 3) argue  that voluntary cessation (and its heightened burden) does not apply, even though Congress did not mandate any corrective action other that rescission of a particular policy; and where they 4) fail to address a bevy of other exceptions.  Their motion to dismiss should be denied.


Dated:  February 15, 2023                                      Respectfully submitted,

                                                               /s/ Aaron Siri                                 .
                                                               Aaron Siri (admitted PHV)
                                                               Elizabeth A. Brehm (admitted PHV)
                                                               Wendy Cox (TX 24090162)
                                                               Dana Stone (admitted PHV)
                                                               SIRI | GLIMSTAD LLP
                                                               745 Fifth Avenue, Suite 500
                                                               New York, NY 10151
                                                               (212) 532-1091 (v)
                                                               (646) 417-5967 (f)
                                                               aaron@sirillp.com
                                                               ebrehm@sirillp.com
                                                               wcox@sirillp.com
                                                               dstone@sirillp.com

                                                               /s/Christopher Wiest
                                                               Christopher Wiest (admitted PHV)
                                                               Chris Wiest, Atty at Law, PLLC
                                                               25 Town Center Boulevard, Suite 104
                                                               Crestview Hills, KY 41017
                                                               (513) 257-1895 (vc)
                                                               (859) 495-0803 (f)

chris@cwiestlaw.com

Thomas Bruns (admitted PHV)
Bruns, Connell, Vollmar & Armstrong, LLC
4555 Lake Forest Drive, Suite 330
Cincinnati, OH 45242
(513) 312-9890 (vt)
tbruns@bcvalaw.com

John C. Sullivan
S|L LAW PLLC
Texas Bar Number: 24083920
610 Uptown Boulevard, Suite 2000
Cedar Hill, Texas 75104
(469) 523–1351 (v)
(469) 613-0891 (f)
john.sullivan@the-sl-lawfirm.com
*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2023, a true and correct copy of this Memorandum in Opposition to Defendants' Motion to Dismiss was served by CM/ECF on all counsel or parties of record.

/s/ Christopher Wiest_____