UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

ROBERT SCHELSKE, *et al.*,

    *Plaintiffs,*

   v.

LLOYD J. AUSTIN, III,
United States Secretary of Defense, *et al.*,

    *Defendants.*

No. 6:22-cv-0049-H

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS THE AMENDED COMPLAINT AND REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS THE INITIAL COMPLAINT**

**CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 1

     A.    The Rescinded COVID-19 Vaccination Requirement........................................... 1

     B.    This Lawsuit..................................................................................................... 5

ARGUMENT ...................................................................................................................... 7

I.      Plaintiffs' challenge to the rescinded vaccination requirement is moot. ........................... 7

II.     No exception to mootness applies..................................................................................... 13

     A.    The voluntary cessation exception does not apply. ............................................... 13

     B.    The vaccine requirement is not capable of repetition yet evading review........... 17

     C.    The pending class motions do not create a live controversy. .............................. 20

III.    The Court lacks jurisdiction to enjoin a hypothetical, unformed future policy. ............... 21

IV.    Plaintiffs' new claims about alleged adverse actions are unexhausted and unripe........... 24

V.     Plaintiffs may not obtain backpay or other damages. ....................................................... 26

VI.    Cadet Bufkin's academic discharge is unconnected to the vaccination requirement. ...... 28

CONCLUSION..................................................................................................................... 30

# AUTHORITIES

## Cases

*Abbott Lab'ys v. Gardner*,
   387 U.S. 136 (1967)................................................................................................22

*Aetna Life Ins. Co. of Hartford v. Haworth*,
   300 U.S. 227 (1937)................................................................................................22

*Allen v. Wright*,
   468 U.S. 737 (1984)................................................................................................29

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013)............................................................................................7, 14

*Alvarado v. Austin*,
   No. 122CV876AJT-JFA, 2023 WL 2089246 (E.D. Va. Feb. 17, 2023) ....................9

*Am. Bar Ass'n v. FTC*,
   636 F.3d 641 (D.C. Cir. 2011) ....................................................................8, 13, 19

*Amawi v. Paxton*,
   956 F.3d 816 (5th Cir. 2020) ................................................................................15

*Austin v. U.S. Navy SEALs 1–26*,
   142 S. Ct. 1301 (2022)...........................................................................................23

*Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs*,
   217 F.3d 393 (5th Cir. 2000) ................................................................................18

*Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*,
   941 F.3d 1195 (9th Cir. 2019) .................................................................................8

*Borst v. Chevron Corp.*,
   36 F.3d 1308 (5th Cir. 1994) ................................................................................27

*Brown v. Collier*,
   929 F.3d 218 (5th Cir. 2019) ................................................................................23

*California v. Texas*,
   141 S. Ct. 2104 (2021)...........................................................................................29

*Chauffeurs, Teamsters, & Helpers, Local No. 391 v. Terry*,
   494 U.S. 558 (1990).........................................................................................27, 28

*Dehne v. United States*,
    970 F.2d 890 (Fed. Cir. 1992).................................................................. 28, 29

*DeOtte v. State*,
    20 F.4th 1055 (5th Cir. 2021) ...................................................................... 8

*Empower Texans, Inc. v. Geren*,
    977 F.3d 367 (5th Cir. 2020) ....................................................... 17, 18, 19, 20

*Fantasy Ranch Inc. v. City of Arlington*,
    459 F.3d 546 (5th Cir. 2006) ....................................................................... 8

*Fed. Deposit Ins. Co. v. Meyer*,
    510 U.S. 471 (1994)................................................................................... 28

*Fontenot v. McGraw*,
    777 F.3d 741 (5th Cir. 2015) ................................................................. 7, 21

*Freedom From Religion Found., Inc. v. Abbott*,
    58 F.4th 824 (5th Cir. 2023) ........................................................... 8, 14, 15

*Garcia v. United States*,
    666 F.2d 960 (5th Cir. Unit B 1982)............................................................ 26

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013)..................................................................................... 21

*Gilligan v. Morgan*,
    413 U.S. 1 (1973)....................................................................................... 24

*Golden v. Zwickler*,
    394 U.S. 103 (1969)................................................................................... 11

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)................................................................................... 27

*Guedes v. ATF*,
    920 F.3d 1 (D.C. Cir. 2019) ....................................................................... 13

*Harkness v. United States*,
    727 F.3d 465 (6th Cir. 2013) ..................................................................... 24

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)................................................................................... 12

*Hodges v. Callaway*,
    499 F.2d 417 (5th Cir. 1974) ................................................................................. 24, 25

*J.T. v. District of Columbia*,
    983 F.3d 516 (D.C. Cir. 2020) ................................................................................. 13

*Johnson v. Ga. Highway Exp., Inc.*,
    417 F.2d 1122 (5th Cir. 1969) ................................................................................. 27

*Johnson v. Mississippi*,
    586 F.2d 387 (5th Cir. 1978) ................................................................................. 8

*K.P. v. LeBlanc*,
    729 F.3d 427 (5th Cir. 2013) ................................................................................. 7

*Kingdomware Techs., Inc. v. United States*,
    579 U.S. 162 (2016)................................................................................. 17, 18, 20

*Klayman v. Obama*,
    759 F. App'x 1 (D.C. Cir. 2019) ................................................................................. 13

*Kreis v. Sec'y of Air Force*,
    866 F.2d 1508 (D.C. Cir. 1989) ................................................................................. 28

*LaRouche v. Fowler*,
    152 F.3d 974 (D.C. Cir. 1998) ................................................................................. 18

*Libertarian Party v. Dardenne*,
    595 F.3d 215 (5th Cir. 2010) ................................................................................. 19

*Long v. Jayton-Girard Indep. Sch. Dist.*,
    No. 5:21-CV-111-H, 2021 WL 7906835 (N.D. Tex. Sept. 3, 2021) ................................. 20

*Lopez v. City of Houston*,
    617 F.3d 336 (5th Cir. 2010) ................................................................................. 19

*Mindes v. Seaman*,
    453 F.2d 197 (5th Cir. 1971) ................................................................................. 24

*Moore v. Hosemann*,
    591 F.3d 741 (5th Cir. 2009) ................................................................................. 18

*Murphy v. Hunt*,
    455 U.S. 478 (1982)................................................................................. 19

*Oaxaca v. Roscoe*,
 641 F.2d 386 (5th Cir. Unit A 1981) .................................................................. 29

*Ohio Forestry Ass'n v. Sierra Club*,
 523 U.S. 726 (1998) .......................................................................................... 22

*Oliver v. Scott*,
 276 F.3d 736 (5th Cir. 2002) ............................................................................ 19

*Orloff v. Willoughby*,
 345 U.S. 83 (1953) ....................................................................................... 24, 28

*Pharmachemie B.V. v. Barr Lab'ys, Inc.*,
 276 F.3d 627 (D.C. Cir. 2002) ......................................................................... 18

*Pulphus v. Ayers*,
 909 F.3d 1148 (D.C. Cir. 2018) ........................................................................ 23

*Rocky v. King*,
 900 F.2d 864 (5th Cir. 1990) ............................................................................ 21

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
 141 S. Ct. 63 (2020) ......................................................................................... 18

*Schelske v. Austin*,
 --- F. Supp. 3d ---, 2022 WL 17835506 (N.D. Tex. Dec. 21, 2022) ............................ 5, 23, 24

*Sossamon v. Lone Star State of Texas*,
 560 F.3d 316 (5th Cir 2009) ............................................................................. 14

*Sossamon v. Lone Star State of Texas*,
 563 U.S. 277 (2011) ..................................................................................... 14, 26

*Speech First, Inc. v. Schlissel*,
 939 F.3d 756 (6th Cir. 2019) ............................................................................ 15

*Spell v. Edwards*,
 962 F.3d 175 (5th Cir. 2020) ................................................................... 7, 9, 19, 20

*Staley v. Harris County*,
 485 F.3d 305 (5th Cir. 2007) ............................................................................ 22

*Tanvir v. Tanzin*,
 894 F.3d 449 (2d Cir. 2018) ............................................................................. 27

*Tanzin v. Tanvir,*
    141 S. Ct. 486 (2020) ............................................................................ 27

*Texas v. Biden,*
    20 F.4th 928 (5th Cir. 2021) ......................................................... 15, 16

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ....................................................................... 7, 12

*Triplett v. Heckler,*
    767 F.2d 210 (5th Cir. 1985) ............................................................... 17

*Unimex, Inc. v. U.S. Dep't of Housing & Urban Dev.,*
    594 F.2d 1060 (5th Cir. 1979) ............................................................. 11

*Veasey v. Abbott,*
    248 F. Supp. 3d 833 (S.D. Tex. 2017) ............................................... 10

*Von Hoffburg v. Alexander,*
    615 F.2d 633 (5th Cir. 1980) ............................................................... 24

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) .............................................................................. 20

*Warnock v. Pecos Cnty.,*
    88 F.3d 341 (5th Cir. 1996) ................................................................. 28

*Webman v. Fed. Bureau of Prisons,*
    441 F.3d 1022 (D.C. Cir. 2006) .......................................................... 26

*Yarls v. Bunton,*
    905 F.3d 905 (5th Cir. 2018) ..................................................... 7, 13, 15

*Zeidman v. J. Ray McDermott & Co.,*
    651 F.2d 1030 (5th Cir. 1981) ............................................................. 21

**Statutes**

10 U.S.C. § 1552 ........................................................................................... 25

10 U.S.C. § 14502 ......................................................................................... 24

28 U.S.C. § 1331 ........................................................................................... 25

42 U.S.C. § 2000e-5 ...................................................................................... 27

James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA"), Pub. L. No. 117-263, 136 Stat. 2395 (2022) ............................................................................ 2

## Rules

Federal Rule of Civil Procedure 15 ............................................................................ 6

Federal Rule of Civil Procedure 23 ............................................................................ 7

## Regulations

28 C.F.R. 50.15 ........................................................................................................ 11

## Other Authorities

18A Charles Allan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4458 (3d ed. updated 2022) .............................................................................................. 11

168 Cong. Rec. H9425, H9441 (daily ed. Dec. 8, 2022) ............................................ 25

# INTRODUCTION

Plaintiffs brought this civil action to enjoin the Army from requiring them to be vaccinated against COVID-19 over their religious objections. Congress has now afforded them that relief. Late last year, it directed the Secretary of Defense to the rescind the vaccination requirement, which the Secretary promptly did by repealing the vaccination requirement and all policies implementing it and also removing adverse actions from the files of soldiers who had claimed an exemption from the requirement. As a result of these measures, Plaintiffs' challenge to the vaccination requirement is moot. Their assertion of a lingering "de facto" mandate is demonstrably wrong, and their invocation of exceptions to mootness fail as a matter of law.

Plaintiffs have attempted to breathe life into their moot case with an amended complaint that adds a new plaintiff who was discharged for refusing to vaccinate, seeks the undoing of past adverse actions, and newly asserts that an academic discharge of Cadet Zakai Bufkin is due to the vaccination requirement. But the military has already ordered the elimination of the adverse actions that Plaintiffs claim to have suffered. Further, there are exhaustion requirements that Plaintiffs have yet to follow for their new claims seeking to upgrade a discharge or for a special selection board to consider a promotion. The claims about promotions are also unripe. And while Plaintiffs' amended complaint mentions backpay, they are precluded by sovereign immunity (among other things) from obtaining backpay from the official-capacity defendants in this case. As for Cadet Bufkin, because his academic discharge is not an enforcement of the rescinded COVID-19 vaccination requirement, he lacks standing to challenge that requirement.

# BACKGROUND

## A.    The Rescinded COVID-19 Vaccination Requirement

The deadly viral disease known as COVID-19 began spreading in the United States in early 2020 and rapidly wrought disruptions on the armed forces, including by causing the deaths of

many unvaccinated service members. *See* Stanley Decl. ¶¶ 3–13, A621–26, ECF No. 39-1. Following the development of safe and effective COVID-19 vaccines, and to protect service members' health and operational readiness, on August 24, 2021, the Secretary of Defense directed the military departments to ensure that service members were fully vaccinated against COVID-19. Sec'y of Def. Mem. (Aug. 24, 2021), https://perma.cc/N759-S758. The Army implemented that directive by, among other things, requiring commanders to separate soldiers who refused to vaccinate. Mahoney Decl. ¶ 27, A014. Consistent with existing policies, the Army permitted service members to seek medical, religious, or administrative exemptions from the vaccination requirement based on individual circumstances. *Id.* ¶¶ 13–26, A006–14.

On December 23, 2022, the President signed into law the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 ("NDAA"). A provision of that Act directs the Secretary of Defense to rescind the August 2021 COVID-19 vaccination requirement. *See* Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2571–72 (2022). Soon after passage of the NDAA in Congress, the Army directed commanders to "immediately suspend the processing and initiation of any involuntary enlisted separation or officer elimination actions based solely on a soldier's refusal to comply with the [Department of Defense's] COVID-19 vaccination order" and similarly directed the United States Military Academy to "suspend cadet separation and disenrollment proceedings." FRAGO 35 ¶ 3.D.28, A029.[1]

In compliance with Congress's directive, on January 10, 2023, the Secretary of Defense rescinded the August 2021 COVID-19 vaccination requirement. A043. His rescission

---

[1]     FRAGO 35 initially indicated that the suspension of separations would not apply to members of the National Guard and Ready Reserve, A029 ¶ 3.D.29, but that part of FRAGO 35 was subsequently rescinded, FRAGO 36 ¶ 3.D.29, A037. In any event, no Plaintiff in this case is a member of the National Guard or Ready Reserve.

memorandum states that current service members who requested an exemption from the vaccination requirement may not be "separated solely on the basis of their refusal to receive the COVID-19 vaccination" and directs the military services to "update the records of such individuals to remove any adverse actions solely associated with denials of such requests" for exemption. A043. Former service members who were administratively discharged on the sole basis that they failed to obey an order to receive a COVID-19 vaccine "may petition their Military Department's Discharge Review Boards and Boards for Correction of Military or Naval Records to individually request a correction to their personnel records, including records regarding the characterization of their discharge." A044. The memorandum noted that commanders retained the ability "to consider, as appropriate, the individual immunization status of personnel in making deployment, assignment, and other operational decisions." A044. Shortly after the Secretary issued the memorandum, the Army directed commanders to "immediately suspend initiating or taking final action on adverse administrative actions based solely on a soldier's refusal to comply with the rescinded mandate." FRAGO 37 ¶ 3.D.30, A046–47. The suspension on discharges also remained in effect. *See* A029 ¶ 3.D.28, (imposing the suspension on discharges); A046 ¶¶ 3.D.24–29 (making no change to this provision).

In the months following the Secretary's memorandum, the Department of Defense and the Army have issued further guidance implementing the Secretary's rescission of the COVID-19 vaccination requirement and the removal of adverse actions associated with it. On January 30, 2023, the Under Secretary of Defense updated the military's Force Health Protection Guidance to, among other things, eliminate the provision restricting travel for those not fully vaccinated to "mission-critical official travel." *See* Force Health Protection Guidance Rev. 4, A070. The Army's travel policies no longer distinguish between those who are vaccinated against COVID-19 and

those who are not. FRAGO 38 ¶ 3.D.15, A079 ("Effective immediately, not fully vaccinated individuals may conduct any official travel that is appropriate under the joint travel regulations, and not otherwise prohibited[.]"). With this change in policy, there is, for example, no longer any barrier to Staff Sergeants Schelske, Costroff, and Testa enrolling in the Senior Leaders Course or to Lieutenant Bakich enrolling in the Maneuver Captain's Career Course; indeed, they are all currently scheduled to attend those trainings in the near future. *See* Am. Compl. ¶ 60 (admitting that the Plaintiffs seeking to attend courses "each have been recently permitted to attend these courses").

More recently, on February 24, 2023, the Deputy Secretary of Defense issued guidance making clear that the January 10, 2023, rescission memorandum "rendered all [Department of Defense] Component policies, directives, and guidance implementing [the] vaccination mandates as no longer in effect as of January 10, 2023." A087. This includes, but is not limited to, "any COVID-19 vaccination requirements or related theater entry requirements and any limitations on deployability of Service members who are not vaccinated against COVID-19." A087. The Deputy Secretary directed commanders to comply with foreign nation entry requirements, but has otherwise prohibited individual commanders from requiring vaccination against COVID-19 or considering a soldier's COVID-19 immunization status when making "deployment, assignment, and other operational decisions, absent establishment of a new immunization requirement" to be approved at the level of the Assistant Secretary of Defense for Health Affairs, which will occur "only when justified by compelling operational needs and . . . as narrowly tailored as possible." A088.

Also on February 24, 2023, the Secretary of the Army issued a memorandum broadly "rescind[ing] all Department of the Army policies specifically associated with the implementation

of the COVID-19 vaccination mandate." A089. Among other things, the Secretary of the Army directed (1) the immediate rescission of all pending separation actions pursuant to the vaccination requirement, A090 ¶ 5.a.(1); (2) the immediate and favorable closing of flags for soldiers who failed to comply with an order to be vaccinated, A090 ¶ 5.a.(2); (3) the immediate removal of General Officer Memoranda of Reprimand ("GOMORs") for soldiers who failed to comply with an order to be vaccinated, A090 ¶ 5.a.(3); (4) the immediate removal of all bars to continued service for soldiers who failed to comply with an order to be vaccinated, A090 ¶ 5.a.(4); and (5) the potential modification of evaluation reports based on a failure to comply with an order to be vaccinated "to achieve the most advantageous outcome for the Soldier," A090–91 ¶ 5.a.(5). The Army's memorandum permits former soldiers to petition the Army Discharge Review Board and the Army Board for the Correction of Military Records to request corrections to their records, "including records regarding the characterization of their discharge." A092 ¶ 6. On March 7, 2023, the Army issued instructions for carrying out these actions. EXORD 174-23, A095.

### B.    This Lawsuit

Plaintiffs filed this purported class action on October 3, 2022, ECF No. 1, and moved for a preliminary injunction as to only the named Plaintiffs on October 18, 2022, ECF No. 29. On November 23, 2022, Plaintiffs separately moved to certify a class and for a class-wide injunction. ECF Nos. 48 & 50. After a hearing on the former motion, the Court entered a preliminary injunction as to the named Plaintiffs on December 21, 2022. *Schelske v. Austin*, --- F. Supp. 3d ---, 2022 WL 17835506 (N.D. Tex. Dec. 21, 2022).

On December 29, 2022, Defendants notified the Court of the enactment of the NDAA and of the Army's subsequent suspension of separation actions related to COVID-19 vaccine refusal. ECF No. 82. On January 11, 2023, Defendants further notified the Court that, as required by the

NDAA, the Secretary of Defense had rescinded the challenged COVID-19 vaccination requirement. ECF No. 85.

Pursuant to the Court's direction, ECF No. 86, on January 18, 2023, Defendants informed the Court of their position that Plaintiffs' claims had been rendered moot, ECF No. 87, and moved for dismissal on those grounds on January 20, 2023, ECF No. 88. On February 10, 2023, Plaintiffs filed an amended complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). ECF No. 92. The amended pleading adds one new Plaintiff, Private Luke Chrisman, who alleges that he was separated from the Army with a general discharge for refusing the COVID-19 vaccine. Am. Compl. ¶ 23. He apparently seeks to have the Court order that discharge characterization to be upgraded to honorable. *See id.*; *id.* ¶ 59. The amended complaint also requests that the Court address alleged ongoing harms that purportedly survived the rescission of the vaccination requirement, including (1) the perceived possibility that the same or a "substantially similar" vaccination requirement may be reimposed, *id.* ¶ 58, (2) "stigmatizing" discharge characterizations, *id.* ¶ 59, (3) missed trainings and delayed promotions, *id.* ¶ 60, (4) GOMORs that remain in Plaintiffs' records, *id.* ¶ 61, (5) an inability to reenlist, *id.* ¶ 62, and (6) "other forms of harm," such as poor academic performance by Cadet Bufkin, which he claims was caused by depression and stress associated with his pending request for religious accommodation from the COVID-19 vaccine, *id.* ¶¶ 14, 63. On February 15, 2023, Plaintiffs filed an opposition to Defendants' motion to dismiss. ECF No. 96.

Plaintiffs' motions for class certification and for class-wide preliminary injunction remain pending. On February 13, 2023, Plaintiffs filed a "notice/request" to significantly change the definition of their proposed class—expanding it to those that have left the service and constricting it to those who suffered an adverse action due to the vaccination requirement—and to add Plaintiff

Chrisman an additional class representative. ECF No. 95. Plaintiffs submitted no briefing or reasoning, however, as to why the revised class definition and new class representative meet the requirements of Federal Rule of Civil Procedure 23. *See* ECF No. 98 (objecting to the notice on this basis).

## ARGUMENT

### I.  Plaintiffs' challenge to the rescinded vaccination requirement is moot.

Plaintiffs' request that the Court declare unlawful and enjoin the military's COVID-19 vaccination requirement is moot because the challenged requirement has ceased to exist and adverse actions associated with it are being undone. "Plaintiffs must maintain their personal interest in the dispute at all stages of litigation." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). "Even when a plaintiff has standing at the outset '[t]here must be a case or controversy through all stages of a case.'" *Fontenot v. McGraw*, 777 F.3d 741, 747 (5th Cir. 2015) (quoting *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013)). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted)).

Of particular relevance here, "a case challenging a [government policy] usually becomes moot if the challenged [policy] has expired or been repealed." *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020). After all, "[o]nce the law is off the books, there is nothing injuring the plaintiff and, consequently, nothing for the court to do." *Id.* "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (quotation marks omitted). Thus, when a statute or regulation is amended or repealed after plaintiffs bring a lawsuit challenging it, mootness is "the

default." *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023); *see also Fantasy Ranch Inc. v. City of Arlington*, 459 F.3d 546, 564 (5th Cir. 2006) ("[S]tatutory changes that discontinue a challenged practice are 'usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed.'" (citation omitted)); *Johnson v. Mississippi*, 586 F.2d 387, 388 (5th Cir. 1978) (per curiam) ("[T]he enactment of a superseding statute which satisfies all the principles sought in an attack on the prior statute simply moots the case."); *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 643 (D.C. Cir. 2011) ("It is well established that a case must be dismissed as moot if new legislation addressing the matter in dispute is enacted while the case is still pending."); *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) ("[I]n determining whether a case is moot, we should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it.").

A straightforward application of these principles shows that Plaintiffs' challenge to the rescinded vaccination requirement is now moot. The vaccination requirement was rescinded by the Secretary of Defense at Congress's direction, A043, which rendered ineffective "all . . . policies, directives, and guidance implementing" the vaccination requirement, A087. The result of these actions is that no plaintiff (or purported class member) is required to be vaccinated against COVID-19 and no plaintiff (or purported class member) can expect any adverse action due to their vaccination status. Congress "has done the work that Plaintiffs wanted [this Court] to do." *DeOtte v. State*, 20 F.4th 1055, 1064 (5th Cir. 2021). Accordingly, there is no live controversy behind

Plaintiffs' request, Am. Compl. at pp. 33–34 (¶¶ a and c), that the Court declare the repealed vaccination requirement unlawful and enjoin its enforcement. *Id.*; *Spell*, 962 F.3d at 179.[2]

Plaintiffs argue that the case is not moot because they allege ongoing and remediable consequences from the rescinded vaccination requirement. Am. Compl. at pp. 34–35. These arguments were contradicted when raised by the Secretary of Defense's directive that those consequences be undone. A043. And they are wholly precluded now that the Army has acted on the Secretary of Defense's directive by ordering the purging of adverse actions. A090–92. Thus, Plaintiffs' request for an order directing that GOMORs be removed from some of their files, Am. Compl. ¶ 61, has been rendered moot because the Secretary of Army has already directed the immediate removal of GOMORs issued solely for failure to receive the COVID-19 vaccine, A090 ¶ 5.a.(3). And Plaintiffs' demand that the Court order the Army to permit the reenlistment of vaccine objectors who requested accommodation, Am. Compl. ¶ 62, is moot because the Secretary of the Army has already directed the immediate removal of "all bars to continued service if the bar

---

[2]     Two separate courts of appeals in four different cases have held that requests for injunctive relief against the military's COVID-19 vaccination requirement are moot. In *Navy SEAL 4 v. Austin*, No. 22-5114 (D.C. Cir. Mar. 10, 2023), *Creaghan v. Austin*, No. 22-5135 (D.C. Cir. Mar. 10, 2023), *Short v. Berger*, Nos. 22-15755, 22-16607 (9th Cir. Feb. 24, 2023), *Dunn v. Austin*, No. 22-15286 (9th Cir. Feb. 27, 2023), panels dismissed service members' appeals from the denial of preliminary injunctions prohibiting enforcement of the military's COVID-19 vaccination requirement. The panels concluded that the rescission of the vaccination requirement mooted the plaintiffs' preliminary-injunction appeals, vacated the district courts' orders, and remanded for further proceedings. District courts have likewise concluded that challenges to the COVID-19 vaccination requirement are moot. *Creaghan v. Austin*, No. 1:22-cv-0981, ECF No. 69 (D.D.C. Mar. 10, 2023); *Navy SEALs 1–4 v. Austin*, No. 1:22-cv-0688, ECF No. 58 (D.D.C. Mar. 10, 2023); *Clements v. Austin*, No. 2:22-cv-2069-RMG, ECF No. 57 (D.S.C. Mar. 7, 2023) (denying preliminary injunction as moot); *Alvarado v. Austin*, No. 122CV876AJT-JFA, 2023 WL 2089246, at *3 (E.D. Va. Feb. 17, 2023); *Chancy v. Biden*, No. 1:22-cv-110, ECF No. 32 (N.D. Fla. Feb. 14, 2023). Other cases have been voluntarily dismissed after the rescission. *See Air Force Major v. Austin*, No. 3:22-cv-00756, ECF No. 25 (N.D. Tex. Mar. 7, 2023); *Oklahoma v. Biden*, No. 5:21-cv-1136, ECF Nos. 77, 78, and 82 (W.D. Okla. Feb. 17, 2023, and Mar. 7, 2023); *Church v. Biden*, No. 1:21-cv-2815, ECF No 43 (D.D.C. Jan. 23, 2023).

was based on the Soldier's failure to comply with the lawful order to receive the COVID-19 vaccination and the Soldier previously sought an exemption," A090 ¶ 5.a.(4).

For new Plaintiff Chrisman, who seeks an upgrade to his discharge characterization, Am. Compl. ¶¶ 23, 59, he is explicitly afforded the opportunity to petition the Army Discharge Review Board and the Army Board for Correction of Military Records for such a change, A092 ¶ 6. As explained more fully below, *infra* at 24–25, he must avail himself of that established process and may come to Court only if unsuccessful. To the extent that Plaintiffs seek additional remedies for alleged ongoing adverse action, including the convening of a special selection board or backpay, they are unavailable for the reasons discussed below. *See infra* at 24–28. The present situation is therefore distinct from the primary case that Plaintiffs cite, *Veasey v. Abbott*, where a district court concluded that the case was not moot because of the "existence of additional injuries, some of which carry additional remedies[.]" 248 F. Supp. 3d 833, 836 (S.D. Tex. 2017). There are no additional remediable injuries here.

Toward the end of their brief, Plaintiffs advance two additional rationales to avoid mootness, neither of which succeeds. First, they contend that the case is not moot because they may face criminal prosecution at any time because of their past refusals to vaccinate. ECF No. 96 at 36–37.[3] That is an entirely implausible speculation. Plaintiffs have provided no indication that the Army intends to criminally prosecute soldiers for disobeying a vaccination order. And it defies reason that the Army would do so while simultaneously removing GOMORs and flags associated with the same disobedience. *See* A090. Even while the vaccination requirement was in place, the Secretary of the Army specifically withheld—and continues to withhold—the authority to punish

---

[3]     Page numbers following an ECF number refer to the blue page numbers generated by the CM/ECF system.

a soldier through court martial for failure to vaccinate, and Defendants are unaware of any instance of a soldier being court martialed solely for refusing the COVID-19 vaccine. Mahoney Decl. ¶ 39, A019; A090 ¶ 4 ("To prevent any inconsistent disciplinary action based on past actions during the pandemic I continue to withhold the authority to impose any non-judicial and judicial actions based solely on a soldier's refusal to receive the COVID-19 vaccine while the mandate was in effect.").

Second, Plaintiffs argue that they maintain standing to pursue a declaratory judgment against the Army's rescinded vaccination policy because they could conceivably bring a separate individual-capacity suit for damages, where the declaratory judgment would be of use "[u]nder principles of res judicata and/or collateral estoppel." ECF No. 96 at 38. But the possibility of a damages suit, even assuming one would be available, would not prevent this case from becoming moot. As an initial matter, Plaintiffs' position contradicts the established principle that declaratory relief must be based on an actual controversy of "sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969). In addition, Plaintiffs misunderstand preclusion. A suit against a government official in an official capacity has no preclusive effect in a subsequent suit for damages against the same official in an individual capacity. *Unimex, Inc. v. U.S. Dep't of Housing & Urban Dev.*, 594 F.2d 1060, 1061 n.3 (5th Cir. 1979); *see also* 18A Charles Allan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4458 (3d ed. updated 2022) ("[A]n official who has litigated in his official capacity is not precluded from relitigation in his personal capacity."). No federal official is sued here in an individual-capacity, and the undersigned do not represent any individual federal employee or their interests in this litigation. In the event some hypothetical suit against individual-capacity federal defendants materialized in the future, they would be entitled to seek Department representation, 28 C.F.R. 50.15, or engage their own counsel, and respond to the claims at that time. Claims against

individual-capacity defendants, moreover, have their own distinct defenses including immunity, *see Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), and a variety of other personal defenses, among them statute of limitations and personal jurisdiction, such that it would be impossible to say whether there was an identity of issues. So, Plaintiffs' apparent premise—that any relief here would have preclusive effect in an individual damages action—is incorrect. And apart from these problems, Plaintiffs incorrectly assume that they could maintain standing to seek a declaratory judgment by transplanting their perceived standing to litigate a separate claim for monetary relief. This fails under the fundamental principle that a plaintiff "must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion*, 141 S. Ct. at 2208. Thus, contrary to Plaintiffs assumption, their claimed standing to seek damages cannot preserve any continued standing to seek a declaratory judgment.

Plaintiffs have recently submitted a notice to the Court with "factual developments" that they contend show the continued application of a COVID-19 vaccination requirement. ECF No. 102. First, Plaintiffs point to congressional testimony by Defense Department officials, which they characterize as indicating that "at least some" soldiers who did not comply with an order to be vaccinated may face adverse action. *Id.* at 1. As the AP article that Plaintiffs cite makes clear, however, the only soldiers who are still under such review are those who refused the vaccine and "did not seek any type of exemption." https://perma.cc/P7CM-8NWX. The testimony therefore does not apply to any plaintiff or purported class member in this case. Second, Plaintiffs present an addendum to Staff Sergeant Samuel Galloway's permanent change of station ("PCS") orders indicating that "[e]ligible soldiers and family members must be available to receive a full covid-19 vaccination series." ECF No. 102-1. Upon receiving Plaintiffs' notice, counsel for the Army looked into the issue and discovered that the inclusion of that language was the result of an

administrative error. Staff Sergeant Galloway has received a corrected addendum to his PCS orders that does not mention vaccination. A109. To be clear, there is no COVID-19 vaccination requirement associated with Staff Sergeant Galloway's PCS.

## II.    No exception to mootness applies.

### A.    The voluntary cessation exception does not apply.

Plaintiffs attempt to avoid mootness by invoking the gamut of civil mootness exceptions, beginning with the voluntary cessation exception. ECF No. 96 at 22–30. The central inquiry in determining whether the exception for voluntary cessation applies is "whether the defendant's actions are 'litigation posturing' or whether the controversy is actually extinguished." *Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018). But Defendants "most assuredly did not alter [their own course] in order to avoid litigation," *Am. Bar Ass'n*, 636 F.3d at 648, as Plaintiffs' baldly insist, ECF No. 96 at 28 (asserting that the military changed its policy "in response to litigation"). Indeed, before Congress directed the Secretary of Defense to rescind the vaccination requirement, the Department of Defense and the various military departments actively defended the legality of the vaccination requirement in dozens of lawsuits around the country. *See* ECF No. 38 at 18–20 & n.4 (listing other cases). Rather, it was clearly intervening legislation (the NDAA) that led to the Secretary of Defense rescinding the vaccination mandate. *Am. Bar Ass'n*, 636 F.3d at 648 (finding voluntary cessation exception did not apply where "intervening legislation simply nullified the [agency's challenged] policy statement"). The NDAA "specifically forbids the kind of [action] challenged in this suit" and "[t]he cessation of the [vaccination requirement] therefore was not voluntary." *Klayman v. Obama*, 759 F. App'x 1, 3 (D.C. Cir. 2019); *see also J.T. v. District of Columbia*, 983 F.3d 516, 523 (D.C. Cir. 2020) ("'[T]he voluntary-cessation doctrine has no apparent relevance' where the 'source of cessation . . . lies beyond the unilateral legal authority of

13

any of the named defendants.'" (quoting *Guedes v. ATF*, 920 F.3d 1, 15 (D.C. Cir. 2019) (per curiam)).

Plaintiffs, however, contend that "at least some" aspects of the military's rescission of the vaccination requirement were voluntary. ECF No. 96 at 28. Specifically, they argue that the NDAA did not specifically direct the Secretary to revoke orders implementing the rescinded vaccination requirement, to suspend separations, or to remove adverse actions. *Id.* But those actions only implemented the involuntary rescission; the Secretary of Defense would not have undertaken them if he had not been directed by Congress to rescind the vaccination requirement in the first place. They are therefore not properly characterized as a "voluntary" cessation.

In any event, Plaintiffs fail to adequately account for the fact that this case involves the cessation of government, rather than private, action. The Fifth Circuit has held that "courts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir 2009), *aff'd*, 563 U.S. 277 (2011). Indeed, "government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties. Without evidence to the contrary, [the Fifth Circuit] assume[s] that formally announced changes to official governmental policy are not mere litigation posturing." *Id.*; *see also Freedom From Religion Found*, 58 F.4th at 833 ("[T]he government's ability to reimplement the statute or regulation at issue is insufficient to prove the voluntary-cessation exception."); *id.* (holding that the exception did not apply where the challenged action "has been formally repealed, with no indication that the [government defendant] intends to reconsider that decision").

14

Under any standard, however, the withdrawn separations and removed adverse actions cannot "reasonably be expected to recur." ECF No. 96 at 23 (quoting *Already*, 568 U.S. at 91). That is because the vaccination requirement underlying those adverse actions has been rescinded at the direction of Congress and can no longer serve as grounds for reimposing a new adverse action. Plaintiffs offer no basis to accept their implausible assertion that the military is suddenly going to reimpose new adverse actions (after removing prior adverse actions) for violating a vaccination requirement that no longer exists. Thus, as one court observed, under the circumstances of this case, "it is remote, and indeed unrealistically speculative, that these defendants will ever again expose the plaintiffs to the claimed injury that prompted this lawsuit. The very process of the enactment of [the new law] by the state legislature and governor, combined with the presumption of good faith that we afford government actors, overcomes concerns of voluntary cessation." *Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020); *see also Freedom From Religion Found.*, 58 F.4th at 834 (holding that the possibility of a new policy does not overcome voluntary cessation because plaintiffs "can only speculate as to what the . . . new policy will be").

Plaintiffs next argue that the case is not moot because Defendants do not view the rescinded vaccination requirement as having been unlawful. ECF No. 96 at 28–29. But this fact is "not dispositive." *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 770 (6th Cir. 2019); *see also Yarls*, 905 F.3d at 909 (holding that a case where there is no ongoing controversy is moot "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit"). It is but one of three factors that the Fifth Circuit has sometimes considered in the context of government cessation, and a case may escape mootness only where "all three factors obtain." *Texas v. Biden*, 20 F.4th 928, 962 (5th Cir. 2021), *vacated on other grounds*, *Biden v. Texas*, 142 S. Ct. 2528 (2022). The other two factors are not present here. One factor requires "suspicious timing

of the change," *id.*, but there is nothing suspicious about the timing of the rescission. The cause of that rescission is clear: it was Congress's directive, not an attempt to avoid litigation, that led to the rescission of the vaccination mandate, and the timing plainly shows that. As noted, the government did not shy from defending the vaccination mandate in court in the months prior to the NDAA and only rescinded the requirement when required to do so by Congress. *See* ECF No. 38 at 18–20 & n.4. The Department of Defense has also issued "controlling statement[s]" demonstrating that the rescinded mandate will not be reimposed. *Texas v. Biden*, 20 F.4th at 962. It has unambiguously rescinded the policy and all associated policies implementing it, removed all adverse actions associated with the policy, and made clear that commanders "will not require a Service member or group of Service members to be vaccinated against COVID-19, nor consider a Service member's COVID-19 immunization status in making deployment, assignment, and other operational decisions," absent some new policy established through a stringent process. A087–88; *see also* A043–44. The Army has issued similar instructions. A089–92. There is therefore no reason to doubt the sincerity of the rescission.

Plaintiffs' remaining arguments about the voluntary cessation exception tilt at windmills. They insist without much elaboration that there remains "a de facto vaccine mandate" within the military. ECF No. 96 at 28. But the Deputy Secretary of Defense made clear that the January 10 rescission "rendered all [Department of Defense] Component policies, directives, and guidance implementing those vaccination mandates as no longer in effect," A087, and the Army is removing GOMORs, performance reports, and flags associated with the prior vaccination requirement and

vaccination status, A090–92 ¶ 5. That does not bespeak of a "de facto" vaccination requirement.[4] Plaintiffs also urge the Court to read between the lines of the January 10 rescission to find an implicit "directive to lower-level commanders that they have the freedom to impose vaccination requirements in the future." ECF No. 96 at 25. But the cited language in the rescission memorandum refers to "[o]ther . . . policies, procedures, and processes regarding immunizations," A044 (emphasis added), not to the rescinded COVID-19 vaccination requirement. As far as COVID-19 vaccination is concerned, the Department's directive is precisely the opposite of what Plaintiffs imagine. The authority to impose a COVID-19 vaccination requirement is explicitly withheld from commanders absent "judicious[]" consideration and high-level approval. A088. Accordingly, there is demonstrably no "de facto" vaccine requirement and no implicit directive that one be imposed at the command level.

### B.     The vaccine requirement is not capable of repetition yet evading review.

The mootness exception for issues capable of repetition yet evading review does not apply for similar reasons. Under that exception, cases that would otherwise be moot are saved from mootness "if '(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Empower Texans, Inc. v. Geren*, 977 F.3d 367, 370 (5th Cir. 2020) (quoting *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016)).

---

[4]      Plaintiffs point to excerpts from text messages that Cadet Collin Morrison purportedly received from one Major Patrick Hagen—before the Secretary of the Army issued the February 24, 2023, memorandum ordering the removal of GOMORs—stating that he "bet[s]" that Cadet Morrison's GOMOR will continue notwithstanding the rescission because Cadet Morrison "still disobey[ed] a legal order." ECF No. 96 at 26 (quoting ECF No. 93 at 12). Major Hagen's speculation does not reflect Army policy and was incorrect. *Cf. Triplett v. Heckler*, 767 F.2d 210, 213 (5th Cir. 1985) ("[T]he government cannot be bound by unauthorized or incorrect statements of its agents."). Cadet Morrison's GOMOR is being removed. A090 ¶ 5.a(3).

This exception applies "only in exceptional situations." *Id.* (quoting *Kingdomware*, 579 U.S. at 170). Plaintiffs—as the party seeking to assert the exception—bear the burden of showing that it applies here. *See id.*

The relevant inquiry under the evading-review prong is "whether 'the challenged activity is *by its very nature short in duration,* so that it could not, or probably would not, be able to be adjudicated while fully live.'" *Pharmachemie B.V. v. Barr Lab'ys, Inc.*, 276 F.3d 627, 633 (D.C. Cir. 2002) (quoting *LaRouche v. Fowler,* 152 F.3d 974, 978 (D.C. Cir. 1998)); *see also, e.g.*, *Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 399 (5th Cir. 2000) (considering whether the type of action challenged was "*inherently* capable of evading review" (emphasis added)). But the August 2021 vaccination requirement was, by its terms, indefinite with no established end date. And the history of vaccines that have remained military requirements for decades shows that a vaccination requirement is, by nature, not short in duration. *Cf. Moore v. Hosemann*, 591 F.3d 741, 744 (5th Cir. 2009) ("Election controversies are paradigmatic examples of cases that cannot be fully litigated before the particular controversy expires.").

The COVID-19 vaccination requirement is markedly different from other circumstances where the challenged actions were deemed "inherently capable of evading review." *Bayou Liberty Ass'n*, 217 F.3d at 399. Plaintiffs rely on *Roman Catholic Diocese of Brooklyn v. Cuomo*, where the Supreme Court held that a challenge to occupancy restrictions on houses of worship was not moot because the "[t]he Governor [of New York] regularly changes the [COVID-19 threat] classification of particular areas without prior notice," including eight times within a month-long period. 141 S. Ct. 63, 68 (2020). But, again, the military's COVID-19 vaccination requirement was— like other vaccine requirement—indefinite, and it ended only because Congress directed the Secretary of Defense to rescind it. Thus, the vaccination requirement is not the kind of action

18

that is "in its duration too short to be fully litigated prior to cessation or expiration." *Geren*, 977 F.3d at 370 (citation omitted).

Nor do Plaintiffs show that they will "be subject to the same action again." *Id*. (citation omitted). To satisfy that requirement, Plaintiffs "must show either a 'demonstrated probability' or a 'reasonable expectation'" that they will be subject to the same challenged COVID-19 vaccination requirement again. *Libertarian Party v. Dardenne*, 595 F.3d 215, 217 (5th Cir. 2010) (quoting *Oliver v. Scott,* 276 F.3d 736, 741 (5th Cir. 2002)). "A 'mere physical or theoretical possibility' is not sufficient to satisfy this prong of the exception." *Id.* ((quoting *Murphy v. Hunt,* 455 U.S. 478, 482 (1982)); *see also Am. Bar Ass'n*, 636 F.3d at 647 ("It does not matter that the [agency] might hereafter . . . promulgate *new* rules" because "[t]hese are merely hypothetical possibilities," and "*possibilities* regarding regulations and enforcement policies that do not presently exist" are "not enough to give rise to a live dispute."); *Lopez v. City of Houston*, 617 F.3d 336, 340 (5th Cir. 2010) (requiring more than "merely a 'theoretical possibility'" that the allegedly wrongful conduct would reoccur) (quoting *Libertarian Party*, 595 F.3d at 217). As explained above, the rescission of the COVID-19 vaccination requirement relieves Plaintiffs of any obligation to be vaccinated. Any conjecture that they will be subject to such a requirement in the future is purely speculative, and references to a purported "de facto mandate," ECF No. 96 at 31, are illusory.

Plaintiffs' invocation of the uncertain future of COVID-19, ECF No. 96 at 30, is similarly insufficient to justify excepting this case from mootness. The Fifth Circuit has already explained that "no one knows what the future of COVID-19 holds" and it is thus "speculative, at best, that the [government] might reimpose [a particular COVID-19] restriction or a similar one." *Spell*, 962 F.3d at 180 (holding moot a challenge to Louisiana's rescinded stay-at-home orders, especially given that "[t]he trend in Louisiana has been to reopen the state, not to close it down"); *see also*

*Long v. Jayton-Girard Indep. Sch. Dist.*, No. 5:21-CV-111-H, 2021 WL 7906835, at *4 (N.D. Tex. Sept. 3, 2021) (holding moot a challenge to school district's rescinded mask mandate because "the mere possibility of COVID-19 worsening or COVID-19 policies being re-imposed is insufficient to satisfy the 'reasonable expectation' requirement of the second prong"). Thus, Plaintiffs' vague reference to "the rapidly changing landscape," ECF No. 96 at 30, does not exempt this case from mootness.

In sum, Plaintiffs cannot establish either that the vaccination requirement is "in its duration too short to be fully litigated prior to cessation or expiration," or that there exists any "reasonable expectation that [they will] be subject to the same [challenged COVID-19 vaccination requirement] again.'" *Geren*, 977 F.3d at 370 (quoting *Kingdomware*, 579 U.S. at 170). This mootness exception is therefore inapplicable.

### C.   The pending class motions do not create a live controversy.

Plaintiffs also argue incorrectly that this case is not moot because of their pending motion for class certification. ECF No. 96 at 32–34. As an initial matter, the wholesale rescission of the challenged vaccination policy and the order by the Secretary of Defense to remove adverse actions stemming from that policy renders the claims of every purported class member moot because no member of the purported class is subject to a vaccination requirement, and all of them will have any adverse actions removed. Even a certified class challenge to the vaccination requirement and attempts to undo any alleged adverse actions would therefore be moot. *See Spell*, 962 F.3d at 179.[5]

---

[5]     What's more, in light of the rescission, Plaintiffs cannot point to any shared injury between themselves and the putative class members. Any claims of past injury concerning the COVID-19 vaccination requirement will be individualized and idiosyncratic. That undermines any conclusion that "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).

Moreover, the potential claims of class members are irrelevant in any event because Plaintiffs' motion for class certification has not been granted. Where no class has yet been certified, the mooting of the named Plaintiffs' claims moots the purported class action. *See Rocky v. King*, 900 F.2d 864, 869 (5th Cir. 1990) ("This Court generally has concurred with the proposition that a purported class action is moot where the named plaintiff's individual claim became moot before class certification."). This case does not fit within the limited exceptions that permits a class certification to relate back to the filing of the complaint. *See Fontenot*, 777 F.3d at 748–50. As previously explained, ECF No. 87 at 10 ¶ 4, the rescission of the vaccination requirement renders class certification improper, so there will be no certified class to relate back.

Furthermore, the relation-back exception does not apply because the vaccination requirement was not "inherently transitory," *Fontenot*, 777 F.3d at 749 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). To the contrary, as explained above, the challenged vaccination requirement was a lasting military policy. And Plaintiffs do not even attempt to claim that mootness is a result of Defendants "pick[ing] off" individual Plaintiffs' claims through "purposive action," *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1049–50 (5th Cir. 1981). The challenged vaccination requirement applicable to all members of the military and was rescinded because of a directive from Congress, not any voluntary action on the part of Defendants to avoid litigation.

## III.   The Court lacks jurisdiction to enjoin a hypothetical, unformed future policy.

In the absence of any extant COVID-19 vaccination requirement or remediable adverse actions associated with one, Plaintiffs insist that the Court should enjoin the Army from imposing a hypothetical future COVID-19 vaccination requirement, including any possible vaccination requirement for a specific assignment, operation, or deployment. Am. Compl. ¶ 58; ECF No. 96 at 18–19. But no Plaintiff is subject to such a requirement—and likely never will be—which means

that such a claim is unripe. *See, e.g.*, *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732–33 (1998) (explaining that the "ripeness requirement" serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies" and to prevent unnecessary "judicial interference" (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148–49 (1967))); *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 241 (1937) (providing that a justiciable dispute must "admit[] of specific relief through a decree of a conclusive character" and may not ask a court to "advis[e] what the law would be upon a hypothetical state of facts"). Indeed, the Deputy Secretary of Defense's February 24 memorandum shows that the rescinded COVID-19 vaccination policy will not simply be reimposed in the same form and that "lower-level commanders" do not "have the freedom" to reimpose such a vaccination requirement as Plaintiffs fear, ECF No. 96 at 19. The Deputy Secretary's memorandum makes clear that the vaccination requirement and all policies associated with it are rescinded, A087, and directs commanders not to require COVID-19 vaccination or to consider vaccination status in making deployment, assignment, and other operational decisions without seeking and obtaining the express approval of the Assistant Secretary of Defense for Health Affairs, A088. Given the purely speculative nature of any future vaccine requirement, the Court lacks jurisdiction to remediate hypothetical future harm associated with one.

The lack of ripeness for Plaintiffs' challenge to a hypothetical future vaccination requirement is demonstrated by the impossibility of adjudicating it before such a requirement comes into existence. The Court cannot perform the necessary scrutiny of a vaccination requirement that does not exist. *See Staley v. Harris County*, 485 F.3d 305, 309 (5th Cir. 2007) (en banc) ("[A]ny dispute over a probable redisplay of [a challenged] monument is not ripe because there are no facts before us to determine whether such a redisplay might violate the Establishment

Clause."). To assess a religious-liberty claim subject to strict scrutiny, the Court must consider the government's compelling interests and any less restrictive alternatives. But that analysis cannot take place without the existence and application of a new policy to a plaintiff. *See Brown v. Collier*, 929 F.3d 218, 230 (5th Cir. 2019) (requiring "case-by-case" adjudication of religious-liberty claims). For example, to assess any challenged deployment-specific vaccination requirement, the Court would need to know what the policy is and how it has been applied, including the specific occupation, assignment, and health condition of the objecting soldier at the time of the requirement; the prevalence of COVID-19 at the site of deployment; and the health and physical readiness requirements associated with the deployment. Given the range of possible factual circumstances, it cannot reasonably be said that no set of circumstances could ever justify a requirement for a soldier to be vaccinated against COVID-19 in order to be eligible for a particular deployment, assignment, or operation. *Cf. Schelske*, 2022 WL 17835506, at *27 (suggesting that the Army could "wait to compel the plaintiffs to take the vaccine as soon as a need to deploy arises"). Consequently, there is no jurisdiction, nor any legal basis, to decide Plaintiffs' request for broad injunctive relief against the Army forbidding the imposition of any specific vaccination requirement in any future circumstance.

Further still, even if there were to eventually arise some requirement to be vaccinated for a particular assignment, deployment, or operation, it likely would not be subject to judicial review. Military assignment, deployment, and operational decisions are not "susceptible to judicial correction" in light of well-established principles of judicial noninterference with core military decision making, *Pulphus v. Ayers*, 909 F.3d 1148, 1154 (D.C. Cir. 2018); *see also Austin v. U.S. Navy SEALs 1–26*, 142 S. Ct. 1301, 1301 (2022) (mem.) (partial stay order); *id.* at 1302 (Kavanaugh, J., concurring) (explaining that "the 'complex, subtle, and professional decisions as

23

to the composition, training, equipping, and control of a military force are essentially professional military judgments'" and that "it is 'difficult to conceive of an area of governmental activity in which the courts have less competence'" (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973))); *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953); Order, *Navy SEAL 1 v. Austin*, No. 22-10645 (11th Cir. Mar. 30, 2022); *Schelske*, 2022 WL 17835506, at *29 ("This injunction shall not preclude the defendants from considering the plaintiffs' vaccination status in making deployment, assignment, and other operational decisions."). Thus, even were the question ripe, it would be nonjusticiable.

**IV.    Plaintiffs' new claims about alleged adverse actions are unexhausted and unripe.**

As noted above, Plaintiffs have already been awarded the relief that they seek for specific adverse actions stemming from the rescinded vaccination requirement. And to the extent they now seek special selection boards to consider promotions, upgraded discharge characterizations, and backpay, Am. Compl. ¶¶ 59, 60 & p. 34 (¶ d), they would have to first exhaust administrative remedies for doing so. The Fifth Circuit has long required that a plaintiff first exhaust all "available intraservice corrective measures" before bringing to federal court claims implicating "internal military affairs." *Hodges v. Callaway*, 499 F.2d 417, 419–20 (5th Cir. 1974) (quoting *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971)); *see also Von Hoffburg v. Alexander*, 615 F.2d 633, 637 (5th Cir. 1980) (collecting cases); *Schelske*, 2022 WL 17835506, at *12 ("taking the Fifth Circuit's lead" and applying *Mindes* to RFRA claims). Thus, Plaintiffs (and class members) must pursue interservice remedies for any allegedly improper personnel actions before bringing such claims in court.

Here, Plaintiffs' demand for special selection boards, Am. Compl. ¶ 60 & p. 34 ¶ d, implicates exhaustion requirements mandated by statute. *See Harkness v. United States*, 727 F.3d 465, 470 (6th Cir. 2013) ("The text of [10 U.S.C. § 14502(g)(1)(A)–(b)] expressly takes away the

jurisdiction that other statutes, including 28 U.S.C. § 1331, confer on the federal courts to hear promotion-based claims, at least temporarily."). No Plaintiff alleges that they completed these prerequisites. And discharge upgrades may be requested through the Discharge Review Board or the Army Board for the Correction of Military Records. *See* A044; A092 ¶ 6; *see also* 10 U.S.C. § 1552(a)(1) ("The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice."). Yet Plaintiff Chrisman (the only Plaintiff to have been discharged) has not submitted any such request. Decl. of Cynthia Thomas ¶ 3, A026–27. A statement in the Congressional Record regarding the NDAA notes that the Department of Defense "has mechanisms to correct a servicemember's military record for discharge due to failure to receive the COVID-19 vaccine" and that "the military departments have the ability to consider applications for reinstatement of servicemembers who were previously separated for refusing the vaccine." *See* 168 Cong. Rec. H9425, H9441 (daily ed. Dec. 8, 2022). The Court should afford the military the opportunity to consider those applications in the first instance. *See Hodges*, 499 F.2d at 419–20. Similarly, the Army Board for the Correction of Military Records can award backpay in connection with the correction of military records. *See* 10 U.S.C. § 1552(c)(1). Those Plaintiffs seeking backpay must exhaust this administrative avenue but have failed to do so. Thomas Decl. ¶ 3, A026–27.

Plaintiffs' claims about delayed promotions are also unripe. Staff Sergeants Robert Schelske and Joshua Costroff contend that their promotion to Sergeant First Class has been delayed because they were denied the opportunity to attend a Senior Leadership Course on May 31, 2022, (for Staff Sergeant Costroff) and in December 2022 and January 2023 (for Staff Sergeant Schelske). Am. Compl. ¶¶ 16, 21. But Staff Sergeants Schelske and Costroff were examined by the Sergeant First Class evaluation board on February 1, 2022, before they claim to have been

denied trainings. Decl. of Michael Suarez ¶ 5, A023. The results of that board therefore would not have taken into account those trainings even had they been permitted to attend. *Id.* A more recent evaluation board for Staff Sergeants Schelske and Costroff convened on January 18, 2023, but the results of that board will not be released until May 2023. *Id.* Because Staff Sergeants Schelske and Costroff have not yet received the results of any promotion decisions that post-date the allegedly denied trainings, their claims are unripe.[6]

## V. Plaintiffs may not obtain backpay or other damages.

Plaintiffs' claim for backpay is also felled by other hurdles. First, and most starkly, no named Plaintiff has made any specific allegations supporting an entitlement to backpay, nor would it be possible to award backpay, which is individualized, on a class-wide basis.

Second, no plaintiff may obtain monetary relief against the United States or official-capacity federal defendants without demonstrating that the government has made an explicit waiver of sovereign immunity. There is no such waiver based on a claim under the Constitution or RFRA. *See Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. Unit B 1982) ("The Constitution does not waive the Government's sovereign immunity in a suit for damages"); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1028 (D.C. Cir. 2006) ("RFRA's purpose does not 'produce evidence of a waiver' of sovereign immunity for damages claims, much less evidence unequivocal enough to satisfy the strict standard for waivers of sovereign immunity.") (internal citation omitted); *cf. Sossamon v. Texas*, 563 U.S. 277 (2011) (holding that identical "appropriate relief"

---

[6]    In addition, First Lieutenant Huntley Bakich lacks standing for his delayed-promotion claim because he is in fact being promoted. He contends that his "career progression was halted" due to delays in his ability to attend a training course. Am. Compl. ¶ 13. But he was on the fiscal year 2022 promotion list for captain published around November 17, 2022—even before the vaccination requirement was rescinded—with a projected promotion date of May 1, 2023. Suarez Decl. ¶ 4, A023. First Lieutenant Bakich therefore has no standing to seek a special selection board.

language in the related statute RLUIPA did not waive states' sovereign immunity from money damages). Plaintiffs cite *Tanzin v. Tanvir*, ECF No. 96 at 35, but that case involved "a suit against individuals, who do not enjoy sovereign immunity," 141 S. Ct. 486, 492–93 (2020).  The Supreme Court acknowledged in *Tanzin* that *Sossamon* held that identical "appropriate relief" language in the related statute RLUIPA did not waive states' sovereign immunity from money damages. *Id.*; *see also Tanvir v. Tanzin*, 894 F.3d 449, 464 (2d Cir. 2018) ("[I]n the context of suits against the federal government and its officers in their official capacities, the phrase 'appropriate relief' similarly does not express an unambiguous waiver of the federal government's sovereign immunity."), *aff'd*, 141 S. Ct. 486 (2020). Plaintiffs, however, do not name any defendants in their individual capacity. Am. Compl. ¶¶ 24–28.

Plaintiffs attempt to characterize their claim for backpay as one for equitable relief rather than damages. ECF No. 96 at 35–36. For backpay to be considered equitable relief rather than compensatory damages, however, it must be "restitutionary in nature or . . . intertwined with claims for injunctive relief." *Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir. 1994) (citing *Chauffeurs, Teamsters, & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570–71 (1990)); *see also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 230 n.2 (2002) (Ginsburg, J., dissenting) (applying this distinction to backpay).[7] But the only Plaintiffs who apparently seek backpay are those who claim to have missed out on a promotion (Plaintiff Chrisman apparently seeks only an upgrade to his discharge classification, not reinstatement with backpay). Am. Compl.

---

[7]      Plaintiffs' analogy to Title VII and cases construing it does not work. *See* ECF No. 96 at 35. Title VII, unlike RFRA, explicitly mentions "reinstatement or hiring of employees, with or without back pay," as a form of available equitable relief. 42 U.S.C. § 2000e-5(g)(1). And the Fifth Circuit has characterized backpay under Title VII as equitable precisely because it is "an integral part of the statutory equitable remedy." *Johnson v. Ga. Highway Exp., Inc.*, 417 F.2d 1122, 1125 (5th Cir. 1969). The same cannot be said of RFRA.

at p. 36 (mentioning backpay for "those who were deprived of promotions"); *id.* ¶¶ 23, 59 (describing Plaintiff Chrisman's desire for a discharge upgrade). Backpay in the context of a delayed promotion would not be restitution because it is not money "wrongfully held by" the military but rather "wages and benefits [Plaintiffs] would have received" had the military not, in their view, violated their religious liberties. *Terry*, 494 U.S. at 570–71. Nor is it intwined with any equitable relief that Plaintiffs may seek from this Court. Plaintiffs cannot—and do not appear to— seek an order for retroactive promotion because it would be nonjusticiable. *See Orloff*, 345 U.S. at 90 ("It is obvious that the commissioning of officers in the Army is a matter of discretion within the province of the President as Commander in Chief."); *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989) ("Appellant's request for retroactive promotion falls squarely within the realm of nonjusticiable military personnel decisions."). Thus, Plaintiffs' request for backpay is one for compensatory damages and is barred by sovereign immunity. Accordingly, any claim for backpay or damages, to the extent they have even been made in this case, should also be dismissed pursuant to Rule 12(b)(1). *Fed. Deposit Ins. Co. v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is, jurisdictional in nature."); *see also Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice.").

Finally, in the military context, backpay can only be awarded for work actually performed. *See Dehne v. United States*, 970 F.2d 890, 894 (Fed. Cir. 1992). Plaintiffs seek backpay for those who claim their promotions have been delayed, not because they have performed the duties of higher-rank positions without pay. Their backpay requests are therefore foreclosed.

## VI.   Cadet Bufkin's academic discharge is unconnected to the vaccination requirement.

Cadet Zakai Bufkin no longer faces separation or any other adverse action due to his vaccination status; but he has been otherwise separated from the Military Academy due to his poor

academic performance. *See* Am. Compl. ¶ 14. Plaintiffs allege that the COVID-19 vaccination requirement caused Cadet Bufkin to suffer stress and depression and that his "academics were only substandard because of the religious discrimination and harassment he was forced to endure." *Id.* Plaintiffs ask that Cadet Bufkin be reinstated to the Military Academy or given an honorable discharge with a waiver of recoupment, notwithstanding his poor grades. *Id.* at pp. 34–35. To maintain a challenge to the rescinded vaccine requirement, however, Cadet Bufkin must show a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). He is unable to do so for two reasons.

First, Cadet Bufkin's academic separation does not give him standing to challenge the rescinded vaccination requirement because it does not involve the enforcement of the vaccination requirement. *See California v. Texas*, 141 S. Ct. 2104, 2114 (2021) ("[O]ur cases have consistently spoken of the need to assert an injury that is the result of a statute's actual or threatened *enforcement*, whether today or in the future.") (emphasis in original). Given that the Army is no longer enforcing the vaccination requirement against Cadet Bufkin, an order enjoining that rescinded requirement and declaring it unlawful would not redress Cadet Bufkin's failing grades and resulting academic separation.

Second, evidence shows that Cadet Bufkin's poor academic performance preceded and was not caused by the vaccination requirement. The Court may consider materials outside the pleadings when assessing whether a plaintiff has standing to invoke the Court's jurisdiction. *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. Unit A 1981). At the time he was proposed for academic separation, Cadet Bufkin's cumulative grade point average was 1.85. *See* Cadet Bufkin's Transcripts at 1, A111. That is virtually identical to the 1.89 cumulative grade point average that

he held following the first term of the 2020 to 2021 school year, A111, even before the Secretary of Defense imposed the vaccination requirement. Because Cadet Bufkin's poor grades preceded even the beginning of the vaccination requirement, they are not fairly traceable to that requirement.

For these reasons, Cadet Bufkin's academic separation does not give him grounds to maintain his challenge to the rescinded vaccination requirement.

## CONCLUSION

The amended complaint should be dismissed.

Dated: March 10, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER M. HAAS
Branch Director

ANTHONY J. COPPOLINO
Deputy Branch Director

  /s/ Johnny Walker
KERI BERMAN
JOHNNY H. WALKER (D.C. Bar #991325)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 12304
Washington, D.C. 20530
Tel.: (202) 514-3183 / Fax: (202) 616-8460
Email: johnny.h.walker@usdoj.gov

*Counsel for Defendants*