**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **ROBERT SCHELSKE,** et al., | |
| Plaintiffs, | |
| v. | Case No. 6:22-cv-00049-H |
| **LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense, et al, | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

    I.     Plaintiffs Reincorporate the Entirety of Their Prior Response ................................. 2

    II.    Standard of Review ................................................................................................. 2

ARGUMENT ..................................................................................................................... 2

    I.     Plaintiffs Received Orders to Vaccinate, Did Not Comply with Those Orders, and are Still Exposed to Punitive Actions as a Result—It is a Misrepresentation to this Court to Argue that any Such Punitive Actions are "Speculative," as Proven by Record Evidence that Includes Defendants' Own Admissions. ........... 2

    II.    Defendants Cannot Meet Their "Heavy Burden" to Prove Mootness Where, Admittedly, They Have Not Yet Afforded Plaintiffs Full Corrective Action Relief, Will Not Do So for Discharged Soldiers, and May Never Do So for the Putative Class of Plaintiffs. ................................................................................... 6

    III.   Other Than Completing the RFRA Accommodation Process (Which Has Been Discontinued), There is No Further Ripeness/Exhaustion Requirement, and Defendants' Arguments to the Contrary are Foreclosed Under Binding Fifth Circuit Precedent ................................................................................................. 9

    IV.   There is Ongoing, *De Facto* Discrimination by the Army, and Nothing Keeps Defendants from Reinstituting Another Unconstitutional Mandate with No Religious Accommodation Process Whatsoever or a Another Sham Process ...... 12

        A.   Current Army policy and regulations violate RFRA. .............................. 13

        B.   Contrary to Defendants' suggestions, this Court can direct operational, assignment, and deployment issues in a final judgement. ........................ 13

        C.   This case is a textbook case for application of the voluntary cessation doctrine. ............................................................................................... 14

        D.   The capable of repetition yet evading review exception to mootness also applies ............................................................................................... 20

        E.   The class/pickoff exception applies. ....................................................... 21

        F.   Cadet Bufkin's claims are not subject a Motion to Dismiss. ................... 22

CONCLUSION .................................................................................................................. 23

CERTIFICATE OF SERVICE .............................................................................................. 24

# TABLE OF AUTHORITIES

## Cases

*A. Philip Randolph Inst. v. Husted*,
 838 F.3d 699 (6th Cir. 2016), *rev'd on other grounds*, 138 S. Ct. 1833 (2018) ...................... 19

*Able v. United States*,
 155 F.3d 628 (2d Cir. 1998) ................................................................................................... 14

*Adkins v. United States*,
 68 F.3d 1317 (Fed. Cir. 1995) ............................................................................................... 14

*Already, LLC v. Nike, Inc.*,
 568 U.S. 85 (2013) .................................................................................................... 15, 17, 20

*Austin v. U.S. Navy Seals 1-26*,
 142 S. Ct. 1301 (2022) ........................................................................................................... 13

*Bennie v. Munn*,
 822 F.3d 392 (8th Cir. 2016) ................................................................................................... 5

*Board of Education of Oklahoma City Public Schools v. Dowell*,
 498 U.S. 237 (1991) ................................................................................................................. 6

*Bond v. United States*,
 47 Fed. Cl. 641 (Ct. Cl. 2000) ............................................................................................... 14

*Borst v. Chevron Corp.*,
 36 F.3d 1308 (5th Cir. 1994) ................................................................................................. 11

*Bowman v. Schwarzenegger*,
 Case No. CIV S-07-2164 FCD KJM P, 2009 WL 799274 (E.D. Cal. Mar. 23, 2009) ............... 5

*Cf. United States v. Sanchez-Gomez*,
 138 S. Ct. 1532 (2018) ........................................................................................................... 17

*Chafin v. Chafin*,
 568 U. S. 165 (2013) ................................................................................................................ 7

*Chen v. Allstate Ins. Co.*,
 819 F.3d 1136 (9th Cir. 2016) ................................................................................................. 9

*City of Mesquite v. Aladdin's Castle, Inc.*,
    455 U.S. 283 (1982) ........................................................................................................ 15, 19

*Clark v. Tarrant Cnty.*,
    798 F.2d 736 (5th Cir. 1986) ........................................................................................... 2, 22

*Ctr. for Individual Freedom v. Tennant*,
    706 F.3d 270 (4th Cir. 2013) ................................................................................................ 5

*Dailey v. Vought Aircraft Co.*,
    141 F.3d 224 (5th Cir. 1998) ................................................................................................ 4

*Dean Foods Co. v. Tracy*,
    990 F. Supp. 646 (W.D. Wis. 1997) ..................................................................................... 5

*Doe v. Trump*,
    275 F. Supp.3d 167 (D.D.C. 2017) ..................................................................................... 14

*Doster v. Kendall*,
    48 F.4th 608 (6th Cir. 2022) ................................................................................................. 6

*Doster v. Kendall*,
    54 F.4th 398 (6th Cir. 2022) ................................................................................................. 5

*Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*,
    551 U.S. 449 (2007) ............................................................................................................ 20

*Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*,
    326 F.3d 924 (7th Cir. 2003) ................................................................................................ 7

*Firefighters Local Union No. 1784 v. Stotts*,
    467 U.S. 561 (1984) .............................................................................................................. 5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U. S. 167 (2000) ................................................................................................... passim

*Frontiero v. Richardson*,
    411 U.S. 677 (1973) ............................................................................................................ 14

*Genesis HealthCare Corp. v. Symczyk*,
    569 U. S. 66 (2013) .............................................................................................................. 6

iii

*Green v. County Sch. Bd. Of New Kent County, Va.*,
    391 U.S. 430 (1968) ............................................................................ 6

*Haselrig v. United States*,
    53 Fed. Cl. 111 (Ct. Cl. 2002) ......................................................... 14

*Hunter v. Underwood*,
    471 U.S. 222 (1985) ............................................................................ 7

*Marks v. United States*,
    430 U.S. 188 (1977) .......................................................................... 14

*Mindes v. Seaman*,
    453 F.2d 197 (5th Cir. 1971) ...................................................... 10, 11

*Miss. State Chapter, Operation Push, Inc. v. Mabus*,
    932 F.2d 400 (5th Cir. 1991) ............................................................. 7

*Murphy v. United States*,
    993 F.2d 871 (Fed. Cir. 1993) ......................................................... 14

*Norman-Bloodsaw v. Lawrence Berkely Lab.*,
    135 F.3d 1260 (9th Cir 1998) .......................................................... 17

*Owens v. Brown*,
    455 F. Supp. 29 (D.D.C. 1978) ....................................................... 14

*Parents Involved in Community Schools v. Seattle School Dist. No. 1*,
    551 U. S. 701 (2007) ........................................................................ 19

*Perez v. Texas*,
    970 F. Supp. 2d 593 (W.D. Tex. 2013) ............................................ 7

*Philips v. Perry*,
    106 F.3d 1420 (9th Cir. 1997) ......................................................... 14

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ............................................................. 2

*Ramsek v. Beshear*,
    989 F. 3d 494 (6th Cir. 2021) ........................................................... 5

iv

*Roman Catholic Diocese v. Cuomo,*
    141 S. Ct. 63 (2020) ................................................................................................ 17

*Sacks v. Office of Foreign Assets Control,*
    466 F.3d 764 (9th Cir. 2006) .................................................................................... 5

*Scarseth v. United States,*
    46 Fed. Cl. 406 (Ct. Cl. 2000) ................................................................................ 14

*Schelske v. Austin,*
    2022 U.S. Dist. LEXIS 229432 ............................................................................... 11

*Schlesinger v. Ballard,*
    419 U.S. 498 (1975) ................................................................................................ 14

*Sibron v. New York,*
    392 U.S. 40 (1968) .................................................................................................... 5

*Speech First, Inc. v. Fenves,*
    979 F.3d 319 (5th Cir. 2020) .................................................................................. 20

*Speech First, Inc. v. Schlissel,*
    939 F.3d 756 (6th Cir. 2019) .................................................................................. 18

*Tandon v. Newsom,*
    141 S. Ct. 1294 (2021) ............................................................................................ 19

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
    137 S. Ct. 2012 (2017) ............................................................................................ 15

*Triplett v. Heckler,*
    767 F.2d 210 (5th Cir. 1985) .................................................................................... 4

*Tucker v. Gaddis,*
    40 F.4th 289 (5th Cir. 2022) ................................................................................... 15

*United States v. Concentrated Phosphate Export Assn.,*
    393 U.S. 199 (1968) .................................................................................................. 6

*U.S. Navy Seals 1-26 v. Biden,*
    27 F.4th 336 (5th Cir. 2022) ....................................................................... 10, 11, 13

*U.S. Navy Seals 1–26 v. Biden*,
   578 F. Supp. 3d 822 (N.D. Tex. 2022) ................................................................. 11

*U.S. Navy SEALs 1-26 v. Biden*,
   No. 22-10077 (5th Cir. Feb. 6, 2023) ................................................................. 13

*Veasey v. Abbott*, 248 F. Supp.
   3d 833 (S.D. Tex. 2017) ................................................................................... 6, 7

*West Virginia v. EPA*,
   142 S. Ct. 2587 (2022) ......................................................................................... 6

*Wooten v. Housing Authority of Dallas*,
   723 F.2d 390 (5th Cir. 1983) ............................................................................... 9

*Yarls v. Bunton*,
   905 F.3d 905 (5th Cir. 2018) ............................................................................. 18

*Zeidman v. J. Ray McDermott & Co.*,
   651 F.2d 1030 (5th Cir. 1981) ........................................................................... 21

**Statutes**

10 U.S.C. § 14502(g) ..................................................................................................... 10
10 U.S.C. § 890 ............................................................................................................... 3
10 U.S.C. § 892 ............................................................................................................... 3
28 U.S.C. § 1346(a)(2) ................................................................................................... 11
42 U.S.C. § 2000bb-1(c) ............................................................................................... 11

**Other Authorities**

Army Regulation - AR40-562 at
   https://armypubs.army.mil/epubs/DR_pubs/DR_a/pdf/web/r40_562.pdf ......................... 13, 20
February 28, 2023, top Pentagon officials testimony before Congress at
   https://www.washingtontimes.com/news/2023/feb/28/pentagon-has-its-own-long-covid-problem-over-dropp/?utm_campaign=shareaholic&utm_medium=email_this&utm_source=email ................ 3
Heather Mongilio, *Pentagon Unclear How Military Would Manage End of Mandatory COVID-19 Vaccines*, USNI NEWS (Dec. 7, 2022), https://news.usni.org/2022/12/07/pentagon-unclear-how-military-would-handle-end-of-mandatory-covid-19-vaccines ..................... 12, 19
Meghann Myers, *Troops who refused COVID vaccines still could face punishment*, Military Times (Feb. 28, 2023),
   https://www.militarytimes.com/news/coronavirus/2023/02/28/troops-who-refused-covid-vaccines-still-could-face-punishment/?utm_source=sailthru&utm_medium=email&utm_campaign=mil-ebb&SToverlay=de88742f-46f7-4f2c-819d-3b36a47d6a7e ....... 16

NDAA (National Defense Authorization Act for Fiscal Year 2023) available at:
    https://www.congress.gov/117/bills/hr7776/BILLS-117hr7776enr.pdf ................ 12, 15, 16, 20
U.S. Secretary of Defense's January and February 2023 Memoranda available at:
    https://media.defense.gov/2023/jan/10/2003143118/-1/-1/1/secretary-of-defense-memo-on-
    rescission-of-coronavirus-disease-2019-vaccination-requirements-for-members-of-the-armed-
    forces.pdf and https://media.defense.gov/2023/Feb/24/2003167584/-1/-1/1/GUIDANCE-FOR-
    IMPLEMENTING-RESCISSION-OF-082421-AND-113021-COVID-19-VACCINATION-
    REQUIREMENTS-FOR-MEMBERS-OF-THE-ARMED-FORCES-OSD001649-23-RES-
    FINAL.PDF .................................................................................................................. passim

## INTRODUCTION

In an effort to avoid the consequences of having failed to afford complete relief to Plaintiffs, and to the putative class—as sought in the Amended Complaint (Dkt. 92) Defendants engage in a straw man argument by suggesting that this case was about obtaining rescission of the vaccine mandate. (Dkt. 106 at 1). In reality, and as is plain from Plaintiffs' pleadings in this case, it was about violation of the religious freedom rights of those impacted by this mandate and providing a remedy for the harms flowing therefrom. The goal of this case has always been to afford complete relief for the adverse effects suffered by service members for their non-compliance with the now-rescinded unconstitutional policy and put an end to that policy. Recission of the vaccine mandate to the extent it was being implemented to violate religious freedom rights was only a part of that complete relief sought. Many prior harms and ongoing harms directly resulting from Defendants' illegal conduct remain to be remedied. (Dkt. 92).

Moreover, contrary to binding Fifth Circuit case law, Defendants argue there is an exhaustion requirement beyond merely completing the accommodation process for RFRA claims. Going further, Defendants falsely suggest the case is moot because of a claim that they will voluntarily (eventually) engage in some (but not all) corrective action. Beyond not meeting their "heavy" burden to prove mootness, promises of future actions raise voluntary cessation issues, thus defeating Defendants' mootness arguments. Ultimately, Defendants are wrong on every score and the amended complaint should not be dismissed as moot.

## I.     Plaintiffs Reincorporate the Entirety of Their Prior Response

In an effort to shorten this response, Plaintiffs reincorporate their prior submission (and the appendices, verified Amended Complaint, and evidence in support) in full. (Dkts. 92, 93 96).

## II.    Standard of Review

Under Rule 12(b)(1), the district court is to accept as true the allegations and facts set forth in the complaint and "is empowered to consider matters of fact which may be in dispute." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The court may "make factual findings which are decisive of its jurisdiction." *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986). "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* Plaintiffs have set forth a factual background in their prior Response and in the amended complaint (Dkts. 92 and 96), and will not repeat those facts here, except as may be necessary to respond to Defendants' new Motion.

## ARGUMENT

## I.     Plaintiffs Received Orders to Vaccinate, Did Not Comply with Those Orders, and are Still Exposed to Punitive Actions as a Result—It is a Misrepresentation to this Court to Argue that any Such Punitive Actions are "Speculative," as Proven by Record Evidence that Includes Defendants' Own Admissions.

All Plaintiffs in this action received orders to vaccinate. (*See* Dkt. 14, Ex. 8, PageID#132 ¶ 8; Ex. 9, PageID#170 ¶ 6; Ex. 10, PageID#193, ¶ 7; Ex. 11, PageID#219, ¶ 7; Ex. 12, PageID#264, 282; Ex. 13, PageID#296, ¶ 6; Ex. 14, PageID#332, ¶ 6; Ex.15, PageID# 352, ¶ 7; Ex. 16, PageID#385, ¶ 7; ECF No. 93, Ex. 4, PageID#2145, ¶ ¶ 6, 7). None of them complied. Accordingly, and for the next five years, each Plaintiff (except Luke Chrisman) remains subject to criminal prosecution for violations of either Article 90 or Article 92 of the Uniform Code of

2

Military Justice. 10 U.S.C. § 843 (five-year statute of limitations); 10 U.S.C. § 890 (Article 90); 10 U.S.C. § 892 (Article 92). If convicted, each faces punishment of up to five years in a military prison for these violations.[1]

Defendants argue that this prosecutorial sword of Damocles is really nothing more than "implausible speculation." But rather than provide an enforceable commitment to forswear any prosecutions (which they have refused to do), and rather than acknowledge that failing to follow orders is the crime, not failing to vaccinate as Defendants suggest, Defendants instead cite to *an outdated November 2022 declaration,* and then suggest that authority to court-martial soldiers has been withheld (at least temporarily) "solely for refusing to vaccinate."

Defendants' word games aside, two other pieces of evidence leave this issue clearly dangling over Plaintiffs' heads. First, on February 28, 2023, top Pentagon officials acknowledged in testimony before Congress "that the Defense Department is still reviewing for potential 'disciplinary procedures' numerous cases of active-duty troops who refused the shot while the mandate was in force."[2] Then, no less than the Undersecretary of Defense for Personnel and Readiness, Gilbert Cisneros, admitted "[t]hey're reviewing the cases because . . . they [disobeyed] a lawful order." *Id.* Apparently, the Undersecretary hadn't yet read Defendants' Motion before providing his under-oath testimony. Regardless, Defendants now argue that this testimony does not apply to religious objectors—but this Court should not countenance such *ipse dixit* claims. The fact that DOD officials admit disciplinary procedures are still on the table for any refusal of a "lawful order" makes clear that the decision as to whether to pursue criminal prosecutions in any

---

[1] https://jsc.defense.gov/Portals/99/Documents/2019 MCM (Final) (20190108).pdf?ver=2019-01-11-115724-610 at Section IV-25 and IV-28, pages 332 and 335, last accessed Feb. 15, 2023.

[2]     https://www.washingtontimes.com/news/2023/feb/28/pentagon-has-its-own-long-covid-problem-over-dropp/?utm_campaign=shareaholic&utm_medium=email_this&utm_source=email (last accessed 3/1/2023).

of these cases is currently a matter of grace subject to the whim of the same government officials who established the unconstitutional policy in the first place. And, as this Court appreciates, there is nothing that is actually enforceable (other than the current preliminary injunction) that prevents Defendants from changing to a punitive course once the injunction is lifted.[3] In other words, the sword of Damocles still hangs over Plaintiffs' heads.

Equally troubling, in terms of Defendants' mootness gamesmanship, is a text communication between Cadet Morrison and his commander, Major Hagen, on February 7, 2023, where Major Hagen admitted:

> …we were all told to hold any action because you are part of that whole federal litigation thing, right? … if the case doesn't go well, the army **could** continue all the adverse action against unvaxxed [sic] persons…but if they say DoD can make a vaccine mandate, then I bet the action continues because it's still disobeying a legal order.[4]

(Am. Compl., Dkt. 92 at ¶19; Appendix, Dkt. 93, Exhibit 3).

Under the collateral consequences exception, when the plaintiff's primary injury (here, the discriminatory exemption process) has ceased, the case is not moot if the challenged conduct continues to cause other harm (*i.e.*, "collateral consequences") that the court is capable of remedying. *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 227 (5th Cir. 1998) (citing *Sibron v. New*

---

[3] Defendants also argue that Sergeant Galloway's PCS orders that included a vaccination requirement for him to move back to the United States were an "administrative error." Maybe. Or maybe they got caught and are trying to tell this Court one thing, while doing something very different in the field. The point is made: harm still exists and has not been remedied.

[4] (Emphasis added). Defendants suggest that this was merely an "incorrect statement" of its agent, and states that the GOMOR "is being" removed (conceding that has not occurred yet) citing to a policy change in its appendix at A090, PageID#2442-2443. The case the Government cites, however, is inapposite. *Triplett v. Heckler*, 767 F.2d 210, 213 (5th Cir. 1985), is solely related to arguments of estoppel against the government, not admissions by commanders and officers who are invested with the authority of office. Plaintiffs are not arguing that the Government is equitably estopped by virtue of Major Hagen's statement; rather, we are pointing to it as an admission, and one that raises significant issues in the context of mootness and voluntary cessation.

*York*, 392 U.S. 40, 53–59 (1968)). A continuing collateral consequence is one that provides the plaintiff with a "concrete interest" in the case and for which "effective relief" is available. *Id.* (*citing Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 571 (1984)). Here, the current injunction is the only thing that continues to protect Plaintiffs from prosecution until final judgment can make that relief permanent. Consequently, this matter is not moot. *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764 (9th Cir. 2006) (recognizing that violation of repealed statute does not foreclose relief if the statute was violated); *Bowman v. Schwarzenegger*, Case No. CIV S-07-2164 FCD KJM P, 2009 WL 799274, *5–6 (E.D. Cal. Mar. 23, 2009) (same); *Dean Foods Co. v. Tracy*, 990 F. Supp. 646 (W.D. Wis. 1997) (holding claim not moot where enforcement possible); *Bennie v. Munn*, 822 F.3d 392 (8th Cir. 2016) (same); *Ctr. for Individual Freedom v. Tennant*, 706 F.3d 270, 293 (4th Cir. 2013) (noting possibility of enforcement for past violation rendered matter not moot); *Ramsek v. Beshear*, 989 F. 3d 494, 500 (6th Cir. 2021) (rejecting mootness claim where there was a possibility of future prosecution in light of unexpired criminal statute of limitations).

Defendants also raise an apples-to-oranges comparison by citing other recent court decisions finding mootness. But each of those decisions involved the appeal of the denial of a preliminary injunction in which the only relief sought was the imposition of additional sanctions. Unsurprisingly, no one raised the same arguments or presented the same evidence here. Further, a preliminary injunction appeal is a substantially different matter than the merits of a case truly being moot. *See Ramsek v. Beshear*, 989 F. 3d at 500. In light of the ongoing harm caused by Defendants' unconstitutional actions, Plaintiffs seek "root and branch" relief of the kind described by the Sixth Circuit in *Doster v. Kendall*, 54 F.4th 398, 439 (6th Cir. 2022), and seek "to enjoin ***any adverse action*** against the class members on the basis of denials of religious exemptions." *Doster v.*

*Kendall*, 48 F.4th 608, 615 (6th Cir. 2022) (emphasis added). That language by the Sixth Circuit is no accident—it comes from a long line of discrimination cases that ended not only illegal discriminatory policies, but also all remaining vestiges of that illegal discrimination. *Board of Education of Oklahoma City Public Schools v. Dowell*, 498 U.S. 237 (1991); *Green v. County Sch. Bd. Of New Kent County, Va.*, 391 U.S. 430, 437 (1968). Here, the ongoing threat of criminal prosecution is certainly one of those "vestiges."

II.     **Defendants Cannot Meet Their "Heavy Burden" to Prove Mootness Where, Admittedly, They Have Not Yet Afforded Plaintiffs Full Corrective Action Relief, Will Not Do So for Discharged Soldiers, and May Never Do So for the Putative Class of Plaintiffs.**

Mootness addresses whether "an intervening circumstance [has] deprive[d] the plaintiff of a personal stake in the outcome of the lawsuit." *Genesis HealthCare Corp. v. Symczyk*, 569 U. S. 66, 72 (2013) (internal quotation marks omitted); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U. S. 167, 189–92 (2000). "The Supreme Court has placed the difficult burden of demonstrating mootness squarely upon the party who asserts the defense." *Veasey v. Abbott*, 248 F. Supp. 3d 833, 835 (S.D. Tex. 2017); *see also, West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) ("[T]he Government, not petitioners, bears the burden to establish that a once-live case has become moot."). In *Veasey*, the Court explained:

> [T]he standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." The "heavy burden of persua[ding]" the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

*Id.* (citing *Laidlaw*, 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968))).

"It is well-settled that new legislation does not ipso facto eliminate the discriminatory intent behind older legislation and moot a dispute regarding the violation of law." *Id.* (citing *Hunter v. Underwood*, 471 U.S. 222, 232–33 (1985)); *Miss. State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400, 408–09 (5th Cir. 1991); *Perez v. Texas*, 970 F. Supp. 2d 593, 603 (W.D. Tex. 2013) (noting claims of intentional discrimination in connection with legislation are not mooted by subsequent legislation so long as requested relief is available for purposeful discrimination.

Despite "complete repeal of a challenged law," a case is not moot where "there is evidence creating a reasonable expectation that the [Army] will reenact the ordinance or one substantially similar." *Veasey*, 248 F. Supp. 3d at 835 (citing *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003)). The situation *Veasey* addressed is instructive. A determination of mootness "fit the circumstances of [*City of Chicago*] because the only relief sought was an injunction against enforcing the law. If the law is repealed, there is nothing left to enforce." *Id.* In contrast, the *Veasey* plaintiffs, as here, "[we]re arguing for additional relief to redress the lingering injury of an alleged discriminatory purpose in passing the statute." *Id.* "The existence of additional injuries, some of which carry additional remedies prevent[ed] application of [the *City of Chicago*] mootness holding." *Id.* Thus, "[w]hile the only relief they can obtain is prospective, the injuries are not eliminated as a result of a single provision that ameliorates the harshest effect of the law." *Id.* at 837.

The outcome in *Veasey* is consistent with the rule that "a case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Chafin v. Chafin*, 568 U. S. 165, 172 (2013) (emphasis added). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.*

Defendants do not dispute there is continuing harm from their now rescinded policy that has not yet been remedied. They suggest that some of this further harm is "contraindicated" by the Secretary of Defense's (current) directive and can be "undone." (Memo, Dkt. 106 at 9). But, as demonstrated, that is not the measure of Defendants' heavy burden. Each of the Cadet Plaintiffs (Bufkin, Conklin, Mell, Morrison, and Saballa) received a General Officer Memorandum of Reprimand ("**GOMOR**"), and each of those adverse actions are, as of today, still of record. (Am. Compl., Dkt. 92 at ¶¶ 14, 15, 18, 19, 20, 61). Each made repeated, unsuccessful inquiries to their chain of command, and their counsel made similarly unsuccessful inquiries to the U.S. Department of Justice. To date, none of them have been informed whether, and on what timeline, any corrective or remedial action might occur. *Id*. And for Cadet Mell, he has not received any indication that the Army even stopped processing his discharge, nor any indication that it will, in fact, decline to discharge him, despite his specific inquiry about it. *Id*. at ¶18. Defendants likely ignore this unrebutted, record evidence because it refutes any suggestion that they have met their "heavy burden." Add to that Defendants' recent testimony before Congress, and Major Hagen's admission, and Defendants cannot come close to meeting their burden. (*See* Am. Compl., Dkt. 92 at ¶19; Appendix, Dkt. 93, Exhibit 3).

Finally, the Amended Complaint adds a new Plaintiff to this case: former soldier Luke Chrisman. After unsuccessfully pursuing a religious accommodation—unsurprising given Defendants' discriminatory process—Chrisman was punitively discharged, given a General Discharge (which is indisputably adverse), with adverse separation reasons and codes. (*Id*. at ¶¶ 23, 59). His harm continues to date, and it includes uncomfortable inquiries by potential employers into his discharge reasons. And, **per the Secretary of Defense's own directives, there is no plan or even an intention to remedy his harm**. (*Id*. at ¶¶ 4, 23, 59). Rather, the Secretary's Memoranda

states that such former servicemembers may petition for correction of their records through the Army Discharge Review Board and the Army Force Board for Correction of Military Records. *Id*. And after that, good luck.

At present, it remains a fact that all Plaintiffs who have GOMORs, flags, and other forms of adverse action still have not had complete corrective action taken. (Am. Compl., Dkt. 92, at ¶¶ 13 – 23). And there have been no concrete, irrevocable/enforceable directives or remedial actions that would bar criminal prosecutions for failing to follow prior, unlawful orders to vaccinate. Despite repeated requests, Defendants refuse to tell this Court, much less anyone else, when those irrevocable steps might occur, or by what date those steps will be completed. *Id*. An ambiguously worded promise to correct a harm at some unspecified point in the future is woefully insufficient to meet the "heavy burden" to establish mootness. *Wooten v. Housing Authority of Dallas*, 723 F.2d 390, 392 (5th Cir. 1983) (explaining that only receipt of "all of the relief sought" will moot the case); *see also Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1138 (9th Cir. 2016) (noting that a claim becomes moot when a plaintiff actually receives complete relief). Plainly, then, this case is not moot, as Defendants have not yet afforded Plaintiffs full corrective action relief and will not do so for discharged soldiers or the putative class of Plaintiffs.

III.   **Other Than Completing the RFRA Accommodation Process (Which Has Been Discontinued), There is No Further Ripeness/Exhaustion Requirement, and Defendants' Arguments to the Contrary are Foreclosed Under Binding Fifth Circuit Precedent.**

In response to the fact that harm to Plaintiffs has not been remedied to date (which should end the mootness inquiry), Defendants resort to their now-tired refrain that Plaintiffs must somehow further exhaust by going through Army administrative channels to the Army Board of Correction of Military Records and the Army Discharge Board. (Memo, Dkt. 106, at 24-26). The

9

Fifth Circuit disagrees with Defendants. *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 345–49 (5th Cir. 2022).

In *Navy Seals,* the Fifth Circuit stated that "[i]t would not be a stretch to conclude that RFRA must also displace a judge-created abstention doctrine." *Id.* at 346. In so doing, the Fifth Circuit also stated that the justiciability doctrine set forth in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) was displaced by Congress' enactment of RFRA. *Id.* Nevertheless, out of "an abundance of caution," the Fifth Circuit applied the *Mindes* factors and ascertained that religious discrimination claims against the military related to vaccination exemptions were justiciable. *Id.*

Initially, the Fifth Circuit determined that plaintiffs raised claims under applicable statute (RFRA) and the First Amendment, satisfying the first prong of *Mindes*. *Id.* So too here. In fact, the claims here are identical. Next, the Fifth Circuit analyzed exhaustion and concluded ***that the plaintiffs who had exhausted the religious accommodation appeals process, had exhausted***. *Id.* at 346. Here, all Plaintiffs who have had adverse actions taken against them went all the way through the Army's religious accommodation process and had their accommodation requests denied at both levels. (Am. Compl., Dkt. 92 at ¶¶ 14, 15, 18, 19, 20, 23, 61). Each of the Cadet Plaintiffs (Bufkin, Conklin, Mell, Morrison, and Saballa) exhausted, and each received GOMORs, which are, as of today, still on record. (Am. Compl., Dkt. 92 at ¶¶ 14, 15, 18, 19, 20, 61). Likewise, former soldier Luke Chrisman exhausted and he was given a General Discharge (which is indisputably adverse), along with adverse separation reasons and codes. (*Id.* at ¶¶ 23, 59). And Plaintiffs Costroff, Schelske, and Testa exhausted, and they all have been denied promotions due to their delay in attending the Senior Leadership Course ("SLC"). (*Id.* at ¶¶ 16, 21, 22, 60).[5]

---

[5] Defendants suggest that these Plaintiffs claiming promotional harm must utilize the separate remedy contained at 10 U.S.C. § 14502(g)(1)(A)-(b) for the promotion claims, which requires further exhaustion. First, that is not what 10 U.S.C. § 14502(g) says; it says that an individual

Each of these Plaintiffs fully exhausted what they were required to exhaust under the Fifth Circuit's precedent in *Navy Seals*, 27 F.4th at 346; *see also, Schelske v. Austin*, 2022 U.S. Dist. LEXIS 229432 at *40. Thus, Defendants' argument that Plaintiffs must do more is foreclosed by that Fifth Circuit case law. Further, given public statements by Defendants that, despite adverse court rulings, everything they did was lawful, futility is plainly at play here as well.

And as was also the case in *Navy Seals*, the other four *Mindes* factors favor justiciability here. Plaintiffs "allege specific, and far from frivolous, violations of their free exercise rights under both the First Amendment and RFRA" and the "nature and strength of Plaintiffs' claims weigh in favor of judicial resolution." *Id.* at 348. Plaintiffs here continue to face irreparable harm from the violation of their First Amendment rights. *Id.* And finally, as to the last *Mindes* factor, given that the Army has granted thousands of secular exemptions to its vaccination policy, there is little impediment towards granting relief to these Plaintiffs. *Id.* at 348-349. This is also in line with the conclusions reached by another court in this district. *U.S. Navy Seals 1–26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex. 2022). No further exhaustion is required, and Congress plainly gave these Plaintiffs a claim to pursue under RFRA, separate and apart from the military board processes. 42 U.S.C. § 2000bb-1(c).

---

cannot go to court until a special selection board is convened or the Secretary refuses to appoint one. Here, Plaintiffs are asking for a court order directing a referral to such a board. Further, Congress has created a **_separate_** remedy that these Plaintiffs have elected to pursue in 42 U.S.C. § 2000bb-1(c). Defendants likewise suggest that this Court cannot award backpay (Memo, Dkt. 106 at 26-28, PageID#2307-2309). But Defendants acknowledge that equitable relief can include backpay, if it is intertwined with claims for injunctive relief, citing *Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir. 1994), but suggest that is not the case here. Yet it is: religious discrimination is the claim, and an injunction to end it "root and branch"—to include submission to special selection boards, and, if selected, to award backpay—would be just that sort of relief. And, in any event, these claims are below the limitations contained in 28 U.S.C. § 1346(a)(2), which includes monetary relief.

**IV.    There is Ongoing, *De Facto* Discrimination by the Army, and Nothing Keeps Defendants from Reinstituting Another Unconstitutional Mandate with No Religious Accommodation Process Whatsoever or Another Sham Process.**

Defendants believe that Congress's direction to rescind the mandate was a "mistake,"[6] and nothing in the NDAA prevents Defendants from instituting a new mandate. Pentagon spokespersons, including the Secretary of the Navy, indicated that the repeal of the mandate will "unquestionably . . . create almost two classes of citizens in our services . . . Those that can't deploy and those that can deploy."[7]

The Secretary's January and February 2023 Memorandums contain various statements demonstrating that the Secretary of Defense believes that everything Defendants did was lawful, which suggests a return to past practices is not out of the question.[8] The Secretary of Defense unambiguously states: "All commanders have the responsibility and authority to preserve the Department's compelling interests in mission accomplishment [including] . . . the ability to maintain military readiness, unit cohesion, good order and discipline, and the health and safety of a resilient Joint Force." *Id.* Those statements were directives to lower-level commanders that they continue to have the freedom to impose vaccine mandates to "maintain military readiness, unit cohesion, good order and discipline, and the health and safety of a resilient Joint Force." And, when that happens, there is no religious accommodation process to protect these Plaintiffs. Without question, Defendants' response to being ordered to rescind the mandate by Congress reflects that

---

[6] Heather Mongilio, *Pentagon Unclear How Military Would Manage End of Mandatory COVID-19 Vaccines*, USNI NEWS (Dec. 7, 2022), https://news.usni.org/2022/12/07/pentagon-unclear-how-military-would-handle-end-of-mandatory-covid-19-vaccines, last accessed Feb. 15, 2023.

[7] Mongilio, *supra* n.6.

[8] Available at: https://media.defense.gov/2023/jan/10/2003143118/-1/-1/1/secretary-of-defense-memo-on-rescission-of-coronavirus-disease-2019-vaccination-requirements-for-members-of-the-armed-forces.pdf.

they will do this again and have no intention of complying with RFRA and the First Amendment in the future when they do.

### A.    Current Army policy and regulations violate RFRA.

Defendants continue their refrain of no harm, no foul (and pretend the foregoing policies do not exist), by suggesting Plaintiffs make arguments only about a potential future policy. (Memo at 21-23, Dkt. 106, PageID#2302-2305). Even though Defendants have presently directed no further vaccination exemptions be processed for any COVID-19 vaccination requirements, there are still *existing* Army regulations and policy in place for religious and secular exemptions for other vaccines that contain a double standard of localized decision makers for secular exemptions, but centralized top-level decision makers for religious exemptions. (Am. Compl., Dkt. 92, at ¶34, PageID#2101).[9] Thus, if Defendants were to impose another COVID-19 vaccine mandate, and actually consider exemptions to it, they would return to their default discriminatory process. During oral argument in the Fifth Circuit in *Navy Seals* on February 6, 2023, Judge Duncan posited to the Navy's counsel that if another vaccination mandate issued, the "military is going to follow the same [sham religious accommodation] policy going forward. Nothing in the record would indicate otherwise."[10] That is equally true for the Army.

### B.    Contrary to Defendants' suggestions, this Court can direct operational, assignment, and deployment issues in a final judgement.

Defendants argue that this Court cannot reach operational, assignment, or deployment decisions under *Austin v. U.S. Navy Seals 1-26*, 142 S. Ct. 1301 (2022). (Memo, Dkt. 106 at 23-

---

[9] https://armypubs.army.mil/epubs/DR_pubs/DR_a/pdf/web/r40_562.pdf at AR40-562, ¶ 2.6 (last visited March 16, 2023).

[10] Oral Argument at 8:12-19:50, *U.S. Navy SEALs 1-26 v. Biden,* No. 22-10077 (5th Cir. Feb. 6, 2023), *available at* https://www.ca5.uscourts.gov/OralArgRecordings/22/22-10077_2-6-2023.mp3.

24). Plaintiffs do not read *Austin* so broadly, and believe it is limited to preliminary injunctive relief only, versus what the Court can direct in final relief on a complete record. This position stems from the lack of any discussion or rationale in the *Austin* decision, and applying *Marks v. United States*, 430 U.S. 188 (1977), which requires the narrowest construction and holding in a potentially fractured decision. In fact, there is a long history of courts adjudicating claims in the assignment, operational, and deployment arena, so long as there is statutory authority to do so, as there is here. *Adkins v. United States*, 68 F.3d 1317, 1325 (Fed. Cir. 1995) (claim for back pay is justiciable); *Scarseth v. United States*, 46 Fed. Cl. 406, 413 (Ct. Cl. 2000) (same); *Haselrig v. United States*, 53 Fed. Cl. 111, 120 (Ct. Cl. 2002) (same); *Bond v. United States*, 47 Fed. Cl. 641, 651 (Ct. Cl. 2000) (military duty assignment review); *Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993). Indeed, courts are not compelled "to abdicate their responsibility to decide cases and controversies merely because they arise in the military context." *Owens v. Brown*, 455 F. Supp. 291, 300 (D.D.C. 1978); *Philips v. Perry*, 106 F.3d 1420 (9th Cir. 1997) (addressing merits); *Able v. United States*, 155 F.3d 628 (2d Cir. 1998) (same); *Doe v. Trump*, 275 F. Supp.3d 167 (D.D.C. 2017) (addressing merits of claims). The United States Supreme Court has reviewed, and permitted the review, of assignments, benefits, housing, and other challenges. *Schlesinger v. Ballard*, 419 U.S. 498 (1975) (promotion policies); *Frontiero v. Richardson*, 411 U.S. 677 (1973) (housing, medical, and dental benefits).

**C.    This case is a textbook case for application of the voluntary cessation doctrine.**

The already heavy burden of establishing mootness is made even heavier when it comes to voluntary cessation. "A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Laidlaw*, 528 U.S. at 189. "If it did, the courts would be compelled to leave 'the defendant . . . free to return to his old ways.'" *Id.* (*citing City of Mesquite v. Aladdin's*

*Castle, Inc.*, 455 U.S. 283, 289 (1982)). That is why a Defendant "bears the formidable burden of showing that it is **absolutely clear** the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (emphasis added). In *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017), the Supreme Court held that a government actor's change in policy does not moot a case. Rather, the court held that the defendant must prove that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. 167 at 190. "This standard is strict because courts are naturally suspicious—or at least they should be—of officials who try to avoid judicial review by voluntarily mooting a case." *Tucker v. Gaddis*, 40 F.4th 289, 295 (5th Cir. 2022) (Ho, J. concurring). "The skepticism is warranted because the opportunities and incentives for government defendants are obvious: Any 'defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* (*citing Already*, 568 U.S. at 91).

"If a government not only ceases the challenged behavior, but also assures the plaintiffs and the courts that it will never return to its previous course of conduct, a court might reasonably decide to credit that promise, and hold the case moot, so long as it finds no reason to doubt the government's credibility on this score." *Id.* By contrast, Defendants here not only do not make such a promise, given the language in the Secretary's initial Memorandum, this Court has plenty of reason to doubt the Defendants' "credibility on this score."

Defendants suggest that this is not a voluntary cessation case because, they argue, Congress in the NDAA required the rescission of the Vaccine Mandate. But the NDAA at (§ 525, pages 177-

15

178) only required rescission or discontinuation of the prior policy.[11] It did not require lifting the implementation orders by the Secretary of the Army. It did not require halting separations for those who disobeyed the orders to vaccinate. It did not require the removal of adverse actions and reprimands. Any argument that removal of adverse actions was not voluntary (and we submit litigation posturing) is a mischaracterization of fact.

Attempting to respond to that point, Defendants falsely argue that the Secretary's voluntary actions "merely implemented" the NDAA. (Memo, Dkt. 106, at 14, PageID#2295). That contention strains the bounds of Rule 11. Not only because the plain text of the NDAA did not require the Secretary's voluntary actions, but on February 28, 2023, top Pentagon officials acknowledged in testimony before Congress that "[t]he services are going through a process to review those cases [where individuals disobeyed a lawful order' to get a COVID-19 vaccine] to make a determination what needs to be done."[12] Again, no less than the Undersecretary of Defense for Personnel and Readiness, Gilbert Cisneros, admitted "[t]hey're reviewing the cases because . . . they [disobeyed] a lawful order." *Id.* Clearly, Defendants do not believe that the NDAA *actually* requires removal of adverse actions—instead, top-level officials *confirmed before Congress* that, notwithstanding the NDAA, they can continue to punish those who did not comply. It is time for Defendants' continued gamesmanship on this issue to stop.

While Defendants falsely suggest there is no indication that they might reconsider or reimpose their past policies, (Memo, Dkt. 106, at 14, PageID#2295), the Undersecretary of

---

[11] Available at: https://www.congress.gov/117/bills/hr7776/BILLS-117hr7776enr.pdf (last accessed 2/10/2023).

[12] Meghann Myers, *Troops who refused COVID vaccines still could face punishment*, Military Times (Feb. 28, 2023), https://www.militarytimes.com/news/coronavirus/2023/02/28/troops-who-refused-covid-vaccines-still-could-face-punishment/?utm_source=sailthru&utm_medium=email&utm_campaign=mil-ebb&SToverlay=de88742f-46f7-4f2c-819d-3b36a47d6a7e.

Defense's recent testimony to Congress is just that sort of evidence. So is the Secretary of Defense's January and February 2023 Memoranda.[13] Both Memoranda contain explicit statements clearly indicating that the Secretary of Defense believes that everything Defendants did was lawful. Homages to "changing public health conditions, relevant data, and geographic risks, and updating policies and processes as required to maintain the strategic readiness of our forces and our ability to defend national security interests around the globe"[14] unfortunately foreshadow a return to past discriminatory processes and practices. Given Defendants' admissions, it is not "**absolutely clear** the allegedly wrongful behavior could not reasonably be expected to recur." *Already*, 568 U.S. at 91. Those same statements about "changing public health conditions, relevant data, and geographic risks" place this case squarely within the import of *Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63, 68–69 (2020). The Court observed there that if restrictions are dependent upon public health conditions, which are subject to change, the case is plainly not moot. The reservation here to reimpose vaccination requirements based on "changing public health conditions" is on all fours with *Cuomo*.

In fact, Defendants have _never_ "asserted nor demonstrated that [they] will never resume the complained of conduct" and Plaintiffs do not expect that they will. *Norman-Bloodsaw v. Lawrence Berkely Lab.*, 135 F.3d 1260, 1274 (9th Cir 1998); *Cf. United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 n.* (2018) (holding "the rescission of the policy does not render this case moot").

---

[13] Available at: https://media.defense.gov/2023/jan/10/2003143118/-1/-1/1/secretary-of-defense-memo-on-rescission-of-coronavirus-disease-2019-vaccination-requirements-for-members-of-the-armed-forces.pdf and https://media.defense.gov/2023/Feb/24/2003167584/-1/-1/1/GUIDANCE-FOR-IMPLEMENTING-RESCISSION-OF-082421-AND-113021-COVID-19-VACCINATION-REQUIREMENTS-FOR-MEMBERS-OF-THE-ARMED-FORCES-OSD001649-23-RES-FINAL.PDF, last accessed 3/16/2023.

[14] *Id.*

Next, consider the statement by Cadet Morrison's commanding officer:

> …we were all told to hold any action because you are part of that whole federal litigation thing, right? … if the case doesn't go well, the army **could** (emphasis) continue all the adverse action against unvaxxed [sic] persons…but if they say DoD can make a vaccine mandate, then I bet the action continues because it's still disobeying a legal order.

(Am. Compl., Dkt. 92, at ¶19; Appendix, Dkt. 93 at Exhibit 3).

This is stunning evidence that what Plaintiffs are dealing with here is litigation posturing by Defendants. Instead of absolutely making clear that Defendants will not return to their past discriminatory policies, Defendants chose to play whack-a-mole with the sole intent of mooting out this litigation. First, it was the Secretary's January 2023 Memorandum rescinding the mandate and removing "adverse actions" and halting separations of Plaintiffs. Then came the February 24, 2023 Memorandum, issued after Plaintiffs had filed their amended complaint and opposition to Defendants' initial motion to dismiss. (Dkt. 92 and 96). The timing and focus of these new policies demonstrate that Defendants' latest round of policies constitute voluntary cessation for the purpose of "litigation posturing." *Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018). Plaintiffs are curious as to what new round of policies are born by this filing.

In fact, it appears to be reasonably certain that Defendants will continue their illegal activities as soon as they are no longer burdened by "that whole federal litigation thing." Determining whether the ceased action "could not reasonably be expected to recur," *Laidlaw*, 528 U.S. at 189, takes into account the totality of the circumstances surrounding the voluntary cessation, including the manner in which the cessation was executed. *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019). Where, as here, "a change is merely regulatory [or by executive action], the degree of solicitude the voluntary cessation enjoys is based on whether the regulatory processes leading to the change involved legislative-like procedures or were ad hoc,

18

discretionary, and easily reversible actions." *Id.* Thus, where, as here, "[i]f the discretion to effect the change lies with one agency or individual, or there are no formal processes required to effect the change, significantly more than the bare solicitude itself is necessary to show that the voluntary cessation moots the claim." *Id.*

This "authority to reinstate [the challenged policies] at any time" from officials "with a track record of 'moving the goalposts'" subjects Plaintiffs to a credible threat of widespread enforcement of Defendants' discriminatory vaccination requirements in the future. *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021). Defendants also continue to defend the merits of how their mandate was carried out. *See* Mongilio, *supra* n.6. Given that Defendants *still* "vigorously defend" the legality of their prior mandate, including as to those who sought a religious accommodation, mootness is not met. *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U. S. 701, 719 (2007). Courts do not dismiss a case as moot in such circumstances. *See City of Mesquite*, 455 U.S. 283, 288–89.

Moreover, given the waiting game being played here, Plaintiffs submit that the temporary recission or expiration or termination of the vaccine mandate order—in the midst of litigation—is entitled to no weight whatsoever. *See A. Philip Randolph Inst. v. Husted*, 838 F.3d 699, 713 (6th Cir. 2016), *rev'd on other grounds*, 138 S. Ct. 1833 (2018).

Finally, while Defendants seek to hide behind the alternative rule for government actors, it does not apply here, and, if it did, the requirements of that test for the exception to mootness is met. Courts consider three factors when applying this more relaxed standard: "(1) the absence of a controlling statement of future intention [not to repeat the challenged policy]; (2) the suspicious timing of the change; and (3) the [governmental entity's] continued defense of the challenged polic[y]" after the supposedly mooting event. *Speech First,* 979 F.3d at 328; *Speech First, Inc. v.*

*Fenves*, 979 F.3d 319 (5th Cir. 2020). Here, of course, there is no controlling statement regarding future intention not to repeat the policy. To the contrary, Defendants plainly reserve the right to do so (and say as much in their policy memos). Thus, the first factor is plainly met. For the second factor, there is suspicious timing as discussed in previous paragraphs. Defendants counter that there is nothing suspicious here because Congress directed them to rescind the COVID-19 mandate in the NDAA. But that misses the point. Defendants' stepwise efforts are about attempting to moot ongoing litigation, particularly in cases where they continue to disagree, publicly, with adverse decisions. Once again, Defendants continue to vigorously defend their unconstitutional policy in the January and February 2023 Memoranda. Defendants thus fail on all three factors and cannot meet their "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already*, 568 U.S. at 91.

D.   **The capable of repetition yet evading review exception to mootness also applies.**

This case also falls under the capable of repetition yet evading review exception to mootness. It "applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462 (2007). Defendants suggest that the capable of repetition exception does not apply because the initial mandate imposed in August of 2021 had no expiration date. But this case is not about the vaccine mandate. It is about Defendants' refusal to grant religious accommodations to the mandate via a regulatory process that is still in force[15]—refusals that

_____

[15] https://armypubs.army.mil/epubs/DR_pubs/DR_a/pdf/web/r40_562.pdf at AR40-562, ¶ 2.6, last visited Mar. 16, 2023.

inherently involve a double standard with local decision makers for secular exceptions and high-level decision makers for religious exceptions that override the local decision makers. Further, statements by Defendants that they still have compelling interests in imposing future vaccine mandates, recent under-oath statements by DoD officials that they intend to punish at least some past-vaccine refusers, and stunning admissions by Plaintiffs' commanders that there is a wait-and-see approach to continuing the mandate when unburdened by that "whole federal litigation thing," undermine any claims by Defendants that recurrences of the mandate are merely "speculative." This is a game being played by these Defendants, with plenty of smoke, suggesting that the only thing keeping Defendants from reimposing their mandate and punishing prior religious vaccine objectors for not complying with orders is, at least for the Army, this litigation. Given the clear record evidence, there is nothing speculative here about future harm.

**E.    The class/pickoff exception applies.**

In a final attempt to prop up their mootness claim, Defendants make two arguments related to the doctrine that class treatment cannot be avoided by "picking off" named Plaintiffs—both fail. First, Defendants suggest that they will (eventually) fix everyone's harms. This argument is plainly untrue, though, as they previously admitted that Luke Chrisman's harms will not be remedied and instead indicated he needed to undertake administrative steps first. Moreover, not only do Defendants fail even to attempt a remedy for Chrisman, but they have also likewise not provided remedies for the putative class. A future promise is insufficient. Second, Defendants argue that the pickoff exception, pre-certification, only applies where the claims are inherently transitory. But that argument is precluded by the Fifth Circuit's decision in *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1045 (5th Cir. 1981). There, the Court explained that, "while we recognize that the named plaintiffs in this case have not presented claims which by their nature are so transitory that

21

no single named plaintiff with such a claim could maintain a justiciable case long enough to procure a decision on class certification, we believe that the result should be no different when the defendants have the ability by tender to each named plaintiff effectively to prevent any plaintiff in the class from procuring a decision on class certification." *Id.* at 1050. Said another way, the Fifth Circuit does not permit Defendant to "fix" the issues with named Plaintiffs while harm to the class remains. As noted, Plaintiffs have demonstrated ongoing harm to the class, and thus the exception applies.

### F.    Cadet Bufkin's claims are not subject a Motion to Dismiss.

The final matter to address are the claims of Cadet Bufkin. He provided a sworn-to verification of his religious beliefs on August 1, 2021, had stress placed upon him by West Point commanders and leadership through threats of adverse action, segregation and harassment—all due solely to his unvaccinated status and pending religious accommodation request—and was later diagnosed with situational depression/anxiety. (Am. Compl., Dkt. 92 at ¶14 and Dkt. 14, PageID 134 ¶20). As a result, Cadet Bufkin's grades suffered in the Spring 2022 semester, and he failed three classes. *Id.* at ¶14. He pled that he "suffered career ending consequences that flowed directly from Defendants' discriminatory actions and his related diagnosed depression." *Id.* at ¶63.

Defendants argue that Cadet Bufkin's grades were bad before the vaccination mandate. But that argument focusses on a single semester (the Fall of 2020) while ignoring the two before it and the one after it, all of which demonstrated sufficient performance, and then the abysmal performance after the discrimination and the vaccine mandate. That is a factual issue—one subject to proof—not one subject to a motion to dismiss. *Clark*, 798 at 741.

## CONCLUSION

Defendants continue to fail to meet *their* formidable burden to establish mootness. Yet, they incredibly continue to claim mootness, ostensibly due to their rescission of a policy that can be re-enacted at any time, while ignoring ongoing harms that continue to date that have not been corrected and include harms they do not ever intend to correct as detailed above. They argue for an exhaustion requirement that is foreclosed by Circuit precedent. They further argue that voluntary cessation (and its heightened burden) does not apply, even though Congress did not mandate any corrective action other than rescission of a particular policy. They otherwise fail to address a bevy of other applicable exceptions and never grapple with adverse facts. The motion to dismiss should be denied.


Dated:  March 24, 2023                                    Respectfully submitted,

                                                          */s/ Aaron Siri* _____.
                                                          Aaron Siri (Admitted *Pro Hac Vice*)
                                                          Elizabeth A. Brehm
                                                          (Admitted *Pro Hac Vice*)
                                                          Wendy Cox (TX 24090162)
                                                          Dana Smith (Admitted *Pro Hac Vice*)
                                                          SIRI | GLIMSTAD LLP
                                                          745 Fifth Avenue, Suite 500
                                                          New York, NY 10151
                                                          (212) 532-1091 (v)
                                                          (646) 417-5967 (f)
                                                          aaron@sirillp.com
                                                          ebrehm@sirillp.com
                                                          wcox@sirillp.com
                                                          dstone@sirillp.com

                                                          */s/Christopher Wiest* _____
                                                          Christopher Wiest (Admitted *Pro Hac Vice*)
                                                          Chris Wiest, Atty at Law, PLLC
                                                          25 Town Center Boulevard, Suite 104
                                                          Crestview Hills, KY 41017
                                                          (513) 257-1895 (vc)
                                                          (859) 495-0803 (f)

chris@cwiestlaw.com

Thomas Bruns (Admitted *Pro Hac Vice*)
Bruns, Connell, Vollmar & Armstrong, LLC
4555 Lake Forest Drive, Suite 330
Cincinnati, OH 45242
(513) 312-9890 (vt)
tbruns@bcvalaw.com

John C. Sullivan
S|L LAW PLLC
Texas Bar Number: 24083920
610 Uptown Boulevard, Suite 2000
Cedar Hill, Texas 75104
(469) 523–1351 (v)
(469) 613-0891 (f)
john.sullivan@the-sl-lawfirm.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2023, a true and correct copy of this Plaintiffs'

Memorandum in Opposition to Defendants' Motion to Dismiss was served by CM/ECF on all

counsel or parties of record.

/s/ Christopher Wiest
Christopher Wiest

24