# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

**LUKE T. CHRISMAN,** *individually and on behalf of all others similarly situated,*

     *Plaintiffs*,

v.

**LLOYD J. AUSTIN, III**, in his official capacity as United States Secretary of Defense, *et al.*,

     *Defendants.*

Case No. 6:22-cv-00049-H

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES AND COSTS

Aaron Siri (admitted PHV)
Elizabeth A. Brehm (admitted PHV)
Wendy Cox (TX 24090162)
Dana Smith (admitted PHV)
Siri & Glimstad LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
(212) 532-1091 (v)
(646) 417-5967 (f)
aaron@sirillp.com
ebrehm@sirillp.com
wcox@sirillp.com
dsmith@sirillp.com

Christopher Wiest (admitted PHV)
Chris Wiest, Atty at Law, PLLC
25 Town Center Boulevard, Suite 104
Crestview Hills, KY 41017
(513) 257-1895 (v)
(859) 495-0803 (f)
chris@cwiestlaw.com

Thomas Bruns (admitted PHV)
Bruns, Connell, Vollmar & Armstrong, LLC
4555 Lake Forest Drive, Suite 330
Cincinnati, OH 45242
(513) 312-9890 (v)
tbruns@bcvalaw.com

John C. Sullivan
S|L LAW PLLC
Texas Bar Number: 24083920
610 Uptown Boulevard, Suite 2000
Cedar Hill, Texas 75104
(469) 523-1351 (v)
(469) 613-0891 (f)
john.sullivan@the-sl-lawfirm.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... iv

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 1

LAW AND ARGUMENT ........................................................................................................... 5

    A.  PLAINTIFFS ARE THE PREVAILING PARTY AND ARE ENTITLED
        TO REASONABLE ATTORNEYS' FEES UNDER 42 U.S.C. § 1988(B) ...................... 6

        1.  The Preliminary Injunction, Never Undone on the Merits,
            Prompted Corrective Action by Defendants and Is Thus Sufficient
            For Prevailing Party Status ............................................................................... 7

        2.  The Agreed Order Is Also Sufficient to Confer Prevailing Party Status ...................... 8

    B.  THE ATTORNEYS' FEES AND COSTS SOUGHT ARE REASONABLE.................... 9

        1.  The Time Spent on This Case Was Reasonable ........................................................ 10

        2.  All of the Tasks Dealt with Related Claims and Thus Are Compensable ................. 14

        3.  The Hourly Rates Sought Are Reasonable ............................................................... 16

    C.  The *Johnson* Factors ......................................................................................... 19

        1.  Time and Labor Required ....................................................................................... 20

        2.  Novelty and Difficulty of the Questions................................................................. 20

        3.  Skill Requisite to Perform the Legal Service Properly ............................................ 21

        4.  Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case . 24

        5.  The Customary Fee ................................................................................................. 24

        6.  Whether the Fee Was Fixed or Contingent.............................................................. 24

        7.  Limitations Imposed by the Clients or Circumstances ............................................ 24

        8.  Amount Involved and the Results Obtained ............................................................ 24

        9.  The Experience, Reputation, and Ability of Attorneys............................................. 25

        10. The "Undesirability" of the Case............................................................................ 30

11. The Nature and Length of the Professional Relationship with the Client .................. 31

12. Awards in Similar Cases ............................................................................................ 31

D. TIME SPENT PREPARING THE FEE APPLICATION .................................................. 34

E. APPLYING THE *JOHNSON* FACTORS, AN UPWARD ADJUSTMENT IS
WARRANTED ................................................................................................................... 34

F. PLAINTIFFS ARE ENTITLED TO THEIR EXPENSES ............................................... 35

CONCLUSION .......................................................................................................................... 35

CERTIFICATE OF SERVICE .................................................................................................. 37

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abbott v. Biden*,
  70 F.4th 817 (5th Cir. 2023) ................................................................................................ 7

*Abner v. Kan. City S. Ry. Co.*,
  541 F.3d 372 (5th Cir. 2008) .............................................................................................. 15

*Adcock-Ladd v. Secretary of Treasury*,
  227 F.3d 343 (6th Cir. 2000) .............................................................................................. 14

*Advanced Display Sys. v. Kent State Univ.*,
  2003 WL 27424246 (N.D. Tex. 2003) ................................................................................ 11

*Air Force Officer v. Austin*,
  588 F. Supp. 3d 1338 (N.D. Ga. 2022) ................................................................................ 1

*Alberti v. Klevenhagen*,
  896 F.2d 927 (5th Cir. 1990) .............................................................................................. 10

*Amawi v. Paxton*,
  48 F.4th 412 (5th Cir. 2022) ................................................................................................ 7

*Assoc. Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*,
  919 F.2d 374 (5th Cir. 1990) .............................................................................................. 35

*Blanchard v. Bergeron*,
  489 U.S. 87 (1989) .............................................................................................................. 10

*Blum v. Stenson*,
  465 U.S. 886 (1984) ............................................................................................................ 16

*BST Holdings, LLC v. OSHA*,
  17 F.4th 604 (5th Cir. 2021) .............................................................................................. 24

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*,
  532 U.S. 598 (2001) ........................................................................................................... 6, 9

*Coleman v. Hous. Indep. Sch. Dist.*,
  1999 WL 1131554, at *5 (5th Cir. 1999) .................................................................. 14, 15, 16

*Colonel Fin. Mgmt. Officer v. Austin*,
  622 F. Supp. 3d 1187 (M.D. Fl. 2022) ................................................................................ 2

*Cruz v. Hauck*,
762 F.2d 1233 (1985)........................................................................... 6, 34

*Dearmore v. City of Garland*,
519 F.3d 517 (5th Cir. 2008) ............................................................. 7, 8

*Doster v. Kendall*,
48 F.4th 608 (6th Cir. 2022) ................................................................... 2

*Doster v. Kendall*,
54 F.4th 398 (6th Cir. 2022) ........................................... 2, 22, 30, 32

*Doster v. Kendall*,
342 F.R.D. 117 (S.D. Ohio 2022) ........................................................ 2

*Doster v. Kendall*,
596 F.Supp.3d 995 (S.D. Ohio 2022) .................................................. 2

*Fischer v. Thomas*,
52 F.4th 303 (6th Cir. 2022) ........................................................ 22, 28

*Fox v. Vice*,
563 U.S. 826 (2011) .............................................................................. 15

*Franciscan All., Inc. v. Becerra*,
2023 WL 4462049, *5, --- F.Supp.3d --- (N.D. Tex. July 11, 2023) ................................ *passim*

*Grisham v. City of Fort Worth*,
837 F.3d 564 (5th Cir. 2016) ................................................................. 9

*Groff v. Dejoy*, (*Groff v. DeJoy*,
143 S. Ct. 2279 (2023)......................................................................... 30

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)............................................................... 6, 9, 14, 15

*Hill v. Schilling*,
2022 WL 17178739 (N.D. Tex. Nov. 22, 2022).................................. 34

*Hopwood v. Texas*,
236 F.3d 256 (5th Cir. 2000) ............................................................... 32

*Human Rights Def. Ctr. v. Ballard*,
2020 WL 2513822, at *2 (E.D. Ky. May 15, 2020) ........................... 11

*Jacobson v. Massachusetts*,
　　197 U.S. 11 (1905) ........................................................................................... 21

*Johnson v. Georgia Highway Express, Inc.*,
　　488 F.2d 714 (5th Cir. 1974) ................................................................ 10, 19, 20

*Johnson v. Sw. Rsch. Inst.*,
　　No. 5:15-297, 2019 WL 4003106, at *21 (W.D. Tex. Aug. 23, 2019) ................... 33

*Kassim v. City of Schenectady*,
　　415 F.3d 246 (2d Cir. 2005) ............................................................................ 14

*Kendall v. Doster*,
　　2023 WL 8531840 (Dec. 11, 2023) ..................................................................... 2

*Kostić v. Tex. A&M Univ. - Commerce*,
　　No. 3:10-cv-02265-M, 2015 WL 9997211, at *3 (N.D. Tex. Dec. 28, 2015) .................. 33, 34

*Lefemine v. Wideman*,
　　568 U.S. 1 (2012) ............................................................................................. 6

*Longden v. Sunderman*,
　　979 F.2d 1095 (5th Cir. 1992) ............................................................................ 9

*Louisiana Power & Light Co. v. Kellstrom*,
　　50 F.3d 319 (5th Cir. 1995) .............................................................................. 10

*McClain v. Lufkin Indus., Inc.*,
　　649 F.3d 374 (5th Cir. 2011) ................................................................ 16, 17, 32

*Midcap Media Fin., LLC v. Pathway Data, Inc.*,
　　2018 WL 7890668, at *3 (W.D. Tex. Dec. 19, 2018) .......................................... 33

*Mid-Continent Cas, Co. v. Chevron Pipe Line Co.*,
　　205 F.3d 222 (5th Cir. 2000) ............................................................................. 9

*Migis v. Pearle Vision, Inc.*,
　　135 F.3d 1041 (5th Cir. 1998) .......................................................................... 35

*Missouri v. Jenkins*,
　　491 U.S. 274 (1989) ....................................................................................... 10

*Navy Seal 1 v. Austin*,
　　586 F. Supp. 3d 1180 (M.D. Fl. 2022) ................................................................. 1

*Perdue v. Kenny A. ex rel. Winn,*
  559 U.S. 542 (2010)..............................................................................................5, 10

*Petteway v. Henry,*
  738 F.3d 132 (5th Cir. 2013) .................................................................................9

*Pittman v. SW. Bell Tel. L.P.,*
  2022 U.S. Dist. LEXIS 244268, at *29 (W.D. Tex. August 16, 2022) ...................33

*Planned Parenthood Sw. Ohio Region v. Dewine,*
  931 F.3d 530 (6th Cir. 2019) ...............................................................................16

*Poffenbarger v. Kendall,*
  588 F.Supp.3d 770 (S.D. Ohio 2022) .....................................................................2

*Roberts v. Neace,*
  958 F.3d 595 (6th Cir. 2020) .........................................................................22, 28

*Romain v. Walters,*
  856 F.3d 402 (5th Cir. 2017) .............................................................................8, 9

*Saizan v. Delta Concrete Products Co.,*
  448 F.3d 795 (5th Cir. 2006) ...............................................................................11

*Seals v. Austin,*
  594 F. Supp. 3d 767 (N.D. Tex. 2022) ...................................................................2

*Sierra Club v. Energy Future Holdings Corp.,*
  No. 12-cv-108, 2014 2014 WL 12690022, at *6 (W.D. Tex. Aug. 29, 2014)...................17, 32

*Sisters for Life, Inc. v. Louisville-Jefferson Cnty.,*
  56 F.4th 400 (6th Cir. 2022) .........................................................................22, 28

*Sambrano v. United Airlines,*
  2022 WL 486610 (5th Cir. Feb. 17, 2022) ............................................................32

*Sweeney v. Crigler,*
  2020 WL 7038977, *3 (E.D. Ky. Oct. 27, 2020)....................................................11

*Tollett v City of Kemah,*
  285 F.3d 357 (5th Cir. 2002) .........................................................................16, 17

*Torres v. Gristede's Operating Corp.,*
  2012 WL 3878144, *4 (S.D.N.Y. Aug. 6, 2012).....................................................14

*Transverse L.L.C. v. Iowa Wireless Servs. L.L.C.*,
   992 F.3d 336 (5th Cir. 2021) ............................................................. 15

*U.S. Navy Seals 1-26 v. Austin*,
   27 F.4th 336 (5th Cir. 2022) ................................................................ 2

*U.S. Navy Seals 1-26 v. Austin*,
   578 F. Supp. 3d 822 (N.D. Tex. 2022) ................................................. 1

*Wooldridge v. Marlene Indus. Corp.*,
   898 F.2d 1169 (6th Cir. 1990) ........................................................... 11

**<u>Statutes</u>**

42 U.S.C. 1988(b) ............................................................................ 5, 6

42 U.S.C. 2000bb .................................................................. 2, 5, 15, 34

42 U.S.C. 2000bb-1 ............................................................................. 1

**<u>Constitutional Provisions</u>**

U.S. CONST., amend. I .................................................................. *passim*

**<u>Other Authorities</u>**

National Defense Authorization Act for the Fiscal Year 2023 ("NDAA") ......................... *passim*

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

The procedural history of this historically unprecedented case is complex.

In August 2021, the U.S. military, by and through the Secretary of Defense, imposed a vaccine mandate for Covid-19. (Dkt. 1.) Implementation of that mandate came through the various service secretaries. *Id.* The military offered exemptions to that mandate, which came in three flavors: medical exemptions, which were granted for certain conditions (and automatically granted to any pregnant women); administrative exemptions, which were liberally granted (usually to those who were separating the service or nearing retirement); and religious exemptions. *Id.* Religious exemptions, unlike administrative and most medical exemptions, were legally required under RFRA, 42 U.S.C. 2000bb-1, yet the military (the Army here) systemically denied religious exemptions, and did so based on generic, broad assertions of military readiness, not any individual analysis of the religious accommodation requests. (Dkt. 1.)

Litigation ensued over these mandates, and more than thirty cases were filed around the country challenging the military's actions. As the Government touted at the preliminary injunction hearing in this matter, almost all these cases were unsuccessful, with courts deferring to the military in spite of the evidence regarding the military's non-compliance with RFRA. (Transcript, Dkt. 79, at 260-261.)

But several cases were outliers, and all were brought by experienced attorneys with national practices that involved religious liberty litigation, vaccine-related litigation, and/or unique experience with military law. In those few successful cases, preliminary injunctions issued, preventing the military from discharging or court martialing religious objectors. *See Air Force Officer v. Austin*, 588 F. Supp. 3d 1338 (N.D. Ga. 2022); *U.S. Navy Seals 1-26 v. Austin*, 578 F. Supp. 3d 822 (N.D. Tex. 2022); and *Navy Seal 1 v. Austin*, 586 F. Supp. 3d 1180 (M.D. Fl. 2022).

The undersigned were part of that success, being on the prevailing end of early cases, with preliminary injunctions issued against Air and Space Force officials. *See Poffenbarger v. Kendall*, 588 F.Supp.3d 770 (S.D. Ohio 2022); and *Doster v. Kendall*, 596 F.Supp.3d 995 (S.D. Ohio 2022).

Several of these successful cases involved national class certification orders and class-wide preliminary injunctions. Specifically, a national class was certified as to the Navy in *Seals v. Austin*, 594 F. Supp. 3d 767 (N.D. Tex. 2022), as to the Marine Corps in *Colonel Fin. Mgmt. Officer v. Austin*, 622 F. Supp. 3d 1187 (M.D. Fl. 2022), and as to the Air and Space Force in *Doster v. Kendall*, 342 F.R.D. 117 (S.D. Ohio 2022). And published appeals court opinions followed on the merits in two of those matters: *U.S. Navy Seals 1-26 v. Austin*, 27 F.4th 336 (5th Cir. 2022), and *Doster v. Kendall*, 48 F.4th 608 (6th Cir. 2022) and *Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022), vacated due to mootness in *Kendall v. Doster*, 2023 WL 8531840 (Dec. 11, 2023).

The Army, however, given the wave of litigation, handled things a bit differently than the other services and adopted a wait-and-see approach. It held religious exemption appeals at the second review level, the Assistant Secretary of the Army for Manpower and Reserve Affairs (the final appeal level from the Army Surgeon General), for months, until mid-summer of 2022, when it also began systemic denials of appeals, thus triggering this lawsuit.

This matter was filed on October 3, 2022, on behalf of ten Army members, including officers, enlisted members, and cadets, all of whom sought religious exemptions that had been denied based on broad, generic assertions of military readiness, and all of whom faced impending disciplinary proceedings and unfavorable discharges as a consequence of those denials. (Dkt. 1.) There were two substantive claims: one under RFRA (42 U.S.C. 2000bb), and a related claim

2

under the First Amendment. *Id.* Defendants, with the full weight of the U.S. Government behind them, litigated the matter vigorously.

A preliminary injunction was promptly sought in mid-October 2022 (Dkt. 29, 30, 34), and was vigorously opposed by the Government on November 8, 2022, with the Government seeking and obtaining a page length extension (Dkt. 38). Plaintiffs replied on November 22, 2022 (Dkt. 46) and sought class certification and a class-wide preliminary injunction the next day. (Dkt. 48, 49, 50, 51.) Despite the litigation, the military charged ahead and threatened impending separation of two of the cadet Plaintiffs. (Dkt. 55, 56.)

In light of the above, this Court held a status hearing on December 8, 2022 (Dkt. 57), during which the Government declined any agreement to stay its hand and cease separating military members while the matter was pending (or at least even during briefing). The Army took this position even though the 2023 NDAA— requiring the rescission of the vaccine mandate—was being debated in Congress at the time. The Army's position on separating soldiers prompted the Court to immediately set a preliminary injunction hearing for December 16, 2022. (Dkt. 58, 60.)

The parties then prepared for and presented a full-blown evidentiary hearing on December 16, 2023, during which Plaintiffs put on three witnesses, and the Defendants none. (Dkt. 79.) A preliminary injunction then issued on December 21, 2023. (Dkt. 78.) Significantly, the Court further ordered that, if the Government intended to separate any Army member other than Plaintiffs (*i.e.*, anyone in the putative class), that it must first inform the Court (presumably to allow the Court the opportunity to immediately certify the class and enter a class-wide preliminary injunction). (Dkt. 78, 80.)

Legislation intervened, though, as Congress passed the 2023 NDAA and it was signed by the President on December 23, 2022.[1] That legislation required the rescission of the mandate within 30 days of the enactment of the legislation by the Secretary of Defense, but it did not prevent the punishment of those service members who had not complied with the vaccine mandate while the mandate had been in force. *Id.* Subsequently, and separate from what the NDAA required, the Secretary of Defense and Secretary of the Army directed certain corrective action, but only for military members and soldiers who had sought an exemption, promising additional punitive measures for military members and soldiers who had not.[2] Relatedly, testimony before Congress established that military officials believed that nothing in the NDAA prevented them from punishing past violators of the mandate.[3]

In the meantime, on February 10, 2023, Plaintiffs amended the complaint to include the claims of Mr. Luke Chrisman, who was one of approximately 1,000 Army service members who had been separated with an unfavorable discharge for not complying with the vaccine requirement (but who sought and had been denied a religious accommodation). (Dkt. 92.) The Government then engaged in Motion to dismiss practice. (Dkt. 88, 89, 96, 105, 107, 109, 112.)

The Army failed to fully accomplish corrective action for the original Plaintiffs, necessitating additional meetings between Defendants and Plaintiffs to resolve these remaining issues, —and prompting the Army through the summer to withdraw from Plaintiffs' military

---

[1]    *See*    https://www.whitehouse.gov/briefing-room/legislation/2022/12/23/press-release-bill-signed-h-r-7776/ (last accessed January 14, 2024).

[2]    *See* https://media.defense.gov/2023/Jan/10/2003143118/-1/-1/1/SECRETARY-OF-DEFENSE-MEMO-ON-RESCISSION-OF-CORONAVIRUS-DISEASE-2019-VACCINATION-REQUIREMENTS-FOR-MEMBERS-OF-THE-ARMED-FORCES.PDF.

[3]    *See*    https://www.washingtontimes.com/news/2023/feb/28/pentagon-has-its-own-long-covid-problem-over-dropp/; testimony available at: https://armedservices.house.gov/hearings/covid-19s-impact-dod-and-its-servicemembers.

records additional unfavorable information (but again, not for Mr. Chrisman). (Dkt. 122, 123, 124, 125, 131, 132, 133.)

This Court then dismissed the remaining Plaintiffs (other than Mr. Chrisman) as having received the relief they sought in this matter (Dkt. 139), noted that Mr. Chrisman stated a claim, did not need to exhaust administrative remedies as claimed by the Government, was potentially entitled to reinstatement and backpay under RFRA, denied class certification without prejudice, and essentially invited Mr. Chrisman to file another motion for class relief for soldiers with adverse discharges who were similarly situated to him. *Id.*

Ultimately, the case was finally resolved by the parties, after mediation, via a consent order on December 7, 2023, which addressed all remaining harms and involved additional concessions on behalf of Defendants. (Dkt. 150.) The only remaining unresolved issue between the parties is attorneys' fees and costs. *Id.*

Plaintiffs now seek attorneys' fees and costs, which are substantiated by the declarations of Plaintiffs' Counsel, and by the declaration of an outside attorney who provides opinions on the market rates and work in this matter. (*See* Decl. Aaron Siri, Decl. Christopher Wiest, Dec. Thomas Bruns, Dec. John Sullivan, Decl. Jonathan Mitchell, in Appendix, Dkt. 157 ("**Appx.**") at 4-139.)

## II.    LAW AND ARGUMENT

Plaintiffs sought relief under RFRA and obtained it. (Dkt. 1, 78, 150.) RFRA is one of the express statutes under 42 U.S.C. 1988(b) that provides for prevailing party attorney fees. *See* 42 U.S.C. 1988(b) ("In any action or proceeding to enforce a provision of … the Religious Freedom Restoration Act of 1993 [42 U.S.C. 2000bb et seq.] … the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."). The Supreme Court has addressed the importance of appropriate attorneys' fees in civil rights

cases, recognizing in *Perdue v. Kenny* that "a reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). Given the nature and far-reaching impact of this matter, the resources mounted against Plaintiffs, and the novel constitutional claims presented, reasonable attorneys' fees and costs are warranted. For the reasons discussed below, Plaintiffs request the Court to award them reasonable attorneys' fees and costs.

### A. PLAINTIFFS ARE THE PREVAILING PARTY AND ARE ENTITLED TO REASONABLE ATTORNEYS' FEES UNDER 42 U.S.C. § 1988(B)

Under 42 U.S.C. § 1988(b), a party who obtains injunctive relief is a prevailing party, even if no monetary damages are awarded. *See Lefemine v. Wideman*, 568 U.S. 1, 2 (2012). For more than four decades, the national consensus has been that prevailing parties should ordinarily recover attorney fees "unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). And the Fifth Circuit has consistently held that "special circumstances sufficient to justify a denial of attorneys' fees are exceedingly narrow." *Cruz v. Hauck*, 762 F.2d, 1233 (1985).

With respect to whether Plaintiffs prevailed in this action, the Supreme Court is clear about the effect of consent decrees on prevailing party status:

> In addition to judgments on the merits, we have held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees. Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-ordered 'change [in] the legal relationship between [the plaintiff] and the defendant.' These decisions, taken together, establish that enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees.

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 604 (2001) (internal citations omitted).

1. **The Preliminary Injunction, Never Undone on the Merits, Prompted Corrective Action by Defendants and Is Thus Sufficient for Prevailing Party Status**

To qualify for prevailing party status based on a preliminary injunction, "a plaintiff must (1) win a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits." *Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008). Those criteria are met here.

As an initial matter, it is undisputed that Plaintiffs won a preliminary injunction based upon an unambiguous indication of probable success on the merits, demonstrating the first two factors are met. (Dkt. 78.) Indeed, this Court's 68-page preliminary injunction decision was based precisely upon an unambiguous indication of probable success on the merits. *Id.*

As for causation, Defendants mooted the action following this Court's ruling by actions taken to prevent further litigation. Defendants likely will claim it was the passage of the NDAA, and then cite to *Amawi v. Paxton*, 48 F.4th 412 (5th Cir. 2022), for the proposition that causation is not met. But the NDAA did not moot the case. Rather, after the entry of the injunction in this case and after the passage of the NDAA, Defendants took voluntary steps not required by the NDAA, in an effort to moot the case. For example, after passage of the NDAA Secretary Austin selectively reserved punishment power for those who did not seek religious or medical accommodations (but agreed to pardon those who did) demonstrating that the actual mooting actions—rescission of adverse actions and a policy not to pursue enforcement for past violators who sought religious accommodations—were voluntary actions, not required by the NDAA, that

post-dated the entry of injunctive relief. *See also Abbott v. Biden*, 70 F.4th 817 (5th Cir. 2023)
("Secretary Austin did not simply rescind the vaccine mandate and all related enforcement
measures. Instead, he reserved the ability to punish Guardsmen who didn't seek a religious,
administrative, or medical accommodation while the mandate was operative."). Likewise, the
Secretary of the Army, after entry of injunctive relief and after passage of the NDAA, also chose
to make the same selective reservation of punishment power, but only with respect to those who
did not seek accommodations, recognizing that punishing those who sought accommodations
would prolong the issues at play in this litigation. And without question, Defendants took other
actions (that they were not required to take under the NDAA or arguably even the Secretary's
rescission of the mandate) in order to neutralize any remaining controversies between the parties.
(Dkt. 122, 123, 124, 125131, 132, 133.)

Plainly, these actions taken after the entry of the preliminary injunction, and after passage
of the NDAA but not required by the NDAA, were taken in an effort to moot this case, not to
merely implement Congressional legislation. Thus, the third *Dearmore* factor is met.[4]

### 2.  The Agreed Order Is Also Sufficient to Confer Prevailing Party Status

The December 7, 2023 consent/agreed order, which addressed all remaining harms and
involved additional concessions on behalf of Defendants, is also sufficient to confer prevailing
party status. (Dkt. 150.) The Fifth Circuit repeatedly has held that similar orders, that are judicially
sanctioned and require a Defendant to take affirmative steps—such as those that Defendants were
required to take pursuant to the December 7 order—are sufficient to confer prevailing party status.
*See Romain v. Walters*, 856 F.3d 402, 406–07 (5th Cir. 2017). The agreed order here was: (i)

---

[4] One factor that the Firth Circuit directs courts to consider on causation is whether Defendants
appealed. *See Dearmore v. City of Garland*, 519 F.3d 517, 524, n.3 (5th Cir. 2008). That did not
take place here.

judicially sanctioned; (ii) materially altered the relationship between the parties; and (iii) modified Defendant's behavior in a way that directly benefits the Plaintiff at the time the relief is entered. *Id.* (citing *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013)). As with the SNAP benefit changes in favor of the plaintiff in *Romain*, here Defendants had to make permanent and enduring changes to Plaintiff Chrisman's records that cannot be undone. (Dkt. 150.) *See also Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001) (explaining consent order was "a court-ordered 'change [in] the legal relationship between [the plaintiff] and the defendant,'" which conferred prevailing party status); *Grisham v. City of Fort Worth*, 837 F.3d 564 (5th Cir. 2016) (agreed order conferred prevailing party status).

Defendants took these additional actions (that they were not required to take under the Secretary's rescission of the mandate or the NDAA) to neutralize any remaining controversies between the parties. These additional actions by Defendants resulted in Plaintiffs being barred from obtaining final relief on the merits at trial. Consequently, Plaintiffs qualify as prevailing parties with no special circumstances that would justify the denial of reasonable attorneys' fees.

### B.   THE ATTORNEYS' FEES AND COSTS SOUGHT ARE REASONABLE

The Supreme Court has held that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The product of the hours worked multiplied by the hourly rate is the "lodestar." *See Mid-Continent Cas, Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2000).   The Court may then adjust the lodestar for reasonableness. *See Longden v. Sunderman*, 979 F.2d 1095, 1099 (5th Cir. 1992). The computation of reasonable attorneys' fees thus involves a three-step process: (1) determine the nature and extent of the services provided by Plaintiffs' counsel; (2) set a value on those services

according to the customary fee and quality of the legal work; and (3) adjust the compensation on the basis of the other *Johnson* factors that may be of significance in the particular case. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The lodestar method is meant to "produce[] an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue*, 559 U.S. at 551.

The twelve *Johnson* factors are:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d 717–19.

Because they are undisputedly the "prevailing party," Plaintiffs respectfully request that the Court grant their motion for attorneys' fees and costs, which are reasonable under *Johnson* for the reasons detailed below. (*See* Mitchell Decl. ¶ 19, Appx. at 9.) Specifically, Plaintiffs seek $1,079,914.50 in attorneys' fees, and $19,318.83 in compensable costs.

### 1. The Time Spent on This Case Was Reasonable

To calculate the lodestar amount, the Court must first calculate the number of reasonably compensable hours spent on the case. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). This calculation rests on whether the total number of hours claimed is reasonable and whether the specific hours claimed were reasonably expended. *Alberti v. Klevenhagen*, 896

F.2d 927, 933–34 (5th Cir. 1990). The work of paralegals is also compensable. *Missouri v. Jenkins*, 491 U.S. 274 (1989). The standard of review for the time entries "is whether a reasonable attorney would have believed the work to be reasonably expended in the pursuit of success at the point in time when the work was performed." *Sweeney v. Crigler*, 2020 WL 7038977, *3 (E.D. Ky. Oct. 27, 2020) (citing *Human Rights Def. Ctr. V. Ballard*, 2020 WL 2513822, at *2 (E.D. Ky. May 15, 2020) (quoting *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990))); *see also Advanced Display Sys. v. Kent State Univ.*, 2003 WL 27424246 (N.D. Tex. 2003)

Plaintiffs seek compensation for the following attorneys and hours of work, the details of which is contained in the declarations and timesheets attached.

| Attorney/Professional | Hours |
| --- | --- |
| Aaron Siri | 61.0 |
| Elizabeth Brehm | 31.9 |
| Wendy Cox | 500.1 |
| Dana Smith | 174.5 |
| Gina Mannella | 144.8 |
| Christopher Wiest | 274.7 |
| Thomas Bruns | 161.9 |
| John Sullivan | 167.6 |

(*See* Siri Decl., Wiest Decl., Bruns Decl., Sullivan Decl., Appx. at 21-139).

Although ten staff members at Siri & Glimstad LLP worked on and billed time to the matter, the firm is only seeking attorneys' fees for five of those individuals. Thus, Siri & Glimstad LLP has not billed for 114.5 hours of its time, recognizing that those individuals played more minor roles and/or completed some tasks that were administrative in nature or less complex than demanded by the other billers. (Siri Decl. ¶ 22, Appx. at 31.)

Each of the attorneys seeking reimbursement has submitted itemized expenses and time sheets showing the time spent working on this case. The hours and time spent was reasonable, and billing judgment exercised. *See Saizan v. Delta Concrete Products Co.*, 448 F.3d 795, 799 (5th

Cir. 2006) (litigants seeking attorneys' fees bear "the burden of showing the reasonableness of the hours billed" and "that they exercised billing judgment.").

The above hours reflect deletions and deductions made by Plaintiffs' Counsel in good faith to avoid any unnecessary, duplicative, or otherwise potentially objectional time entries. *See* Itemization of Expenses and Time Expended by Siri & Glimstad LLP, attached to the Declaration of Aaron Siri, Exhibit B, ("**Siri Decl.**"); *see also* Itemization of expenses and time expended for Christopher Wiest, attached to the Declaration of Chris Wiest, Exhibit C, ("**Wiest Decl.**"); Itemization of expenses and time expended for Thomas Bruns, attached to the Declaration of Thomas Bruns, Exhibit D, ("**Bruns Decl.**"); and Itemization of expenses and time expended for John Sullivan, attached to the Declaration of John Sullivan, Exhibit E, ("**Sulivan Decl.**").  In fact, Counsel have affirmatively indicated that billing judgment was exercised and contemporaneous time records kept. (Siri Decl. ¶27; Wiest Decl. ¶22; Bruns Decl. ¶20; Sullivan Decl. ¶ 12, Appx. at 33, 77, 99, 129.)

As the foregoing declarations demonstrate, Plaintiffs utilized critical experience from within the Plaintiffs' legal team in making staffing decisions and task delegations, and in ensuring that every aspect of this case was appropriately and efficiently addressed. (Decl. Siri ¶ 27; Wiest Decl. ¶17; Bruns Decl. ¶15; Appx. at 33, 75, 96-97.) For instance, Ms. Wendy Cox served as an Army Judge Advocate for more than a decade and was relied on for many military law aspects of the case; that insight positioned her to be the primary point of contact with military clients. *Id.* Mr. Wiest had experience both with some of the military law aspects of the case, as well as the administrative and constitutional aspects of the case, federal court litigation, and significant litigation of constitutional Free Exercise challenges in a pandemic. *Id.* Mr. Siri and Ms. Brehm had experience with legal issues surrounding vaccines as well as experience with the science and

medical issues of vaccines, which helped to formulate arguments we made about least restrictive means, as well as class action experience, which aided in those aspects of the case. *Id.* Mr. Bruns provided senior litigator perspective as well as experience with the constitutional aspects of the case, federal court litigation, and significant litigation of constitutional Free Exercise challenges in a pandemic. *Id.* Mr. Sullivan also brought to bear his substantial free exercise and vaccine-related litigation experience and provided critical insight into the practices and expectations of practice in the Northern District of Texas. *Id.* Associate and paralegal support came from Siri & Glimstad LLP. *Id.*

Case staffing was managed by delegating tasks to more junior attorneys where possible, but where a particular pleading or motion involved a high degree of sophistication or particular area of expertise—which was the case with several pleadings in this case—work was assigned accordingly based on the needs of the case. (Siri Decl. ¶ 27; Wiest Decl. ¶ 16, Appx. at 33, 75.) And, as Counsels' declarations indicate, there was no duplication, but rather a bringing to bear of collective and divergent experience on a case with numerous issues of constitutional, administrative, and military law. (Siri Decl. ¶ 27; Wiest Decl. ¶¶ 12-18, 23-26; Bruns Decl. ¶¶ 21-24 at Appx. at 33, 74-76, 99-100.)

At the same time, the Court is certainly aware that every issue and matter in this case was hotly contested by the Government. The extensive docket reflects various motions to dismiss, oppositions to every motion filed by Plaintiffs, attempts to delay hearings while refusing to pause adverse actions, violations of agreements between counsel to disclose witnesses and exhibits to the preliminary injunction, and the like, with the Government often extending page limits beyond the local rules. (Dkt. 35, 36, 38, 39, 40, 59, 60, 63, 64, 66, 70, 71, 88, 89, 90, 105, 106.) All of

these actions by Defendants caused Plaintiffs to expend even more hours, many of which could have been saved if the Government were not engaging in questionable tactics.

Legal precedent is clear that where significant hours are expended by plaintiffs due to the litigation tactics of defendants, defendants cannot then be heard to complain about the hours spent contesting those tactics. *See Torres v. Gristede's Operating Corp.*, 2012 WL 3878144, *4 (S.D.N.Y. Aug. 6, 2012) ("The Court notes that much of the work performed by Plaintiffs was due to Defendants' choice of litigation tactics. Given the Defendants' vigorous approach to litigating this case, they cannot now complain as to the amount that Plaintiffs were forced to expend in response."); *see also Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (observing that "hours required to litigate even a simple matter can expand enormously" where "attorney is compelled to defend against frivolous motions and to make motions to compel [discovery] compliance"); *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343 (6th Cir. 2000) (noting that "defendants' obstructive and dilatory litigation tactics" gave rise to the fees incurred). That was, in no small part, the case here.

### 2. All of the Tasks Dealt with Related Claims and Thus Are Compensable

"The Supreme Court and the Fifth Circuit have held that a partially prevailing party may recover all reasonably incurred fees, even where the party did not prevail on all claims, as to all defendants, or as to all issues." *Franciscan All., Inc. v. Becerra*, 2023 WL 4462049, *5, --- F.Supp.3d --- (N.D. Tex. July 11, 2023) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) and *Coleman v. Hous. Indep. Sch. Dist.*, 1999 WL 1131554, at *5 (5th Cir. 1999)). "[I]in deciding whether the prevailing party should be able to recover fees for time spent litigating unsuccessful claims, "the key is whether the successful and unsuccessful claims are based upon the same facts and legal theories, i.e., whether the claims are related." *Id.* (quoting *Coleman*, 1999 WL 1131554, at *5). That is because "[w]hen the successful and unsuccessful claims involve a 'common core of

14

facts' or are based upon 'related legal theories,' then attorney fees incurred in the presentation of unsuccessful claims are recoverable on the theory that they contributed to the plaintiff's ultimate success." *Coleman v. Hous. Indep. Sch. Dist.*, 1999 WL 1131554, at *5 (5th Cir. 1999).

Plaintiffs expect that the Government will argue that Plaintiffs did not win every motion (for instance, on class certification), and that this time should be deducted and not compensated. But the Supreme Court has explained that a reduction of hours for unsuccessful claims is only appropriate where plaintiffs "fail to prevail on *claims* that were unrelated to the claims on which he succeeded." *Hensley*, 461 U.S. at 434 (emphasis added). Moreover, "[i]n other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories." *Id.* at 435. "Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* "Such a lawsuit cannot be viewed as a series of discrete claims." *Id.* "Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* In assessing fees, district courts are not required to act as "green-eyeshade accountants" and "achieve auditing perfection," but need only do "rough justice." *Fox v. Vice*, 563 U.S. 826, 838 (2011). This means that a court can rely on estimates based on its "overall sense of a suit." *Id.* As the Fifth Circuit describes it, a party need not segregate fees where "the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible." *Transverse L.L.C. v. Iowa Wireless Servs. L.L.C.*, 992 F.3d 336, 344 (5th Cir. 2021).

The only *claims* here were related and intertwined RFRA and First Amendment claims, meant to provide relief for everyone in the Army facing the same discriminatory tactics from Defendants. (Dkt. 1.) As in *Abner v. Kan. City S. Ry. Co.*, 541 F.3d 372 (5th Cir. 2008), the fact

15

that not every aspect of pursuit of the claims were formally successful is no reason to deny or reduce compensation (though certainly the requested relief was obtained here: discharges were halted and religious believers remained in the service, and in some cases reinstatement offers made within the putative class). (Dkt. 78, 80, 90.) Indeed, the entirety of this case was practiced the way it was because the facts and issues were so intertwined. (Decl. Wiest ¶¶ 23-25 at Appx. at 77-78.)

As was the case in *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 544 (6th Cir. 2019), "the [government can] cite[] no precedent in support of this theory [that claims should be reduced because Plaintiff did not achieve every form of relief originally requested]." Here, Plaintiffs pursued related legal claims with a common core of facts that applied to each piece of the litigation—and the Court adjudicated issues in tandem as they were related. It is thus irrelevant whether Plaintiffs won every motion in order to recover all reasonably incurred fees and costs. *See Coleman*, 1999 WL 1131554, at *5; *Franciscan*, 2023 WL 4462049, *5.

### 3. The Hourly Rates Sought Are Reasonable

An attorney seeking fees must request an hourly rate consistent with the "prevailing market rate"—the rate charged by "lawyers of reasonably comparable skill, experience and reputation" who practice in the community where the Court is located. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Fifth Circuit more recently added a practical adaption to the Supreme Court rule, providing that "generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett v City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). "[R]easonable" hourly rates "are to be calculated according to the prevailing market rates in the relevant community." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). Generally, the "relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett*, 285 F.3d at 368.

16

"[U]nder certain limited circumstances," counsel may be entitled to charge the prevailing market rate of his or her home district, as opposed to the district wherein the court sits. *McClain*, 649 F.3d at 381–82. The Fifth Circuit has stated that where "abundant and uncontradicted evidence" prove the necessity of turning to out-of-district counsel, the counsel's "home rates should be considered as a starting point for calculating the lodestar amount." *Id.* at 382 (quotation marks omitted). Turning to out-of-district counsel might be necessary, for example, where local counsel is not willing and/or able to assist, or where counsel have shown they participate in a market requiring more specialized and sophisticated legal services. *Id.* at 383; *Sierra Club v. Energy Future Holdings Corp.*, No. 12-cv-108, 2014 2014 WL 12690022, at *6 (W.D. Tex. Aug. 29, 2014). Indeed, specialized experience has been required, and out of market rates allowed, for comparable religious liberty cases against the Government. *Franciscan*, 2023 WL 4462049, *5. Here, Mr. Chrisman and Ssgt. Schelske both have provided abundant testimony that they were unable to find counsel in the local market. *See* Exhibit F Declaration of Robert Schelske ¶¶ 3-5 ("**Schelske Decl**." at Appx. at 141); *see also* Exhibit G Declaration of Luke Chrisman ¶ 2 ("**Chrisman Decl**." at Appx. at 144.)

The rates requested are supported by the Declaration of Jonathan F. Mitchell, ("**Mitchell Decl**." at Appx. at 4-20) who has extensive practice experience in Texas federal courts and attests that the requested hourly rates are reasonable and consistent with the legal market in the Northern District of Texas, the substantive nature of the action, and counsels' experience. *Id* ¶¶ 12-15. Mr. Mitchell agreed to provide his affidavit without compensation and has no financial stake in this matter or in the ultimate amount of recovered fees. *Id.*

Requested rates and years of experience (for attorneys):

17

| Name of Professional | Position | Years of Experience (for attorneys) | Requested Hourly Rate (per hour) |
|---|---|---|---|
| Aaron Siri | Partner | 18 | $975 |
| Elizabeth A. Brehm | Partner | 14 | $975 |
| Wendy Cox | Associate | 18 | $875 |
| Dana Smith | Associate | 7 | $775 |
| Gina Mannella | Paralegal | N/A | $240 |
| Christopher Wiest | Partner | 18 | $825 |
| Thomas Bruns | Partner | 33 | $850 |
| John Sullivan | Partner | 11 | $975 |

The fee charged for Aaron Siri is $975 per hour.  This is the amount reflected in the itemization submitted by Mr. Siri and is reasonable in view of Mr. Siri's experience and ability. *See* Itemization of expenses and time expended for Siri & Glimstad LLP, attached to Siri Decl.; *see also* Siri Decl. ¶¶ 12-15 at Appx. at 25-27.

The fee charged for Elizabeth Brehm is $975 per hour.  This is the amount reflected in the itemization submitted by Mr. Siri and is reasonable in view of Ms. Brehm's experience and ability. *See* Itemization of expenses and time expended for Siri & Glimstad LLP, attached to Siri Decl.; *Id.* ¶ 16 at Appx. at 28.

The fee charged for Wendy Cox is $875 per hour.  This is the amount reflected in the itemization submitted by Mr. Siri and is reasonable in view of Ms. Cox's experience and ability. *See* Itemization of expenses and time expended for Siri & Glimstad LLP, attached to Siri Decl.; *Id.* ¶ 17 at Appx. at 29.

The fee charged for Dana Smith is $775 per hour.  This is the amount reflected in the itemization submitted by Mr. Siri and is reasonable in view of Ms. Smith's experience and ability. *See* Itemization of expenses and time expended for Siri & Glimstad LLP, attached to Siri Decl.; *Id.* ¶ 18 at Appx. at 29-30.

The fee charged for Gina Mannella is $240 per hour.  This is the amount reflected in the itemization submitted by Mr. Siri and is reasonable in view of Ms. Mannella's experience and

ability. *See* Itemization of expenses and time expended for Siri & Glimstad LLP, attached to Siri Decl.; *Id.* ¶ 19 at Appx. at 30.

The fee charged for Christopher Wiest is $825 per hour. This is the amount reflected in the itemization submitted by Mr. Wiest and is most reasonable in view of Mr. Wiest's experience and ability. *See* Wiest Decl. ¶ 18 at Appx. at 75-76.

The fee charged for Tom Bruns is $850 per hour.  This is the amount reflected in the itemization submitted by Mr. Bruns and is most reasonable in view of Mr. Brun's experience and ability. *See* Bruns Decl. ¶ 16 at Appx. at 97.

The fee charged for John Sullivan is $975 per hour.  This is the amount reflected in the itemization submitted by Mr. Sullivan and is most reasonable in view of Mr. Sullivan's experience and ability. *See* Sullivan Dec. ¶ 10 at Appx. at 129.

Total lodestar calculation:

| Attorney/Professional | Number of Hours | Rate | Hours x Rate |
|---|---|---|---|
| Aaron Siri | 61.0 | 975 | $59,475.00 |
| Elizabeth Brehm | 31.9 | 975 | $31,102.50 |
| Wendy Cox | 500.1 | 875 | $437,587.50 |
| Dana Smith | 174.5 | 775 | $135,237.50 |
| Gina Manella | 144.8 | 240 | $34,752.00 |
| Chris Wiest | 274.7 | 825 | $226,627.50 |
| Tom Bruns | 161.9 | 850 | $137,615.00 |
| John Sullivan | 159.2 | 975 | $155,220.00 |
| **Total:** | | | $1,217,617.00 |

## C.  THE *JOHNSON* FACTORS

Once a lodestar amount is determined, the Court looks to the following twelve *Johnson* factors: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the

circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

### 1.  Time and Labor Required

The time expended, set forth above, was all reasonably necessary for this litigation:

| Attorney/Professional | Hours |
|---|---|
| Aaron Siri | 61.0 |
| Elizabeth Brehm | 31.9 |
| Wendy Cox | 500.1 |
| Dana Smith | 174.5 |
| Gina Mannella | 144.8 |
| Christopher Wiest | 274.7 |
| Thomas Bruns | 161.9 |
| John Sullivan | 159.2 |

(*See* Decl. Siri, Decl. Wiest, Decl. Bruns, Decl. Sullivan, Mitchell Decl. ¶ 20 at Appx. at 4-139.)

### 2.  Novelty and Difficulty of the Questions

This case involved a First Amendment religious freedom challenge, during a pandemic, against the Army's systematic denial of religious accommodation requests to its Covid-19 vaccine mandate where it liberally allowed medical and administrative exemptions. As a result of the preliminary injunction obtained by Plaintiffs, upwards of 10,000 service members were protected from being separated from the Army or otherwise administratively or criminally punished for refusing the Covid-19 vaccine due to their sincerely held religious beliefs. *See* Wiest Decl. ¶ 30 at Appx. at 78. Consequently, Plaintiffs were also protected from having to involuntarily receive an (irrevocable) vaccine that violated their religious beliefs in order to maintain their employment and service.

This litigation was among the most challenging that any of Plaintiffs' counsel has handled in their careers: it involved complex issues of constitutional law, administrative law, and military law. It involved the presentation (and eventually mooting out) of class certification issues. Every issue in this case involved contested questions of law and fact with the opposing side—represented by the Department of Justice—vigorously defending the Army's discriminatory actions with every resource available to the United States Government. (*See* Siri Decl. ¶ 24; Wiest Decl. ¶¶ 12-13; Bruns Decl. ¶¶ 11-12 at Appx. at 11, 74, 95-96.)

Plaintiffs' counsel also took on considerable risk in advancing this case. Before filing the case, strong Supreme Court support for vaccine mandates had endured for over a century. *See Jacobson v. Massachusetts*, 197 U.S. 11 (1905). And judicial deference to the military on vaccine questions was also commonplace (as the Government constantly reminded the Court). Moreover, contemporaneous with the rollout of mandates, the climate surrounding Covid-19 vaccination became exceedingly controversial, political, and polarized. Attempting to challenge century-old rationale at a time where the decision-makers are inevitably bombarded by the media daily with sensationalized, contradictory content directly related to the issue at hand involved considerably more risk and demanded more hours to competently advance the claim than would a more straightforward civil rights case. Those circumstances warrant an upward variance in the lodestar.

### 3.  Skill Requisite to Perform the Legal Service Properly

Representation options for those seeking redress to constitutional violations by the United States Army are limited, especially regarding ingrained military vaccination policies and especially regarding a vaccine regime that enjoyed widespread public support. Likewise, representation options for those seeking redress for religious violations and those seeking to challenge vaccine mandates were and are limited, with both the federal Government and many businesses pushing their own version of a mandate. The confluence of these issues rendered this

challenge risky and highly unattractive to most counsel, in addition to complicated for even experienced counsel willing to accept the risk. (*See* Siri Decl. ¶ 25; Wiest Decl. ¶¶ 12-15; Bruns Decl. ¶¶ 11-14 at Appx. at 32, 74, 95-96.) Because religious and vaccine issues are not typically seen as a lucrative practice area, there are not an abundance of options for attorneys who successfully perform the type of work presented by this case. (*See* Mitchell Decl. ¶¶ 9, 11; Decl. Schelske; Decl. Chrisman at Appx. at 7, 140, 143.)

Contemporaneous with this litigation, Attorney Chris Wiest, Thomas Bruns, and the law firm Siri & Glimstad LLP successfully litigated religious discrimination claims involving vaccination mandates against the United States Air Force in *Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022). Mr. Wiest and Mr. Bruns have successfully litigated First Amendment claims against various government actors over the past 10 years and have in just the past two years recorded several additional notable victories. *See, e.g.*, *Fischer v. Thomas*, 52 F.4th 303 (6th Cir. 2022); *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400 (6th Cir. 2022); and *Roberts v. Neace*, 958 F.3d 595 (6th Cir. 2020); *see also* Resume of Christopher Wiest, attached to Wiest Decl.*, Appx. at 81-83 and Resume of Thomas Bruns, attached to Bruns Decl.. Appx. at 104-106. Likewise, John Sullivan has extensive constitutional law and religious liberty experience. *See* Resume of John Sullivan, attached to Sullivan Decl. Additionally, Mr. Sullivan has successfully challenged both the federal Government in unrelated cases and vaccine mandates in the private sector that lacked religious exemptions. *Id.* Therefore, the lead attorneys involved in this matter were uniquely suited to successfully handle this case.

In making staffing decisions, delegating, and ensuring that Plaintiffs appropriately addressed important aspects of this case, Plaintiffs utilized critical experience from within the team of Counsel. (*See* Siri Decl. ¶ 27; Wiest Decl. ¶¶ 16-17; Bruns Decl. ¶¶ 14-15 at Appx. at 12, 75,

96-97.) For instance, Ms. Wendy Cox served as an Army Judge Advocate for more than a decade, and so the team relied upon her for many military law aspects of the case and this insight positioned her to be the primary point of contact with military clients. *Id.* Mr. Wiest had experience with both the military law aspects of the case, as well as the administrative and constitutional aspects of the case, federal court litigation, and litigation of constitutional Free Exercise challenges in a pandemic. *Id.* Mr. Siri and Ms. Brehm had experience with legal issues surrounding vaccines, including experience with the science and medical issues of vaccines, which helped to formulate arguments we made about least restrictive means, as well as class action experience, which aided in those aspects of the case. *Id.* Mr. Bruns provided senior litigator perspective as well as experience with the constitutional aspects of the case, federal court litigation, and litigation of constitutional Free Exercise challenges in a pandemic. *Id.* Mr. Sullivan provided his substantial experience litigating both for and against the government, his unique knowledge of First Amendment law, a proven willingness to challenge vaccine mandates without religious exemptions, and critical insight into the practices and expectations of practice in the Northern District of Texas. (*See* Sullivan Decl. ¶¶ 4–7, Appx. at 127-128.) Associate and paralegal support came from Siri & Glimstad. (*See* Wiest Decl. ¶¶ 16-17, Appx. at 74.)

This case was more complex than a run-of-the mill single plaintiff/single defendant case. The litigation involved ten named Plaintiffs, which added considerable complexities, including potential conflicts of interest, client management issues, and increased communication demands. There were also multiple government defendants with substantial, near unlimited legal resources at their disposal. (*See* Siri Decl. ¶ 23; *see also* Wiest Decl. ¶ 12 at Appx. at 32, 74.) Not many attorneys are willing to take on cases involving issues such as those litigated in this matter. Those circumstances warrant an upward variance in the lodestar.

### 4. Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case

Due to the time and resources expended to successfully litigate this case, Plaintiffs' counsel declined significant amounts of compensable work they could have otherwise accepted. (*See* Siri Decl. ¶ 28 at Appx. at 33.) Those circumstances warrant an upward variance in the lodestar.

### 5. The Customary Fee

The requested hourly rates represent customary fees charged for similar litigation. (*See* Siri Decl. ¶ 21; Wiest Decl. ¶18; Bruns Decl. ¶ 16; Sullivan Decl. ¶¶ 10-11 Appx. at 31, 75, 97, 129.)

### 6. Whether the Fee Was Fixed or Contingent

This case was contingent, with some limited litigation funding provided that will need to be repaid from any awarded fees, hence involving substantial risk by Counsel in that the only compensation from the clients was the assignment of any attorneys' fee award. (*See* Siri Decl. ¶ 11; Wiest Decl. ¶ 18 at Appx. at 24, 75-76.) Those circumstances warrant an upward variance in the lodestar.

### 7. Limitations Imposed by the Clients or Circumstances

As the Court is aware, and a review of the docket confirms, this case involved significant, time-sensitive handling of matters of the utmost importance, dealing with impending service separation for both named Plaintiffs and other members of the Army, particularly at the outset of the case, presenting significant challenges. (*See* Dkt. 1, 14, 29, 30, 34, 38, 39, 46, 47, 48, 49, 50, 51, 55, 56, 57, 58.) Those circumstances involving significant irreparable harm—*BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021)—and the handling of them warrant an upward variance in the lodestar.

### 8. Amount Involved and the Results Obtained

Plaintiffs were successful, obtaining a preliminary injunction from the Court. (Dkt. 78.)

The injunction insured that army servicemembers whose religious beliefs prohibited them from being vaccinated would not lose their jobs or be administratively disciplined. *Id.* No monetary damages were sought or awarded. *Id.* Furthermore, this case was ultimately resolved in Plaintiffs' favor via consent agreement. (Dkt. 150.) Those circumstances warrant an upward variance in the lodestar.

### 9. The Experience, Reputation, and Ability of Attorneys

Attorney Aaron Siri graduated from University of California, Berkeley School of Law in 2005, clerked for the Chief Judge of the Supreme Court of Israel, then worked at Latham & Watkins LLP as a litigator for roughly five years, and is currently the managing partner of Siri & Glimstad LLP which has approximately sixty professionals. Mr. Siri was admitted to the New York Bar in 2005 and to the Arizona Bar in 2020, and has prosecuted numerous civil rights matters, class actions, commercial and high stakes disputes in state and federal court, at both the trial and appellate level. For the past seven-plus years, Mr. Siri's practice has been heavily focused on vaccine policy work, with many of those cases involving civil rights issues. *See, e.g.*, *Public Health & Med. Pros. for Transparency v. FDA*, No. 4:22-cv-00915 (N.D. Tex. May 9, 2023) (order granting timely production of documents); *Betten Chevrolet, Inc. v. Department of Labor, OSHA*, 142 S. Ct. 892 (2022); *Let Them Choose v San Diego Unified Sch. Dist.*, 85 Cal.App.5th 693 (Cal. Ct. App. 2022); *Booth v. Bowser*, 597 F. Supp. 3d 1 (D.D. C. 2022); *Public Health & Med. Pros. for Transparency v. FDA*, No. 4:21-cv-01058 (N.D. Tex. Jan. 6, 2022) (order granting timely production of documents); *Massoyan-Artinian v Bharel*, Mass. Super. Ct., No. 2084-CV-02924 (Suffolk County Dec. 18, 2020); *Gatto, et al. v. Sentry Services, Inc. et al.*, No. 13-cv-05721-RMB-GWG (S.D.N.Y. Dec. 18, 2014); *Buchanan v. Sirius XM*, 17-cv-0728 (N.D. Tex.); and *Freedom Coalition of Doctors for Choice v. CDC*, No. 2:23-cv-00102-Z (N.D. Tex. Jan. 5, 2024). An appropriate rate for Mr. Siri is at least $975 per hour. (*See* Siri Decl. ¶ 12-15 at Appx. at 25-28.)

Attorney Elizabeth Brehm graduated from Boston University in 2001, receiving a Bachelor of Arts in Childhood Elementary; from Long Island University in 2004, receiving a Master of Science in Computers in Education; and from Hofstra University School of Law, graduating *magna cum laude*, in 2008.  She was admitted to the New York State Bar in 2009 and has practiced before numerous courts in New York and multiple other states, both at the trial and appellate level. She has more than 13 years of litigation experience. Ms. Brehm joined the Firm as an associate in 2020 and became a partner at the start of 2022. Prior to that, she focused on antitrust and securities class action litigation. For close to four years, she has worked almost exclusively on vaccine-related policy and litigation work. *See, e.g.*, *Public Health & Med. Pros. for Transparency v. FDA*, No. 4:22-cv-00915 (N.D. Tex. May 9, 2023) (order granting timely production of documents); *Betten Chevrolet, Inc. v. Department of Labor, OSHA*, 142 S. Ct. 892 (2022); *Let Them Choose v San Diego Unified Sch. Dist.*, 85 Cal.App.5th 693 (Cal. Ct. App. 2022); *Booth v. Bowser*, 597 F. Supp. 3d 1 (D.D.C. 2022); *Public Health & Med. Pros. for Transparency v. FDA*, No. 4:21-cv-01058 (N.D. Tex. Jan. 6, 2022) (order granting timely production of documents); *Massoyan-Artinian v Bharel*, Mass. Super. Ct., No. 2084-CV-02924 (Suffolk County Dec. 18, 2020); *Freedom Coalition of Doctors for Choice v. CDC*, No. 2:23-cv-00102-Z (N.D. Tex. Jan. 5, 2024). An appropriate rate for her services is at least $975 per hour. (*See* Siri Decl. ¶ 16 at Appx. at 28.)

Attorney Wendy Cox received her Bachelor of Science in Nursing at Norwich University in 1997. She received her law degree from the University of New York at Buffalo in 2005. She has more than 16 years of experience as a practicing attorney for the United States Army, including serving as an Operational Law Attorney in Baghdad, Iraq in 2006; a Senior Criminal Litigator in Fort Hood, Texas from 2006-2008; a Supervising Attorney at Brooke Army Medical Center in San Antonio, Texas from 2009-2012; a Chief Attorney of Federal Litigation for the 4th Infantry

Division from 2012-2013; a Supervising Attorney for the 4th Infantry Division from 2013-2014; an associate professor at West Point from 2014-2016; a Supervising Attorney for the United States Army Medical Command from 2016-2018; and an attorney in the Office of Soldiers' Counsel from 2019-2021. After retiring from the military, Ms. Cox joined Siri & Glimstad, where she assisted in the firm's vaccine policy and exemption cases, specifically those pertaining to military servicemembers. Ms. Cox's extensive military legal experience has undoubtedly added tremendous value to her representation of Plaintiffs in this action. Her knowledge of military law and processes proved highly beneficial and allowed her to serve as the best client liaison for the matter. A reasonable rate for Wendy Cox is at least $875 per hour. (*See* Siri Decl. ¶ 17 at Appx. at 29; *see also* Wiest Decl. ¶ 17 at Appx. at 75.)

Attorney Dana Smith received her Bachelor of Arts in Romance Languages from the University of North Carolina at Chapel Hill in 2008. She graduated *cum laude* from the North Carolina Central University School of Law and was admitted to practice in the State of North Carolina in 2016. From 2016 to 2021, she practiced criminal defense law, child welfare law, family law, and personal injury law at a general practice firm. These matters involved representing clients in various criminal and civil proceedings, such as misdemeanor defense, juvenile delinquency, probation violation, child support contempt, child support establishment, emergency custody, temporary and permanent custody, equitable distribution, post separation support, alimony, social services child removal proceedings,  termination of parental rights proceedings, and general civil litigation pertaining to personal injury, negligence, and breach of contract claims. From 2021-2022, Ms. Smith worked as an appeals referee for the North Carolina Division of Employment Security, where she conducted unemployment appeals hearings in a judicial capacity and issued written opinions. During her time with the State of North Carolina she presided over more than

1,500 appeal hearings, and as such is experienced with the constitutional aspects of employment law. Ms. Smith joined Siri & Glimstad in 2022 and assists with the firm's vaccine policy cases. An appropriate rate for Ms. Smith is at least $775.00 per hour. (*See* Siri Decl. ¶ 18, Appx. at 29-30.)

Attorney Christopher Wiest received his law degree from the University of Cincinnati College of Law in 2004. He was admitted to practice law in Ohio in November 2004 and Kentucky in May 2005. Mr. Wiest has actively practiced law for more than 18 years. (*See* Wiest Decl. ¶ 2 at Appx. at 72.)  While he maintains three physical offices for his firm in Ohio and Kentucky, he has practiced before numerous courts in Ohio, Kentucky, Texas, New Mexico, Virginia, West Virginia, California, the District of Columbia, both at the trial and appellate level. *Id.* ¶ 4. Independent of his collaboration with the law firm of Siri & Glimstad LLP, Christopher Wiest has also recently recorded noteworthy civil rights and First Amendment victories against various government actors. *See, e.g.*, *Roberts v. Neace*, 958 F.3d 595 (6th Cir. 2020); *Fischer v. Thomas*, 52 F.4th 303 (6th Cir. 2022); and *Sisters For Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400 (6th Cir. 2022). *See* curriculum vitae of Christopher Wiest, attached to Wiest Decl. An appropriate fee for Mr. Wiest is at least $825 per hour. *Id.* ¶ 19.

Attorney Thomas Bruns received his law degree from the University of Cincinnati School of Law in 1990 and was admitted to the Ohio bar the same year, and the Kentucky bar in 1992. He has actively practiced law for more than 33 years as a litigator. (*See* Bruns Decl. ¶ 2 at Appx. at 94.) He is a named partner with Bruns, Connell, Vollmar & Armstrong, LLP, which employs 11 attorneys and various other legal professionals. *Id.* ¶ 3. Along with Mr. Wiest, Mr. Bruns has successfully handled a significant number of constitutional matters in court nationwide, including many significant First Amendment cases and Covid related cases. *See* Resume of Thomas Bruns, attached to Bruns Decl. Given his experience and expertise, an appropriate rate for Mr. Bruns is at

28

least $850 per hour. *Id.* ¶¶ 8, 16.

Attorney John Sullivan received his law degree from the University of Notre Dame Law School where he was the Executive Editor of the Notre Dame Law Review and the recipient of the Farabaugh Prize. (*See* Sullivan Decl. ¶ 4 at Appx. at 127-128.) He was also a fellow with the Blackstone Legal Fellowship and continues to work regularly on cases related to the Fellowship's religious liberty mission. *Id.* ¶ 4. Following graduation from law school, Mr. Sullivan clerked for then-Chief Judge Edith H. Jones of the United States Court of Appeals for the Fifth Circuit. Following his clerkship, he spent the majority of his career in private practice with Morgan Lewis & Bockius—one of the largest law firms in the world. He also spent two years as an Associate Solicitor General for the State of Texas. *Id.* ¶ 5. Mr. Sullivan's career has involved a significant amount of work on religious liberty cases, including drafting Supreme Court petitions addressing the Establishment Clause and their underlying appeals circuit briefings in the Fourth and Sixth Circuits. *Id.* He also gained substantial experience in class action and employment law at Morgan Lewis, handling appeals in multiple circuits involving accommodations. *Id.* Finally, as Assistant Solicitor General of the State of Texas, he drafted Supreme Court briefs for broad coalitions of states addressing the interplay between First Amendment law and public accommodations. *Id.* ¶ 6. Mr. Sullivan currently owns his own law firm and practices primarily in federal courts nationwide with a focus on class action religious liberty cases. *Id.* ¶ 7. He has also drafted multiple Supreme Court *amicus* briefs on these topics, including the one in *Groff v. Dejoy*, (*Groff v. DeJoy*, 143 S. Ct. 2279 (2023)) addressing Title VII and the employer's duty to accommodate religious belief. *Id.* He also challenges government actions regularly and has been involved in multiple lawsuits involving private company vaccine mandates that were enforced without religious exemptions. *Id.* An appropriate fee for Mr. Sullivan is at least $975 per hour. *Id.* ¶ 10.

Additionally, the law firm of Siri & Glimstad LLP, attorney Chris Wiest, and attorney Thomas Bruns partnered against the United States Air Force in *Doster v. Kendall*, 54 F.4th *398* (6th Cir. 2022).

### 10. The "Undesirability" of the Case

Vaccine mandates have become a controversial, polarizing, and highly politicized issue in the United States. Advocating against vaccine mandates often is not a popular position, (much less during a pandemic) as evidenced by the fact that both President Trump and President Biden have expressed strong bi-partisan support for vaccines.[5]

And holding religious objections to vaccination is certainly not a mainstream position. Indeed, refusing vaccination for religious reasons in the military can be a very unpopular position. *See* Mitchell Decl. ¶ 17. For example, after authorizing involuntary separation proceedings for vaccine refusers, Army Secretary Christine Wormuth stated in a press interview, "Army readiness depends on soldiers who are prepared to train, deploy, fight and win our nation's wars. Unvaccinated soldiers present risk to the force and jeopardize readiness."[6]

Additionally, this was a high-risk litigation, requiring a substantial output of resources with uncertain chances of recovery. As discussed above, there was adverse precedent, and the Government was prevailing in most contemporaneous cases challenging the vaccine mandate because a high degree of nuance and skill was necessary to overcome the Government's arguments and resources. (*See* Wiest Decl. ¶ 14; *see also* Siri Decl. ¶ 26; Bruns Decl. ¶ 13, Mitchell Decl. ¶

---

[5] *See* The White House, *Press Briefing by White House COVID-19 Response Team and Public Health Officials*, THE WHITE HOUSE (2021), https://www.whitehouse.gov/briefing-room/press-briefings/2021/12/17/press-briefing-by-white-house-covid-19-response-team-and-public-health-officials-74/ (last visited January 14, 2024).

[6] *U.S. Army to dismiss soldiers refusing to get vaccinated for Covid*, NBC NEWS (2022), https://www.nbcnews.com/news/military/us-army-dismiss-soldiers-refusing-get-vaccinated-covid-rcna15039 (last visited January 14, 2024).

9 at Appx. at 74, 33, 96, 7.) These factors made this case particularly unattractive from a risk standpoint. Further, this case involved ten named plaintiffs and multiple government defendants with considerable resources, generating additional demands and making this case less attractive on additional levels. Those circumstances warrant an upward variance in the lodestar.

### 11. The Nature and Length of the Professional Relationship with the Client

Counsel's relationship with Plaintiff Samuel Galloway began on January 22, 2022, when he engaged the services of Siri & Glimstad LLP to assist with the appeal of his religious accommodation denial. On August 30, 2022, after his appeal was denied, Plaintiff Galloway engaged additional services for the commencement of this action. Various other original named Plaintiffs were engaged at a similar time. The Complaint was filed soon after on October 3, 2022, (Dkt. 1), and final judgment was entered almost two years later on December 7, 2023. (Dkt. 150.)

### 12. Awards in Similar Cases

 "[T]he attorneys' fees calculus is a fact-intensive one and its character varies from case to case." *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000). At least among Texas federal courts, this is indeed true.

In cases such as this, where the litigation is highly specialized, is not uncommon for the Fifth Circuit to award attorney fees well in excess of the market rate. Earlier this year, the Northern District of Texas awarded partner level attorneys up to $1,200.00 per hour and junior attorneys up to $790.00 per hour. These rates were consistent with the market rates in the highly specialized attorneys' home practice area of Washington D.C. *See Franciscan*, 2023 WL 4462049, *7. The court's rationale for the higher fee was based on the following:

> The Fifth Circuit has held that "under certain limited circumstances," counsel may be entitled to charge the prevailing market rate of his or her home district, as opposed to the district wherein the court sits. *McClain*, 649 F.3d at 381–82. The Fifth Circuit has stated that where "abundant and uncontradicted

31

> evidence" prove the necessity of turning to out-of-district counsel, the counsel's "home rates should be considered as a starting point for calculating the lodestar amount." *Id.* at 382 (quotation marks omitted). Turning to out-of-district counsel might be necessary, for example, where local counsel is not willing and/or able to assist or counsel have shown they participate in a market requiring more specialized and sophisticated legal services. *Id.* at 383; *Sierra Club v. Energy Future Holdings Corp.*, No. 12-cv-108, 2014 WL 12690022, at *6 (W.D. Tex. Aug. 29, 2014).

*Id.* at *6.

As mentioned previously, this case was highly specialized, with very few attorneys nationwide having the requisite skills to competently represent Plaintiffs. (*See* Mitchell Decl. ¶ 9; *see also* Schelske Decl. ¶¶ 3-5 at Appx. at 141-142; *see also* Chrisman Decl. ¶ 2 at Appx. at 144.) Due to their contemporaneous success with an almost identical case against the United States Air Force (*Doster v. Kendall*, 54 F.4th 398 (6th Cir. 2022)), and a similar case against United Airlines (*Sambrano v. United Airlines*, 2022 WL 486610 (5th Cir. Feb. 17, 2022), the attorney team assembled here was uniquely specialized in this area of practice and therefore well-suited to handle this matter. Siri & Glimstad LLP is a national law firm that provides legal services and maintains offices in New York City, Los Angeles, Miami, Washington D.C., as well as various other high cost of living (HCOL) cities. (*See* Siri Decl. ¶ 9 at Appx. at 24.) While Mr. Wiest maintains physical offices in Ohio and Kentucky, he practices in federal courts nationwide, handling matters in New York, Washington D. C., Florida, Mississippi, West Virginia, and California within the past two years. (*See* Wiest Decl. ¶ 4 at Appx. at 72.) Likewise, Mr. Bruns has handled cases around the country including First Amendment cases in various federal courts, including in the Supreme Court. (*See* Bruns Decl. ¶¶ 7,8 at Appx. at 95.) Mr. Sullivan is based out of Dallas (his office is in Cedar Hill) and practices in federal courts across the country. (Sullivan Decl. ¶ 7 at Appx. at 128.)

To be sure, less complex cases in the jurisdiction have been awarded lower fees. In 2015,

the Northern District of Texas awarded a compensation rate of $650.00/hour in an employment law case for an attorney with 29 years of experience in employment law. *Kostić v. Tex. A&M Univ. - Commerce*, No. 3:10-cv-02265-M, 2015 WL 9997211, at *3 (N.D. Tex. Dec. 28, 2015). Seven years later, the Western District of Texas only awarded $550.00 per hour on an employment law case to an attorney with 27 years of experience in employment law. *See Pittman v. SW. Bell Tel. L.P.*, 2022 U.S. Dist. LEXIS 244268, at *29 (W.D. Tex. August 16, 2022). In 2019, the Western District of Texas awarded $585.00 per hour in a Title VII discrimination case. *See Johnson v. Sw. Rsch. Inst.,* No. 5:15-297, 2019 WL 4003106, at *21 (W.D. Tex. Aug. 23, 2019). But just a few months prior, a court in the same district had awarded $755.00 per hour for a much less complex breach of contract case. *See Midcap Media Fin., LLC v. Pathway Data, Inc.*, 2018 WL 7890668, at *3 (W.D. Tex. Dec. 19, 2018). While it is impossible to know precisely why attorney fees awards can vary widely, none of the above-mentioned cases are comparable in complexity, magnitude, novelty or risk to the instant case.

The requested rates here are generally in line with the rates awarded in *Hill v. Schilling*, 2022 WL 17178739 (N.D. Tex. Nov. 22, 2022), where the Court awarded, in May, 2022, $820 an hour to an attorney with 23 years' experience. Due to significant inflation, that rate, today, would be $861.39 per hour as of November, 2023 inflation data, and is likely higher as of January 2024.[7]

But this litigation bears significant comparisons to *Franciscan*, in which the Court noted that RFRA claims—also at issue here—and particularly those involving challenges to federal policy, "participate in a market requiring more specialized and sophisticated legal services." In that case, the Court awarded fees for similarly experienced attorneys, with similar claims, against similar federal Defendants, at up to $1,200 per hour. (*See Becerra*, 7:16-cv-00108-O, Dkt. 224-2

---

[7] See https://www.bls.gov/data/inflation_calculator.htm (last accessed January 14, 2024).

at Appx. at 146; *see also* Mitchell Decl. ¶ 18, Appx. at 9.)

A final factor to consider is that inflation has caused considerable upward adjustments in legal rates in the market since the earlier cases mentioned above on attorneys' fees were decided. *See* https://www.bls.gov/data/inflation_calculator.htm (last visited 12/27/2023) (adjusting $650 from 2015—when the *Kostić* decision was issued—equates to $853.99 in November of 2023, which is the latest month available). But an inflation adjustment alone does not adjust for the additional experience that Plaintiffs' attorneys would have obtained in the last few years, nor does it account for general market adjustments to rates in the relevant market which have increased somewhat significantly in the past two years, all of which make the requested rates in this matter fair, reasonable, and appropriate. (*See* Mitchell Decl. ¶ 16 at Appx. at 8.)

### D.  TIME SPENT PREPARING THE FEE APPLICATION

Prevailing parties are entitled to recover attorneys' fees for time spent preparing their fee application. *See Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985) ("It is settled that a prevailing plaintiff is entitled to attorney's fees for the effort entailed in litigating a fee claim and securing compensation"). We will submit time spent on this motion and on the Reply in declarations submitted with our Reply.

### E.  APPLYING THE *JOHNSON* FACTORS, AN UPWARD ADJUSTMENT IS WARRANTED

Once lodestar is determined, the Court may adjust the fees either downward or upward using the *Johnson* factors. Courts have often reduced for poor result or waste of time. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). Here, however, the opposite is true. Plaintiffs achieved a preliminary victory in the form of the injunction. Following this win, the case as a whole was settled prior to trial via consent order, with all harms against Plaintiffs restored. The application of the *Johnson* factors warrant an upward adjustment.

34

### F.  PLAINTIFFS ARE ENTITLED TO THEIR EXPENSES

Out of pocket expenses and costs have been advanced, to include travel and airfare expenses, hotel expenses, copy charges for exhibit books, and similar routine expenses. For Siri & Glimstad LLP necessary and customary costs totaling $11,156.96 have been incurred as of the filing of this brief in connection with this case. (*See* Decl. Siri ¶ 30 at Appx. at 34.) Mr. Wiest has incurred necessary and customary costs of $5,947.36 in this matter. (*See* Decl. Wiest ¶¶ 27, 34, Exhibit 2, invoice at Appx. at 78-79.) Mr. Bruns has incurred necessary and customary costs of $854.76 in this matter. (Decl. Bruns ¶¶ 25, 32, Exhibit 2, invoice at Appx. at 100-101, 104.) Mr. Sullivan has incurred necessary and customary costs of $1,359.75 in this matter. (Decl. Sullivan ¶ 12, Exhibit 2 at Appx. at 129, 134.) Thus, total expenses and costs sought are $19,318.83.

Reasonable out-of-pocket expenses, including charges for travel, are recoverable in § 1988 attorneys' fee awards because they are part of the expenses normally charged to a client. *See Assoc. Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990). That is true for the expenses sought herein. (*See* Mitchell Decl. ¶ 23 at Appx. at 11.)

### CONCLUSION

Plaintiffs respectfully request that the Court award reasonable attorneys' fees and expenses, totaling $1,079,914.50 in fees, and $19,318.83 in expenses, as sought herein, plus any *Johnson* enhancement the Court believes warranted.


Dated: January 22, 2024                               Respectfully submitted,

                                                      */s/Aaron Siri*
                                                      Aaron Siri (admitted PHV)
                                                      Elizabeth A. Brehm (admitted PHV)
                                                      Wendy Cox (TX 24090162)
                                                      Dana Smith (admitted PHV)
                                                      Siri & Glimstad LLP
                                                      745 Fifth Avenue, Suite 500
                                                      New York, NY 10151

(212) 532-1091 (v)
(646) 417-5967 (f)
aaron@sirillp.com
ebrehm@sirillp.com
wcox@sirillp.com
dsmith@sirillp.com

Christopher Wiest (admitted PHV)
Chris Wiest, Atty at Law, PLLC
25 Town Center Boulevard, Suite 104
Crestview Hills, KY 41017
(513) 257-1895 (vc)
(859) 495-0803 (f)
chris@cwiestlaw.com

Thomas Bruns (admitted PHV)
Bruns, Connell, Vollmar & Armstrong, LLC

4555 Lake Forest Drive, Suite 330
Cincinnati, OH 45242
(513) 312-9890 (vt)
tbruns@bcvalaw.com

John C. Sullivan
S|L Law PLLC
Texas Bar Number: 24083920
610 Uptown Boulevard, Suite 2000
Cedar Hill, Texas 75104
(469) 523–1351 (v)
(469) 613-0891 (f)
john.sullivan@the-sl-lawfirm.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 22, 2024, a true and correct copy of Plaintiffs' Brief in Support of Their Motion for Attorneys' Fees and Costs was served by CM/ECF on all counsel or parties of record.

*/s/Aaron Siri*             
Aaron Siri
