UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| LUKE T. CHRISMAN, | |
| *Plaintiff,* | |
| v. | No. 6:22-cv-0049-H |
| LLOYD J. AUSTIN, III, | |
| United States Secretary of Defense, *et al.*, | |
| *Defendants.* | |

# DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

# CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT .........................................................................................................................3

   I.    Plaintiffs Are Not Prevailing Parties..............................................................................3

      A.    The preliminary injunction does not convey prevailing-party status because Defendants did not moot this case in response to that injunction. ......................................................4

      B.    The settlement agreement does not convey prevailing-party status because it applied only to Plaintiff Chrisman and did not materially alter the relationship between the parties. ...............6

   II.    Plaintiffs' Requested Fees Are Not Reasonable. ........................................................10

      A.    Plaintiffs' requested hourly rates are not reasonable.............................................10

         a.    Plaintiffs fail to properly account for Lubbock as the relevant community for determining prevailing rates. ..............................................................................................11

         b.    Plaintiffs are not entitled to out-of-district rates. ....................................................16

            i.    Out-of-district counsel was not necessary. ..........................................................16

            ii.   Even if out-of-district counsel was necessary, Plaintiffs' requested rates are still unreasonable. .........................................................................................................20

      B.    Plaintiffs' claimed hours are unreasonable. ...........................................................23

         a.    Plaintiffs cannot recover fees for unsuccessful claims. .........................................24

         b.    Plaintiffs' billing records are vague, excessive, and duplicative.............................27

      C.    Plaintiffs' expenses are unreasonable.....................................................................33

   III.   No adjustment of the Lodestar Figure Is Justifiable. ................................................33

CONCLUSION....................................................................................................................35

# AUTHORITIES

## Cases

*Aagotnes v. Sec'y of HHS,*
   No. 18-631V, 2021 WL 815916 (Fed. Cl. Jan. 14, 2021) ................................................. 20

*Alex v. KHG of San Antonio, LLC,*
   125 F. Supp. 3d 619 (W.D. Tex. 2015) ................................................................................. 32

*Allen v. U.S. Steel Corp.,*
   665 F.2d 689 (5th Cir. 1982) ................................................................................................ 38

*Am. Bar Ass'n v. FTC,*
   636 F.3d 641 (D.C. Cir. 2011) ............................................................................................... 7

*Amawi v. Paxton,*
   48 F.4th 412 (5th Cir. 2022) ........................................................................................ 6, 7, 8

*Architectural Granite & Marble, LLC v. Pental,*
   No. 3:20-cv-295-L-BK, 2023 WL 2825699 (N.D. Tex. Jan. 19, 2023) .............................. 26

*Avialae S De Rl De Cv. Cummins Inc.,*
   No. EP-19-CV-00380-FM, 2023 WL 5163901 (W.D. Tex. Aug. 3, 2023) ......................... 40

*Ayers v. State Farm Mut. Auto. Ins. Co.,*
   No. 6:17-cv-1265,  2018 WL 375719 (M.D. Fla. Jan. 11, 2018) ......................................... 36

*Blum v. Stenson,*
   465 U.S. 886 (1984) .............................................................................................................. 16

*Bowar v. City of El Paso,*
   No. EP-21-cv-257-KC, 2023 WL 1325500 (W.D. Tex. Jan. 31, 2023) .............................. 28

*Bowman v. Prida Constr., Inc.,*
   568 F. Supp. 3d  779 (S.D. Tex. 2021) ...................................................................... 36, 37, 38

*Brister v. Fed. Bureau of Prisons,*
   No. 5:19-cv-00088-RWS, 2020 WL 4499608 (E.D. Tex. Aug. 5, 2020) ............................. 9

*Brooksbank v. Koch,*
   No. 3:16-cv-668, 2019 WL 7407401 (W.D. Ky. Apr. 15, 2019) .............................. 19, 20, 33

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum.,*
   Servs., 532 U.S. 598 (2001) .................................................................................................... 7

*Casas v. Anthony Mech. Servs., Inc.,*
   No. 5:22-CV-037-H, 2023 WL 2727550 (N.D. Tex. Mar. 7, 2023) ............................ passim

*Casas v. Lickity Split Expediting, LLC*,
    No. 23-10311, 2023 WL 8434174 (5th Cir. Dec. 5, 2023) ...................................................16

*Cincinnati Bar Ass'n v. Wiest*,
    148 Ohio St. 3d 683, 2016-Ohio-8166, 72 N.E.3d 621 .....................................................19

*Cisneros v. UTC Providers-Austin, Inc.*,
    No. 1:17-CV-593-RP, 2019 WL 13253467 (W.D. Tex. Aug. 7, 2019) ...............................28

*Cities4Life, Inc. v. City of Charlotte*,
    No. 3:17-cv-670, 2021 WL 724609 (W.D.N.C. Feb. 24, 2021) .........................................29

*City of Burlington v. Dague*,
    505 U.S. 557 (1992) .............................................................................................................39

*Coleman v. Hous. Indep. Sch. Dist.*,
    202 F.3d 264 (5th Cir. 1999) ...............................................................................................30

*Collins v. Comm'r of SSA*,
    No. 3:21-cv-694-BH, 2022 WL 1173804 (N.D. Tex. Apr. 20, 2022) .................................21

*Combs v. City of Huntington*,
    829 F.3d 388 (5th Cir. 2016) ..................................................................................39, 40, 41

*Copeland v. Marshall*,
    641 F.2d 880 (D.C. Cir. 1980) ......................................................................................29, 33

*Dearmore v. City of Garland*,
    519 F.3d 517 (5th Cir. 2008) ..........................................................................................5, 6

*Dist. of Columbia v. Dall. Indep. Sch. Dist.*,
    No. 3:17-cv-02981-E, 2020 WL 13429989 (N.D. Tex. July 23, 2020) .............................17

*Doe v. Fitch*,
    No. 3:16-cv-789, 2022 WL 4002326 (S.D. Miss. Aug. 1, 2022).......................................35

*Energy Mgmt. Corp. v. City of Shreveport*,
    467 F.3d 471 (5th Cir. 2006) ....................................................................................4, 10, 11

*Env't Conservation Org. v. City of Dall.*,
    307 F. App'x 781 (5th Cir. 2008) ..........................................................................................7

*Falbo v. Sec'y of HHS*,
    No. 18-1547V, 2020 WL 1480317 (Fed. Cl. Feb. 12, 2020) .............................................20

*Farrar v. Hobby*,
    506 U.S. 103 (1992) .............................................................................................................10

*Fessler v. Porcelana Corona De Mex., S.A. DE C.V.*,
   23 F.4th 408 (5th Cir. 2022) ................................................................................. 30, 32

*Flowers v. Wiley*,
   675 F.2d 704 (5th Cir. 1982) ...................................................................................... 36

*Fox v. Vice ex rel. Estate of Vice*,
   563 U.S. 826 (2011) ............................................................................................. 32, 33

*Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*,
   No. 3:09-cv-0752-D, 2011 WL 487754 (N.D. Tex. Feb. 11, 2011) ........................ 33, 38

*Franciscan All., Inc. v. Becerra*,
   No. 7:16-CV-00108-O, 2023 WL 4462049 (N.D. Tex. July 11, 2023) ......................... 18

*Freedom From Religion Found., Inc. v. Abbott*,
   No. 1:16-cv-233-DII-DH, 2023 WL 8185636 (W.D. Tex. Nov. 27, 2023) .................... 28

*Furlow v. Bullzeye Oilfield Servs., LLC*,
   No. SA-15-CV-1156-DAE, 2019 WL 1313470 (W.D. Tex. Jan. 3, 2019) ...................... 35

*Giles v. Gen. Elec. Co.*,
   245 F.3d 474 (5th Cir. 2001) ...................................................................................... 29

*Haywood v. Wexford Health Sources, Inc.*,
   No. 16-cv-3566, 2021 WL 2254968 (N.D. Ill. June 3, 2021) ....................................... 29

*Heidtman v. Cnty. of El Paso*,
   171 F.3d 1038 (5th Cir. 1999) ................................................................................... 40

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................................. passim

*Hill v. Schilling*,
   No. 3:07-cv-2020-L, 2022 WL 17178739 (N.D. Tex. Nov. 22, 2022) .......................... 18

*Hill v. Washburne*,
   2023 WL 4108214 (5th Cir. Jan. 31, 2023) ................................................................ 18

*HomeAway.com, Inc. v. City of N.Y.*,
   523 F. Supp. 3d 573 (S.D.N.Y. 2021) ................................................................... 27, 28

*Hopwood v. Texas*,
   236 F.3d 256 (5th Cir. 2000) ...................................................................................... 37

*Hyatt v. May*,
   No. 1:19-cv-250, 2023 WL 2699990 (W.D.N.C. Mar. 29, 2023) ................................. 29

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
  No. 4:14-CV-00371, 2018 WL 1602460 (E.D. Tex. Apr. 3, 2018) ....................................38

*In re Babcock & Wilcox Co.*,
  526 F.3d 824 (5th Cir. 2008) ....................................................................................37

*In re Trevino*,
  648 B.R. 847 (Bankr. S.D. Tex. 2023) ......................................................................34

*J.B-K.-1 v. Sec'y of Kentucky Cabinet for Health & Fam. Servs.*,
  No. 3:18-cv-00025, 2023 WL 3016281 (E.D. Ky. Mar. 20, 2023) ..............................17

*Jenevein v. Willing*,
  605 F.3d 268 (5th Cir. 2010) ............................................................................. 13, 14

*Jimenez v. Rockwood Dev., L.L.C.*,
  No. 3:17-cv-3174-C, 2018 WL 11433002 (N.D. Tex. Dec. 12, 2018) ........................17

*Johnson v. Ga. Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) .....................................................................36, 39, 40

*Johnson v. Sw. Rsch. Inst.*,
  No. 5:15-297, 2019 WL 4003106 (W.D. Tex. Aug. 23, 2019) ..................................18

*Jordan Kahn Music Co. v. Taglioli*,
  No. 4:21-cv-00045, 2023 WL 2266123 (E.D. Tex. Feb. 28, 2023) ............................10

*Kindle v. Dejana*,
  308 F Supp 3d 698 (E.D.N.Y. 2018) ................................................................ 20, 27

*Kostic v. Tex. A&M Univ.-Com.*,
  No. 3:10-cv-2265-M, 2015 WL 9997211 (N.D. Tex. Dec. 28, 2015) ........................18

*La. Power & Light Co. v. Kellstrom*,
  50 F.3d 319 (5th Cir. 1995) .............................................................................. 15, 16

*Leroy v. Houston*,
  906 F.2d 1068 (5th Cir. 1990) ......................................................................35, 36, 37

*Mauricio v. Phillip Galyen, P.C.*,
  174 F. Supp. 3d 944 (N.D. Tex. 2016) .........................................................16, 18, 27

*McClain v. Lufkin Indus.*,
  649 F.3d 374 (5th Cir. 2011) .......................................................................16, 22, 25

*Midcap Media Fin., LLC v. Pathway Data, Inc.*,
  2018 WL 7890668 (W.D. Tex. Dec. 19, 2018) ........................................................18

*Perdue v. Kenny A. ex rel. Winn,*
  559 U.S. 542 (2010) ........................................................................................ 15, 39

*Petteway v. Henry,*
  738 F.3d 132 (5th Cir. 2013) .................................................................................13

*Pittman v. SW. Bell Tel. L.P.,*
  2022 U.S. Dist. LEXIS 244268 (W.D. Tex. August 16, 2022) .............................18

*Ramsek v. Beshear,*
  No. 3:20-cv-36, 2022 WL 3591827 (E.D. Ky. Aug. 22, 2022)........................ 19, 20

*Reece v. Carey,*
  No. 3:16-cv-00069-GFVT, 2022 WL 701015 (E.D. Ky. Mar. 8, 2022) ...............17

*Rhodes v. Stewart,*
  488 U.S. 1 (1988) ....................................................................................................10

*Riverside v. Rivera,*
  477 U.S. 561 (1986) ................................................................................................25

*Roberts v. Beshear,*
  No. 2:22-cv-054, 2022 WL 4592538 (E.D. Ky. Sept. 29, 2022) ...............17, 19, 20

*Romain v. Walters,*
  856 F.3d 402 (5th Cir. 2017) .................................................................................14

*SAP Am., Inc. v. Investpic, LLC,*
  No. 3:16-CV-02689-K, 2018 WL 2230597 (N.D. Tex. May 15, 2018) .................33

*SAP Am., Inc. v. Investpic, LLC,*
  No. 3:16-CV-02689-K, 2018 WL 6329690 (N.D. Tex. Dec. 4, 2018)..................16

*Schelske v. Austin,*
  649 F. Supp. 3d 254 (N.D. Tex. 2022) .....................................................................2

*Sencore, Inc. v. Wireless Acquisitions, LLC,*
  No. 3:17-cv-00038-B, 2018 WL 2684543 (N.D. Tex. June 5, 2018) ....................17

*Shipes v. Trinity Indus.,*
  987 F.2d 311, 321–22 (5th Cir. 1993) ....................................................................40

*Sole v. Wyner,*
  551 U.S. 74 (2007) ...................................................................................................4

*Sommerfield v. Knasiak,*
  No. 08-cv-3025, 2021 WL 5795303 (N.D. Ill. Dec. 7, 2021).............................29

*Sweeney v. Crigler,*
    No. 19-cv-46, 2020 WL 7038977 (E.D. Ky. Oct. 27, 2020) ...................................................... 19, 20

*Tex. State Teachers Ass'n v. Garland Independent Sch. Dist.,*
    489 U.S. 782 (1989) .......................................................................................................... 4, 12, 13

*Tollett v. City of Kemah,*
    285 F.3d 357 (5th Cir. 2002) ............................................................................................... 16

*Veasey v. Abbott,*
    No. 2:13-cv-193, 2020 WL 9888360 (S.D. Tex. May 27, 2020) ........................................... 37

*Vela v. City of Hous.,*
    276 F.3d 659 (5th Cir. 2001) ........................................................................................... 30, 37

*Vestas-Am. Wind Tech., Inc. v. Salazar,*
    No. 6:19-cv-00076-H, 2020 WL 12029327 (N.D. Tex. Dec. 8, 2020) ................................. 17

*W.R. v. Sec'y of HHS,*
    No. 20-1401V, 2023 WL 8187303 (Fed. Cl. Oct. 23, 2023) ................................................ 21

*Walker v. City of Mesquite,*
    313 F.3d 246 (5th Cir. 2002) ......................................................................................... 5, 10, 11

*Walker v. U.S. HUD,*
    99 F.3d 761 (5th Cir. 1996) ....................................................................... 30, 36, 38, 40

*Watkins v. Fordice,*
    7 F.3d 453 (5th Cir. 1993) ............................................................................................... 29, 37

*Wheeler v. Mental Health & Mental Retardation Auth. of Harris Cnty.,*
    752 F.2d 1063 (5th Cir. 1985) ............................................................................................. 16

*White v. Imperial Adjustment Corp.,*
    No. 99-cv-3804, 2005 WL 1578810 (E.D. La. June 28, 2005) ............................................ 32

*Williams v. Shinseki,*
    No. 3:11-CV-0761-D, 2013 WL 1875055 (N.D. Tex. May 6, 2013) ..................................... 34

*Wright v. Blythe-Nelson,*
    No. 3:99-cv-2522-D, 2004 WL 2870082 (N.D. Tex. Dec. 13, 2004) .................................. 31

*Yousuf v. Motiva Enters. LLC,*
    246 F. App'x 891 (5th Cir. 2007) ......................................................................................... 6

**Statutes**

42 U.S.C. § 1988(b) ...................................................................................................... 4, 15, 17

**Other Authorities**

Executive Order 14042 .................................................................................................................23

Executive Order 14043 .................................................................................................................23

**INTRODUCTION**

On October 3, 2022, ten active-duty Soldiers brought this civil action to enjoin the Army from requiring them to be vaccinated against COVID-19 over their religious objections. On October 18, 2022, Plaintiffs filed a motion for preliminary injunction seeking to halt adverse action against them for declining vaccination. This Court held a hearing on that motion on December 16, 2022, and granted Plaintiffs' motion on December 21, 2022. Two days later, Congress required the Army to rescind its vaccine requirement, and the Army's implementation of that direction rendered the claims of these Soldiers moot. Now, although Plaintiffs' attorneys have largely recycled the complaint, briefs, and argument in this case from two similar cases they had litigated on behalf of Air Force service members, they seek over $1.1 million in attorneys' fees and costs based on less than three months of litigation. Alternatively, Plaintiffs seek to hang their claim for $1.1 million in attorneys' fees on an agreement to correct the record of late-added Plaintiff Chrisman—an action that can be readily accomplished at an Army correction board without an attorney.

Even setting aside that Plaintiffs are not entitled to any fees, Plaintiffs' requested fees are exorbitant. Plaintiffs seek fees based on hourly rates that are nearly triple the prevailing rates in this community. And even assuming that the prevailing rates of Plaintiffs' counsels' home districts could be considered—which they cannot—Plaintiffs' requested rates eclipse those rates, too. Moreover, Plaintiffs' billing records reflect significant, pervasive issues, including seeking fees for dismissed Plaintiffs and unsuccessful motions, billing excessively for filings that are largely copied from prior filings in other cases, billing for multiple senior attorneys on nearly every task, billing for vague entries, and billing for objectively non-compensable time such as clerical work.

Plaintiffs are not prevailing parties and cannot obtain fees, much less the $1.1 million windfall they seek. Accordingly, the Government respectfully requests that this Court deny Plaintiffs' motion for attorneys' fees and costs in full. Alternatively, should this Court determine that some or all Plaintiffs are prevailing parties entitled to fees, the Government respectfully requests that the Court apply the prevailing rates in this community and significantly reduce the number of hours claimed to account for Plaintiffs' limited success and pervasive billing issues.

## BACKGROUND

In 2020, the COVID-19 pandemic began its global spread, eventually killing well over a million Americans. On August 24, 2021, the Department of Defense (DoD) added the COVID-19 vaccine to the list of required vaccinations for service members. On December 23, 2022, however, the President signed the National Defense Authorization Act (NDAA) into law, including Section 525 directing the Secretary of Defense, within 30 days, to rescind the August 2021 memorandum requiring vaccination of service members for COVID-19. *See* James M. Inhofe NDNAA for Fiscal Year 2023, Pub. L. No. 117-263, 136 Stat. 2395 (2022). On January 10, 2023, the Secretary rescinded the mandate as directed, and the Services proceeded to implement that directive, including removing adverse actions from the files of service members who previously sought exemptions from the COVID-19 vaccine requirement.

On October 3, 2021, Plaintiffs filed their initial complaint, challenging DoD's COVID-19 vaccination requirement and seeking injunctive and declaratory relief on behalf of a class of Army service members. *See* Compl., ECF No. 1. Plaintiffs alleged that the requirement violated their religious rights under the Religious Freedom Restoration Act (RFRA) and the First Amendment. *See id.* ¶¶ 54–71. This complaint was largely duplicative of other complaints counsel for Plaintiffs had filed. Plaintiffs moved for a preliminary injunction as to the named Plaintiffs on October 18, 2022. ECF No. 29. That motion also was largely duplicative of other preliminary injunction motions counsel for Plaintiffs had filed. On November 23, 2022, Plaintiffs separately moved to certify a class, ECF No. 48, and for a class-wide injunction, ECF No. 50. Shortly thereafter, on December 15, 2023, the Senate approved the final House amendment to the NDAA, thereby finalizing Congressional adoption of the bill. *See* U.S. Senate Committee on Armed Services, *Reed, Inhofe Praise Senate Passage of the Fiscal Year 2023 National Defense Authorization Act* (Dec. 15, 2023), https://perma.cc/LW8R-SLV7. Following a hearing on December 16, 2023, the Court entered a preliminary injunction as to the named Plaintiffs on December 21, 2022—two days before the President signed the NDAA into law. *Schelske v. Austin*, 649 F. Supp. 3d 254 (N.D. Tex. 2022).

Plaintiffs never received relief as to their class certification or class-wide injunction demands.

*See* Mem. Op. & Order, ECF No. 78; Mem. Op. & Order, ECF No. 139.  Plaintiffs received partial preliminary injunctive relief for ten individual service members for the short period before the recission of the mandate, and on more limited terms than they had sought.  Indeed, Plaintiffs' class certification motion was deferred several times and finally denied as moot.  *See* ECF Nos. 78, 80, 139.

After the rescission of the vaccine mandate, Plaintiffs filed an amended complaint on February 10, 2023, ECF No. 92, and a request to amend the class definition and certify a new class on February 13, 2023, ECF No. 95.  Both of these actions were ultimately unsuccessful in preserving any claims, certifying a class, or expanding the scope of the case, with the sole exception of bringing newly added Plaintiff Chrisman into the case.  Defendants moved to dismiss the amended complaint on March 10, 2023.  ECF Nos. 105 & 106.  Plaintiffs voluntarily dismissed the claims of six of the eleven Plaintiffs on July 13, 2023, ECF No. 122, and on September 14, 2023, the Court granted in part and denied in part Defendants' motion to dismiss, dismissing the claims of all remaining Plaintiffs with the exception of the newly added Plaintiff Chrisman, ECF No. 139.

On October 27, 2023, the parties jointly moved to request that the Court refer the case for mediation.  ECF No. 145.  The Court granted the motion, and the parties proceeded to mediation on December 7, 2023.  ECF No. 149.  That same day, the parties jointly filed an agreed order in which Defendants agreed to make certain corrections to Plaintiff Chrisman's records and Plaintiffs dismissed all remaining claims except for claims for attorneys' fees and litigation costs.  *See* Agreed Order Resolving Claims, ECF No. 150.  On January 22, 2024, Plaintiffs filed their motion for attorneys' fees and costs.  ECF No. 156 ("Pls.' Mot.").  Plaintiffs seek $1,079.914.50 in attorneys' fees and $19,318.83 in expenses.[1]  *See id.* at 35.

## ARGUMENT

## I.   Plaintiffs Are Not Prevailing Parties.

Plaintiffs have not established that they are prevailing parties and are thus not entitled to any fees.  Under 42 U.S.C. § 1988(b), a court has discretion to allow the prevailing party in RFRA action a

---

[1] Plaintiffs propose conflicting fee amounts without explanation.  *Compare* Pls.' Mot. at 19 (chart) (seeking $1,217,617.00 in fees) *with id.* at 35 (seeking $1,079.914.50 in fees).

reasonable attorney's fee.  To be entitled to fees and expenses under RFRA, the plaintiff must show that it was the "prevailing party."  "'The touchstone of the prevailing party inquiry' . . . is 'the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.'"  *Sole v. Wyner*, 551 U.S. 74, 82 (2007) (quoting *Tex. State Teachers Ass'n v. Garland Independent Sch. Dist.*, 489 U.S. 782, 792–93 (1989)).  In particular, the Fifth Circuit has held that, to be a prevailing party, a plaintiff must: "(1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement."  *Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 482 (5th Cir. 2006) (quoting *Walker v. City of Mesquite*, 313 F.3d 246, 249 (5th Cir. 2002)).

Neither of Plaintiffs' two proffered theories establish that they are prevailing parties in this case.  The preliminary injunction entered in this case did not cause Congress to pass the NDAA.  And the settlement agreement did not alter the legal relationship between any parties, especially given that it involved only a single Plaintiff who was added at the final hour of this case.

### A.    The preliminary injunction does not convey prevailing-party status because Defendants did not moot this case in response to that injunction.

The Fifth Circuit has provided a specific test for determining whether a plaintiff qualifies as a "prevailing party" under § 1988(b) when he obtains a preliminary injunction but the case is subsequently mooted before trial.  *See Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008).  To qualify as a prevailing party in this context, a plaintiff: "(1) must win a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits."  *Id.* at 524.

Plaintiffs cannot satisfy the third factor.  The Fifth Circuit has repeatedly emphasized that a defendant's mooting of the case must occur "*after* and *in direct response to* the district court's preliminary injunction order," demonstrating a "direct causal link between the district court's issuance of the preliminary injunction and the [defendant's] subsequent [action] to moot the case."  *Id.* at 525; *see also*

4

*Amawi v. Paxton*, 48 F.4th 412, 418 (5th Cir. 2022) (holding plaintiffs were not prevailing parties because they failed to show that defendant passed a new bill mooting the case "*in direct response*" to the district court's preliminary injunction); *Yousuf v. Motiva Enters. LLC*, 246 F. App'x 891, 895 (5th Cir. 2007) (finding plaintiffs were not prevailing parties because the claims were mooted by unrelated circumstances, not because the court orders were "so successful for [plaintiff] that they rendered any further relief unnecessary"). Here, Defendants rescinded the COVID-19 vaccination requirement—the challenged conduct at issue—because Congress passed the NDAA directing that the requirement be discontinued. Defendants did not take any action to moot this case "*in direct response to* the district court's preliminary injunction order." *Dearmore*, 519 F.3d at 525.

Plaintiffs cannot skirt this precedent by alleging that the Secretary of Defense "took voluntary steps not required by the NDAA." *See* Pls.' Mot. at 7. "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Servs.*, 532 U.S. 598, 605 (2001). The Secretary of Defense chose to implement Congress's direction to rescind the COVID-19 vaccination requirement in part by removing adverse actions from service members' records. *See* App'x to Defs.' Combined Mem. in Supp. of their Mot. to Dismiss the Am. Compl. & Reply in Supp. of their Mot. to Dismiss the Initial Compl. at A044, ECF No. 108 ("App'x to Defs.' MTD"). Plaintiffs offer no evidence that this particular preliminary injunction—applicable only to members of the Army and entered on the eve of the NDAA's passing—directly caused that decision. And "[t]he mere fact that [the Government] has . . . moot[ed] an [action], without more, provides no grounds for assuming that the [Government] was motivated by" the "unfavorable precedent." *Amawi*, 48 F.4th at 418 (quoting *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 649 (D.C. Cir. 2011)); *see also Env't Conservation Org. v. City of Dall.*, 307 F. App'x 781, 784 (5th Cir. 2008) (holding plaintiffs were not prevailing parties where suit was mooted by consent decree entered in *separate* case). Plaintiffs have "provided nothing . . . evincing that the [Secretary] had th[is] preliminary injunction in mind when" he directed *all* Services to remove adverse actions from service members' records. *Amawi*, 48 F.4th at 418. Simply put, "there is no basis to infer that the [Secretary of Defense] was motivated by

a desire to preclude attorneys' fees" in this case. *Id.* at 419.[2]

Plaintiffs correctly do not attempt to argue that the passage of the NDAA itself was at all influenced by the preliminary injunction in this case. Indeed, the preliminary injunction was issued on December 21, 2022—only two days before the President signed the NDAA into law and well after both the House and the Senate voted to pass the NDAA on December 8, 2022, and December 15, 2022, respectively. *See* NDAA; *see also* Defs.' Mot. to Continue the Hearing Set for Dec. 16, 2022, ECF No. 59 (requesting on December 9, 2022, that the Court continue the preliminary injunction hearing pursuant to passage of the NDAA by the House of Representatives). That timeline definitively precludes any finding of causation regarding the passage of the NDAA and the injunction in this case. *See Amawi*, 48 F.4th at 418–19 (holding plaintiffs failed to satisfy third *Dearmore* factor where "[t]he introduction of the ameliorative statute . . . predated the district court's action").

Accordingly, "[a]lthough Plaintiff[s] ultimately received the relief [they] sought in this case, . . . th[is] Court was not involved." *Brister v. Fed. Bureau of Prisons*, No. 5:19-cv-00088-RWS, 2020 WL 4499608, at *9 (E.D. Tex. Aug. 5, 2020).

### B. The settlement agreement does not convey prevailing-party status because it applied only to Plaintiff Chrisman and did not materially alter the relationship between the parties.

Plaintiffs' prevailing-party theory related to the settlement agreement between Plaintiff Chrisman and the Government has two fatal flaws. First, the settlement agreement pertained only to Plaintiff Chrisman. Indeed, the original ten Plaintiffs had already been long dismissed from this case by the time the settlement was entered. *See* Consent Stipulation of Dismissal, ECF No. 122; Mem. Op. & Order, ECF No. 139. Plaintiffs belatedly added Plaintiff Chrisman to avoid a finding that this case was entirely moot. *See* Mem. in Opp. to Defs.' Mot. to Dismiss at 6, ECF No. 96 (arguing that case was not moot because "the Amended Complaint adds a new Plaintiff to this case: former soldier Luke Chrisman"). Plaintiff Chrisman—who had allegedly been discharged based on his failure to

---

[2] The Secretary's decisions regarding service members who did *not* seek religious accommodations are irrelevant. *See* Pls.' Mot. at 7. All Plaintiffs here sought religious accommodations, so any decision related to service members who did not seek religious accommodations would not even have mooted this lawsuit, much less have been directly caused by the preliminary injunction in this case.

receive the vaccine—sought new, distinct relief that did not apply to the original ten Plaintiffs, none of whom had been discharged. Am. Compl. ¶¶ 23, 58–63, ECF No. 92; *see also id.* at 34 (Prayer for Relief) (adding new requested relief related to service members who were discharged). And Plaintiff Chrisman's addition came only *after* the relevant events that mooted the original ten Plaintiffs' claims—two months after the President signed the NDAA into law and a month after the Secretary of Defense implemented the NDAA.

Plaintiffs do not attempt to explain how the original ten Plaintiffs are prevailing parties based on a settlement agreement that applied only to Plaintiff Chrisman. Nor can they. The settlement agreement on its face "cannot be said to [have] 'affec[ted] the behavior of the defendant toward the'" original ten Plaintiffs. *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (quoting *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988))). The agreement did not "materially alter[] the legal relationship between" them and the Government. *Energy Mgmt. Corp.*, 467 F.3d at 482 (quoting *Walker*, 313 F.3d at 249). "Clearly," then, those original ten Plaintiffs "cannot ride [their] co-Plaintiffs' coattails to prevailing party status when [they] did not obtain any relief [themselves]." *Jordan Kahn Music Co. v. Taglioli*, No. 4:21-cv-00045, 2023 WL 2266123, at *8 (E.D. Tex. Feb. 28, 2023), *appeal dismissed*, 2023 WL 6393916 (5th Cir. Sept. 22, 2023). Plaintiffs cannot obtain attorneys' fees for ten dismissed Plaintiffs based on a settlement agreement entered as to the single remaining Plaintiff seeking different relief. Much less can Plaintiffs do so when that singular Plaintiff was added to this case *after* the original ten Plaintiffs' claims were rendered moot. ECF No. 150.

Second, even as to Plaintiff Chrisman, the settlement agreement did not "materially alter[] the legal relationship between the parties." *Energy Mgmt. Corp.*, 467 F.3d at 482 (quoting *Walker*, 313 F.3d at 249). Rather, the settlement agreement provided Plaintiff Chrisman with exactly what he was already entitled. Indeed, this is the reason the Government entered into the settlement agreement. In implementing the NDAA, the Secretary of Defense stated, "[f]or Service members administratively discharged on the sole basis that the Service member failed to obey a lawful order to receive a vaccine for COVID-19, the Department is precluded by law from awarding any characterization less than a general (under honorable conditions) discharge," and thus "[f]ormer Service members may petition

their Military Department's Discharge Review Boards and Boards for Correction of Military or Naval Records to individually request a correction to their personnel records, including records regarding the characterization of their discharge." App'x to Defs.' MTD Am. Compl. at A044.  The Secretary of the Army subsequently declared that "[f]ormer soldiers may petition . . . the Army Board for Correction of Military Records to request corrections to their personnel records, including records regarding the characterization of their discharge." *Id.* at A092 ¶ 6.  The Government has repeatedly explained that Plaintiff Chrisman had the opportunity to seek this relief. *See, e.g.*, Mem. in Supp. of Defs.' Mot. to Dismiss Am. Compl., ECF No. 106 at 10.  And he likely would have received the exact same relief even sooner and with far less cost and effort had he taken that opportunity rather than persisted with this litigation.  The Review Boards were instructed to "generally grant" records correction requests from any discharged Service member who "formally sought an accommodation on religious or medical grounds" and who had "no aggravating factors in [his or her] record." *See* Correction of Military Records Guidance ¶ 2(a), A001–02.  The Boards were specifically instructed to "normally grant requests to recharacterize the discharge to honorable, change the narrative reason for enlisted separation . . . and change the reenty code." *Id.* at 2(b), A002.  This is precisely what Plaintiff Chrisman obtained in the settlement agreement: an upgrade of his discharge to honorable, a change in the narrative reason for his separation, a corresponding change in his separation code to account for the change in narrative explanation, and a change in his reentry code.  ECF No. 150 at 1.  Moreover, Plaintiff Chrisman could have obtained this records correction by simply submitting a two-page form, without any attorney assistance at all.  *See* U.S. Army Human Resources Command, *Updated Message on COVID-19 Vaccine Mandate Rescission* (last updated Nov. 7, 2023), https://www.hrc.army.mil/content/26744 (explaining that former Service members seeking upgrade of discharge characterization could do so by submitting DD Form 293, and those seeking other records correction could do so by submitting DD Form 149); DD Form 293, https://perma.cc/A5MM-ZQ47; DD Form 149, https://perma.cc/6VRM-W3SC.  Instead, Plaintiff Chrisman chose to spend—by Plaintiffs' own count—a few hundred thousand dollars on legal fees pursuing a settlement agreement that gave him the exact same relief.

In other words, the settlement agreement was at most a "technical" or *de minimis* victory that cannot support prevailing-party status. *See Tex. State Teachers Ass'n*, 489 U.S. at 792; *Petteway v. Henry*, 738 F.3d 132, 138 (5th Cir. 2013). As in *Texas State Teachers Association*, Plaintiff Chrisman may have "achieve[d] some of the benefit [he] sought in bringing suit," but "there was no evidence that" the Board of Corrections would have denied Plaintiffs' records correction to begin with. *Tex. State Teachers Ass'n*, 489 U.S. at 791–92 (citation omitted) (finding victory was merely technical where declaratory judgment regarding rule did not alter legal relationship between the parties because "there was no evidence that the plaintiffs were ever" subjected to the rule). The fact that Plaintiff Chrisman achieved his records correction through a settlement agreement with Army rather than through the Army Board of Corrections is merely a technical or *de minimis* victory.

The Fifth Circuit addressed similar circumstances in *Jenevein v. Willing*, 605 F.3d 268, 271 (5th Cir. 2010). There, a state judge had been censured by the Texas State Commission on Judicial Conduct. *See id.* at 269. The Fifth Circuit eventually directed the Commission to partially expunge that censure but to leave the underlying violations on the judge's record. *See id.* The Fifth Circuit found that the order granting partial expungement was too technical to support prevailing-party status, even though it technically altered the legal relationship between the parties and conferred a benefit upon the judge. *See id.* at 271. Here, similarly, the only "benefit" conferred upon Plaintiff Chrisman was the fact that he received records correction through a settlement agreement instead of a board of corrections.

Plaintiffs' citation to *Romain v. Walters*, 856 F.3d 402, 406–07 (5th Cir. 2017), is not to the contrary. In that case, the settlement agreement "materially altered the legal relationship of the parties" because the defendant agreed to conditions that went "above and beyond" what it had already committed to. *See id.* In particular, Louisiana agreed that, despite the then-Governor-Elect's promise to reinstate a statewide "work requirement" waiver for SNAP recipients upon his taking office, the State would ensure that class members received SNAP benefits by a certain time even if the waiver reinstatement was delayed. *See id.* at 407. That is not so here, where Plaintiff Chrisman was entitled to receive the same benefit through an Army correction board. The fact that he chose to pursue that relief through this lawsuit, rather than the board is purely technical.

## II.    Plaintiffs' Requested Fees Are Not Reasonable.

Even if Plaintiffs could establish prevailing party status, their requested fees include exorbitant rates and significant billing issues.  When a party is a prevailing party, the Court "may allow" a "reasonable attorney's fee" under 42 U.S.C. § 1988(b).  A "reasonable" fee is one "that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).  "[D]etermination of reasonable attorneys' fees involves a two-step procedure." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir. 1995).  First, "the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers." *Id.* at 324.  Next, the court must "multiply the reasonable hours by the reasonable hourly rates." *Id.*  Plaintiffs' motion relies on neither reasonable hourly rates nor a reasonable accounting of hours expended, and has pervasive billing record issues.

### A.    Plaintiffs' requested hourly rates are not reasonable.

The fee applicant bears the burden of establishing "that the requested rates are in line with those prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Wheeler v. Mental Health & Mental Retardation Auth. of Harris Cnty.*, 752 F.2d 1063, 1073 (5th Cir. 1985); *see also, e.g.*, *McClain v. Lufkin Indus.*, 649 F.3d 374, 381 (5th Cir. 2011) (same).  "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002); *see also Mauricio v. Phillip Galyen, P.C.*, 174 F. Supp. 3d 944, 948 (N.D. Tex. 2016) ("[T]he burden is on the fee applicant to produce satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984))).  Courts may also look to other fee awards in the same district, *see Casas v. Anthony Mech. Servs., Inc.*, No. 5:22-CV-037-H, 2023 WL 2727550, at *8 (N.D. Tex. Mar. 7, 2023) (Hendrix, J.), *aff'd sub nom. Casas v. Lickity Split Expediting, LLC*, No. 23-10311, 2023 WL 8434174 (5th Cir. Dec. 5, 2023), as well as information regarding "the attorneys' regular rates," *SAP Am., Inc. v. Investpic, LLC*, No. 3:16-CV-02689-K, 2018 WL 6329690, at *2 (N.D. Tex. Dec. 4, 2018) (citing *La. Power & Light Co.*, 50

F.3d at 328).

### a. Plaintiffs fail to properly account for Lubbock as the relevant community for determining prevailing rates.

If this Court finds Plaintiffs are entitled to attorneys' fees, those fees should be calculated based on the prevailing rate in Lubbock, Texas. "[T]he relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett*, 285 F.3d at 368 (citation omitted). Plaintiffs chose to file this lawsuit in Lubbock. Thus, the relevant community for calculating attorney's fees in this case is Lubbock. *See Casas*, 2023 WL 2727550, at *9.

Plaintiffs' requested rates far exceed those typically approved in Lubbock for this type of case. Plaintiffs themselves provide no evidence regarding prevailing rates in Lubbock. But this Court explained in March 2023 that hourly rates recently "found to be reasonable 'in the Northern District of Texas generally fall between $200 and $400 per hour.'" *See id.* (citation omitted) (collecting cases); *see also Vestas-Am. Wind Tech., Inc. v. Salazar*, No. 6:19-cv-00076-H, 2020 WL 12029327, at *3 (N.D. Tex. Dec. 8, 2020) (Hendrix, J.) (same); *Dist. of Columbia v. Dall. Indep. Sch. Dist.*, No. 3:17-cv-02981-E, 2020 WL 13429989, at *1–2 (N.D. Tex. July 23, 2020) (approving hourly rates of $295 for a partner and $210 for an associate); *Jimenez v. Rockwood Dev., L.L.C.*, No. 3:17-cv-3174-C, 2018 WL 11433002, at *2 (N.D. Tex. Dec. 12, 2018) (finding hourly rates of $390 and $260 to be reasonable); *Sencore, Inc. v. Wireless Acquisitions, LLC*, No. 3:17-cv-00038-B, 2018 WL 2684543, at *1 (N.D. Tex. June 5, 2018) (finding hourly rates of $300 and $220 to be reasonable).

Although Plaintiffs provide no evidence of typical fees in civil rights cases in Lubbock, Plaintiffs do highlight an allegedly comparable COVID-19 religious freedom case in which Mr. Wiest and Mr. Bruns recently obtained fees based on prevailing rates in the Eastern District of Kentucky. In *Roberts v. Beshear*, Mr. Wiest and Mr. Bruns represented plaintiffs in a First Amendment challenge to Kentucky's emergency restriction on travel and mass gatherings due to COVID-19. *See Roberts v. Beshear*, No. 2:22-cv-054, 2022 WL 4592538, at *6 (E.D. Ky. Sept. 29, 2022), *aff'd sub nom. Roberts v. Neace*, 65 F.4th 280 (6th Cir. 2023). In granting attorneys' fees, that court reduced Mr. Wiest's requested rate from $400 to $375 per hour and granted Mr. Bruns' requested rate of $400 per hour.

*See id.* Moreover, rates in the Eastern District of Kentucky—and specifically in the Cincinnati area—are comparable to or slightly higher than those in Lubbock. *See, e.g.*, *Reece v. Carey*, No. 3:16-cv-00069-GFVT, 2022 WL 701015, at *3 (E.D. Ky. Mar. 8, 2022) (collecting cases for proposition that courts in the district generally approve rates "ranging from $200-$375" in civil rights cases seeking fees under § 1988); *J.B-K.-1 v. Sec'y of Kentucky Cabinet for Health & Fam. Servs.*, No. 3:18-cv-00025, 2023 WL 3016281, at *3 (E.D. Ky. Mar. 20, 2023) (collecting cases for proposition that "[c]ourts do not commonly approve rates exceeding $400 per hour in this District"), *appeal filed*, No. 23-5346 (6th Cir. Apr. 19, 2023). Because the prevailing community rates are comparable and because Plaintiffs agree that the case is comparable, the rates awarded in *Roberts* may inform any award of attorneys' fees here.

Plaintiffs also provide a series of six allegedly comparable cases from *outside* this district. Pls.' Mot. at 31. But none of these cases were based on prevailing rates in Lubbock. *See Franciscan All., Inc. v. Becerra*, No. 7:16-CV-00108-O, 2023 WL 4462049, at *7 (N.D. Tex. July 11, 2023) (Washington, D.C.); *Hill v. Schilling*, No. 3:07-cv-2020-L, 2022 WL 17178739 (N.D. Tex. Nov. 22, 2022) (Dallas), *appeal dismissed sub nom. Hill v. Washburne*, 2023 WL 4108214 (5th Cir. Jan. 31, 2023); *Kostic v. Tex. A&M Univ.-Com.*, No. 3:10-cv-2265-M, 2015 WL 9997211 (N.D. Tex. Dec. 28, 2015) (Dallas), *report and recommendation adopted*, 2016 WL 407357 (N.D. Tex. Feb. 3, 2016); *Johnson v. Sw. Rsch. Inst.*, No. 5:15-297, 2019 WL 4003106, at *21 (W.D. Tex. Aug. 23, 2019) (San Antonio); *Pittman v. SW. Bell Tel. L.P.*, 2022 U.S. Dist. LEXIS 244268, at *29 (W.D. Tex. August 16, 2022) (San Antonio); *Midcap Media Fin., LLC v. Pathway Data, Inc.*, 2018 WL 7890668, at *3 (W.D. Tex. Dec. 19, 2018) (Austin). Two of those six are entirely unrelated to civil rights, employment law, or constitutional law. *See Hill*, 2022 WL 17178739 (trusts); *Midcap Media Fin., LLC*, 2018 WL 7890668, at *3 (breach of contract). And Plaintiffs have not established that counsel have close to the amount of *specialized* experience relative to counsel in any of these cases. In any event, Plaintiffs have also cherry-picked the awarded rates. The award in *Franciscan Alliance* is a clear outlier, even based on rates in Washington, D.C. And in *Kostic*, although the lead attorney—who had "over 29 years of experience, with an emphasis on civil rights employment litigation"—was awarded a $650 hourly rate, the other five attorneys were awarded much more typical Dallas rates of $225 to $495, even despite their own significant (20 or more years) and specialized (in

12

employment law and civil rights) experience. *See Kostic*, 2015 WL 9997211, at *3–4. Similarly, in *Johnson*, Plaintiffs cite to the $585 award yet ignore that fees for the five attorneys in that case ranged "from $125 to $585" with a "weighted average" of $445. *Johnson*, 2019 WL 4003106, at *7. And Plaintiffs' citation to an $820 hourly rate in *Hill* is simply wrong. The Dallas rates awarded in that trusts dispute ranged between $220 and $430 for 17 attorneys, with a single attorney (a partner with over 40 years of experience) billing at $700. *See Hill*, 2022 WL 17178739, at *19.

Counsels' "skill, experience and reputation" is also an important consideration in determining the lodestar. *Mauricio*, 174 F. Supp. 3d at 948. Mr. Wiest is the sole member of his own law firm. *See* App'x to Pls.' Mot. Ex. C, Decl. of Christopher Wiest, Esq. ¶ 3, ECF No. 157 ("Wiest Decl."). Mr. Wiest's bar license was suspended for two years, from 2016 to 2018, for "dishonesty, fraud, deceit, and misrepresentation" related to his purchase of stock of interest to a client. *See Cincinnati Bar Ass'n v. Wiest*, 148 Ohio St. 3d 683, 690, 2016-Ohio-8166, 72 N.E.3d 621, *reinstatement granted*, 152 Ohio St. 3d 1269, 2018-Ohio-187, 98 N.E.3d 287. Excluding those two years of suspension, Mr. Wiest had approximately 17 years of legal experience, with seven of those years focused on constitutional litigation experience, at the start of this litigation in October 2022. *See* Wiest Decl. ¶¶ 3, 9; Wiest Decl. Ex. 1, Wiest Resume at 81–82. As noted above, Mr. Wiest has recently obtained attorneys' fees in his home market of the Cincinnati area based on an hourly rate of $325 to $375 for civil rights cases, including cases bringing complex constitutional challenges to COVID-19–related restrictions. *See, e.g.*, *Roberts*, 2022 WL 4592538, at *6; *Ramsek v. Beshear*, No. 3:20-cv-36, 2022 WL 3591827, at *7–8 (E.D. Ky. Aug. 22, 2022) (reducing Mr. Wiest's requested rate of $400 per hour to $375 per hour in "complex" case bringing First Amendment challenge to Kentucky's emergency restriction on travel and mass gatherings due to COVID-19), *appeal dismissed*, 2023 WL 6292395 (6th Cir. June 5, 2023); *Sweeney v. Crigler*, No. 19-cv-46, 2020 WL 7038977, at *2–3 (E.D. Ky. Oct. 27, 2020) (granting Wiest's requested rate of $350 per hour in challenge to state voting laws), *report and recommendation adopted*, No. 19-cv-46, 2020 WL 7028703 (E.D. Ky. Nov. 30, 2020); *Brooksbank v. Koch*, No. 3:16-cv-668, 2019 WL 7407401, at *3 (W.D. Ky. Apr. 15, 2019) (granting Wiest's requested rate of $325 per hour in civil rights challenge bringing First, Fourth, and Fourteenth Amendment challenges related to a traffic stop).

13

Accordingly, an hourly rate of $300 for Mr. Wiest is appropriate based on prevailing rates in Lubbock.

Next, Mr. Bruns is a partner of a law firm with 11 total attorneys, who had 32 years of legal experience at the start of this litigation.  *See* App'x to Pls.' Mot. Ex. D, Decl. of Thomas Bruns ¶ 3, ECF No. 157 ("Bruns Decl."); Bruns Decl. Ex. 1, Bruns Resume at 105.  Mr. Bruns does not specify his experience in civil rights or constitutional law, but his resume indicates that he had approximately nine years of such experience upon the start of this litigation.[3]  Mr. Bruns has often worked with Mr. Wiest and has sought slightly higher hourly rates of $350 to $400 in those same cases, also in his home market of the Cincinnati area.  *See, e.g.*, *Roberts*, 2022 WL 4592538, at *6 (granting Mr. Bruns' requested rate of $400 per hour); *Ramsek*, 2022 WL 3591827, at *7–8 (granting Mr. Bruns' requested rate of $400 per hour); *Sweeney*, 2020 WL 7038977, at *2–3 (granting Mr. Bruns' requested rate of $375 per hour); *Brooksbank*, 2019 WL 7407401, at *3 (granting Mr. Bruns' requested rate of $350 per hour).  Accordingly, an hourly rate of $350 for Mr. Bruns is appropriate based on prevailing rates in Lubbock.

Mr. Sullivan is a partner at a two-person law firm, and he had 10 years of legal experience at the start of this litigation.  *See* S&L Law Firm, *Hompeage*, https://perma.cc/2BJ6-5LKR (hover over "Attorneys"); App'x to Pls.' Mot., Sullivan Decl. Ex. 1, Sullivan Resume at 132.  Based on prevailing rates in Lubbock, an hourly rate of $325 is appropriate.

Mr. Siri is managing partner of Siri & Glimstad, a law firm with "40 professionals," App'x to Pls.' Mot. Ex. B, Decl. of Att'y Aaron Siri ¶¶ 3, 8, ECF No. 157 ("Siri Decl."), including 31 attorneys, *see* Siri & Glimstad, *Our Team*, https://perma.cc/G57K-9ZBY.  Mr. Siri had approximately 17 years of legal experience at the start of this litigation.  *See* Siri Decl. ¶ 12.  Mr. Siri was recently awarded his requested hourly rate of $450 for some of his most complex work, an ERISA class action involving breach of fiduciary duty, based on the comparatively higher prevailing rates in New York.  *See Kindle v. Dejana*, 308 F Supp 3d 698, 711, 714–16 (E.D.N.Y. 2018) (noting Mr. Siri was a partner with 14 years

---

[3] Mr. Bruns lists a "sampling" of "constitutional" cases he has worked on in his resume.  *See* Bruns Resume at 104–05.  Although Mr. Bruns lists cases from more than a decade ago, those cases do not appear to have conferred substantial constitutional or civil rights litigation experience.  The earliest listed case apparently involving substantial civil rights or constitutional litigation is *Elouardighi v. Pedcor Management Corp.*, a state-court employment lawsuit alleging national-original discrimination.  *See* Compl., 13CV83929 (Ohio Ct. Common Pleas, Warren Cnty. Apr. 1, 2013).

of experience at the time).  Mr. Siri has also recently represented victims in the National Vaccine Injury Compensation Program (NVICP),[4] in which cases he has recently been awarded up to $404 per hour. *See, e.g.*, *Aagotnes v. Sec'y of HHS*, No. 18-631V, 2021 WL 815916, at *2 (Fed. Cl. Jan. 14, 2021) (awarding Mr. Siri hourly rates of $376 to $404 in NVICP case related to influenza vaccine); *Falbo v. Sec'y of HHS*, No. 18-1547V, 2020 WL 1480317, at *2 (Fed. Cl. Feb. 12, 2020) (granting Mr. Siri's requested rates of $376 per hour for 2017 and $390 for 2018 in NVICP case related to influenza vaccine).  Based on prevailing rates in Lubbock, an hourly rate of $350 is appropriate.

Ms. Brehm is a partner of Siri & Glimstad, and she had 13 years of experience at the start of this litigation.  She alleges that she has approximately four years of "vaccine-related policy and litigation work," and approximately nine years of antitrust and securities class action experience prior to that. Pls.' Mot. at 26.  Based on prevailing rates in Lubbock, an hourly rate of $325 is appropriate.

Ms. Cox is an associate at Siri & Glimstad.  *See* Siri Decl. ¶ 17.  Plaintiffs do not allege that Ms. Cox had any civil litigation experience prior to joining Siri & Glimstad in 2021.  *See* Pls.' Mot. at 26–27.  Before that, she spent approximately 16 years practicing as a Judge Advocate General.  *See id.* at 26–27.  Like Mr. Siri, she has recently represented victims in the NVICP, and has been awarded $390 per hour.  *See W.R. v. Sec'y of HHS*, No. 20-1401V, 2023 WL 8187303, at *2 (Fed. Cl. Oct. 23, 2023) (reducing Ms. Cox's requested hourly rate of $475 per hour to $390 in NVICP case related to influenza vaccine, and noting that Cox "does not have demonstrated vaccine experience").  Accordingly, at the start of this litigation in October 2022, Ms. Cox had approximately one year of experience in civil litigation.  Based on prevailing rates in Lubbock, an hourly rate of $325 for Ms. Cox is appropriate.

Ms. Smith is an associate at Siri & Glimstad.  She had been practicing law for seven years at the start of this litigation.  She joined Siri & Glimstad the same year that this case was filed and had no prior experience in civil rights or constitutional law.  Pls.' Mot. at 27 (noting she worked for one year as an "appeals referee for the North Carolina Division of Employment Security," and for five

---

[4] The Federal Circuit has preapproved hourly rates for attorneys representing victims in Vaccine Injury Compensation Program litigation.  *See* Attorneys' Forum Hourly Rate Fee Schedule: 2023, *Office of Special Masters*, https://perma.cc/5LM9-DM7F.

years "practic[ing] criminal defense law, child welfare law, family law, and personal injury law at a general practice firm"). Based on prevailing rates in Lubbock, an hourly rate of $250 is appropriate.

Finally, Ms. Mannella is a paralegal with Siri & Glimstad. An hourly rate of $100 is appropriate based on prevailing rates in Lubbock. *See, e.g.*, *Collins v. Comm'r of SSA*, No. 3:21-cv-694-BH, 2022 WL 1173804, at *4 (N.D. Tex. Apr. 20, 2022) ("[C]ourts in this district have found that $95.00 per hour is the reasonable market rate for paralegal work in the Northern District of Texas."); *Casas*, 2023 WL 2727550, at *8 & n.6 (reducing overall hourly rates by 50% to 80% in case where paralegal requested hourly rate of $200, but court ultimately declined to grant any fees to paralegal).

Accordingly, if this Court awards attorneys' fees, the Government recommends the rates in the following chart according to prevailing rates in Lubbock, Texas.

| Name | Position | Experience (Yrs) | Requested Rate | Lubbock Rate |
|---|---|---|---|---|
| Chris Wiest | Solo Practice | 17 | $825 | $300 |
| Tom Bruns | Partner | 32 | $850 | $350 |
| John Sullivan | Partner | 10 | $975 | $325 |
| Aaron Siri | Partner | 17 | $975 | $350 |
| Elizabeth Brehm | Partner | 13 | $975 | $325 |
| Wendy Cox | Associate | 17 | $875 | $325 |
| Dana Smith | Associate | 6 | $775 | $250 |
| Gina Mannella | Paralegal | n/a | $240 | $100 |

**b. Plaintiffs are not entitled to out-of-district rates.**

Plaintiffs assert that they are entitled to "the prevailing market rate of his or her home district," which they claim is more than double the typical hourly rate in Lubbock. Pls.' Mot. at 17. There are multiple problems with this assertion. First, Plaintiffs have not established that out-of-district counsel was necessary. Second, Plaintiffs provide little to no evidence of counsel's home rates. Finally, even setting aside those issues, Plaintiffs' requested rates far exceed prevailing rates in their home districts.

**i. Out-of-district counsel was not necessary.**

First, Plaintiffs are not entitled to charge rates typical in their home districts because they have not established that out-of-district counsel was necessary. It is a "[s]eminal" principle of attorney's

fees that "rates 'prevailing in the community' . . . mean[s] what it says." *McClain*, 649 F.3d at 381. The home rates of counsel may be used as a starting point only in "atypical," "unusual cases where out-of-district counsel are proven to be necessary," and only where Plaintiffs have presented "abundant and uncontradicted evidence" of that necessity. *Id.* at 382–83, 387. Thus, in *McClain*, the Fifth Circuit considered counsel's home rates where Plaintiffs provided "an avalanche of unrebutted evidence," including "numerous affidavits from experienced Texas litigators and even the founder and past president of the Texas Employment Lawyers Association declaring, under oath, that no Texas attorneys were available to join [the plaintiff's] team on this particular case." *Id.* at 378–79.

Plaintiffs have not provided the requisite "avalanche of unrebutted evidence" that they could not obtain local counsel in Lubbock. *Id.* at 387. Plaintiffs argue that "this case was highly specialized, with very few attorneys nationwide having the requisite skills to competently represent Plaintiffs." Pls.' Mot. at 32. But this is directly rebutted by the plethora of nearly identical cases that have been brought in Texas District Courts by Texas-barred attorneys since August 2021. There have been at least 53 federal civil cases challenging the Secretary of Defense's now-rescinded August 24, 2021, COVID-19 vaccination requirement. *See* Decl. of Andrew E. Carmichael ¶ 2, A004. Of those 53 cases, at least 78 different attorneys from the private sector entered appearances. *See id.* ¶ 3, A004. Ten of those 53 cases were filed in federal courts located in the State of Texas, and at least 20 of the 78 private attorneys reported that they either had a law office in the State of Texas or were licensed to practice law in the State of Texas. *See id.* ¶¶ 4–5, A004. And those statistics do not include the even larger number of cases brought against other vaccine requirements or COVID-19 restrictions, against both the Federal Government and individual states. For example, the Federal Programs Branch of the Department of Justice has separately litigated at least 23 federal civil cases challenging Executive Order 14043, 86 Fed. Reg. 50,989 (Sept. 14, 2021) (now-expired civilian federal employee COVID-19 vaccine requirement) and at least 25 federal civil cases challenging Executive Order 14042, 86 Fed. Reg. 50,985 (Sept. 14, 2021) (now-expired federal contractor COVID-19 vaccine requirement). *Id.* ¶ 6, A005. Plaintiffs' summary contentions, unsupported by any evidence of a good faith search, that they were unable to find counsel in Texas, is belied by the large number of Texas attorneys who

17

have brought similar cases, both before and after this lawsuit was filed.

Indeed, Plaintiffs provide little evidence supporting their inability to find counsel in Lubbock. Plaintiffs provide declarations from two of the nine Plaintiffs, Schelske and Chrisman, who summarily declare that they were unable to find local counsel, but provide no detail about which or how many local counsel they contacted. *See* App'x to Pls.' Mot. Ex. F, Decl. of Robert Schelske ¶¶ 2–5, 8, ECF No. 157 ("Schelske Decl."); App'x to Pls.' Mot. Ex. G, Decl. of Luke Chrisman ¶ 2, ECF No. 157 ("Chrisman Decl."). Indeed, Plaintiffs Schelske and Chrisman both mention that they contacted only a single other law firm: Liberty Counsel, which is based in Florida. And by Chrisman's own explanation, the only reason he contacted Siri & Glimstad is that Liberty Counsel "immediately" referred him thereto. Chrisman Decl. ¶¶ 2–3.

Plaintiffs also attach the declaration of Jonathan Mitchell, a Dallas-based attorney not affiliated with this case, who attests that he is not personally aware of any counsel in San Angelo or Lubbock "who have the requisite skill or experience to handle a matter such as this litigation." App'x to Pls.' Mot. Ex. A, Decl. of Jonathan F. Mitchell ¶ 9, ECF No. 157 ("Mitchell Decl."). But Plaintiffs have not demonstrated that this case would have required any specialized knowledge or experience. Indeed, Plaintiffs provide no reason to believe that this case was particularly novel or complicated compared to other run-of-the-mill civil rights matters. This is especially true given that, by the time Plaintiffs came to these issues, they were far from novel. Indeed, as noted above, 52 separate cases challenging the same policies and circumstances were filed in advance of this litigation and had been substantially developed by the time these Plaintiffs filed their lawsuit. Moreover, these cases generally concern basic concepts of military deference and the scope of protection under RFRA. The primary complexity in these cases was their large scale, but Plaintiffs' representation has only ever extended to 11 individual service members. Accordingly, Plaintiffs' evidence—comprised of summary assertions that two Plaintiffs could not find counsel, and a declaration from a single Dallas-based lawyer—falls far below the requisite "avalanche of rebutted evidence" necessary to establish they were unable to find local counsel.

Moreover, Plaintiff Chrisman's declaration holds no weight because he has no ties to

18

Lubbock—nor even to Texas. Plaintiff Chrisman was stationed in Korea before his separation, and at the time of his addition to this lawsuit was living in Fort Leonard Wood, Missouri, in the Western District of Missouri. Am. Compl. ¶ 23; App'x to Am. Compl. Ex. 4, Decl. of Luke Tyler Chrisman at 15, ECF No. 93. Plaintiffs provide no explanation for why Chrisman was searching for counsel in Lubbock. Plaintiff Chrisman's assertion that he was "unable to locate any attorneys in the Northern District of Texas, specifically Lubbock or San Angelo" is thus of no help to establish that he was unable to find "local" counsel. And Chrisman provides no evidence that he was unable to find counsel in the Western District of Missouri or in any other district in which venue would have been proper.

Indeed, only two of the eleven Plaintiffs in this case have any connection to Lubbock.[5] Plaintiffs do not explain why any of the remaining nine Plaintiffs began their search for counsel in Lubbock. Nor do Plaintiffs explain why these nine Plaintiffs—from different cities, in different units, with different supervisors and job roles, and alleging different harms—filed their lawsuit together. Nor do Plaintiffs provide any evidence that any of these nine Plaintiffs were unable to find counsel and file lawsuits in their respective home districts or any other district in which venue may have been proper for their claims. By choosing to file this lawsuit in Lubbock even though most Plaintiffs lacked any connection to Lubbock, Plaintiffs assented to all the consequences of that choice: including a calculation of attorneys' fees based on prevailing rates in that community. Moreover, courts "often affirm[] reduced fees" even where out-of-district counsel was necessary so as to avoid exactly the kind of "windfall" that Plaintiffs seek here. *McClain*, 649 F.3d at 382–83 ("Congress intended that statutory

---

[5] Only Plaintiffs Costroff and Schelske—who were stationed at Goodfellow Air Force Base in San Angelo, Texas at the time of the complaint—have provided any evidence of a connection with the Northern District of Texas. Am. Compl. ¶¶ 16, 21. Additionally, Plaintiffs Bakich and Testa were stationed at Fort Bliss, Texas, which is in the Eastern District of Texas. *Id.* ¶¶ 13, 22. The remaining Plaintiffs have no connection with Texas at all. Five of the Plaintiffs—Plaintiffs Conklin, Saballa, Bufkin, Mell, and Morrison—were current or former cadets attending the United States Military Academy ("USMA") located in the Southern District of New York. *Id.* ¶¶ 14–15, 18–20. Of those four cadets, Plaintiff Conklin's home of record at the time of the complaint was Bend, Oregon, *see* App'x for Compl. Ex. 9, Decl. of Samuel L. Conklin at 96, ECF No. 14; Plaintiff Saballa's home of record was Grovetown, Georgia, *id.* Ex. 14, Decl. of Nicholas Saballa at 258; Plaintiff Bufkin's home of record was an unspecified city in Florida, Am. Compl. ¶ 14; and Plaintiffs Mell and Morrison provide no evidence of their home of record. Plaintiff Golloway was stationed in Italy and provides no evidence of his home of record. *Id.* ¶ 17. And as noted above, Plaintiff Chrisman had been stationed in Korea before his separation and was located in Fort Leonard Wood, Missouri at the time he was added to this lawsuit.

fee awards be adequate to attract competent counsel, but not produce windfalls to attorneys." (quoting *Riverside v. Rivera*, 477 U.S. 561, 580 (1986)).

> ii.   **Even if out-of-district counsel was necessary, Plaintiffs' requested rates are still unreasonable.**

Even if counsels' home districts could be considered in calculating an hourly rate, Plaintiffs have not established that the rates they claim are the prevailing rates in those districts. Plaintiffs provide little-to-no evidence as to most of counsel's home rates. But the case law from those districts shows that the requested rates double and even triple rates typically awarded in comparable cases.

Plaintiffs' counsel are located in New York City, Austin, Charlotte, Chicago, Cincinnati, and Dallas.[6] But Plaintiffs provide evidence only as to allegedly prevailing rates in Dallas, in which Mr. Sullivan is located. Plaintiffs provide no information regarding the prevailing rates in the home districts of Mr. Wiest, Ms. Bruns, Mr. Siri, Ms. Brehm, Ms. Cox, Ms. Smith, or Ms. Mannella.

First, Mr. Sullivan's claimed rate of $975 is not reasonable for Dallas. As noted above, Mr. Sullivan is a member of a two-person firm and has 11 years of legal experience. *See supra* pp. 14. Counsel with comparable experience and skills in Dallas generally obtain fees in the $300-to-$400 range. *See, e.g.*, *Architectural Granite & Marble, LLC v. Pental*, No. 3:20-cv-295-L-BK, 2023 WL 2825699, at *2–3 (N.D. Tex. Jan. 19, 2023) (finding various hourly rates, including $390 per hour for counsel with 11 years of experience, in Dallas market were appropriate—if "on the higher end of those

---

[6] This information is consistent with the information listed on counsels' public law firm websites. *See* Siri & Glimstad, *Aaron Siri*, https://perma.cc/4AVV-653J (listing as managing partner without particular location); Siri & Glimstad, *Wendy Cox*, https://perma.cc/WE6B-49PG (listing location as Austin, Texas); Siri & Glimstad, *Elizabeth Brehm*, https://perma.cc/FGF9-FQEP (listing location as New York City, New York); Siri & Glimstad, *Dana Stone Smith*,, https://perma.cc/P6Q5-KSLP (listing location as Charlotte, North Carolina); Siri & Glimstad, *Gina Mannella*, https://perma.cc/6P5Z-QXKT (listing location as Chicago, Illinois); Chris Wiest Law, *Contact Us*, https://perma.cc/5LGJ-QM4P (listing address as Crestview Hills, Kentucky); Bruns, Connell, Vollmar & Armstrong, LLC, *Tom B. Bruns*, https://perma.cc/VRC8-L3LF (listing no particular location but providing office locations in Cincinnati and Dayton, Ohio); S&L Law Firm, *John C. Sullivan*, https://perma.cc/S9CR-DT5Z (listing address as Cedar Hill, Texas); *see also* CM/ECF Docket for *Chrisman v. Austin*, No. 6:22-cv-49, *Attorneys* at 2–9, A007–15 (as of Feb. 26, 2024) (listing Mr. Wiest in Covington, Kentucky; Ms. Cox in Austin, Texas; Mr. Siri, Ms. Brehm, and Ms. Smith in New York City, New York; Mr. Bruns in Cincinnati; and Mr. Sullivan in Cedar Hill, Texas); Pls.' Mot. at 35–36 (signature lines); *Miller v. Austin*, No. 4:22-cv-1739, ECF No. 1 at 12 (listing Ms. Cox's address as Austin, Texas); Wiest Decl. Ex 1, Wiest Resume at 81 (listing address as Crestview Hills, Kentucky); Bruns Decl. Ex. 1, Bruns Resume at 104 (listing address as Cincinnati, Ohio); Sullivan Decl. Ex. 1, Sullivan Resume at 132 (listing address as Cedar Hill, Texas).

typically seen in the area"—in "complex" "employment / civil rights" case).[7]

In support of Mr. Sullivan's requested rate, Plaintiffs rely on a single declaration filed by Mr. Mitchell, who attests "an hourly rate of $975 is reasonable . . . for attorneys with the experience and skillset required to litigate this matter" in Dallas, Mitchell Decl. ¶ 14, and Mr. Sullivan's own attestation that $975 is "reasonable" for Dallas, *see* App'x to Pls.' Mot. Ex. E, Decl. of John C. Sullivan ¶ 10, ECF No. 157 ("Sullivan Decl."). Notably, Mr. Sullivan does not attest that $975 is his normal billing rate. *See id.* Regardless, Mr. Sullivan's requested rate of $975 exceeds even "the rates of distinguished partners at premier commercial-litigation firms in the Houston area." *Casas*, 2023 WL 2727550, at *9 (noting David Beck's hourly rate of $900). Yet Houston rates are comparable to Dallas rates, commercial litigation is among the most profitable practices areas, and both law firm size and years of experience significantly impact average hourly rate.[8] Further, as discussed above, this case did not require the outsized amount of experience or skill that Plaintiffs claim. Even if the Court were to apply Dallas rates for Mr. Sullivan, the rates he claims are not reasonable.

Plaintiffs offer no evidence as to prevailing rates for the home districts of the remaining attorneys and support staff. *See Mauricio*, 174 F. Supp. 3d at 948 (noting "fee applicant [must] produce satisfactory evidence—*in addition to the attorney's own affidavits*"). Even the declarations from counsel themselves do not mention their home districts or reasonable rates therein. Accordingly, even if the Court believed home rates were appropriate, Plaintiffs have failed to carry their burden of establishing those home rates.

In any event, a survey of rates in comparable cases in the relevant districts confirms that counsels' requested rates are unreasonable even in their home districts. The claimed rates for Mr. Wiest of $825 and for Mr. Bruns of $850 are unreasonable in their home district of Cincinnati. As discussed above, Mr. Wiest and Mr. Bruns have recently obtained significantly lower fees in Cincinnati

---

[7] *See also* 2019 Income and Hourly Rates at 10, *State Bar of Texas*, https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=54237 (noting Dallas median hourly rate in 2019 was $308).

[8] *See* State Bar of Texas, *2015 Hourly Fact Sheet* at 8, 10–13 (Aug. 2016), *https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/contentDisplay.cfm&ContentID=34182* ("Texas Bar 2015 Fact Sheet").

in comparable cases: Mr. Wiest obtained fees of $325-to-$375 and Mr. Bruns obtained fees of $350-to-$400. *See supra* pp. 13–14.

The billed rate of $975 for both Mr. Siri and Ms. Brehm is unreasonable in their home district of the Southern District of New York, where New York City is located. Typical rates in that district for "experienced civil rights attorneys . . . 'cluster in the $350-450 per hour range,'" and "higher rates— of '$550 per hour or more'—have been 'reserved for extraordinary attorneys held in unusually high regard by the legal community.'" *HomeAway.com, Inc. v. City of N.Y.*, 523 F. Supp. 3d 573, 597 (S.D.N.Y. 2021) (citation omitted) (collecting cases); *see also Kindle*, 308 F Supp 3d at 711, 714–16 (awarding Mr. Siri $450). Thus, for example, a district court recently approved a rate of $650 per hour for an "extraordinary" attorney—who had been a partner at Gibson Dunn for five years, a partner at Munger, Tolles & Olsen LLP for 22 years, and had clerked on the U.S. Supreme Court—in a civil rights case that raised "difficult constitutional questions" and required "unusually complex and sophisticated work." *Id.* at 596–97 (citation omitted).

The billed rate of $875 for Ms. Cox is unreasonable in her home district of the Western District of Texas, where Austin is located. At the start of this litigation, Ms. Cox had only one year of experience in civil law. Courts in the district community typically award rates of $300-to-$575 for counsel in First Amendment cases with a decade or more of specialized experience in First Amendment litigation. *See, e.g., Freedom From Religion Found., Inc. v. Abbott*, No. 1:16-cv-233-DII-DH, 2023 WL 8185636, at *7 (W.D. Tex. Nov. 27, 2023) (granting requested hourly rates, in case bringing First Amendment and other constitutional claims against the state, of $400 for associate with 11 years of legal experience and 10 years of First Amendment litigation experience; of $400 for senior counsel with 14 years of legal experience and 13 years of First Amendment litigation experience; $425 for lead counsel with 39 years of legal experience and 30 years of First Amendment litigation experience; and between $525 and $640 for senior partner with 40 years of legal experience), *report and recommendation adopted*, No. 1:16-cv-233-DII, 2024 WL 150768 (W.D. Tex. Jan. 12, 2024); *Bonar v. City of El Paso*, No. EP-21-cv-257-KC, 2023 WL 1325500, at *3 (W.D. Tex. Jan. 31, 2023) (collecting cases) (reducing requested rate of $350 to $300 in civil rights case in El Paso Division alleging violation of First

Amendment and Eighth Amendment, for attorney with approximately 40 years of experience, including in civil rights cases), *report and recommendation adopted*, No. 21-cv-257-KC, 2023 WL 2127142 (W.D. Tex. Feb. 16, 2023); *Cisneros v. UTC Providers-Austin, Inc.*, No. 1:17-CV-593-RP, 2019 WL 13253467, at *7 (W.D. Tex. Aug. 7, 2019) (noting plaintiffs' list of "attorney's fee awards for employment cases in San Antonio and Austin ranging from $225-to-$750 per hour, with the majority falling between $300 and $350").

The billed rate of $775 for Ms. Smith is unreasonable in her home district of the Western District of North Carolina, where Charlotte is located. Ms. Smith had six years of litigation experience when this case began, and no prior experience as a litigator in constitutional or civil rights law. *See* Pls.' Mot. at 27–28. Courts in her district typically award rates of $300-to-$400 for counsel with experience in civil rights litigation. *See, e.g.*, *Cities4Life, Inc. v. City of Charlotte*, No. 3:17-cv-670, 2021 WL 724609, at *7 (W.D.N.C. Feb. 24, 2021) (granting requested rates of $425 and $300 for counsel with proven "experience and expertise in civil rights litigation" in First Amendment challenge in Charlotte Division), *aff'd*, 52 F.4th 576 (4th Cir. 2022); *Hyatt v. May*, No. 1:19-cv-250, 2023 WL 2699990, at *7 (W.D.N.C. Mar. 29, 2023).

Finally, the billed rate of $240 for Ms. Mannella is unreasonable in her home district of the Northern District of Illinois, where Chicago is located. Typical rates for paralegals in that district are approximately $125. *See Haywood v. Wexford Health Sources, Inc.*, No. 16-cv-3566, 2021 WL 2254968, at *13 (N.D. Ill. June 3, 2021); *Sommerfield v. Knasiak*, No. 08-cv-3025, 2021 WL 5795303, at *8 (N.D. Ill. Dec. 7, 2021), *aff'd*, No. 22-1100, 2023 WL 4623887 (7th Cir. July 19, 2023).

> **B.    Plaintiffs' claimed hours are unreasonable.**

Plaintiffs' requested fees also do not establish a reasonable number of hours expended. Fee applicants must exercise "billing judgment." *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983) (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)). They must therefore exclude "excessive, duplicative, or inadequately documented" hours. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Plaintiffs' records includes non-compensable entries, excessive hours, multiple attorneys billed to discrete tasks, and multiple impermissible billing practices.

### a.  Plaintiffs cannot recover fees for unsuccessful claims.

First, "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Hensley*, 461 U.S. at 436; *see also Giles v. Gen. Elec. Co.*, 245 F.3d 474, 491 n.31 (5th Cir. 2001).  Where "a plaintiff has achieved only partial or limited success," the total hours billed to a litigation "may be an excessive amount." *Hensley*, 461 U.S. at 436.  Thus, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37.  Limiting fees based on partial success is "particularly important in complex civil rights litigation involving numerous challenges to institutional practices or conditions," where prevailing-party status "may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Id.* at 436.

Here, none of the eleven Plaintiffs achieved full success on their claims.  Plaintiffs sought but failed to obtain the final relief they sought, including declaratory relief, final injunctive relief, class certification, classwide preliminary injunctive relief, and classwide final injunctive relief.  Thus, any fees must be reduced to account for this partial success.  Plaintiffs evince no recognition of this fact, instead improperly seeking the full amount of fees on all hours worked.[9]  The calculation of fees differs depending on which Plaintiffs, if any, this Court determines to be prevailing parties.

*Plaintiff Chrisman*.  If this Court finds that Plaintiff Chrisman was a prevailing party based on the settlement agreement, attorneys' fees awarded to Plaintiff Chrisman must be limited to the work that contributed to the success of his claims.  The only work that contributed to the settlement

---

[9] Mr. Siri touts in his declaration that, "[i]n a showing of good faith," Plaintiffs have reduced 114.5 hours of time "that may appear unnecessary, duplicative, or otherwise potentially objection[able]."  Siri Decl. ¶ 22.  But unnecessary, duplicative, or otherwise objectionable hours are not compensable to begin with. *Walker v. U.S. HUD*, 99 F.3d 761, 769 (5th Cir. 1996) (noting that removing hours for work that is not billable does not establish exercise of billing judgment).  Mr. Siri also notes that Siri & Glimstad did not bill hours spent by "five of the ten legal professionals in the Firm who have worked on this case."  Siri Decl. ¶ 22.  But that amounts to 5.5 hours of attorney time and 42.2 hours of paralegal time, as compared to the 767.5 hours of attorney time and 144.8 hours of paralegal time that Plaintiffs have billed. *See id.* ¶ 21 (chart).  Moreover, the unbilled paralegal hours are non-compensable anyway, as they are non-legal in nature. *See Vela v. City of Hous.*, 276 F.3d 659, 681 (5th Cir. 2001); *see, e.g.*, Siri Decl. Ex. 1, Siri & Glimstad Billing Records at 38–39 (documenting Tenney's hours as "update attorney admissions for W. Moller and W. Cox"; "emails with G. Mannella regarding word formatting"; "calls with G. Mannella regarding ECF filing"; "ECF filing download, save and circulate").  As for the attorney hours not billed, a 0.07% reduction (5.5 hours out of 773 hours of attorney time) does not come close to the kind of reduction courts impose for limited success.

agreement is work related to the amended complaint, which belatedly added Plaintiff Chrisman and his distinct claims and requests for relief; and work related to the Government's motion to dismiss the amended complaint, of which only Plaintiff Chrisman survived.

Even if Plaintiff Chrisman was successful on *his* independent claims, that does not entitle him to fees related to work performed on the ten original Plaintiffs' claims or class claims. *Fessler v. Porcelana Corona De Mex., S.A. DE C.V.*, 23 F.4th 408, 418 (5th Cir. 2022). This is not a circumstance in which the same "plaintiff has prevailed as to some claims, and failed as to others." *Coleman v. Hous. Indep. Sch. Dist.*, 202 F.3d 264 (5th Cir. 1999). Here, there were multiple Plaintiffs and class claims that never led to a certified class. If only Plaintiff Chrisman is a prevailing party, work done on the claims of the original ten Plaintiffs and the class is easily segregable from work done on Chrisman's claims.

Moreover, Plaintiff Chrisman's claims and the claims of the original ten Plaintiffs and the class do not "involve a common core of facts or [are] based on related legal theories" such that "counsel's time [was] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435. Plaintiff Chrisman brought "distinctly different claims for relief that are based on different facts and legal theories," specifically based on his alleged discharge from the Army. *Id.* at 434. By the time Plaintiff Chrisman was added to this lawsuit, the events mooting out the claims of the original ten Plaintiffs and the original putative class had already occurred. The claims of the original ten Plaintiffs were dismissed—voluntarily or as moot— soon after Plaintiff Chrisman was added. *See Wright v. Blythe-Nelson*, No. 3:99-cv-2522-D, 2004 WL 2870082, at *6 (N.D. Tex. Dec. 13, 2004) ("Wright does not have the right to bill attorney's fees to Blythe–Nelson for work on claims related solely to the dismissed defendants."). The mere fact that all Plaintiffs were Soldiers who brought RFRA and First Amendment claims challenging different ways that the vaccine requirement allegedly injured them does not entitle Plaintiff Chrisman to fees for work done on behalf of ten Plaintiffs whose claims were mooted before he was added to this lawsuit or a class that was never certified.

Indeed, Plaintiff Chrisman's claims were essentially a different lawsuit, belatedly tacked on at the end of this litigation just before all remaining Plaintiffs' claims were either voluntarily dismissed

or dismissed as moot.  Plaintiff Chrisman's claims could have been brought as an entirely separate lawsuit without any negative affect on the outcome of his claims.  None of the work that occurred on the original ten Plaintiffs' claims contributed to Plaintiff Chrisman's partial success vis-à-vis the settlement agreement—except perhaps counsels' general familiarity with the legal landscape.  Allowing a contrary result would swallow the prevailing party analysis, under which one plaintiff's prevailing-party status does not entitle all other plaintiffs to prevailing-party status.  *See supra* § I.

    *Original Ten Plaintiffs*.  If this Court finds that the original ten Plaintiffs were prevailing parties based on the preliminary injunction, attorneys' fees must be limited to the work that contributed to that success: occurring only in the first three months of the litigation.  This includes the initial complaint and work related to the motion for a preliminary injunction.  Plaintiffs cannot obtain attorneys' fees for work that "bore no relation to the grant of relief."  *Fox v. Vice ex rel. Estate of Vice*, 563 U.S. 826, 834 (2011).

    Plaintiffs are not entitled to attorneys' fees for hours billed pursuing unsuccessful relief that did not contribute to Plaintiffs' success.  *See White v. Imperial Adjustment Corp.*, No. 99-cv-3804, 2005 WL 1578810, at *11 (E.D. La. June 28, 2005) ("[C]ourts routinely deduct time spent on unsuccessful, unfounded or unnecessary pleadings, motions, discovery requests and memoranda[.]"); *Alex v. KHG of San Antonio, LLC*, 125 F. Supp. 3d 619, 626 (W.D. Tex. 2015) (eliminating hours spent on motions to amend complaint, as "[e]ven a favorable outcome on those motions likely would not have benefited the prevailing plaintiffs in this case").  Accordingly, Plaintiffs cannot obtain fees for hours related to motions for class certification and class-wide injunctions that were deferred and ultimately dismissed by the district court.  Nor can Plaintiffs obtain fees for hours spent addressing Defendants' motion to dismiss the complaint, which Plaintiffs themselves mooted by amending their complaint and which would have failed regardless given this Court's subsequent dismissal of the amended complaint.  Nor can Plaintiffs obtain fees for hours billed addressing Defendants' motion to dismiss the amended complaint, on which Plaintiffs lost as to all of the then-remaining original Plaintiffs.  Nor can Plaintiffs obtain fees for hours billed on motions that Plaintiffs never acted on, including discovery and a motion to expedite classwide discovery.

Plaintiffs suggest they can obtain fees for hours billed on unsuccessful motions simply because their claims are all "related and intertwined RFRA and First Amendment claims." *See* Pls.' Mot. at 15. But Plaintiffs' proffered rule has been soundly rejected by the Supreme Court. Where "a plaintiff has achieved only partial or limited success" on certain claims, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount . . . *even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.*" *Fessler*, 23 F.4th at 418 (quoting *Hensley*, 461 U.S. at 436). Succeeding on a single motion does not entitle a party to recover fees for the entire litigation, particularly where the party does not ultimately prevail on the merits of their lawsuit. Nor would such a rule comport with Plaintiffs' cited authority. The reasoning behind those cases is that, in certain circumstances, work on related claims cannot meaningfully be segregated. This is not such a case. Here, the work performed on the unsuccessful aspects of Plaintiffs' case is easily segregable from the work which may have earned Plaintiffs a small degree of success, regardless of whether or whom this Court finds to be a prevailing party.

Finally, the original ten Plaintiffs cannot obtain attorneys' fees based on work performed on Plaintiff Chrisman's claims. Plaintiff Chrisman's claims "bore no relation to the grant of relief," specifically the preliminary injunction. *Fox*, 563 U.S. at 834. Indeed, as explained, Plaintiff Chrisman's claims did not even exist until long after the preliminary injunction issued in this case. Any work on Plaintiff Chrisman's claims thus "cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Id.* (quoting *Hensley*, 461 U.S. at 435).

### b. Plaintiffs' billing records are vague, excessive, and duplicative.

Plaintiffs' billing has multiple issues evincing a lack of "billing judgment." *Hensley,* 461 U.S. at 434 (quoting *Copeland*, 641 F.2d at 891); *see also* Annotated Billing Records, A0017 (highlighting problematic billing entries). If the Court finds that some or all Plaintiffs are entitled to fees, the Court should reduce the billed hours by a minimum of 40% to account for these problems, as at least one other court has recently done for these particular counsel. *See, e.g.*, *Brooksbank*, 2019 WL 7407401, at *3 (applying "40% across-the-board reduction . . . to account for excessiveness, duplication, and redundancy" in billing records of Mr. Wiest and Mr. Bruns).

27

First, Plaintiffs' billing records reflect vague descriptions of work performed, including vague references to correspondence, phone calls, and hearing preparation without any indication of the subject-matter. *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-cv-0752-D, 2011 WL 487754, at *7 (N.D. Tex. Feb. 11, 2011) (reducing lodestar where "[s]everal of the 'telephone conference' entries provide no indication of the purpose of the communication" (citation omitted)); *SAP Am., Inc. v. Investpic, LLC*, No. 3:16-CV-02689-K, 2018 WL 2230597, at *2 (N.D. Tex. May 15, 2018) (finding billing records were "too vague for the Court to determine if this time was reasonably expended on this matter" where time entries, after redactions, merely listed hours as "[r]esearch" or "confer with team"); *In re Trevino*, 648 B.R. 847, 875 (Bankr. S.D. Tex. 2023) ("Large billing entries with vague descriptions such as 'preparation for hearing' hinders the Court's ability to assess the reasonableness of these fees."); *Williams v. Shinseki*, No. 3:11-CV-0761-D, 2013 WL 1875055, at *3 (N.D. Tex. May 6, 2013) ("As this court has said multiple times before, the billing entry 'preparation for trial' is vague.").

Ms. Cox's entries in particular reflect vague billing practices. Representative examples in Ms. Cox's records include billing time for: "draft and send email to plaintiff"; "zoom call with A. Siri, E. Brehm, and C. Wiest"; "read and respond to team emails"; "read and respond to emails"; "phone call with C. Wiest"; "phone call with P. Testa"; "read and respond to emails from co-counsel and plaintiffs"; "phone call with C. Wiest about case"; "prep for PI hearing." Siri Decl. Ex. 1, Siri & Glimstad Billing Records at 36, 49, 56.

Mr. Wiest, Mr. Sullivan, Mr. Siri, and Ms. Brehm also include significant vague billing entries in their records. Representative examples in Mr. Wiest's records include billing time for: "Communicate with DOJ"; "Emails with DOJ"; and "case zoom call." Wiest Decl. Ex. 2, Wiest Billing Records at 86, 87, 89. Representative examples in Mr. Bruns' records include billing time for: "Participate in ZOOM call with co-counsel"; "Telephone conference with co-counsel re: further strategy"; "Participate in ZOOM call with co-counsel re: further litigation plan." Bruns Decl. Ex. 2, Bruns Billing Records at 116, 117, 119. Representative examples in Mr. Sullivan's records include billing time for: "Phone conversation w/ W. Cox re: case"; "Review emails from J. Walker and C.

Wiest"; "Review correspondence w/ DOJ"; "Call w/ A. Siri re: case strategy"; "Discussions w/ legal team re: case." Sullivan Decl. Ex. 2, Sullivan Billing Records at 134, 136, 138. Representative examples in Mr. Siri's records include billing time for: "zoom meeting with W. Cox, T. Wiest, D. Stone, and T. Bruns"; "zoom meeting with E. Brehm, W. Cox, D. Stone, C. Wiest, T. Bruns and G. Mannella to discuss case issues"; and "various conference calls with internal and co-counsel to prepare for hearing." Siri Decl. Ex. 1, Siri & Glimstad Billing Records at 41, 45, 47. Representative examples in Ms. Brehm's records include billing time for: "discuss case strategy with team"; and "review and respond to W. Cox. Email, review team emails." *Id.* at 36. Counsels' vague entries preclude this Court from determining whether these billing entries relate to matters over which Plaintiffs could be deemed to be prevailing parties.

Plaintiffs also billed an excessive total amount of hours on discrete tasks, even excluding the significant number of hours that were described too vaguely to determine what they pertained to. For example, Plaintiffs billed approximately 113 hours preparing the initial complaint, even though the pleadings in this matter are largely identical to the pleadings earlier filed—by the same counsel—in both *Doster v. Austin*, No. 1:22-cv-84 (S.D. Ohio), and in *Poffenbarger v. Austin*, No. 22-cv-1 (S.D. Ohio). *See* Compl., *Doster*, ECF No. 1; Compl., *Poffenbarger*, ECF No. 1. "Courts have substantially reduced attorney's fee awards for work product that was copied or derived from prior work in similar cases." *Furlow v. Bullzeye Oilfield Servs., LLC*, No. SA-15-CV-1156-DAE, 2019 WL 1313470, at *6 (W.D. Tex. Jan. 3, 2019) (collecting cases), *report and recommendation adopted*, 2019 WL 1313454 (W.D. Tex. Jan. 19, 2019). Moreover, as noted, 52 other cases challenging the same military vaccine requirement provided sample filings for Plaintiffs. Similarly, Plaintiffs billed at least 99.6 hours on the preliminary injunction, despite its strong similarity to those in *Doster* and *Poffenbarger*. *See* Pls.' Mot. for Emergency Temp. Restraining Order & Prelim. Inj., *Doster*, No. 1:22-cv-84 (S.D. Ohio), ECF No. 13; Pls.' Mot. for Emergency Temp. Restraining Order & Prelim. Inj., *Poffenbarger*, No. 22-cv-1 (S.D. Ohio), ECF No. 2. Plaintiffs also billed at least 180.3 hours preparing for the preliminary injunction hearing, where Plaintiffs put on only three witnesses. Plaintiffs billed at least 74 additional hours preparing the amended complaint, which simply added one Plaintiff and his additional requests for relief related to

his discharge and updated allegedly ongoing harms to existing Plaintiffs.

Exacerbating these already excessive hours, counsel have also sought their highest rates for all work performed. Yet the Fifth Circuit has been clear that for "more routine" tasks, "hourly rates near the top of the scale will . . . generally be inappropriate if . . . the task could have been properly accomplished with greater overall cost efficiency by competent personnel whose lesser experience and skill would not justify such high rates." *Leroy v. Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990); *see also, e.g.*, *Doe v. Fitch*, No. 3:16-cv-789, 2022 WL 4002326, at * 8 (S.D. Miss. Aug. 1, 2022) (citation omitted) ("[R]outine matters should be compensated at the lesser rate as these are clerical duties that could have been handled by non-lawyers.").

Indeed, even setting aside the overall excessive amount of hours billed to discrete tasks, Plaintiffs' billing records reflect that multiple senior attorneys billed time on nearly every task. "[T]he time spent reviewing each other's work was duplicative and unnecessary, considering the experience and abilities of these lawyers." *Ayers v. State Farm Mut. Auto. Ins. Co.*, No. 6:17-cv-1265, 2018 WL 375719, at *3 (M.D. Fla. Jan. 11, 2018); *see also Bowman v. Prida Constr., Inc.*, 568 F. Supp. 3d 779, 785 (S.D. Tex. 2021) ("The pertinent issue throughout the billing entries is the curious juxtaposition of the plaintiff's attorney's extensive experience in FHA cases with what appears to be excessive time spent on routine, formulaic tasks[.]"). For example, for the 74 hours spent on the amended complaint, Ms. Cox billed 24.9 hours, Ms. Smith billed 14.5 hours, Mr. Sullivan billed 8.8 hours, Mr. Wiest billed 11.6 hours, Ms. Brehm billed 1.3 hours, Mr. Siri billed 0.5 hours, and Ms. Mannella billed 12.4 hours. For the 99.6 hours spent preparing the preliminary injunction motion, Ms. Cox billed 34.8 hours, Mr. Sullivan billed 16.5 hours, Mr. Wiest billed 15.6 hours, Mr. Bruns billed 11.6 hours, Ms. Smith billed 3.2 hours, Ms. Brehm billed 0.8 hours, and Ms. Mannella billed 17.1 hours. Additionally, five attorneys traveled to the preliminary injunction hearing—including Mr. Siri, Ms. Cox, Mr. Wiest, Mr. Bruns, and Mr. Sullivan, who respectively requested hourly rates of $975, $875, $825, $850, and $975—even though only three attorneys—Mr. Wiest, Ms. Cox, and Mr. Bruns—made an appearance or spoke at the hearing. *Walker*, 99 F.3d at 768 ("The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted." (quoting *Johnson v. Ga. Highway Express, Inc.*, 488

F.2d 714, 717 (5th Cir. 1974))); *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir. 1982) (time spent in the passive role of an observer while others worked is not compensable); *Leroy v. City of Hous.*, 906 F.2d 1068, 1079 (5th Cir. 1990) (same).

Plaintiffs assert summarily that these excessive hours are because the Government "hotly contested" "every issue and matter in this case." Pls.' Mot. at 13. But this does not distinguish this case from any other. Plaintiffs cannot claim the case is atypical, or that excessive billing is justified, merely because the Government moved to dismiss Plaintiffs' claims and opposed Plaintiffs' requests for preliminary injunctions and class certification, and opposed Plaintiffs' motion in limine to bar the Government from introducing certain evidence at the preliminary injunction hearing. *See* ECF Nos. 38, 70, 76, 88–89, 105–06. And this case bears no resemblance to Plaintiffs' cited cases, in which excessive hours were billed "due to Defendants' choice of litigation tactics." Pls.' Mot. at 14. Those cited cases involved "frivolous motions," repeated discovery disputes, and "dilatory litigation tactics." *See id.*. Plaintiffs have pointed to no frivolous motions here; nor was there any discovery at all (despite Plaintiffs' significant hours billed to discovery motions that were never filed), much less any discovery disputes. And Plaintiffs' sole cited example of alleged "dilatory" tactics is the Government's motion to continue the hearing on the preliminary injunction considering the immediately impending NDAA, which would—and ultimately did—moot out Plaintiffs' claims entirely. ECF No. 59.

Moreover, Plaintiffs billed unreasonable hours related to travel. All five counsel who attended the preliminary injunction hearing billed their full rates for a collective total of 44.3 hours of travel time, without any indication that the time was otherwise spent working. *See, e.g., Veasey v. Abbott*, No. 2:13-cv-193, 2020 WL 9888360, at *20 (S.D. Tex. May 27, 2020) (noting that "it is this Court's practice to allow [travel] fees at fifty percent (50%), unless there is evidence that the attorney worked while in transit), *aff'd*, 13 F.4th 362 (5th Cir. 2021); *Bowman*, 568 F. Supp. 3d at 785–86 ("In this Circuit, time spent traveling should be billed at a lesser rate than active legal work."); *Watkins*, 7 F.3d at 459; *Hopwood v. Texas*, 236 F.3d 256, 263 (5th Cir. 2000) (affirming reduction of travel hours by one-half); *In re Babcock & Wilcox Co.*, 526 F.3d 824, 829 (5th Cir. 2008) (same).

Additionally, none of Ms. Mannella's hours are compensable. Hours billed by paralegals is

compensable only "if the work is legal rather than clerical." *Vela v. City of Hous.*, 276 F.3d 659, 681 (5th Cir. 2001). Ms. Mannella's billed hours were all for objectively clerical, non-legal work, including filing and filing preparation, sending documents to Plaintiffs, and conferencing with the attorneys regarding these tasks. Representative examples include: "review submission and P. Testa and organize documents into administrative materials PDF document"; "send engagement letter to Cadet Collin Morrison and upload his chaplain letter to administrative material file"; "call with W. Cox regarding filing of complaint"; "create appendix of exhibits"; "format and proofread complaint"; "edit declarations with revised complaint caption"; "file exhibits"; "organize plaintiffs documents folders"; "prepare exhibits for appendix and finalize appendix document." *See, e.g.*, Siri Decl. Ex. 1, Siri & Glimstad Billing Records at 36–37, 40, 59. "Because her work did not equate to the type of work 'traditionally done by an attorney,'" Ms. Mannella's "time should be excluded from the calculation." *Casas*, 2023 WL 2727550, at \*8 (quoting *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982)).

Ms. Cox's records also reflect significant time spent performing clerical work that is not compensable, much less at her claimed regular rate. Plaintiffs cannot recover fees at an attorney's rate, much less a rate of $875 an hour, for clerical work, including the "filing of legal documents, the calendaring of events, and communications regarding scheduling issues," as well as "[p]reparing, assembling, and redacting documents and exhibits." *Bowman*, 568 F. Supp. 3d at 787 (quoting *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 4:14-CV-00371, 2018 WL 1602460, at \*5 (E.D. Tex. Apr. 3, 2018)). Time spent "gathering information" and "interviewing class members" is likewise not compensable, yet Ms. Cox billed a significant amount of time corresponding with Plaintiffs—and billing that time at her full rate. *Walker*, 99 F.3d at 771. Representative examples include: "phone call with Z. Bufkin regarding appearance at the PI hearing and travel arrangements"; "send final draft of complaint and PI to [counsel] for review"; "send declaration to [plaintiffs] with verification for signature"; "revise appendix for filing"; "draft and send email with amended complaint filing to plaintiffs." Siri Decl. Ex. 1, Siri & Glimstad Billing Records at 37–38, 48, 60. Ms. Cox also billed significant hours to "conference[ing] with an assistant," *Fralick*, 2011 WL 487754, at \*8, which is not compensable, *see, e.g.*, Siri Decl. Ex. 1, Siri & Glimstad Billing Records at 36–39 (billing time for "phone

call with G. Mannella" or "email to G. Mannella" repeatedly).

Considering these pervasive billing deficiencies, if the Court were to award any fees at all, it should reduce Plaintiffs' requested fees by a minimum of 50%.[10]

### C.     Plaintiffs' expenses are unreasonable.

Plaintiffs seek expenses and costs for noncompensable items.  In particular, travel costs for non-witness Plaintiffs are not compensable.  Siri & Glimstad's billing records reflect they paid a total of $3,844.21 for airfare and hotels for Plaintiff Bakich, Plaintiff Bufkin, Plaintiff Testa, and Plaintiff Testa's non-party son, none of whom were witnesses (or even potential witnesses) in the hearing.  *See* Siri & Glimstad Billing Records at 60; Exhibit to Pls.' Mot. in Limine, ECF No. 66-3 at 1, Dec. 13, 2022 Email from C. Wiest to K. Berman (confirming that Plaintiffs intended to call only Plaintiffs Mell, Schelske, and Costroff as witnesses).  Nor can Plaintiffs obtain costs for tasks related to Plaintiffs who were dismissed or motions which failed, as discussed above.

## III.   NO ADJUSTMENT OF THE LODESTAR FIGURE IS JUSTIFIABLE.

No adjustment based on the *Johnson* factors is appropriate here.[11]  Plaintiffs have failed to establish that any relevant factor was not already properly accounted for in the lodestar calculation.

The Supreme Court has "established a strong presumption that the lodestar represents the reasonable fee . . . and ha[s] placed upon the fee applicant who seeks more than that the burden of showing that such an adjustment is *necessary* to the determination of a reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (citations omitted); *see also Combs v. City of Huntington*, 829 F.3d 388, 392–93 (5th Cir. 2016) (noting that the Supreme Court has "repeatedly explained . . . that the lodestar

---

[10] Plaintiffs purport to reserve the right to seek additional fees "for time spent preparing their fee application." Pls.' Mot. at 34.  To the extent Plaintiffs add to their requested fees, the Government reserves the right to respond to such additional requests.

[11] The *Johnson* factors are: (1) time and labor required; (2) novelty and difficulty of the issues in the case; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and the results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

may be increased only in extraordinary circumstances"). Plaintiffs have not met their burden of establishing that this is one of the "rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Combs*, 829 F.3d at 393 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010)).

First, "any factor accounted for in the initial lodestar calculation cannot justify further adjustment." *Casas*, 2023 WL 2727550, at *2. Most of the factors are already typically subsumed in the initial lodestar calculation. *See Casas*, 2023 WL 2727550, at *10–11 (collecting cases) (explaining that the time and labor required; the novelty and complexity of the issues; the requisite skill and experience of counsel; the quality of representation; the results obtained from the litigation; the time limitations imposed by the circumstances; and the customary fee "are subsumed within the initial calculation of the lodestar" (citations and quotations omitted)); *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) ("'[P]reclusion of other employment' is generally subsumed within the lodestar amount." (quoting *Shipes v. Trinity Indus.*, 987 F.2d 311, 321–22 (5th Cir. 1993)). Moreover, the Supreme Court has "barred consideration of" factor (6), "whether the fee is fixed or contingent." *Walker*, 99 F.3d at 772. Plaintiffs proffer no reason to think that these factors—including factors (1)– (3), (5)–(9) and factor (12)—will not be properly accounted for in the lodestar, if any.

Second, Plaintiffs do not provide the requisite evidence of "extraordinary circumstances" justifying an adjustment as to the remaining factors, including factors (4), (10) and (11). *Combs*, 829 F.3d at 393. As to factor (4), the parties have at length discussed awards in similar cases in the context of reasonable hourly rates, *see supra* pp. 11–14, and Plaintiffs proffer no reason to reconsider such awards in applying an adjustment to the lodestar. As to factor (10), the undesirability of the case, Plaintiffs have provided no evidence to indicate that counsel, as a result of this litigation, have "face[d] hardship[] in [their] community" that has "had an economic impact on [their] practice." *Johnson*, 488 F.2d at 719. To the contrary, as Plaintiffs repeatedly emphasize, counsel frequently pursue similar religious freedom and specifically vaccine cases as a core aspect of their practices. *See, e.g.*, Pls.' Mot. at 25–30. And although "unpopular" does not necessarily equate to "undesirable," it is clear from the dozens of similar cases that were litigated by other firms and attorneys that there were many litigants

34

and many litigators willing to pursue the same vaccine mandate claims.  *See supra* pp. 17–18.  Plaintiffs have provided no evidence to indicate that taking this case has harmed counsels' business in any way. As to factor (11), length of the professional relationship, Plaintiffs have not demonstrated any "evidence of a special or lengthy professional relationship."  *Avialae S De Rl De Cv. Cummins Inc.*, No. EP-19-CV-00380-FM, 2023 WL 5163901, at *8 (W.D. Tex. Aug. 3, 2023) (citation omitted).  Thus, if anything, "that factor actually suggests a slight decrease in the lodestar here."  *Id.*  Counsel were only ever involved with any of the eleven Plaintiffs for reasons related to the substance of this litigation, and those relationships all began at the earliest in the same year the suit was filed.  *See* Pls.' Mot. at 31.

Indeed, if anything, the *Johnson* factors counsel in favor of a reduction to the lodestar.  The "Supreme Court [has] explained that 'the most critical factor' in determining a reasonable fee 'is the degree of success obtained'" and has "endorsed using 'the important factor of the results obtained' to decrease the lodestar, noting that where a plaintiff achieves 'only partial or limited success' the lodestar may be excessive."  *Combs*, 829 F.3d at 394. (quoting *Hensley*, 461 U.S. at 434, 436).  As explained above, all eleven Plaintiffs achieved, at most, limited success in this case relative to the relief that they sought. Even assuming the Court considered the minimal agreement made between Defendants and Plaintiff Chrisman to constitute relief, the Plaintiffs' degree of success is still vastly dwarfed by the scope of the relief that they sought.  Plaintiffs did not receive any of the declaratory relief sought, any of the corrective relief sought except as to Plaintiff Chrisman, any of the policy-related relief sought, or any final and permanent relief except as to Plaintiff Chrisman.  Most importantly, Plaintiffs did not receive any of the class relief sought despite the substantial amount of time spent litigating class issues. Although it is difficult to quantify, it is clear that Plaintiffs received substantially less than half of the relief they sought and were unsuccessful in the majority of their claims. Consequently, to the extent that the Court did not already sufficiently consider Plaintiffs' limited success in calculating the lodestar, Defendants suggest an additional reduction to the lodestar of at least 50%.

## CONCLUSION

The Court should deny Plaintiffs' motion for attorneys' fees and costs.

Dated:  March 4, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

JOSHUA E. GARDNER
Special Counsel

/s/ *Cassandra M. Snyder*
ANDREW E. CARMICHAEL
Senior Trial Counsel
KERI BERMAN
CASSANDA M. SNYDER (D.C. Bar #1671667)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 12304
Washington, D.C. 20530
Tel.: (202) 451-7729 / Fax: (202) 616-8460
Email: cassandra.m.snyder@usdoj.gov

*Counsel for Defendants*